UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| FELIPE DE JESUS AVILA-SOTO, FELIPE DE JESUS SUAREZ-PALAFOX, and JUAN ALEJO HERNANDEZ-CANELA, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., AND STERLING SUGARS, LLC,<br><br>Defendants. | Case No. 6:24-cv-01392 |

PLAINTIFFS OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL DEPOSITION TESTIMONY

This is a suit brought by Mexican foreign workers employed as truck drivers in the Louisiana sugar cane harvest pursuant to work visas obtained by their employers. Two of the plaintiffs appeared for depositions in December. One, Felipe Suarez-Palafox appeared for deposition in Baton Rouge at Defendants' counsel's office, the other, Felipe Avila-Soto, appeared at a hotel in Mexico selected by Defendants for a deposition in the city of Torreon, Mexico. A third Plaintiff Juan Hernandez-Canela while working as a truck driver for Defendants suffered a health concern and returned to Mexico for medical treatment. Nonetheless, Defendants contend that Plaintiffs have been unwilling to "appear and provide adequate deposition testimony," ECF 55-1 at 15, which as explained in further detail is incorrect. Plaintiffs have appeared, Defendants have examined them, and the one Plaintiff who has not appeared seeks to withdraw.

1

### I. Plaintiff Juan Alejo Hernandez-Canela Had A Health Scare and Left for Mexico Before Defendants Noticed His Deposition. He Now Seeks to Withdraw.

Plaintiffs informed counsel for Defendants on December 2, 2025, well in advance of the planned December 12, 2025 deposition date, that Mr. Hernandez was in Mexico and unable to appear in Louisiana. ECF 55-5.[1] Plaintiffs advised that Mr. Hernandez had left work in Louisiana where *Plaintiff was employed with the Defendants* and was home in the state of Veracruz, Mexico seeking medical treatment. While the Plaintiffs disagree that the parties properly met and conferred regarding Defendants wanting to conduct the deposition of Mr. Hernandez in Mexico after he returned home due to illness, a deposition in Torreon, Mexico would not have been possible for Mr. Hernandez as he lives a great distance from Torreon.[2] The parties did not discuss appearing in Torreon and the idea that he could somehow have appeared there is far from reasonable. Setting that aside, however, Plaintiffs confirm that Mr. Hernandez no longer wishes to serve as a class representative in this matter or pursue his individual FLSA claim. Plaintiffs will file a notice of his withdrawal of his FLSA claim and his withdrawal as a named Plaintiff. Nonetheless, Defendants claim that Plaintiffs have refused to produce Plaintiff Juan Alejo Hernandez-Canela or that travelling to Mexico for medical care was an attempt to evade a deposition notice is simply mistaken. ECF 55-1 at 7.

### II. Plaintiff Felipe Avila-Soto Appeared for a Full-Day Deposition and

---

[1] Defendants claim, falsely, that "[Hernandez-]Canela's deci[ded] to depart the United States .. [was] after his deposition was noticed[.]" ECF 55-1 at 9-10.  But Plaintiff Hernandez-Canela *was already in Mexico* on November 20, 2025 when Defendants noticed his deposition. Morton Decl. at ¶ 11. This is a fact known to Defendants as Defendants were his employer at the time Plaintiff left for Mexico to seek medical treatment. Defendants' claim that Hernandez-Canela "fled the United States," ECF 55-1 at 10, and that his departure to seek medical treatment was "inappropriate," ECF 55-1 at 11, is simply not true.

[2]  Mr. Hernandez-Canela resides in the southern part of the state of Veracruz, Mexico—a fact known to Defendants as well – and his residence is approximately 1350 kilometers or more than 830 miles from the city of Torreon, Mexico where Defendants now ask that he appear for deposition.

**Defendants Have Not Shown Good Cause to Continue that Deposition for a Second-Day.**

Plaintiff Avila-Soto appeared for deposition in Torreon, Mexico on December 16, 2025. Defendants' describe the deposition as lasting just "three hours," ECF 55-1 at 7, but the deposition went from just after 9 am until after 4 pm including the time Plaintiff spent waiting for the interpreter to return or for another interpreter to be obtained. ECF 55-9 at 4, 7 (read-on page 6:23-25). Plaintiffs' counsel and Defendants' counsel travelled to Mexico while the court reporter, additional counsel and an interpreter were connected by video call. Avila-Soto Dep. at 1. Defendants did not bring audio equipment or camera equipment and the deposition used Plaintiffs' counsel's laptop for video of the deponent, and at times audio, and the speakerphone from Defendants' counsel's mobile phone. Avila-Soto Dep. 12:19-20 (mentioning switching from cellphone to laptop audio).

Defendants hired an unqualified interpreter who made numerous translation errors. The interpreter also seemed to struggle with the audio arrangement complaining about the sound or the speed at which the witness spoke Spanish. Avila-Soto Dep. [ECF 55-7] at 26:17-18 (complaining of "literally having trouble hearing"), 50:9-10 ("really having trouble hearing"); Avila-Soto Dep. at 92:4-5 (complaining witness spoke "very quickly"). Defendants also wasted more than an hour asking the Plaintiff about a denied tourist visa which was never issued and which was unrelated to the claims in this litigation. Avila-Soto Dep. at 45:13-19 (sought visa for Disneyland and shopping). That questioning used 22 pages of the over 90-page deposition transcript. Avila-Soto Dep. at 44-66. Now, after causing Plaintiff to appear for a full day and reject work assignments to attend the deposition, Defendants demand Plaintiff re-appear and that Plaintiffs' counsel fly to Mexico again. Plaintiff has met his obligation to appear and should not be required to appear for a second deposition. *Adesanya v. Novartis Pharms. Corp*, 755 F. App'x

3

154, 158 (3d Cir. 2018) ("Rule 30(d)(1) allows for one day of questioning, not 7 hours over multiple days"); Fed. R. Civ. P. 30(d)(1); ECF 33 at 6 ("limiting depositions to one day / seven hours").  Forcing Plaintiff, a low-wage truck driver, to miss more work assignments jeopardized Plaintiff's current employment and his income unfairly, and subject's Plaintiffs' counsel to substantial additional travel and costs.[3] Morton Decl. at ¶¶ 3-7 (attached).

      A.      **Defendants Hired an Unqualified Interpreter**

Federal Rule of Evidence 604 requires qualified interpreters—and unfortunately the interpreter Defendants hired was not qualified and not a federal court certified interpreter. Avila-Soto Dep. at 6:10-14. The interpreter asked to be replaced after multiple hours and Plaintiff and counsel waited at the deposition for a second interpreter to be retained. Morton Decl. at ¶ 8. Defendant was unable to procure an interpreter.[4]  Defendants also did not take any efforts to procure an interpreter other than wait for a return call from the interpreter placement agency that had provided the unqualified interpreter.  ECF 55-9 at 5-6 (Dep. Read On 4:24-5:3). Plaintiffs' counsel emailed a federal-court certified interpreter but was unable to obtain one on short notice as the interpreter was in another deposition that day. Morton Decl. at ¶ 9.

Defense counsel sought to exploit the erroneous translations and resisted having translation errors noted on the record.  *See, e.g.*, Avila-Soto Dep. at 75:18-76:3 (objecting to translation where interpreter was unable to translate). Defense counsel repeatedly sought to have the deponent confirm erroneous translations. Avila-Soto Dep. at 81:4-5 (asking when Plaintiff recorded he was an ag worker even though that translation was error and had been corrected);

---

[3] If Defendants had additional questions, Defendants could provide questions to Plaintiffs in a less costly manner, by interrogatory.
[4] Plaintiffs' counsel thought that Defendants were seeking to find an interpreter—but it appears that is not the case as Defendants do not claim to have sought an interpreter and merely claim that "[n]o one from the agency was able to step forward." ECF 55-1 at 7.  Plaintiffs' counsel affirmatively contacted an interpreter—but they were not available. Morton Decl. at ¶ 9.

Avila-Soto Dep. at 82:2-5 (again asking where Plaintiff "put down that you would be an agricultural worker"); Avila-Soto Dep. 82:23-83:1 (again asking where Plaintiff "went to put down that you were an agricultural worker"). Plaintiffs' counsel was forced to object to the use of erroneous translations to badger the witness. Avila-Soto Dep. at 82:6-13.

> **B.     The Interpreter Made Numerous Errors, Struggled with Spanish, Seemed to Have Trouble Hearing, and Ultimately Took A Break from The Deposition From Which She Did Not Return**

Defendants incorrectly claim that "the record does not support" translation errors. ECF 55-1 at 13.[5] However, the record plainly shows the interpreter engaged in numerous errors—for example, confusing verb tenses such that the meaning of the Plaintiff's testimony was altered. Avila-Soto at 39:24-25 (confusing verb tenses); Avila-Soto at 80:11-20 (confusing verb tenses).[6] The interpreter also just failed to remember or include in the translation basic names. Avila-Soto Dep. at 42:14-15 (leaving out name) *compare* 42:17 (objection correcting translation). The interpreter was also unfamiliar with basic Spanish terms like "domicilio conocido," a term used to describe locations that lack street number addresses, or "trailers," which is a term used to refer to semi-trucking. Avila-Soto Dep. at 20:7-9; 25:9-10.[7] Similarly, the interpreter inexplicably and incorrectly translated "18 wheeler" as "taking wheels off." Avila-Soto Dep. at 26:8-25.

---

[5] Defendants also claim, wrongfully, that it was "the manner and tone [of] Plaintiff's counsel" which was "inappropriate and counterproductive[.]" ECF 55-1 at 13-14. This too is mistaken. There were no issues with the interpreter—just corrections to the translation. Defense counsel did argue with Plaintiffs' counsel to attempt to prevent the objections to translations from going on the record. Avila-Soto Dep. 75:21-76:3.
[6] Because Spanish is frequently spoken without pronouns, confusing the verb tense, changes the speaker and alters the testimony.
[7] Defendants claim that the deposition fell apart "after approximately three hours of significant discord between the translator and Plaintiffs' counsel concerning Plaintiffs' counsel's mistaken belief that the interpreter had translated inaccurately." ECF 55-1 at 7. Defendants counsel, who does not speak Spanish, is simply mistaken. There was no discord, but there were numerous errors which required correction on the record. Defendants are seeking to assign blame for deposition preparation that was fully with in their control-- their failure to bring a microphone and their procuring an unqualified interpreter.

Additionally, the interpreter added words not spoken by the deponent, interpreting that Mr. Avila-Soto was on a "video" call, but later corrected herself, after objection, saying "I'm sorry, I said 'video' call; the witness said 'phone call.'" Avila-Soto Dep. at 15:10-11.

The interpreter also failed to translate the witness' statements fully. Frequently, the interpreter left off half of the witness' testimony. Avila-Soto Dep. at 22:11-15 (missing half of a simple answer); Avila-Soto Dep. at 75:15-17 (stating "I am having trouble getting the long strings of speech."). The interpreter admitted she was not able to fully translate stating "it is not always feasible to catch everything[.]" Avila-Soto Dep. 78:12-13. The interpreter seemed not to understand native speakers of Spanish. She complained that "the witness is talking very quickly." Avila-Soto Dep. at 92:4-5; Avila-Soto Dep. 33:6-9 ("request[ing] he say it slowly"). The interpreter was also conferring with the witness in substantial side-bars that were not translated and which do not appear on the record. Avila-Soto Dep. at 8:6-12 and at 38:13-23. Later in the deposition, entire answers were just not translated, inexplicably, and Plaintiffs' counsel was required to object and explain the translation error on the record. *Compare* Avila-Soto Dep. 74:2 (translating witness' response as "Nothing.") *with* 74:4-9 (noting witness had said "We were told to turn in our passports, and if were to be asked for an interview, we were be told to report in the morning for an interview.") At times, the interpreter acknowledged the errors or at least acknowledged that the translation provided by the interpreter was haphazard. Avila-Soto Dep. at 83:11-12 ("clarify[ing] [after objection] that that could very well be what was said"); 50:9-10 (interpreter noting after objection "I'm sorry, the interpreter is really having trouble hearing."). The interpreter also seemed not able to write down answers or otherwise remember what was said in order to translate the responses. Avila-Soto Dep. at 89:6-11 (stating "at this point my memory is a little affected by the process that is happening here.")

The interpreter, who was in Louisiana, and whose audio was connected only by the speaker phone of opposing counsel's mobile phone, reported audio issues. Avila-Soto Dep. at 8:24-9:2 (counsel stating "the court reporter and the interpreter have informed us that they are having difficulty hearing"); 20:21 ("The interpreter didn't hear"); 26:17-18 ("Again, the interpreter is literally having trouble hearing at times."); 28:21-22 ("The interpreter will also ask him to speak louder, again."); 49:1 (Interpreter: "you were cutting out"); 50:9-10 ("I'm sorry, the interpreter is really having trouble hearing."); 80:19-20 (Interpreter: "I'm sorry; I'm having trouble with the sound cutting out."); 81:9-12 ("I want to let you guys know I'm having difficulty hearing him; he just keeps cutting out. I don't know if he can get closer to the mike."); and 86:25 (interpreter: "It keeps cutting out").[8]

### C. Plaintiffs' Appropriately Objected to Translation Errors

Defendants claim that objecting to translation errors was impermissible. ECF 55-1 at 14. However, given these errors in translation, Plaintiffs' counsel was required to object as there is a possibility that objection concerning translation would be considered waived if "not timely made during the deposition[.]" Fed. R. Civ. P. 32(d)(3)(B); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1160 (11th Cir. 2005) (holding that the objection was waived "[b]ecause the defect . . . could have been cured at the taking of the deposition"). Failing to object to translation can waive the error and can unfairly subject the witness to examination about statements not made. *Raya v. Maryatt Indus. Corp.*, No. C-88-4276 MHP, 1993 U.S. Dist. LEXIS 17755, at *4 n.3 (N.D. Cal. Dec. 3, 1993) ("failure to object to the interpretation of the two questions constituted a waiver pursuant to Federal Rule of Civil Procedure 32(d)(3)(B)"). "[C]ourts throughout the

---

[8] Defendants refers to the mobile phone set to speakerphone as a "microphone." Avila-Soto Dep. at 21:9. However, there was no microphone, nor quality speakerphone; there was just a portable cellular phone set to speaker mode.

country have allowed attorneys to 'contemporaneously assert[] . . . corrections to the translation' where appropriate." *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC-DF, 2021 U.S. Dist. LEXIS 241909, at *7 (W.D. Tex. Dec. 20, 2021) (citation omitted).

Additionally, Defendants claim that somehow English-language objections were impermissible coaching of the witness. ECF 55-1 at 14. However, the witness does not speak English (the reason for interpretation in the first place). Accordingly, objections in English did not, and could not, coach the witness as Defendants insinuate. Stating in English what the witness said and correcting the plainly erroneous translation was "nonargumentative and nonsuggestive" as required by the federal rules. Fed. R. Civ. P. 30(c)(2).

Defendants claim that these objections "disrupted the flow of testimony and prematurely ended the deposition," ECF 55-1 at 14, but it is Defendants failure to obtain an adequate interpreter and sufficient audio equipment that were the causes of any issues with the deposition—issues which were not caused by Plaintiff and should not now require Plaintiff to miss work or incur additional expenses.

> **D. Defendants Spent Significant Deposition Time on Irrelevant Questions – But More Than Adequately Were Able to Examine the Witness**

Defendants were able to adequately examine Plaintiff Avila-Soto and observe his demeanor over multiple hours. Defendants wasted significant time on irrelevant questions, but that was Defendants' choice. *United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 267 (N.D. Ill. 2014) ("Time wasted on irrelevant questions during the original deposition count against the 7 hours allowed by the Rules."). While, Defendants' failure to obtain basic audio equipment caused immediate issues, Avila-Soto Dep. at 9:8-12; 12:5-10 ("he sounds very far away"), the parties worked with the only audio equipment (Defendants' counsel's mobile phone set to speakerphone), and Plaintiffs' counsel's laptop, Avila-Soto Dep. at 12:19-20. Still

8

Defendants were able to fairly examine the Plaintiff, including questioning and observing Plaintiff for hours, and the Plaintiff should not be required to miss more work, nor Plaintiffs' counsel required to undertake days of travel and return to Mexico at significant expense, merely because Defendants' hired interpreter was unskilled and Defendants' audio equipment was unsophisticated.[9] Here, the burden to examine Plaintiff Avila-Soto for an additional hour or two would outweigh any benefit to be obtained from further examination as Defendants' counsel has questioned the Plaintiff significantly in a nearly 100-page deposition transcript.[10] ECF 55-7. Moreover, in this employment dispute the core issues of whether overtime was owed or whether Defendants' breached the employment contracts turn on Defendants' business operations and not on individual details in Plaintiffs' possession. *See Barron v. Sterling Sugars Sales Corp*., No. 6:21-CV-03741, 2025 LX 323601, at *5 (W.D. La. Sep. 11, 2025) (findings of fact following bench trial focused on factual details of Defendants' business, "Sterling has never itself been a sugarcane grower. Sterling does not plant, grow, cultivate, or own any of the sugarcane that its employees transport from the sugarcane fields to the Sterling Mill").

## CONCLUSION

     Defendants have not shown continuing another day of Plaintiffs' deposition is justified on the facts present here and no further deposition should be ordered for Plaintiff Avila-Soto. Nor have Defendants shown that Plaintiff Hernandez-Canela sought to evade his deposition—and Plaintiff Hernandez-Canela should be allowed to withdraw as a Plaintiff from this litigation.

---

[9] Neither Plaintiff nor Plaintiffs' counsel could have remained for another day of deposition in Mexico after completion of the scheduled deposition. Plaintiffs' counsel had scheduled return travel home and Plaintiff was scheduled to leave on a multi-day work trip out of town driving a semi-truck. Morton Decl. at ¶¶ 7, 9.

[10] Plaintiff Avila-Soto is unable to appear in the United States because he lacks a visa—an issue which should be readily clear to Defendants' counsel as Mr. Avila-Soto was questioned for more than twenty pages about how when he applied for a tourist visa, it was denied. Avila-Soto Dep. at 59:8-13.

Two plaintiffs have sat for deposition. One plaintiff had a health scare and left for medical treatment in Mexico. Plaintiffs have not engaged in discovery misconduct, have not obstructed depositions or other discovery, and no sanctions are appropriate.

Respectfully submitted on this 22nd of January, 2026.

__s/ D. Morton_____
Dawson Morton