UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

_____

FELIPE DE JESUS AVILA-SOTO,  et al.

        Plaintiffs,

v.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC., et al.

        Defendants.
_____

Case No. 6:24-cv-01392

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE CAROL B. WHITEHURST

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

# TABLE OF CONTENTS

THE PROPOSED CLASS ................................................................................................ 1

BACKGROUND AND FACTS ...................................................................................... 1

ARGUMENT ................................................................................................................. 5

I.     Plaintiffs Satisfy All Prerequisites for a Class Action. ........................................ 6

    A.    A Readily Identifiable and Ascertainable Truck Driver Class Exists. ............................ 6

    B.    More Than 165 Truck Drivers Makes the Class So Numerous that Joinder of All Members is Impracticable. .................................................................. 6

    C.    Defendants Treated the Truck Drivers Similarly and There Are Questions of Law and Fact Common to the Class. .......................................................... 8

    D.    The Claims of the Representative Parties Are Typical of the Class's Claims. .............. 12

    E.    The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class's Interests. ....................................................................... 13

II.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ......................................... 15

    A.    Common Questions of Law and Fact Predominate. ..................................................... 15

    B.    A Class Action Is Superior to Other Methods of Adjudication. ................................... 17

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242 (10th Cir. 2020)................................. 2

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .......................................... 6

*Antonio-Benito v. Lowry Farms, Inc.*, No. 1:20-cv-1039, 2021 U.S. Dist. LEXIS 2459119 (W.D. Ark. Aug. 9, 2021) .................................................................................................... 10, 16

*Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228 (11th Cir. 2002)............................. 2, 10

*Barron v. Sterling Sugar Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS 178401 (W.D. La. Sept. 11, 2025) ................................................................................................. 11

*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) ..................................................... 17

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001)............................................. 13

*Boudreaux v. Sch. Bd. Of St Mary Parish*, No. 6:65-CV-11351, 2020 U.S. Dist. LEXIS 163838 (W.D. La. Sept. 8, 2020)....................................................................................... passim

*Casilao v. Hotelmacher LLC*, No. CIV-17-800-SLP, 2021 U.S. Dist. LEXIS 188177 (W.D. Okla. Sept. 30, 2021) ................................................................................................... 7, 16

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)............................................................. 5

*Garcia v. Stemilt AG Servs., Inc.*, No. 2:20-CV-0254-TOR, 2022 U.S. Dist. LEXIS 125068 (E.D. Wash. July 14, 2022) ................................................................................................... 18

*Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147 (1982) .......................................................................... 5

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)..................................................... 6

*Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370 (D.S.C. 2015)........................... 8, 16, 18

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .............................. 7, 8, 14

*Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242 (W.D. Ark. 2010)...................................... 7

*Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 U.S. Dist. LEXIS 55003 (W.D. Ark. May 20, 2011)............................................................................................................ 11

*Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472 (E.D. La. 2006).................... 7, 18, 19

*Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196 (W.D. Mo. 2022).......... 17

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985) ................. 2

*Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281 (W.D. Mich. 2001) ..................................... 18

*Slade v. Progressive Sec. Ins. Co.*, No. 6:11-CV-02164, 2020 U.S. Dist. LEXIS 218195 (W.D. La. Oct. 20, 2020) ........................................................................................................... 16

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002)................................................................ 12

*Tullous v. Texas Aquaculture Processing Co., LLC*, 579 F. Supp. 2d 811 (S.D. Tex. 2008)....... 12

*Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) ..................................................................... 15

*Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005) .............................................................. 15

*Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 8

*Wirtz v. Osceola Farms Co.*, 372 F.2d 584 (5th Cir. 1967)......................................................... 11

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) ........................................... 7

## STATUTES

29 U.S.C. § 216(b) ........................................................................................................................ 1

8 U.S.C. § 1101(a)(15)(H)(ii)(a)................................................................................................... 2

La. Rev. Stat. §§ 23:631, *et seq.*................................................................................................. 1

## REGULATIONS

20 C.F.R. § 655.100 ...................................................................................................................... 2

20 C.F.R. § 655.120 ...................................................................................................................... 3

20 C.F.R. § 655.122 ...................................................................................................................... 2

20 C.F.R. § 655.122(l) ................................................................................................ 3

20 C.F.R. § 655.122(p) ............................................................................................ 3, 4

20 C.F.R. § 655.122(q) ............................................................................................... 2

20 C.F.R. § 655.135(e) ............................................................................................... 3

29 C.F.R. § 780.133 .................................................................................................. 11

Plaintiffs are truck drivers who operated semi-trucks hauling sugarcane for Defendants. Plaintiffs were brought to the United States by Defendants pursuant to the H-2A temporary foreign worker visa program. Plaintiffs contend that Defendants breached their and other truck drivers' employment contracts and violated their rights under the Louisiana Wage Payment Act ("LWPA"), LA. REV. STAT. §§ 23:631, *et seq.* (ECF No. 1 - Compl. ¶¶ 82-92.)[1] Plaintiffs seek the Court's determination that their breach of contract and LWPA claims may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3).

## THE PROPOSED CLASS

The proposed class, represented by Plaintiffs Felipe de Jesus Avila-Soto and Felipe de Jesus Suarez-Palafox, consists of:

> **All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, 2024, and/or 2025 sugarcane seasons.**

During the 2022-2025 sugarcane seasons, Defendants recruited and hired more than 130 truck drivers from Mexico each year.

## BACKGROUND AND FACTS

Plaintiffs' complaint contends that Defendants annually brought more than 130 truck drivers from Mexico under the H-2A visa program, denied them overtime pay, and ultimately paid them lower wages then they were legally owed. (ECF No. 1 – Compl. ¶¶ 1-7.) The H-2A visa program allows employers to recruit and hire foreign workers on temporary visas if U.S. workers are not available to perform the job and if the wages and working conditions offered will

---

[1] Plaintiffs also allege the Defendants violated the Fair Labor Standards Act. Plaintiffs filed a separate motion for 29 U.S.C. § 216(b) notice to similarly situated workers that was recently granted. (ECF No. 42); (ECF Nos. 70, 71).

not adversely affect the wages or working conditions of U.S. workers similarly employed. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. § 655.100. Employers seeking H-2A visas must submit a proposed temporary labor certification application to the federal government, called an ETA-790 "clearance order." *See* 20 C.F.R. § 655.122 (specifying minimum terms which must be contained in the job offer). The ETA-790 clearance orders, as well as federal regulations, establish the minimum benefits, wages, and working conditions that apply to the employment of foreign workers, and form the employment contracts at issue in this case. 20 C.F.R. § 655.122(q) ("The work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 29 CFR part 501, or this subpart."); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified Application for Temporary Employment Certification' became their work contracts.") (quoting 20 C.F.R. § 655.122(q)); *Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) ("[T]he clearance orders ultimately become the contract between the employers and [the H-2A workers]."); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341-42 (5th Cir. 1985).

Each year from 2022 through 2025, Defendants recruited more than 130 H-2A truck drivers from Mexico and employed them pursuant to the same job title and subject to the same terms and conditions of employment set forth in the Defendants' ETA-790 clearance order filings. (Exs. 1-4) (clearance order applications completed by Defendants from 2022-2025 to obtain H-2A visas for the Plaintiffs and other truck drivers); *see also* Defs.' Supp. Resp. to Pls.' Interrog. No. 1 (stating that between 132 and 140 H-2A truck drivers were employed each year between 2022 and 2024) (attached as Ex. 5). The Plaintiffs and other H-2A truck drivers all operated semi-trucks with trailers hauling harvested sugarcane to the sugar mill. The same job

title, wage rate, and terms and conditions under the same written work contracts applied to all of Defendants' H-2A truck drivers each year. Those contracts promised, *inter alia*, the following:

- All workers would be paid the highest wage rate in effect at the time the work is performed for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.120, 20 C.F.R. § 655.122(l);

- Deductions for items that are primarily for the benefit of the employer would not reduce workers' wages below the minimum amounts required by the H-2A program. 20 C.F.R. § 655.122(p); and

- The employer would comply with applicable Federal, State, and local laws and regulations. 20 C.F.R. § 655.135(e).

Plaintiffs allege that Defendants breached their employment contracts with respect to all truck drivers. First, Defendants failed to pay the Plaintiffs and other H-2A truck drivers the correct hourly wage rate for driving heavy tractor-trailer trucks. Rather, in 2022 and 2025 Defendants paid Plaintiffs and other truck drivers the Adverse Effect Wage Rate for *agricultural* workers of $12.45 per hour in 2022 and $14.83 per hour in 2025 instead of the $21.73 per hour required in 2022 or the $19.99 per hour required in 2025 for heavy tractor-trailer truck drivers. (Ex. 1 – 2022 clearance order); (Ex. 4 – 2025 clearance order); (ECF No. 1 - Compl. ¶ 38). In 2024 Defendants paid the Plaintiffs and other class members a higher wage rate, for heavy tractor-trailer truck drivers, but still paid a rate that was less than the required $24.86 per hour truck driver rate for the area of employment. (Ex. 3 – 2024 clearance order) (listing wage rate of $23.93/hour instead of $24.86/hour); (ECF No. 1 - Compl. ¶ 38). These same violations occurred for each truck driver, each year. (Deposition of Plaintiff Felipe de Jesus Suarez-Palafox at 97:1-9) (attached as Ex. 7) ("Q. Is it your understanding that the other workers are paid the same hourly rate that you are paid? A. All of them, the same rate. Q. And how many are we talking about here? . . . A. Well, there are about 150 of us drivers.")

Second, the Plaintiffs allege they and other H-2A truck drivers were not properly reimbursed for required expenses. For example, Plaintiffs and other H-2A truck drivers paid expenses for medical examinations, for the issuance of their commercial truck driving license, as well as expenses for cell phones that would work in Louisiana (including monthly charges) so they would be able to receive work instructions from Defendants' dispatchers and supervisors. No reimbursement was provided for any of these expenses to any truck driver. (Ex. 7 – Suarez-Palafox Dep. at 76:11-23; 81:23-83:16; 87:11-88:6; 101:22-103:24); (Declaration of Plaintiff Felipe de Jesus Avila-Soto ¶¶ 8-9) (attached as Ex. 8); (Declaration of class member Omar Rosas-Osuna ¶¶ 8-9) (attached as Ex. 9). The failure to reimburse expenses resulted in Plaintiffs and other truck drivers earning less than their contractually promised wages each season and violated the LWPA. (ECF No. 1 - Compl. ¶ 87); 20 C.F.R. § 655.122(p).

Third, Plaintiffs allege that they and other truck drivers' employment contracts were breached when Defendants did not pay them overtime wages despite a contractual promise to comply with all Federal employment laws, which included paying required overtime. (Ex. 7 – Dep. of Suarez-Palafox at 40:24-41:2; 45:15-46:15; 95:9-96:9); (Ex. 8 – Decl. of Avila-Soto ¶¶ 6-7); (Ex. 9 – Decl. of Rosas-Osuna ¶¶ 6-7); (Exs. 10-13) (sample payroll register entries showing no overtime pay); (Exs. 1-4 – clearance order applications showing standard workweek was a minimum of 49 hours). Defendants' practice and policy was not to pay overtime wages to truck drivers; Defendants claim that all truck drivers were exempt from overtime because Defendants assert they were "farmers" and Plaintiffs' truck driving was employment in "farming." (Defs.' Supp. Resp. to Pls.' Req. for Admis. No. 1) (attached as Ex. 6); (ECF No. 23 – Defs.' Answer at 18). Plaintiffs allege that they and other truck drivers were owed overtime

4

wages and Defendants' practice and policy of not paying overtime violated Plaintiffs' and other truck drivers' contractual rights. (ECF No. 1 - Compl. ¶ 87.)

In addition to alleging that these practices and policies breached Plaintiffs' and other truck drivers' employment contracts, Plaintiffs also allege that Defendants' failure to pay them and the other class members the proper hourly wage rate for heavy tractor-trailer truck drivers violated the LWPA. (ECF No. 1 - Compl. ¶ 91.) Likewise, Plaintiffs allege that Defendants' reimbursement policy resulted in them and other class members earning less than was owed pursuant to their contracts, also in violation of the LWPA.

## ARGUMENT

Plaintiffs seek Rule 23 class certification for their breach of contract and LWPA claims. (ECF No. 1 - Compl. ¶¶ 82-92) (Counts II and III). A party seeking class certification must show that "(1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The proposed class must also fit one of the three categories enumerated in Rule 23(b). Plaintiffs meet the requirements of Rule 23(b)(3) and propose certification pursuant to that provision.

Class actions exist "to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion . . . ." *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). While the district court "'must conduct a rigorous analysis of the Rule 23(a) prerequisites before certifying a class,'" *Boudreaux v. Sch. Bd. Of St Mary Parish*, No. 6:65-CV-11351, 2020 U.S. Dist. LEXIS 163838, at *6 (W.D. La. Sept. 8, 2020) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)), Plaintiffs are not required to show that questions common to the class "will be

answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). At this motion stage, "Rule 23 grants . . . no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466.

In this case, the proposed class of over 160 truck drivers from Mexico meets the prerequisites of numerosity, commonality, typicality, and adequacy. Furthermore, as the truck drivers were paid alike, common questions of law and fact predominate, and a class action would be far superior to any other method of adjudicating the legal claims of the more than 160 H-2A truck drivers who worked for Defendants between 2022 and 2025 pursuant to identical employment contracts.

## I.    Plaintiffs Satisfy All Prerequisites for a Class Action.

### A.    A Readily Identifiable and Ascertainable Truck Driver Class Exists.

As this Court has stated, "'a precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice.'" *Boudreaux*, 2020 U.S. Dist. LEXIS 163838, at *6 (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004)). The proposed class here consists of individuals employed as tractor-trailer truck drivers pursuant to H-2A visas obtained by the Defendants for work between 2022 and 2025—an easily ascertainable group of workers. Defendants have already identified the H-2A truck drivers who were employed each year between 2022 and 2025 and produced payroll records for those individuals. (Defs.' Supp. Resp. to Pls.' Interrog. No. 1) (stating that between 132 and 140 H-2A truck drivers were employed each year between 2022 and 2024); (Ex. 4 – clearance order requesting 146 truck drivers for employment in 2025).

### B.   More Than 165 Truck Drivers Makes the Class So Numerous that Joinder of All Members is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). In addition to the number of class members, courts often consider "'the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, [and] the size of each plaintiffs' claim.'" *Boudreaux*, 2020 U.S. Dist. LEXIS 163838, at *13 n.13 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that a class consisting of 100 to 150 members is "within the range that generally satisfies the numerosity requirement").

The proposed class in this case is at least 165 individual H-2A temporary foreign workers who maintain their permanent residences in Mexico and who worked for Defendants on a seasonal basis between 2022 and 2025. (Declaration of James Knoepp ¶ 10) (attached as Ex. 14) (describing roster produced by Defendants that identified 165 unique individuals employed as truck drivers between 2022 and April of 2025); (Ex. 7 – Suarez-Palafox Dep. at 7:18-8:8); (Ex. 8 – Decl. of Avila-Soto ¶¶ 2-3); (Ex. 9 – Decl. of Rosas-Osuna ¶¶ 2-3, 5); (Ex. 5 - Defs.' Resp. to Pls.' Interrog. No. 1) (stating that between 132 and 140 H-2A truck drivers were employed each year between 2022 and 2024); (Ex. 4 – clearance order for 2025 requesting 146 truck drivers). Courts analyzing cases with similar claims and similar groups of foreign workers with temporary employment visas have found numerosity requirements were easily met. *See, e.g., Casilao v. Hotelmacher LLC*, No. CIV-17-800-SLP, 2021 U.S. Dist. LEXIS 188177, at *15 (W.D. Okla. Sept. 30, 2021) (finding numerosity met for proposed class of 23 foreign H-2B workers); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (joinder of H-2A workers from various parts of Mexico "highly impracticable"); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006) (finding joinder impracticable for class of migrant guest workers from Guatemala and Mexico). In addition, unfamiliarity with the U.S. legal system and a

7

lack of financial means to bring individual litigation also favor a numerosity finding. *See Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 377 (D.S.C. 2015) (finding numerosity met for class of between 215 and 584 H-2B workers "who permanently reside in a foreign country, likely lack financial resources, lack familiarity with the U.S. Court system and have relatively small claims"). Plaintiffs here satisfy the numerosity requirement of Rule 23(a)(1). *See Mullen*, 186 F.3d at 624 (affirming class certification decision and noting transient nature of employment and that potential class members still employed by defendant "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs").

### C.  Defendants Treated the Truck Drivers Similarly and There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality requires that class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted). As this Court stated in *Boudreaux*, "a single contention regarding the class members' injury is sufficient to satisfy Rule 23(a)(2), as long as the party seeking certification can show that this contention is common to all class members, is central to the validity of their claims, and is capable of class-wide resolution, even where the resulting injurious effects (*i.e.*, the damages) are diverse." *Boudreaux*, 2020 U.S. Dist. LEXIS 163838, at *14-15.

In this case, both proposed class claims—breach of the employment contracts and violation of the LWPA—stem from Defendants' policies and practices described above that applied to all H-2A truck drivers who make up the proposed class. Defendants' policies and

practices toward the truck drivers created several common questions, the resolution of which will apply to all members of the proposed class:

(a) Whether in 2022 and 2025 Defendants paid the Plaintiffs and other class members an illegally low agricultural adverse effect wage rate rather than the higher wage rate that applies to heavy and tractor-trailer truck drivers;

(b) Whether in 2024 when Defendants did pay a heavy and tractor-trailer truck driver wage rate, did they still pay less than the legally required wage rate for heavy and tractor-trailer truck drivers for the area in which they were employed;

(c) Whether in all years between 2022 and 2025, Defendants' policy and practice of not reimbursing certain expenses incurred by Plaintiffs and other H-2A truck drivers—expenses that Plaintiffs contend primarily benefited Defendants—resulted in Plaintiffs and other class members not earning the contractually promised wage rate;

(d) Whether in all years between 2022 and 2025 the Defendants were legally obligated to pay the Plaintiffs and other class members overtime wages when they worked more than forty (40) hours in a workweek and whether this contractual obligation was breached; and

(e) Whether Defendant Sterling Sugars, LLC was an "employer" of the Plaintiffs and other class members within the meaning of the H-2A regulations and the LWPA.

These common questions are appropriate for class action treatment because they are central to the class members' claims, share a common resolution, and will be resolved by common proof. For example, whether Defendants' breached workers' contracts and violated the LWPA by having a policy of paying the Plaintiffs and other H-2A truck drivers the *agricultural* Adverse Effect Wage Rate rather than the much higher wage rate that applied to heavy tractor-trailer truck drivers turns on the nature of Defendants' business operations and not on individual information for any specific class member. It is undisputed, for example, that all class members performed the same truck driving work. (Exs. 1-4) (clearance orders describing job duties and listing job title as "Heavy and Tractor-Trailer Truck Driver"); (Ex. 7 – Suarez-Palafox Dep. at

33:22-39:8; 44:23-45:4; 55:24-56:2) (describing work and job title); (Ex. 8 – Avila-Soto Decl. ¶¶ 4-5); (Ex. 9 – Rosas-Osuna Decl. ¶¶ 4-5). Plaintiffs allege that Defendants misrepresented the nature of their business and the available employment position when they applied to employ foreign workers in the H-2A visa program. (ECF No. 1 - Compl. ¶¶ 2, 39-41, 43-45, 49.) By improperly classifying their business operations as "farming," Defendants paid the Plaintiffs and other class members illegally low wage rates. (*Id.*) Even in 2024 when Defendants paid a higher truck driving wage rate, Defendants still paid all truck drivers a lower wage rate than legally required for the area where they were employed. (Ex. 3 – 2024 clearance order) (promising wage of $23.93) (ECF. No. 1 – Compl. ¶ 38) (alleging $24.86 as proper wage rate). Whether Plaintiffs or Defendants are correct regarding the applicable wage rate will be determined later, but for now all that is important is that the resolution of the issue will not depend on any individual inquiries regarding individual truck drivers. Rather, the resolution will turn on the nature of Defendants' business operations, and whether the hauling of sugarcane in semi-trucks performed by the class members was "farming" within the meaning of the applicable laws.

Likewise, issues of expense reimbursement will share a common resolution and can be resolved by common proof. Plaintiffs allege that they were not reimbursed for certain expenses. (Ex. 7 – Suarez-Palafox Dep. at 76:11-23; 81:23-83:16; 87:11-88:6; 101:22-103:24); (Ex. 8 – Avila-Soto Decl. ¶¶ 8-9); (Ex. 9 – Rosas-Osuna Decl. ¶¶ 8-9). Whether Plaintiffs or Defendants prevail on the reimbursement issue turns on whether the expenses were primarily for the benefit or convenience of the Defendants, which is a legal question that will apply to *all* truck drivers. *Arriaga*, 305 F.3d at 1242-44; *Antonio-Benito v. Lowry Farms, Inc.*, No. 1:20-cv-1039, 2021 U.S. Dist. LEXIS 2459119, at *9 (W.D. Ark. Aug. 9, 2021) (certifying Rule 23 class on behalf of H-2A workers because "members share common questions regarding whether Defendants

properly reimbursed each worker"); *Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 U.S. Dist. LEXIS 55003, at *43 (W.D. Ark. May 20, 2011) (failure to reimburse H-2A workers a breach of H-2A work contract). This inquiry will be common and identical with respect to all class members.

Similarly, whether Defendants breached the contractual promises to comply with Federal law and to pay overtime wages will turn on whether overtime wages were owed for the work performed in Defendants' business operations, not on facts or job duties of any individual truck driver. Defendants' practice and policy was not to pay overtime wages to Plaintiffs or any other H-2A truck driver because Defendants contend hauling sugarcane in semi-trucks was exempt from overtime. (Ex. 6 - Defs.' Supp. Resp. to Pls.' Req. for Admis. No. 1.); (ECF No. 23 – Defs.' Answer at 18). A determination of whether overtime was legally owed will not turn on facts specific to a particular truck driver, but rather on the nature of Defendants' business. *See Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 587-89 (5th Cir. 1967) (holding that drivers who hauled harvested sugarcane from fields to the sugar mill were not exempt from overtime because the work was not performed "on a farm" nor were the employers "farmers"); 29 C.F.R. § 780.133 ("The work performed by a farmers' cooperative association is not work performed 'by a farmer' but for farmers. Therefore, employees of a farmers' cooperative association are not generally engaged in any practices performed 'by a farmer' . . . ."); *see also Barron v. Sterling Sugar Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS 178401, at *12-17 (W.D. La. Sept. 11, 2025) (analyzing obligation to pay overtime in the context of sugarcane hauling and noting that "[t]ransporting sugarcane between one location—the farm where it is harvested—to a second location—the sugar mill where it is processed—is not work performed in conjunction with farming activities"); *Tullous v. Texas Aquaculture Processing Co., LLC*, 579 F. Supp. 2d

11

811, 817-19 (S.D. Tex. 2008) (analyzing the business structure of the defendant and determining that it was obligated to pay overtime because it was not "a farmer"). As such, the contractual promise to comply with federal laws, which includes overtime pay, either applies or does not with respect to *all* class members.

Given the numerous questions of law that are common to the entire proposed class in this case and given that the injuries the named Plaintiffs complain of on behalf of the class arise from Defendants' uniform policies and practices, the commonality requirement of Rule 23(a)(2) is satisfied.

### D.  The Claims of the Representative Parties Are Typical of the Class's Claims.

Rule 23(a)(3) requires that the class representatives' claims be typical of those of the class as a whole. FED. R. CIV. P. 23(a)(3). "Typicality focuses on 'the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Boudreaux*, 2020 U.S. Dist. LEXIS 163838, at *16 (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). "'If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Id.* (citation omitted). The named Plaintiffs' claims in this case are typical of the claims of the proposed class. The named Plaintiffs were employed as truck drivers pursuant to the same contracts as the other H-2A truck drivers, they shared the same job title, received the same wages, and their claims arise from Defendants' uniform policies and practices applicable to the proposed class of truck drivers. The named Plaintiffs seek to enforce the same written contract terms in the employment contracts applicable to all truck drivers, and to vindicate the same rights under the LWPA for violations that Defendants committed against all proposed class members. As such, the class representatives' claims are typical of those of the entire class.

**E.  The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class's Interests.**

Rule 23(a)(4) and due process require that class representatives and their counsel in a proposed class action "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "'Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two.'" *Boudreaux*, 2020 U.S. Dist. LEXIS 163838, at *18 (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)). A court should determine the (1) zeal and competence of representatives' counsel; (2) willingness and ability of representatives to take an active role in controlling litigation and protecting the interests of absentees; and (3) the risk of conflicts of interest between named plaintiffs and the absent class members. *Id*.

Rule 23(g) requires a court to appoint class counsel when certifying a class. FED. R. CIV. P. 23(g). The court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* First, Plaintiffs' counsel prepared the Complaint and filed this action in October of 2024 and successfully responded to Defendants' motion to dismiss. (Ex. 14 - Knoepp Decl. ¶ 8); (Declaration of Dawson Morton ¶ 8) (attached as Ex. 15). Counsel served two sets of requests for production, a set of interrogatories, and requests for admission, and have scheduled eight depositions. (Ex. 14 – Knoepp Decl. ¶ 8); (Ex. 15 – Morton Decl. ¶ 8). Counsel also responded to written discovery served on the Plaintiffs and traveled to Louisiana for the motion to dismiss hearing, traveled to Louisiana and Mexico to defend the depositions of the two named Plaintiffs, and will return to Mexico for the re-convened deposition of one named Plaintiff. (Ex. 14 -

Knoepp Decl. ¶ 8); (Ex. 15 – Morton Decl. ¶ 8). Second, Plaintiffs' counsel have extensive experience representing foreign workers in federal class action litigation, including in cases like this one on behalf of workers employed subject to temporary visas. (Ex. 14 – Knoepp Decl. ¶¶ 4-6); (Ex. 15 – Morton Decl. ¶¶ 3-5). Third, counsel are very knowledgeable of the law as it applies to H-2A workers, including the claims in this case related to unreimbursed expenses and the failure to pay overtime wages. (Ex. 14 – Knoepp Decl. ¶¶ 5-6); (Ex. 15 – Morton Decl. ¶¶ 4-5). Finally, counsel have sufficient funds to advance all appropriate costs of this litigation and will vigorously and competently prosecute this action on behalf of the class. (Ex. 14 – Knoepp Decl. ¶¶ 7-8); (Ex. 15 – Morton Decl. ¶¶ 7-8).

With respect to the named Plaintiffs, they have no conflicts with the other class members' and their interests are the same. *See Mullen*, 186 F.3d at 625-26. "'Class representatives are merely asked to have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants.'" *Boudreaux*, 2020 U.S. Dist. LEXIS 1638338, at *20-21 (citation omitted). Plaintiffs here understand their claims and those they are seeking to bring on behalf of the proposed class. (Ex. 7 – Suarez-Palafox Dep. at 64:9-14; 73:1-76:23; 89:24-90:7; 99:13-16) (discussing claim of not being paid the correct wage rate, not being paid overtime, and not being reimbursed for expenses); (Ex. 8 – Decl. of Avila-Soto ¶ 10). Plaintiff Felipe de Jesus Suarez-Palafox has worked for the Defendants as a truck driver each season between 2022 and 2025, while Plaintiff Felipe de Jesus Avila-Soto worked as a truck driver during the 2022 season. (Exs. 10-13) (payroll records). Both named Plaintiffs have participated in this action since its inception, have responded to Defendants' written discovery requests, and sat for their depositions (missing work to do so). The named Plaintiffs will not benefit in any way that will

prove harmful to the interests of other class members. All class members will benefit from the relief sought by receiving damages for the breach of contract and violations of the LWPA. Plaintiffs satisfy the adequacy requirement of Rule 23(a).

## II.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Plaintiffs must also show their proposed class meets the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### A.  Common Questions of Law and Fact Predominate.

The predominance requirement of Rule 23(b) is similar to, but more demanding than, Rule 23(a)'s commonality requirement, discussed *supra*. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

Common questions of law and fact do predominate for both the breach of contract and LWPA claims because the dominant issue for all class members is the legality of Defendants' pay practices, which Defendants applied uniformly to all truck drivers. As already discussed, Defendants had a common policy and practice of: (1) paying *all* truck drivers in 2022 and 2025 the Adverse Effect Wage Rate for agricultural field workers rather than the wage rate for heavy and tractor-trailer truck drivers; (2) paying an incorrect tractor-trailer truck driver wage rate to *all* truck drivers in 2024; (3) not paying overtime to *any* truck drivers based on a contention by Defendants that an exemption applied; and (4) not reimbursing specific categories of expenses with respect to *any* truck drivers. Whether these policies breached Plaintiffs' and the proposed class members'

employment contracts and violated the LWPA turns on legal issues the resolution of which will apply to all of the Defendants' truck drivers. *See Casilao*, 2012 U.S. Dist. LEXIS, at *30 ("Plaintiffs have shown common issues govern Defendants' pay obligations under the governing H-2B rules, regulations and documents submitted by Defendants in relation thereto. Therefore, the Court concludes common issues predominate with respect to the breach of contract claims."); *Moodie*, 309 F.R.D. at 379-80 (finding in H-2B visa litigation that "common questions of law and fact predominate . . . [because] the claims in the Complaint raise only issues common to the class: (1) whether the contractual wage in Defendant's employment contracts with H-2B workers was the H-2B prevailing wage; . . . (3) [and] whether pre-employment visa and transportation costs were *de facto* deductions from wages . . . . There are no issues specific to individual Plaintiffs or individual members of the class.").

The only individual issue with respect to Plaintiffs' and the proposed class members' claims is the amount of damages that would be owed if Plaintiffs prevail because each class member worked a slightly varying number of hours each week. (*See, e.g.,* Exs. 10-13) (sample payroll register entries). But even that issue is easily resolved on a class-wide basis since it is a matter of simple math to compute, for example, what is owed to class members if they were paid an illegally low wage rate for a certain number of hours in a week, or what is owed for a failure to pay overtime wages for that same number of hours. *See Slade v. Progressive Sec. Ins. Co.*, No. 6:11-CV-02164, 2020 U.S. Dist. LEXIS 218195, at *17-20 (W.D. La. Oct. 20, 2020) (finding predominance satisfied even though individual damages might differ and noting that "calculations will not be complex"); *Antonio-Benito*, 2021 U.S. Dist. LEXIS 245919, at *13 (finding common questions predominated in H-2A breach of contract case and noting "[t]he amount of damages claimed by each proposed class member may differ, but the members share common questions

regarding Defendants' liability"). Individual determinations of damages do not defeat class

certification where common legal and factual issues related to liability clearly predominate, as they

do here. *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) ("[R]elatively few

motions to certify a class fail because of disparities in the damages suffered by class members).

**B.  A Class Action Is Superior to Other Methods of Adjudication**.

The superiority requirement of Rule 23(b)(3) is analyzed through four factors: (1) the

interest of class members in individually controlling the prosecution of separate actions, (2) the

extent and nature of any litigation concerning the controversy already commenced, (3) the

desirability of having the litigation of the claims in the particular forum where it has been filed,

and (4) the difficulties likely to be encountered in management of the class action. FED. R. CIV.

P. 23(b)(3)(A)-(D). Here, a class action is superior to any other method of adjudicating this

dispute.

First, it is extremely unlikely that individual class members have any interest in

instituting or controlling their own individual actions. Class members maintain their permanent

homes in Mexico where many class members are currently living since sugarcane hauling

occurs from approximately September through January each year. (Exs. 1-4) (clearance orders

showing dates of employment each year). Class members are Spanish speakers who lack

familiarity with the U.S. legal system. (Ex. 7 – Suarez-Palafox Dep. at 6:1-25) (noting

interpreter used for deposition); (Ex. 8 – Avila-Soto Decl. ¶ 3); (Ex. 9 – Rosas-Osuna Decl. ¶

3). Class members are likely unaware of their rights to prosecute these claims and are likely

unable to bring their own individual actions. Courts have regularly found that class litigation is

superior in cases brought by temporary foreign workers for these same reasons. *See, e.g.*, *Rios-*

*Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196, 204-05 (W.D. Mo. 2022)

(finding superiority met in case involving H-2A workers "who have little experience with the U.S. legal system"); *Garcia v. Stemilt AG Servs., Inc.*, No. 2:20-CV-0254-TOR, 2022 U.S. Dist. LEXIS 125068, at *15 (E.D. Wash. July 14, 2022) (proceeding on class-wide basis superior where class consisted of H-2A workers who resided in Mexico and had "limited English proficiency, financial resources, and understanding of this country's legal system"); *Recinos-Recinos*, 233 F.R.D. at 482 (finding superiority requirement met where class members who were employed pursuant to H-2B visas "reside in Mexico and Guatemala, are not fluent in English, and lack sufficient resources to bring an individual lawsuit"). Second, no other litigation concerning this controversy has been commenced against these Defendants by any member of the proposed class.[2] Third, it is desirable to conduct the litigation in this forum. Defendants maintain their offices and conduct their business in this district and important witnesses employed by the Defendants are also located in this district. Fourth, the benefits of maintaining this action on a class basis far outweigh any administrative burden. Class litigation is no less manageable in this case than in other cases in which claims of temporary foreign visa workers have been certified under Rule 23. *See, e.g.*, *Moodie*, 309 F.R.D. at 380 ("While the claims that Plaintiffs propose to class here are state law claims, Plaintiffs also bring FLSA claims raising federal questions. It is more efficient to resolve both sets of claims in a single forum and single litigation than to have parallel proceedings."); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 289 (W.D. Mich. 2001) (use of class action mechanism in case involving migrant workers "likely to achieve economies of time, effort and expense in resolving legal issues of class members"); *Recinos-*

---

[2] As the Court is aware, litigation against Sterling Sugar Sales Corporation involving sugarcane truck drivers who hauled sugarcane to the mill operated by Defendant Sterling Sugars, LLC has largely concluded. *Barron v. Sterling Sugar Sales Corp.*, Case No. 6:21-CV-03741 (W.D. La.). While there are similarities between the two cases, the *Barron* case involved employment during years prior to the 2022-2025 time period that are the subject of this lawsuit.

*Recinos*, 233 F.R.D. at 482. Because the claims of the Plaintiffs and proposed class members are based on a common set of facts, testimony will not be needed from all truck drivers. Requiring separate prosecutions would likely result in far greater manageability issues, including duplicative discovery procedures, repeated adjudication of similar controversies, and excessive costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted. Certification is proper for the claims set forth in Counts II and III of the Complaint on behalf of a class defined as: All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, 2024, and/or 2025 sugarcane seasons. Plaintiffs should be named class representatives and counsel for the Plaintiffs should be appointed as Class Counsel.

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email: jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
Email: dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141

Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email: dan@estesdavislaw.com