UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| FELIPE DE JESUS AVILA-SOTO, et al.<br><br>　　　Plaintiffs,<br><br>v.<br><br><br>SOUTH CENTRAL SUGAR CANE<br>GROWERS' ASSOCIATION, INC., et al.<br><br>　　　Defendants. | Case No. 6:24-cv-01392<br><br>JUDGE ROBERT R. SUMMERHAYS<br><br>MAGISTRATE JUDGE CAROL B. WHITEHURST |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS**

Defendants' owed discovery responses to Plaintiffs by January 20, 2026, but provided nothing.[1] A day late, Defendants served only discovery objections. Now Defendants argue that their evening production of documents on February 9, 2026, was production "when due" and that this motion to compel is unnecessary. Defendants have made additional document productions and amended discovery responses as recently as today, responses which Plaintiffs believe would not have been provided without Plaintiffs' filing this motion to compel. Even now, witness testimony shows numerous documents have not even been searched, let alone produced, and witnesses with clearly relevant, discoverable information that Plaintiffs' requests sought have not been asked to provide the documents in their office or on their computers. Accordingly, Plaintiffs' motion to compel should be granted as further detailed below.

---

[1] To be clear, Plaintiffs' motion also concerns documents that were not produced with respect to their First Requests for Production of Documents. This Reply is focused on Defendants' opposition, which itself only addressed the Second Requests for Production.

1

I. **DEFENDANTS HAVE WAIVED OBJECTIONS.**

Defendants fail to address Plaintiffs' initial argument in the Motion to Compel that all objections to the Second Requests for Production were waived due to their failure to timely object. (ECF No. 75-1 at 2-3) (Pls. Memo.) Instead, Defendants incorrectly claim that their objections served on January 21, 2026, were timely when, in fact, those objections were late since Plaintiffs' discovery was served on December 19, 2025. (ECF No. 79 at 5) (Defs.' Opp.); (ECF No. 79 at 15) (claiming "vague" and "overly broad" as objections while failing to address the untimeliness of those objections). By failing to contest Plaintiffs' argument and the cases cited by Plaintiffs with respect to waiver of late objections to discovery, Defendants have waived any argument that their untimely objections should be considered. *Jackson v. YRC, Inc.*, No. 14-1045, 2016 U.S. Dist. LEXIS 83332, at *7 (W.D. La. June 27, 2016) (without a showing "of good cause, when a party fails to object timely . . . then any objections thereto are waived").

II. **THE DOCUMENTS SOUGHT ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE.**

Although Plaintiffs maintain that Defendants have waived all objections, even if waiver did not apply the documents sought are clearly relevant to the claims in this case. Defendants' arguments to the contrary are unavailing. This case concerns the employment of hundreds of H-2A heavy tractor-trailer truck drivers who hauled sugarcane from farms to the sugar mill operated by Defendant Sterling Sugars, LLC between 2022 and 2025. The legal issues include: (1) whether the Plaintiffs and the other truck drivers should have been paid overtime wages or whether, as Defendants' contend, they are exempt from overtime because Defendants are "farmers"; (2) whether the Plaintiffs and the other truck drivers were paid the correct wage rate for their work as heavy tractor-trailer truck drivers or were paid an illegally low wage rate applicable only to agricultural workers; and (3) whether Defendant Sterling Sugars, LLC is a

2

joint employer of the Plaintiffs and other truck drivers such that is should be held liable for any violations of the Fair Labor Standards Act, for breach of contract, and for violations of the Louisiana Wage Payment Act. Plaintiffs' discovery requests are focused on those issues.

It was Defendants who put discovery concerning farming, the obligation to pay overtime, and employer status at issue by denying allegations related to those issues in their Answer. Plaintiffs allege that Defendants are not farmers. Defendants, by contrast, claim the benefit of an agricultural exemption and agricultural wage rates which only apply to farmers. Defendants object to and resist producing documents related to their claimed role in farming arguing these requests "are not narrowly tailored[.]" (ECF No. 79 at 2.) But Plaintiffs' requests are directly related to Defendants' alleged farming activities, such as land that is farmed, lease agreements, purchases of farming inputs, and similar activities that relate to "farming." Likewise, scale tickets, scale cards, and harvesting reports show the truck information and list the farmer.[2] Defendants could, of course, stipulate to the fact that they are not "farmers" and that the Plaintiffs and other class members were not employed "by farmers," but if they continue to claim exemptions applicable to farmers then Plaintiffs are entitled to examine the documents in Defendants' possession or control related to their farming. *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1363 (11th Cir. 2021) ("Simply put, no matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the scope of the secondary meaning of agriculture.") (cleaned up)

Likewise, Defendant Sterling Sugars, LLC has disputed that it is liable as an employer. Accordingly, Plaintiffs need to discover Defendant Sterling Sugar's role in the activities of

---

[2] A limited number of reports concerning the harvest have been produced, but scale tickets and scale or truck cards have not been produced. Likewise, certain documents related to hauling of sugarcane for 2023-2025 have not been produced. (Exs. 2 and 3.)

Defendant South Central, and their discovery requests are designed to do exactly that. Plaintiffs maintain that Defendant Sterling Sugars has effectively created a shell game passing millions of dollars between the two Defendants, all through Defendant Sterling Sugars' office, using Defendant Sterling Sugars' personnel and management employees, and through their control of corporate accounts and the accounting records of Defendant South Central. Defendants claim that "[t]he payroll documents, agreements, and invoices speak for themselves." (ECF No. 79 at 15.) This is, of course, wrong. Payroll documents list South Central as the employer but were prepared on Defendant Sterling Sugars' computer system by Defendant Sterling Sugars' employees. This was after the truck drivers worked pursuant to schedules prepared by Sterling Sugars' employees where they hauled sugarcane in Sterling Sugars' trucks using Sterling Sugars' trailers, and then returned to their employer-provided housing on Sterling Sugars' property after getting a ride in a Sterling Sugars' bus driven by Sterling Sugars' employees. The document does not "speak for itself"; the document was meant to hide true facts. Similarly, several agreements between the parties do not "speak for themselves"; they too were created to deceive. For example, some documents produced in discovery so far show that Defendant Sterling Sugars created checks from Defendant South Central purporting to pay for services while Sterling Sugars transferred millions of dollars to South Central to cover those same checks. Plaintiffs are entitled to the discovery of the documents they have requested, including emails and communications, that are relevant to Defendant Sterling Sugars' liability and status as an employer.

      Defendants assert a defense that their conduct did not violate the FLSA and was not willful. (ECF No. 23 at 16.) And, in their opposition to Plaintiffs' motion for collective action certification, claim the work was exempt. (ECF No. 45 at 7.) Discovery regarding Defendants'

4

knowledge of the FLSA and its review of its obligation to pay overtime is clearly relevant and discoverable. Here, testimony has revealed that Defendant Sterling Sugars had a practice of paying overtime to truck drivers and discontinued this practice upon employing foreign workers through separate but affiliated companies. Plaintiffs are entitled to discover what, if any, documents Defendants relied on to internally justify this apparent violation of federal wage statutes. *Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 587-89 (5th Cir. 1967) (holding that drivers who hauled harvested sugarcane from fields to the sugar mill were not exempt from overtime under the FLSA's agricultural exemption because it was not done "on a farm" or by "farmers").[3]

Defendants argue that the discovery is "not aligned," ECF No. 79 at 1, and that their discovery responses are "sufficient." (ECF No. 79 at 4.) These judgments by Defendants about what they think Plaintiffs "need" are not applicable discovery standards. *Banks v. St. James Par. Sch. Bd.*, No. 65-16173, 2023 U.S. Dist. LEXIS 239306, at *25-26 (E.D. La. Apr. 5, 2023) (finding "Plaintiffs are entitled to the information sought unless the [defendant] establishes that the information sought can have no possible bearing on any claim or defense. If relevance is in doubt, the court should be permissive in allowing discovery."); *see also Lewis v. Bd. of Supervisors of La. State Univ.*, No. 21-198-SM-RLB, 2023 U.S. Dist. LEXIS 86249, at *29 (M.D. La. May 17, 2023) (declining to limit discovery in employment dispute where "no evidence has been presented to show undue burden").

---

[3] Defendants' supplemental response is simply that they considered everything they have produced in discovery to determine their FLSA obligations. (ECF No. 79 at 15) ("[a]ny and all of these documents would have been considered"). No documents in Defendants' possession concerning overtime obligations have been produced and their response is simply evasive.

5

### III. DEFENDANTS MISREPRESENT THEIR LEVEL OF COMPLIANCE AND THE TIMING.

The parties are before the Court on this motion because Defendants have engaged in discovery gamesmanship. Defendants made late objections, delayed producing any responsive documents, and then amassed a huge pool of documents which they dumped one business day before depositions. Defendants told Plaintiffs documents would be produced between February 4th and February 9th on a rolling basis, but instead produced a huge pile of documents on the night of February 9th, effectively one business day before depositions were to begin on February 11th.[4] The production appears to have been made in this manner—when combined with Defendants' opposition to an amendment to the scheduling order to allow for a more orderly completion of discovery—as a way to hamper Plaintiffs' review of the documents and the effective use of the documents at depositions. That gamesmanship has continued with Defendants' opposition, which misstates the timing of the written supplemental responses and misrepresents the level of supplementation.[5] For example, Defendants state that they provided

---

[4] Defendants told Plaintiffs documents would be produced on a rolling basis between February 4th and February 9th, before the start of depositions on February 11th. The only documents produced during that time period prior to February 9th was an H-2A employment application for the 2025 season. Defendants' claim, erroneously, that documents were "timely produced" and produced "when due on February 9, 2026." ECF 79 at 2. The discovery was due on January 20, 2026, a date that Defendants missed. Rather, Defendants solely served objections to the discovery requests on January 21, 2026, by producing no documents. Moreover, Defendants clearly did not amass 20,000 pages of documents on February 9th but presumably amassed them over multiple days and could have produced at least part of the large document dump earlier allowing Plaintiffs time to review the documents before depositions.

[5] Defendants also incorrectly claim that Plaintiffs failed to certify that they conferred with them before filing this motion. Plaintiffs did so certify in their motion. (ECF Nos. 75, 75-1.) And the parties had multiple conferences about these discovery requests. At the first conference Defendants refused to produce any documents at all to Plaintiffs' second requests for production. This issue was discussed with the Court at a hearing on January 29, 2026, and the parties conferred immediately after that hearing. Defendants promised to produce all documents on a rolling basis between February 4, 2026, and February 9, 2026. Defendants did not do so. At some

6

written supplemental responses on February 10, 2026. (ECF No. 79 at 6.) That is simply not true. Rather, the written supplemental responses were not provided until February 12, 2026, while the Plaintiffs were taking the deposition of one of Defendants' managerial employees, as Defendants' *own cited exhibits* show. (Exs. 79-1 and 79-2); *see also* (Exs. 2-3) (original email from counsel for Defendants on February 12, 2026, serving supplemental responses).

      The level of supplementation and responsiveness to Plaintiffs' requests is also misrepresented. For example, despite repeated requests, Defendants have still not produced electronic payroll information in its native format. Contrary to Defendants' statements in their opposition, Plaintiffs did not request that Defendants provide this information in Excel format. Plaintiffs discussed with Defendants that the Excel information they provided was not a native format production and was not readily usable to compute damages. Defendants have stated that the payroll information is maintained in Excel format, but that is simply not true. The payroll information is maintained in an account and payroll software called "SAGE Software," as can be seen in the metadata of the static PDF files that Defendants produced of payroll register reports that were run from that program. (Ex. 1.) Plaintiffs have asked for and are entitled to a native format production of this ESI so they can properly calculate the amount of damages owed to the Plaintiffs and other class members.

      More importantly, there are a number of responsive documents that have not been produced and, as witnesses have testified, never searched. Plaintiffs have been cataloging these

---

point, after multiple conferences and a pending discovery deadline, Plaintiffs had to compel the withheld documents. Defendants claim that the duty to confer is a never-ending cycle of incomplete productions followed by more conferences is mistaken. *Bridgham-Morrison v. Nat'l Gen. Assurance Co.*, No. C15-927RAJ, 2016 U.S. Dist. LEXIS 23285, at *5 (W.D. Wash. Feb. 24, 2016) (finding it "reasonabl[e] [to] believe[] that an impasse had been reached" after more than one conference). Defendants withheld documents, wrongfully, and timed their production to harm Plaintiffs' ability to prepare, and then still withheld documents.

7

deficiencies in emails to Defendants' counsel, which are attached to this reply as Exhibits 2 and 3. Most glaringly, every witness deposed so far has identified emails and text message communications they had regarding the hauling work of the Plaintiffs and other class members. All have testified that they have not searched their emails or text messages for responsive documents and have not been asked to do so. One witness even testified that he maintains a folder in his email box called "H-2A" where he places all emails related to the H-2A program and that he has never deleted an email in over 20 years of employment. Defendants have not produced a single email from that custodian, and it is apparent that no email searches were conducted with respect to any other custodians. But missing emails and text messages is not the only problem. There are missing agreements related to the hauling work, missing lease agreements, missing agreements related to the purchase and transport of sugarcane, missing checks and accounting information, missing personnel files, and missing years even with respect to some productions that were made, just to name a few examples.

Defendants' claim that the last three weeks have been orderly or appropriately conducted, or that their productions have mooted this motion, is simply untrue. The discovery responses have been delayed, have been incomplete, and depositions of management employees have been conducted based on incomplete information and the deponents have repeatedly confirmed they have documents which were not produced or even searched.

## CONCLUSION

For all of the above reasons, as well as those in Plaintiffs' memorandum in support of their motion, Plaintiffs' Motion to Compel should be granted.

8

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone: (828) 379-3169
Email: jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
Email: dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email: dan@estesdavislaw.com

9