# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **FELIPE DE JESUS AVILA-SOTO ET AL** | **CASE NO.  6:24-CV-01392** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SOUTH CENTRAL SUGAR CANE GROWERS ASSOCIATION INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion for Rule 23 Class Certification. (Rec. Doc. 72). Defendants, South Central Sugar Cane Growers' Association, Inc. and Sterling Sugars, LLC, opposed the motion (Rec. Doc. 91), and Plaintiffs replied (Rec. Doc. 94). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the Court's standing orders.  Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Plaintiffs' motion be granted.

## Facts and Procedural History

Defendants are sugar cane farmers who brought Plaintiffs and proposed class members from Mexico to work in Louisiana on H-2A temporary visas.[1] Plaintiffs

---

[1]    The parties dispute which defendant entity(ies) employed Plaintiffs.

allege that Defendants, in submitting H-2A applications for Plaintiffs' employment, falsely represented that Plaintiffs were agricultural workers when, in fact, they were employed to drive heavy trucks, thereby entitling them to greater benefits. Plaintiffs assert claims under the Fair Labor Standards Act (FLSA) for minimum wage and overtime violations (Count I), for breach of employment contracts (Count II), and for violations of the Louisiana Wage Payment Act (LWPA) (Count III). (Rec. Doc. 1). They seek to proceed as a collective action under the FLSA and as a class under Rule 23. The Court recently certified the FLSA collective action and approved the following definition of similarly situated plaintiffs:

> All individuals admitted as H-2A temporary foreign workers who were employed by South Central Sugar Cane Growers' Association, Inc. and/or Sterling Sugars, LLC as truck drivers hauling harvested sugarcane within the state of Louisiana at any time within the last three years and who claim they are owed unpaid wages.

(Rec. Doc. 70; 71).

Regarding their claims for breach of contract and LWPA violations, the seven named Plaintiffs seek to represent an anticipated class of approximately 130 to 160 sugar cane truck drivers, all Mexican nationals brought to Louisiana for the 2022, 2023, 2024, and 2025 harvest seasons pursuant to Agricultural Clearance Orders from the U.S. Department of Labor. (Rec. Doc. 72-3 through 72-6). Plaintiffs contend that the FLSA, the Clearance Orders, and the LWPA obligated Defendants to pay them a higher rate as truck drivers than the rate actually paid, that their

misclassification as agricultural workers warrants an award for overtime, and that Defendants failed to reimburse them for reimbursable expenses, such as self-paid medical examinations, and transportation and lodging pending processing of their H2A visa applications, among others. Based on these commonalities, Plaintiffs seek certification of a class pursuant to F.R.C.P. Rule 23. Defendants urge the Court to decline to exercise supplemental jurisdiction of Plaintiffs' state law claims for breach of contract and LWPA violations and argue that such claims are otherwise unsuitable for class certification.

## Law and Analysis

### I.    Jurisdiction Over State Law Claims

Defendants first urge the Court to decline to exercise jurisdiction over Plaintiff's state law claims for breach of contract and LWPA violations, the claims for which Plaintiffs seek Rule 23 certification. The Court has federal question subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331, but Defendants argue Plaintiffs' state law claims will cause confusion if the Court maintains supplemental jurisdiction.

> Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The general rule is that a court should decline to exercise

jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive, and this Court must review the district court's decision in light of the specific circumstances of the case at bar.

*Brookshire Bros. Holding v. Dayco Prods., Inc.,* 554 F.3d 595, 602 (5th Cir. 2009).

Relying on the exceptional circumstances provision, Defendants argue that allowing Plaintiffs to pursue both the FLSA collective action and Rule 23 class action in the same suit "poses a risk of procedural complexity that may confuse putative plaintiffs of both classes." (Rec. Doc. 91, p. 10). Defendants rely on a nearly factually and procedurally identical case in which the Eastern District of North Carolina declined to exercise supplemental jurisdiction over state law putative class claims, while maintaining the plaintiffs' FLSA collective action. *De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc.,* 338 F. Supp. 2d 649, 653 (E.D.N.C. 2004). The court in *De Luna-Guerrero* reasoned:

> The court believes that the existence of the three different classes proposed here, of varied types and sizes, will cause too much confusion in this particular case. This case necessitates that notification be sent to thousands of foreign nationals who have worked for the defendant NCGA under the H2A program. These potential plaintiffs, many of whom do not speak English and are unfamiliar with the legal system of this country, will be even more confused by multiple notifications regarding two separate classes and separate claims. This problem is confounded by the fact that the collective action under the FLSA is an "opt-in" class, while the proposed class action under Rule 23 is an "opt-out" class. In addition, the state law claims seek to certify a class of defendants as well. This certification will require another set of notices to be sent to a different class of persons. While none of these concerns standing alone may merit "exceptional circumstances" to decline to

4

> exercise jurisdiction, all of these concerns combined lead this court to believe that the court should decline to exercise its jurisdiction over the state law claims. Class actions are intended to promote judicial efficiency where large groups of people are involved. Here, however, judicial efficiency will be better promoted by dismissal of the state law claims for lack of jurisdiction. Then this court can properly and efficiently administer the collective action proposed by the named plaintiffs pursuant to 28 U.S.C. § 216(b). Plaintiffs are free to pursue their state law claims, including potential class claims, in the state courts.

*Id*. at 653.  See also *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 312 (3d Cir. 2003), *as amended* (Nov. 14, 2003) (supplemental jurisdiction not warranted over state law "opt in" claims, due largely to the "unique circumstances" of that case in which the numbers of FLSA and state law claimants differed substantially and state law issues predominated over straight forward FLSA issues).

Other courts have exercised supplemental jurisdiction over state law claims in circumstances where the facts underlying both federal and state claims are the same (i.e. a common nucleus of operative fact under an Article III case or controversy analysis), and the claims are merely alternative theories of recovery. E.g. *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) ("[W]hen the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious and federal courts routinely exercise supplemental jurisdiction over the state law claims….On the other hand, we have refused to exercise supplemental jurisdiction over state claims totally unrelated to a cause of action under federal law."). See also *Lindsay v. Gov't Emps. Ins. Co.,* 448 F.3d 416, 423–25 (D.C. Cir. 2006) ("Here, the complaint

alleged that members of both classes performed the same type of work for the same employer and were deprived of overtime compensation as a result of the same action taken by their employer. It is clear to us that the two claims 'derive from a common nucleus of operative fact' and thus form part of the same Article III case or controversy…We do not view the difference between the opt-in procedure provided by section 216(b) for FLSA claims and the opt-out procedure for state law claims provided by Rule 23 as fitting the 'exceptional circumstances'/'other compelling reasons' language of section 1367(c)(4).").

The Court agrees that the instant case more closely aligns with the latter line of cases. Plaintiffs in both the "opt-in" FLSA action and the "opt-out" class are the same: all are agricultural truck drivers seeking recovery for unpaid wages based on the same work. If they are successful, whether they recover wages under the FLSA, the Clearance Orders, or the LWPA is relatively inconsequential. Further, if the Court were to decline to exercise supplemental jurisdiction, and Plaintiffs file a separate class action in state court for their breach of contract and LPWA claims, the parties face the same possibility of confusion from separate notices and the language barrier, with the added risk of confusion from oversight by an unrelated court on practically the same claims. Judicial efficiency is best served by exercising supplemental jurisdiction in this case; however, this is not to suggest that Plaintiffs may double-recover under multiple theories.

Defendants maintain that Plaintiffs' breach of contract claims are duplicative claims for reimbursement they also seek under FLSA. The Court agrees that Plaintiffs' claims overlap (hence the need to exercise supplemental jurisdiction) but notes that Plaintiffs would not be permitted to recover the same damages under two different theories. Thus, to the extent Plaintiffs recover reimbursements pursuant to the FLSA, they would not be permitted to recover the same reimbursements as damages for breach of contract. Plaintiffs assert that they seek distinct damages due to Defendants' alleged breach of contract. The Court need not determine the source of recovery attributable to each alleged damage at this stage. Double recovery will not be permitted, a fact which strengthens the argument in favor of supplemental jurisdiction.

## II.     **Whether Certification of the Class is Proper under Rule 23**

Plaintiffs seek certification under Rule 23(b)(3).

> A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3). The four 23(a) prerequisites include (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999), quoting

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245 (1997).

Plaintiffs bear the burden of establishing all Rule 23 requirements are satisfied. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 481 (5th Cir. 2001). The Court is duty-bound "to conduct a rigorous analysis of Rule 23 prerequisites." *Unger v. Amedisys Inc.,* 401 F.3d 316, 320–21 (5th Cir. 2005), citing *Gen'l Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372 (1982).

> Class certification hearings should not be mini-trials on the merits of the class or individual claims. At the same time, however, going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. To assist the court in this process it may sanction controlled discovery at the certification stage. The plain text of Rule 23 requires the court to "find," not merely assume, the facts favoring class certification.

*Id*. (cleaned up).

## A. **Rule 23(a) Prerequisites**

### i. **Numerosity**

The Court must first find that the number of class participants is so large that joinder of all members would be impractical. In addition to the number of class participants, relevant factors may also include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim"). *Mullen*, 186 F.3d at 624–25, quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981). Plaintiffs anticipate a class of approximately 130 to 160 drivers based on Defendants' discovery responses. The anticipated class size, as well as the fact that class

participants are foreign nationals spread throughout Mexico, satisfies numerosity. *Id*. Defendants do not challenge numerosity.

### ii.    Commonality

"The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d at 625, quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997). Plaintiffs' essentially identical claims that they were misclassified and are due additional wages, overtime, and reimbursements, easily satisfy the commonality standard.

Defendants argue that Plaintiffs' reimbursement claim does not satisfy commonality because of factual issues, such as the workers' varied points of departure and modes of transportation; however, such factual issues affect only the value of Plaintiffs' claimed reimbursements. Varied damages do not defeat commonality where the claims are the same. See *id*. ("The common issues pertaining to these theories of liability—i.e., the class members' status as Jones Act seamen, the negligence of Treasure Chest, and the unseaworthiness of the Casino—are independently sufficient to establish commonality. It is therefore irrelevant whether the class members uniformly allege damages from second-hand smoke.")

### iii.  Typicality

"Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id*. Defendants rely on the named Plaintiffs' deposition testimony wherein they could not identify similarities in the drivers' claims other than that they worked for the same employer (Rec. Doc. 91, p. 20, referencing Rec. Doc. 90-1), but the question of typicality is a legal question for the Court's consideration. Otherwise, Defendants again rely on the fact that Plaintiffs sustained different alleged damages. As with commonality, varied damages do not defeat class certification where the claims are the same. See *id*. ("Any variety in the illnesses the Named Plaintiffs and the class members suffered will not affect their legal or remedial theories and thus does not defeat typicality."). See also *Chavez v. Plan Benefit Servs., Inc.,* 108 F.4th 297, 318–19 (5th Cir.), *cert. denied,* 145 S. Ct. 774, 220 L. Ed. 2d 274 (2024) (recognizing the necessity for individual damages calculations does not preclude class certification).

### iv.  Adequacy of Representation

The Court is obligated "to ensure that the due process rights of the absent class members are safeguarded," by ensuring adequacy of class counsel and class representation. *Berger*, 257 F.3d at 482. Defendants do not challenge the adequacy of class counsel. "Counsel must be both competent and zealous in representing class

interests." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012), citing *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 130 (5th Cir.2005). Having considered Plaintiffs' counsels' qualifications (Rec. Doc. 72-16 and 72-17) and having interacted with Plaintiffs' counsel in these proceedings, the Court finds that Plaintiffs' counsel are more than adequate in competence and zeal to represent the proposed class.

"Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26. Because the named Plaintiffs and the class members assert the same claims, none of which depends on the outcome of other plaintiffs' claims, the Court appreciates no conflicts between the name Plaintiffs and class members. Defendants argue that the named Plaintiffs are inadequate representatives because some named Plaintiffs may have worked a different season(s) than some class members (i.e. pursuant to different Clearance Orders), but Defendants offer no explanation for how this hypothetical difference causes any conflict (See Rec. Doc. 91, p. 16), and the Court appreciates none.

Defendants further challenge the named Plaintiffs as unsuitable representatives. Indeed, the adequate representation inquiry is more than a conflict analysis. "Class representatives must satisfy the court that they, and not counsel, are

11

directing the litigation[, by] show[ing] themselves sufficiently informed about the litigation to manage the litigation effort." *Unger*, 401 F.3d at 321, citing *Berger,* 257 F.3d at 479.  The court must determine "whether the putative class representatives are 'willing' and 'able to 'take an active role in and control the litigation and to protect the interests of absentees.'" *Berger,* 257 F.3d 479.

Notably, *Berger* was a securities fraud case, a significant distinction from this case involving unsophisticated foreign workers. *Berger*, 257 F.3d 484 ("[I]n complex class action securities cases governed by the PSLRA, the adequacy standard must reflect the governing principles of the Act and, particularly, Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases."). The Fifth Circuit later explained the difference between a "generic standard" of adequacy and *Berger*'s heightened threshold:

> We have identified a "generic standard" for the adequacy requirement, noting that "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Berger I,* 257 F.3d at 482–83. We have also noted that "the PSLRA raises the standard adequacy threshold" with its "requirement that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation." *Id.* at 483. Although we noted that the PSLRA raises the adequacy threshold, we have "not, however, created an additional requirement under rule 23(a)(4) that ... the putative class representative possess[ ] a certain level of experience, expertise, wealth or intellect, or a level of knowledge and understanding of the issues, beyond that required by our long-established standards for rule 23 adequacy of class representatives." *Berger v. Compaq Computer Corp.,* 279 F.3d 313, 313–14 (5th Cir.2002) [*Berger II*]. The "long-established standard" for the adequacy determination on which

we principally relied in *Berger I* requires " 'an inquiry into [1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]' " *Berger I,* 257 F.3d at 479 (quoting *Horton v. Goose Creek Independent School Dist.,* 690 F.2d 470 (5th Cir.1982)). In addition to determining the proposed class counsel's zeal and competence and the proposed class representative's willingness and ability, the district court's "adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.' " *Id.* at 479–80 (quoting *Amchem Prods.,* 521 U.S. at 625, 117 S.Ct. at 2236).

*Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 129–30 (5th Cir. 2005).

Some courts have found the heightened *Berger* standard applicable only in securities cases and applied the generic standard otherwise. See discussion in *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1056 (S.D.TX. 2012). As the court in *In re Heartland* noted, "Courts outside this circuit do not demand *Berger*'s knowledge-and-direction requirement for consumer class actions, instead focusing on the more traditional aspects of adequacy: ensuring no intraclass conflicts and class counsel's adequacy." *Id*. In that regard, some courts within the Fifth Circuit have applied the more lenient standard of "general understanding" to non-securities cases. See e.g. *Steward v. Janek*, 315 F.R.D. 472, 490–91 (W.D. Tex. 2016) (nursing home patients asserting ADA and related claims); *Vine v. PLS Fin. Servs., Inc.,* 331 F.R.D. 325, 335 (E.D. Tex. 2019), *aff'd,* 807 F. App'x 320 (5th Cir. 2020) (payday loan borrowers asserting common law fraud and deceptive trade practices claims).

13

The Court finds that, in addition to competent and zealous counsel and an absence of conflicts of interest, the applicable standard in this case is that Plaintiffs have a general understanding of the issues and claims and the willingness and ability to serve as representatives. Plaintiffs have satisfied their burden of adequate representation. Suarez-Palafox testified that he knew his job title was driver, that he worked more than forty hours in a workweek, that he and the other drivers were not paid overtime, that an employment contract may have existed, that he seeks to represent other workers in a collective and/or class action, and that the employers were not paying the correct salary or overtime. (Rec. Doc. 72-9, p. 17-23). He testified that he is seeking damages for overtime and "a fair wage for a driver." (p. 31-32). Plaintiff Avila-Soto and Class Member Rosas-Osuna declared similarly (72-10; 72-11).

Defendants contend that the named Plaintiffs are insufficient representatives based on their purported lack of understanding of the case, relying on Suarez-Palafox's deposition testimony that he was not familiar with the employment contract and that he did not remember his rate of pay. (Rec. Doc. 91-1, p. 8). The Court finds Suarez-Palafox's testimony evidences a clear understanding of the issues in this lawsuit, the nature of his claims and damages, and that he is a willing and able representative of other drivers like himself. That he did not recall certain underlying facts is not fatal. The Court finds Plaintiffs are adequate representatives.

14

## B. **Rule 23(b)(3) Requirements: Predominance and Superiority**

Rule 23(b)(3) additionally provides that, if the Rule 23(a) prerequisites are satisfied, a class action may be maintained "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The court must consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. F.R.C.P. Rule 23(b)(3).

The Fifth Circuit has reduced the Rule 23(b)(3) analysis to two inquiries: predominance and superiority. *Chavez,* 108 F.4th at 316, citing *Mullen*, 186 F.3d at 626–29.

### i.   **Predominance**

Regarding predominance, "common issues must constitute a significant part of the individual cases." *Chavez,* 108 F.4th at 316 quoting *Mullen, 186 F.3d* at 626.

> We have further clarified that the predominance analysis entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials. Moreover, the predominance requirement of Rule 23(b)(3), though redolent of the

15

commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.

*Id*. (cleaned up).

Defendants argue that the evidence to be deduced will vary among class members, such as individual drivers' travel experiences (figuring into a reimbursement for travel expenses). As in their opposition to commonality, Defendants rely on differences in damages to argue individual issues predominate over class issues. Although "the necessity of calculating damages on an individual basis will not necessarily preclude class certification,…where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class." *Steering Comm. v. Exxon Mobil Corp*., 461 F.3d 598, 602 (5th Cir. 2006). This is not such a case. Class members' damages can be formulaically determined based on their hours worked and amount of reimbursable expenses. The issues of classification, whether overtime and reimbursements are owed, and the amount thereof are common issues which predominate over any individual issues. Predominance is satisfied.

### ii.   Superiority

"In order to determine superiority, the Court examines: (a) the interest of the class members in individually controlling the prosecution or defense of separate

actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action." Rule 23(b); *Recinos-Recinos v. Express Forestry, Inc.,* 233 F.R.D. 472, 482 (E.D. La. 2006), citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 747-48 (5th Cir. 1996). In *Recinos*, the court certified a class of migrant agricultural workers for claims against their employer for violations of the Migrant and Seasonal Agricultural Worker Protection Act. In finding superiority, the Court reasoned:

> First, there is no indication that any member of the class would prefer or be able to prosecute his or her own claim. Plaintiffs reside in Mexico and Guatemala, are not fluent in English, and lack sufficient resources to bring an individual lawsuit. Therefore, individual claims would be highly impractical, if not impossible. Second, there are no known individual actions brought by class members concerning this controversy. Third, it is desirable to concentrate these actions in one forum. Fourth, aside from the usual complexities encountered in class action litigation, there do not appear to be any exceptional difficulties caused by litigating plaintiffs' claims as a class instead of individually. The Court finds that plaintiffs have also satisfied the superiority requirement.

*Id*. The same analysis supports superiority in this case.

### III.    The Class Definition

Defendants challenge Plaintiffs' proposed class definition as overly broad. Plaintiffs propose the following class definition:

17

All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, 2024, and/or 2025 sugarcane seasons.

Defendants urge the following class definition:

All individuals who applied at a U.S. Consulate for H-2A visas and were admitted to the United States to work as H-2A temporary foreign workers for South Central Sugar Cane Growers' Association for the 2022, 2023, and/or 2024 sugarcane season pursuant to Job Orders H-300-22167-289377, H-300-23167-120446, and/or H-300-24170-126752.

Defendants first argue use of the generic term "Defendants" does not properly represent the class members' actual employer. This problem of identity (which the parties dispute) is resolved in the same manner as was the same issue presented in Plaintiffs' motion for collective action certification: by replacing "Defendants" with "South Central Sugar Cane Growers' Association, Inc. and/or Sterling Sugars, LLC." Plaintiffs are amenable to this modification.

Defendants next argue that Plaintiffs' proposed class includes workers who worked in 2025, but who were not a party to any Clearance Order made the basis of the complaint. Plaintiffs filed the complaint in October 2024 for workers employed during the 2022 through 2024 seasons (Rec. Doc. 1), but they seek to certify a class of workers which also includes 2025 season workers. Plaintiffs submitted evidence that Defendants are on notice that Plaintiffs claims extend to the 2025 season (which had not yet occurred at the time they filed suit) and that the parties have conducted

18

discovery regarding the 2025 season. The absence of claims arising from the 2025 season (which the parties intend to pursue and defend, respectively) can be cured with an amendment. Although the deadline for amendment expired on January 23, 2026 (Rec. Doc. 33), the Court would favorably consider a motion to amend the complaint to assert claims on behalf of 2025 workers. Thus, the Court recommends that Plaintiffs be permitted the opportunity to file an amended complaint for the sole purpose of asserting claims on behalf of 2025 workers and that the following class be certified:

> All individuals admitted as H-2A temporary foreign workers who were employed by South Central Sugar Cane Growers' Association, Inc. and/or Sterling Sugars, LLC as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, 2024, and/or 2025 sugarcane seasons.

Inclusion of the specific Job Orders, as Defendants suggest, is unnecessary and potentially confusing.

## Conclusion

For the reasons discussed herein, the Court recommends that Plaintiffs be permitted an opportunity to amend the complaint for the sole purpose of asserting claims on behalf of 2025 workers and that Plaintiffs' Motion for Rule 23 Class Certification be GRANTED as modified herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 30th day of March, 2026.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE