UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| FELIPE DE JESUS AVILA-SOTO, et al. ) | Case No. 6:24-cv-01392 |
| Plaintiffs, ) | |
| v. ) | JUDGE ROBERT R. SUMMERHAYS |
| SOUTH CENTRAL SUGAR CANE ) | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| GROWERS' ASSOCIATION, INC., et al. ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Defendants seek to compel Opt-in Plaintiffs to sign authorizations so that they can

explore Opt-in Plaintiffs unimpeded by basic discovery limitations like relevance, whether the

documents even exist, or whether the claimed information is already in Defendants' possession.

Plaintiffs objected to these requests and the Court should uphold those objections. (ECF No. 110-

2 at 3-9) (objecting that the requests were "irrelevant to the claims or defenses" and "overbroad

and not proportional to the needs of this case"). Defendants claim that their requests are

"germane" and "probative" and that the objections are "unreasonable," ECF No. 110-5 at 3, but

Defendants fail to explain why they have sought "Psychotherapy Notes," ECF No. 110-1 at 21,

"HIPAA Authorization" for medical records, ECF No. 110-1 at 19, "arrest records," ECF No.

110-1 at 17, and a release of "all administrative records, claims, files, reports … regarding any

claims or complaints, ECF No. 110-1 at 18.[1] The authorizations here simply do not seek

---

[1] It is also unclear exactly which of the numerous forms Defendants are seeking to compel signatures. For example, several of the forms attached to Defendants' Requests for Production are not referenced in Requests 1 through 9 as one of the "attached form[s]" to be executed. (ECF No. 110-1 at 6-7). For example, although Defendants have attached two HIPAA authorization

1

discoverable documents, and the limited documents Defendants now claim are purportedly sought are actually in Defendants' possession and have been produced by Defendants or their agents. Plaintiffs attach several of them here. Defendants' motion is due to be denied.

## ARGUMENT

### I.     Opt-in Plaintiffs Should not be Compelled to Sign Authorization Forms.

Rule 34 does not require a party to sign a release of information from a third party and the Court should not compel the Opt-in Plaintiffs to do so here. There is no binding Fifth Circuit precedent deciding whether a party can be compelled to sign a blank authorization form for medical or other records. *McKnight v. Blanchard*, 667 F.2d 477, 482 (5th Cir. 1982) (declining to compel signing of medical authorization and noting only that "quite possibly (since McKnight's physical condition was put at issue []) the court upon proper motion could have ordered . . . such an authorization"). "[A] majority of courts have held that Rule 34 itself does not give courts the power to order a party to sign a release." *Cheshire v. Air Methods Corp.*, No. 3:15CV933, 2015 U.S. Dist. LEXIS 160427, at *11 (W.D. La. Nov. 30, 2015); *see also Butler v. La. Dep't of Pub. Safety & Corr.*, No. 3:12-cv-00420-BAJ-RLB, 2013 U.S. Dist. LEXIS 76467, at *31 (M.D. La. May 29, 2013) (declining to compel signing of medical release authorization); *EEOC v. Randall Ford, Inc.*, 298 F.R.D. 573, 575 (W.D. Ark. 2014) ("[T]he court generally has no authority to compel a party to execute a release directing a non-party to produce documents."); *Klugel v. Clough*, 252 F.R.D. 53, 54–55 (D.D.C. 2008) ("Defendants offer no

---

forms related to medical and psychotherapy records, a FERPA authorization form related to education records, and a Cell Phone Records authorization, the Defendants' Requests for Production make no mention of these forms, nor are they mentioned in their memorandum in support of the motion to compel. To the extent that Defendants now seek to compel the signing of forms that were not contained within a request for production the motion should be summarily denied. In addition, no forms related to Opt-in Plaintiff Omar Rosas Osuna were attached to Defendants' motion and so should not be compelled.

authority for the proposition that a party may extract from an opposing party a signed authorization for the release of medical records by attaching an unsigned release to a request for production . . . The strained interpretation of Rule 34 which Defendants urge is inconsistent with the plain language of the rule."). If Defendants believed third parties were in possession of relevant and discoverable information then they should have pursued that through the proper channel—the service of Rule 45 subpoenas on those third parties. *Randall Ford, Inc.*, 298 F.R.D. at 575 ("'The appropriate procedure to compel a non-party to produce documents is to serve them a subpoena as set forth in Rule 45 . . . .'") (citation omitted). Even though Plaintiffs believe, for example, that a current or former employer of the Opt-in Plaintiffs would not have any information relevant to this lawsuit, the Defendants could have served such current or former employer(s) with a subpoena, subject to court review pursuant to a motion to quash. *Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1279 (S.D. Fla. 2017) (declining to compel signed authorizations and ordering defendants to proceed by subpoena "limited to the specific topics permitted"). Defendants seek to impermissibly circumvent Rule 45 here—and the fact that the discovery period has now expired—by asking the Court to compel the Plaintiffs to sign free-ranging authorization forms which would allow Defendants to obtain records from any past, present, or future employer of the Opt-in Plaintiffs. The Court should not permit such tactics.

## II.      Defendants' Authorization Forms are Impermissibly Overbroad.

A Rule 34 request "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Here, however the requests do not specify which items are sought or even to whom the release is directed. *Scott v. City of Bismarck*, 328 F.R.D. 242, 248 (D.N.D. 2018) (noting that the "describe with reasonable particularity each item or category" requirement applies to requests for written authorizations and requires "a sufficient

3

description of the documents to be obtained in the proposed releases appended to the Rule 34 request"). The release labeled "Personnel Record Authorization" is addressed to "Whom It May Concern" for "all information… concerning the hiring, the employment, and/or separation" of the Opt-in Plaintiff. (ECF No. 110-1 at 16.) The release labeled "Authorization for Release of Criminal and/or Arrest Records" "authorizes all state, federal and local law enforcement agencies … to release . . . any and all … arrests, probation, parole and/or criminal record[.]" (ECF No. 110-1 at 17.) A third release labeled "Administrative Records Release Authorization" seeks the release of "all administrative records, claims files, reports, recommendations, [and] ruling[s]" and "pertains to the records of any administrative agency[.]" (ECF No. 110-1 at 18.) Rather than allow discovery of particularly described documents these releases would allow an unfettered free-ranging discovery of anything the Defendants desire from any past or present employer, government office, or law enforcement agency.

### III. Defendants' Authorizations Seek Information that is not Relevant or is in their Possession.

Defendants have also failed to show how any of the information they seek related to the Opt-in Plaintiffs would be relevant to their overtime claims, which are based on whether Defendants improperly classified truck drivers as exempt "agricultural" workers. Defendants claim to need the signed authorizations because they are investigating "long-haul work" which would, in some unexplained way, apparently impact the overtime claims. Defendants also claim that the requested authorizations to explore, without restriction, "administrative, personnel, unemployment, criminal, tax and immigration records," ECF No. 110-5 at 6, "are relevant."

4

(ECF No. 110-5 at 10.) As Plaintiffs explain below, the records purportedly being sought by the authorizations are simply not pertinent to the FLSA claims.[2]

### A.    Tax Returns of Employees Are Not Relevant to their FLSA Wage Claims.

"To determine whether tax records should be produced, the moving party must 'demonstrate both: (1) that the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax records is not 'otherwise readily obtainable' through alternative forms of discovery.'" *Moller v. Martian Sales, Inc.*, No. 24-228, 2025 U.S. Dist. LEXIS 52164, at *12-13 (E.D. La. Mar. 21, 2025) (citation omitted). Defendants cannot meet either portion of this standard. Defendants claim that they should get access to tax returns because "the information contained in these records will bear on the identity of the Opt-in Plaintiffs' employer during the relevant periods." (ECF No. 110-5 at 6.) But this is a tautology; Defendants prepared the tax reporting information for their employees and listed "South Central Sugar Cane Growers' Association" as the employer. Defendants now are just seeking to "discover" a gift they already wrapped for themselves. While Defendants claim that "[t]ax return and supporting documents

---

[2] While Defendants do not mention it in their brief, they also sought the Opt-in Plaintiffs' signature on a "HIPAA Authorization" for the release of medical records from unnamed providers for use in the defense of a case the release describes as "Cervantes-Leyva v. The Administrators of the Tulane Educational Fund … pending in … Orleans Parish[.]" (ECF No. 110-1 at 19.) That case, allegedly brought by one of the Opt-in Plaintiffs, does not exist. Similar non-existent cases with the same Orleans Parish case number are cited in the authorizations related to the other Opt-in Plaintiffs. (ECF No. 110-1 at 30, 37, 46, 55.) Defendants also sought signature on a release labeled "HIPAA Authorization for Use and Disclosure of Psychotherapy Notes" in the same suit purportedly against the "Tulane Educational Fund[.]" (ECF No. 110-1 at 21.) And Defendants sought a release for "Family Education Rights and Privacy Act (FERPA) Authorization to Release Educational Records" where the Opt-in Plaintiffs—adults who maintain their permanent residences in Mexico and worked for the Defendants full-time pursuant to temporary H-2 visas—were labeled as "Student." (ECF No. 110-1 at 23.) Not only are the records not relevant, and likely non-existent, but many are subject to statutory privileges.

are probative of who actually paid wages, the nature of those payments, and the periods of employment," ECF No. 110-5 at 7, Defendants are not discovering anything—they know what the tax reporting documents show because they prepared (and possess) them.

Defendant South Central paid the wages using the office and staff of Defendant Sterling Sugars, as well as funds provided by Sterling Sugars. (South Central 30(b)(6) Dep. at 405:5-406:5) (attached as Ex. 1) (approximately $5 million per year provided by Sterling Sugars to South Central between 2022 and 2025); (South Central 30(b)(6) Dep. at 412:15-413:23) (describing process of transferring money from Sterling Sugars to South Central to make payroll). Defendants *are in possession* of the Opt-in Plaintiffs' W-2 tax forms reporting their earnings and, in fact, produced those documents to the Plaintiffs in discovery. (*See* Ex. 2) (W-2 Forms for Plaintiffs and Opt-in Plaintiffs). Defendants also set the periods of employment by submitting visa applications to the U.S. Department of Labor every year to obtain permission to employ H-2A workers on a seasonal basis. (ECF No. 1 – Compl. ¶ 42.) Absolutely everything sought here is not only in Defendants' possession but was created by Defendants. Defendants cite a Western District of Texas decision that authorized tax return discovery because "[t]he Fair Labor Standards Act analysis turns, in part, on whether Plaintiff earned income from outside sources." *English v. Tex. Farm Bureau Bus. Corp.*, 462 F. Supp. 3d 667, 670-71 (W.D. Tex. 2020).[3] That case is inapposite, as it involved whether insurance agents had been denied overtime because they had been improperly classified as independent contractors instead of

---

[3] Defendants also cite a Fifth Circuit decision that is similarly inapplicable. (ECF No, 110-5 at 6 n.31.) In that case the Fifth Circuit notes the issue was "to determine whether the individual is, as a matter of economic reality, in business for himself or herself." *Herman v. Express Sixty-Minutes Delivery Serv.*, 161 F.3d 299, 303 (5th Cir. 1998). No one claims the Plaintiffs were "in business." The only dispute regarding employer status here is whether Sterling Sugars is jointly liable as an employer. Plaintiffs' tax returns have no impact on that determination.

employees. *English*, 2019 U.S. Dist. LEXIS 83911, at *3 (W.D. Tex. Mar. 29, 2019). The tax returns were relevant because income from other sources could be used in determining whether the insurance agents were in business for themselves as independent contractors rather than employees of the defendant. That is not an issue here. Plaintiffs worked 80-100 hours per week—only for Defendants. They did not have other employment and there is no claim, by any party, that they worked during the time periods at issue for anyone other than the Defendants, or that they were denied overtime because Defendants considered them independent contractors.

Defendants also claim that the tax returns will assist with "damages determinations and the scope of Defendants' potential exposure" and determining the "hours worked" and allow the parties to "calculate damages with greater precision." (ECF No. 110-5 at 7.) That is incorrect. Tax returns and W-2 forms do not contain the number of overtime hours the truck drivers worked, or the wage rates they were paid and cannot aid in calculating damages for overtime claims. (Ex. 2) (W-2 forms). Defendants' payroll records, which they maintained and produced during discovery, show that information and have allowed Plaintiffs to calculate "Defendants' potential exposure" on the overtime claims, which Plaintiffs have provided to Defendants.

### B.    Immigration and Administrative Records Are in Defendants' Possession.

Defendants claimed need to discover immigration records is no different. The immigration records here were prepared by Defendants and their agents as Plaintiffs and the Opt-in Plaintiffs worked subject to employer-based visas. *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1346 (5th Cir. 1985) (noting "visas . . . granted only on the petition of the 'importing employer'"). Defendants applied for and obtained employment-based visas and prepared a list of workers to receive the visas. Defendants also completed I-9 forms in which they copied the visa documents and kept them in their personnel files. (Ex. 3) (visas for Opt-in Plaintiffs produced by Defendants). Defendants claim to want to discover "administrative

records" because they contend they are "relevant to [the] Opt-in Plaintiffs' joint employer claims." (ECF 110-5 at 7.) Again, Defendants are claiming to "need" discovery about documents which (1) they already possess; and (2) which they know what they show as Defendants' agent completed the forms based on the visa petition Defendants approved and signed.

It is an admitted fact that Defendants petitioned for foreign workers under the employer name of South Central. (ECF No. 1 – Compl. ¶ 22, ¶ 42.) This is not an issue in dispute— Plaintiffs pled it and Defendants admitted it. (ECF No. 23 – Answer ¶ 42.) Additionally, Defendants paid Great Labor, their visa processing agent, to prepare the DS-160s they claim they want to discover.[4] (Ex. 4) (invoices from Great Labor showing flat fee for services "including completion of DS-160"); (Ex. 5) (DS-160 form for named Plaintiff produced by Great Labor showing it was prepared by a Great Labor representative). So not only is the discovery Defendants seek to compel something Defendants made, it is something that remains in their possession, custody or control. (Cf. ECF 110-5 at 8) (claiming falsely that "such relevant documents [are] directly under the control of [the] Opt-in Plaintiffs").

C.      **Employment and Unemployment Records Are Irrelevant to Overtime Wage Claims.**

Defendants do not address how employment records for any past, present or current employer have any relevance to whether Defendants should have paid the Opt-in Plaintiffs overtime wages for the work performed. Other courts have noted that non-time limited releases for prior personnel records, even where back wages are at issue, are inappropriate and overbroad. *See, e.g.*, *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 U.S. Dist. LEXIS

---

[4] Defendants' brief claims, erroneously, that because the person who filled out the form put down just one employer name on the DS-160 that the document is "uniquely probative of Opt-in Plaintiffs' employment status and representations." (ECF No. 110-5 at 7-8.) There is nothing probative about an alleged joint-employer not listing itself as an employer, particularly when it was the Defendants' agent who was paid by the Defendants to complete the DS-160 forms.

84015, at *10 (N.D. Tex. May 10, 2022) (limiting release for records that were "not time-limited and would allow CHISD to obtain employment records from any . . . previous employers"). Here, unlike an unlawful discrimination case, there are no issues as to whether an Opt-in Plaintiff "mitigated" their damages since the claims are not for wrongful dismissal but simply for lack of adequate compensation while employed, making any investigation of other employers irrelevant.

Plaintiffs have sued Defendants for their time working for Defendants. The records of Plaintiffs work are contained in Defendants' pay records. The dispute concerns the wage rate and whether overtime was owed. (ECF No. 105 at 2.) However, Defendants claim a need to investigate "employment and unemployment records" of the Opt-in Plaintiffs. (ECF No. 110-5 at 8-9.) These documents have no relevance to the wage and overtime claims at issue and Defendants' offer no explanation to even plausibly claim relevance.[5] For example, although Plaintiffs and Opt-in Plaintiffs are asserting wage claims for work with these Defendants, Defendants' brief blithely claims that they need releases to "demonstrate whether Opt-in Plaintiffs received unemployment benefits." (ECF No. No. 110-5 at 9.) This is not reasonably calculated discovery—the Opt-in Plaintiffs were working for the Defendants, a fact known to the Defendants, as they prepared and issued them wage payments. Additionally, H-2 workers are ineligible for unemployment compensation so any records related to unemployment would not exist, in addition to being fully irrelevant to the wage claims asserted here for work performed.

---

[5] Defendants list "employment status, eligibility to work, source of earnings, and the calculation of damages," ECF No. 110-5 at 8, but none of these are explained and none have any possible application here. For example, Plaintiffs and Opt-in Plaintiffs were H-2A workers – so their employment status is already known. "Eligibility to work" is not a defense to any wage claim for work actually performed—which is the case here—but nonetheless Defendants' literally possess and have produced the visas for each of these Opt-in Plaintiffs, so their eligibility to work is known to Defendants and in their possession.

9

**D.      Criminal Arrest Records Are Not Discoverable and the Release for Any Type of Criminal Record Whatsoever Should Not Be Compelled.**

Defendants claim that "criminal background information is relevant" but fail to show any reason to believe it even exists for the Opt-in plaintiffs. (ECF No. 110-5 at 9.) Criminal records are not generally discoverable unless they could be used for impeachment. *Scantland v. Jeffry Knight, Inc.*, No. 8:09-cv-1985-T-17TBM, 2010 U.S. Dist. LEXIS 148130, at *8 (M.D. Fla. Nov. 12, 2010) (denying motion to compel criminal records in FLSA independent contractor dispute except as to "criminal convictions admissible under Federal Rule of Evidence 609"). Here, Defendants seek signature on a release for "arrest records" which are not admissible and unlikely to lead to admissible evidence. "The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct … When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated." *Schware v. Board of Bar Exam'rs of the State of N.M.*, 353 U.S. 232, 241 (1957). Defendants' authorization would allow unfettered access to any arrest records, from any time period whatsoever. The claim that these are reasonably calculated and "likely to lead to the discovery of evidence," ECF No. 110-5 at 9, are based on nothing more than that Defendants' served a discovery request asking for the information. A criminal record investigation requires more. Defendants do not even argue that any Opt-in Plaintiff *has* an arrest record, but even that would be insufficiently calculated to lead to admissible evidence. Moreover, any benefit from this discovery is greatly outweighed by its intrusiveness.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel signatures on releases related to Requests for Production numbered 1 through 9 should be denied.

10

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email: jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
Email: dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email: dan@estesdavislaw.com