e.  Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26)  The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein. at the increased rate, unless the rate is further increased as provided herein.

27)  If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

a.  The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

b.  The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

c.  This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

d.  Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

e.  This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

**EXHIBIT**

**D 5 of 5**

CONFIDENTIAL                SCSCGA - 004180

f.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

CONFIDENTIAL    SCSCGA - 004181

Thus, Done and Signed this _15_ Day of _June_ 2023 together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY: _____
CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]
BY: _____

9

CONFIDENTIAL                    SCSCGA - 004182

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

_Ted Broussard favreton_ ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the _26_ day of _April_, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this _26_ day of _April_, 202_2_.

Member (Print): _Ted Broussard Fais Fui_
By: _Ted Broussard_
Title: _President_

South Central Sugar Cane Growers' Association, Inc.
By: _Christ Trout_
Title: _President_

CONFIDENTIAL                    SCSCGA - 004183

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

_Tony Richardson_ ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the _28_ day of _APRIL_, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this _28_ day of _APRIL_, 202_2_.

Member (Print): _Tony Richardson_
By: _Tony Richardson_
Title: _Owner - Operator_

South Central Sugar Cane Growers' Association, Inc.
By: _Chris Patout_
Title: _President_

CONFIDENTIAL

SCSCGA - 004184

## HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and *Tony Richards* hereinafter referred to as PRODUCER, whose mailing address is *1406 Melrose Lane N.I. 70560* represented herein by *Tony Richardson* duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1) ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2) ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately *235* acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3) ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4) ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5) ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

1

CONFIDENTIAL                    SCSCGA - 004185

6)   ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7)   PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

   a)  Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

   b)  Sugar cane acreage which contains deep ruts and deep holes.

   c)  Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

   In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8)   PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9)   PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

CONFIDENTIAL                    SCSCGA - 004186

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

CONFIDENTIAL

SCSCGA - 004187

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

CONFIDENTIAL                    SCSCGA - 004188

PRODUCER notifies the other in writing prior to February 1st of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL                    SCSCGA - 004189

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c. H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d. Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL                    SCSCGA - 004190

e. Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

a. The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

b. The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

c. This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

d. Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

e. This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

f.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

CONFIDENTIAL                    SCSCGA - 004192

Thus, Done and Signed this ___6___ Day of ___MAY___ 2022, together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY: _____
CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]
BY: _____

9

CONFIDENTIAL                    SCSCGA - 004193

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

_Ulysse Gonsoulin + Son Inc._ ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the _9_ day of _MAY_, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this _9_ day of _MAY_, 202_2_.

Member (Print): _Ulysse Gonsoulin Y Son Inc_
By: _Karen Gonsoulin_
Title: _Owner_

South Central Sugar Cane Growers' Association, Inc.
By: _Chas Pabst_
Title: _President_

CONFIDENTIAL

SCSCGA - 004194

## HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and *Ulysse Gonsoulin, Son, Inc,* hereinafter referred to as PRODUCER, whose mailing *70560* address is *4812 Jefferson Island Rd New Iberia, LA 70560* represented herein by *Kevin Gonsoulin* duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1) ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2) ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately *1,500* acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3) ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4) ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5) ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

1

CONFIDENTIAL                     SCSCGA - 004195

6)  ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7)  PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

   a) Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

   b) Sugar cane acreage which contains deep ruts and deep holes.

   c) Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

   In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8)  PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9)  PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

CONFIDENTIAL                    SCSCGA - 004196

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

CONFIDENTIAL    SCSCGA - 004198

PRODUCER notifies the other in writing prior to February 1st of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL                    SCSCGA - 004199

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c.  H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d.  Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL

SCSCGA - 004200

e. Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

    a. The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

    b. The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

    c. This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

    d. Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

    e. This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

CONFIDENTIAL                    SCSCGA - 004201

f.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

CONFIDENTIAL

SCSCGA - 004202

Thus, Done and Signed this___9___Day of___MAY_____,2022, together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY:_____

CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]

BY:_____

9

CONFIDENTIAL

SCSCGA - 004203

**MEMBERSHIP AGREEMENT**
**SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION**

_TriANgle FArm_ ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the _25_ day of _APRIL_, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this _25_ day of _APRIL_, 202_2_.

Member (Print): _TriANgle FArm_
By: _Rudy Hebert_
Title: _MANAger_

South Central Sugar Cane Growers' Association, Inc.
By: _Chris Trout_
Title: _President_

CONFIDENTIAL

SCSCGA - 004204

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

_E A W  F A R M_____ ("Member") hereby agrees to become admitted as a member of

the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the _15_ day of __June__,

202_3_

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish

the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of

combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the

maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane.

Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages,

suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members

premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees

to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and

expense arising in any way from the Member's work or operations performed on the Member's premises, including but not

limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this _15_ day of _June_, 202_3_.

Member (Print):  _EAW FARM_
By: _Eric McClay_
Title:  _OWNER_

South Central Sugar Cane Growers' Association, Inc.
By: _Chris Patel_
Title: _President_

CONFIDENTIAL                    SCSCGA - 004205

# HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and _EAW FARM_, hereinafter referred to as PRODUCER, whose mailing address is _245 Tony Barone RD Bunkie LA 7234_ represented herein by _Eric McCoy_ duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1)  ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2)  ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately _1000_ acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3)  ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4)  ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5)  ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

I

CONFIDENTIAL                    SCSCGA - 004206

6) ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7) PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

   a) Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

   b) Sugar cane acreage which contains deep ruts and deep holes.

   c) Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

   In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8) PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9) PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

CONFIDENTIAL                    SCSCGA - 004207

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

CONFIDENTIAL                     SCSCGA - 004208

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

    SCSCGA - 004209

PRODUCER notifies the other in writing prior to February 1st of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL    SCSCGA - 004210

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c. H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d. Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL                    SCSCGA - 004211

e. Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

    a. The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

    b. The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

    c. This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

    d. Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

    e. This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

CONFIDENTIAL

SCSCGA - 004212

f.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

CONFIDENTIAL

SCSCGA - 004213

Thus, Done and Signed this 15 Day of June 2023 together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY: _____
CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]

BY: _____

9

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

Dewey Domingues Southern Sugar LLC ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the __9__ day of __May__, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this __9__ day of __May__ 202_2_.

Member (Print): _Dewey Domingues Southern Sugar, LLC_
By: _____
Title: _Owner/operator_

South Central Sugar Cane Growers' Association, Inc.
By: _Chris Pabst_
Title: _President_

CONFIDENTIAL                    SCSCGA - 004215

## HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and *Dewey Dominguez* ~~Southern Sugar, LLC~~ hereinafter referred to as PRODUCER, whose mailing address is *11924 La Hwy 339 Erath, LA 70533* represented herein by *Dewey Dominguez* duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1) ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2) ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately *1500* acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3) ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4) ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5) ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

1

6)  ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7)  PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

a)  Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

b)  Sugar cane acreage which contains deep ruts and deep holes.

c)  Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8)  PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9)  PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

CONFIDENTIAL    SCSCGA - 004218

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

PRODUCER notifies the other in writing prior to February 1st of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL                    SCSCGA - 004220

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c.  H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d.  Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL                    SCSCGA - 004221

e.  Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

a.  The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

b.  The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

c.  This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

d.  Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

e.  This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

CONFIDENTIAL                    SCSCGA - 004222

f.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

Thus, Done and Signed this  9  Day of  MAY  2022, together with said Witnesses after due reading of the whole.

WITNESS

SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC.

BY:

CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]

BY:

9

CONFIDENTIAL                SCSCGA - 004224

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

Bruno Habetz, Jr. ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the 28 day of APRIL, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this 28 day of APRIL, 2022.

Member (Print): Bruno Habetz Jr
By: _____
Title: Owner

South Central Sugar Cane Growers' Association, Inc.
By: Chris Peton
Title: President

# HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and _Bruno Hebert, Jr._ hereinafter referred to as PRODUCER, whose mailing address is _603 Fortune Road, Youngsville La 70592_ represented herein by _Bruno Hebert, Jr._ duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1) ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2) ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately _250_ acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3) ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4) ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5) ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

1

6) ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7) PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

   a) Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

   b) Sugar cane acreage which contains deep ruts and deep holes.

   c) Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

   In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8) PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9) PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

CONFIDENTIAL                    SCSCGA - 004227

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

 SCSCGA - 004228

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

CONFIDENTIAL                    SCSCGA - 004229

PRODUCER notifies the other in writing prior to February 1st of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL    SCSCGA - 004230

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c.  H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d.  Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL                              SCSCGA - 004231

e. Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

a. The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

b. The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

c. This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

d. Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

e. This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

CONFIDENTIAL

SCSCGA - 004232

f. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

Thus, Done and Signed this___6___Day of__MAY_____2022, together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY:

CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]

BY:

9

CONFIDENTIAL                    SCSCGA - 004234

## MEMBERSHIP AGREEMENT
## SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION

_Blaine Tauzin Farms, LLC_  ("Member") hereby agrees to become admitted as a member of the South Central Sugar Cane Growers' Association, Inc. (the "Association") effective the ___9___ day of ___May___, 2022.

Undersigned further agrees to devote its time, efforts, and resources as deemed necessary in order to accomplish the objectives of the Association, which include the harvesting, and/or loading and unloading of sugar cane, operation of combines, tractors, trucks and equipment to harvest, load and transport cane, and the associated manual labor, including the maintenance of vehicles, implements, and mechanical equipment and trucks used in the harvesting of sugar cane. Undersigned further agrees to be bound by the articles and any bylaws entered into by the Association.

The Association agrees to indemnify, defend, and hold harmless the Member from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Association's work or operations performed on the Members premises, including but not limited to claims arising from personal injury, death, and/or damage to property. Member agrees to indemnify, defend, and hold harmless the Association from any and all claims, loss, damages, suits, judgments, and expense arising in any way from the Member's work or operations performed on the Member's premises, including but not limited to claims arising from personal injury, death, and/or damage to property.

Thus done and signed this ___9___ day of ___May___, 202_2_.

Member (Print): _Blaine Tauzin Farms, LLC_
By: _Blaine Tauzin_
Title: _Owner_

South Central Sugar Cane Growers' Association, Inc.
By: _Chris Robert_
Title: _President_

CONFIDENTIAL                    SCSCGA - 004235

## HARVESTING SERVICES AGREEMENT

This Harvesting Services Agreement (the "Agreement") is entered into by and among SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., hereinafter referred to as "ASSOCIATION", whose mailing address is 611 Irish Bend Road, Franklin, Louisiana, 70538, represented herein by Chris Patout, duly authorized, and _Blaine Teuzin, Farms LLC_ hereinafter referred to as PRODUCER, whose mailing address is _4304 Daspit Road New Iberia, La 70563_ represented herein by _Blaine Teuzin_ duly authorized, who do agree as follows:

The purpose of this agreement is to set forth the duties and responsibilities of the parties wherein ASSOCIATION shall harvest sugar cane produced by PRODUCER and haul same to Sterling Sugars raw sugar factory, owned and operated by M.A. Patout & Son Limited, LLC, or such other raw sugar factory as directed by ASSOCIATION.

1) ASSOCIATION will notify PRODUCER as to the approximate date upon which the harvesting season shall begin at least 60 days prior to the start of such harvesting season.

2) ASSOCIATION will provide and operate all harvesting and loading equipment, including cane combine, field tractors, cane carts, service trucks and trailers, and excavators if applicable, (the "Equipment") necessary to harvest approximately _100_ acres of sugar cane per year for the raw sugar factory. ASSOCIATION will determine the kind and amount of equipment needed to harvest the said sugar cane in a timely fashion and will make adjustments to the kinds of equipment needed, as necessary.

3) ASSOCIATION will provide all labor and operators necessary to manage and operate the Equipment. The labor and operators will report to and take instruction from the supervisors provided by ASSOCIATION in order to harvest and haul the sugar cane.

4) ASSOCIATION will be responsible for loading all sugar cane into cane trailers or other transportation vehicles, and for transporting the sugar cane to the raw sugar factory including picking up cane spillage at loading sites. PRODUCER shall provide a load identification for each load sufficient for the sugar factory to assign the load with the PRODUCER.

5) ASSOCIATION will confer with PRODUCER in order to determine harvesting and chemical ripening application schedules prior to each harvest season to which this agreement shall apply. PRODUCER will provide field maps to assist ASSOCIATION in determining ripener and harvest schedules. Accurate field and tract data as to crop size and condition necessary for ripener application and harvest scheduling shall be timely provided by the PRODUCER.

1

CONFIDENTIAL   SCSCGA - 004236

6) ASSOCIATION will assign PRODUCER to a harvest group with other producers, and a harvest schedule will be determined between ASSOCIATION and members of the harvest group to which Producer is assigned, provided, however, that ASSOCIATION shall have the right to make the final decision as to the makeup of members to a certain harvest group. ASSOCIATION will be responsible for coordinating meetings among the harvest group members.

7) PRODUCER shall identify and notify ASSOCIATION, at least 30 days prior to the start of a harvesting season, of the following sugar cane field conditions:

   a) Sugar cane acreage which may warrant consideration for early harvest because of poor soil or drainage conditions.

   b) Sugar cane acreage which contains deep ruts and deep holes.

   c) Sugar cane acreage with low tonnage per acre for any reason, such as excessive weed infestation, diseased, or damaged sugar cane.

   In the event that the sugar cane yield is expected to be less than 25 tons per acre on a particular tract or tracts, the ASSOCIATION, at its expense will engage a crop consultant to determine a projected yield of sugar cane per acre. If the crop consultant engaged by ASSOCIATION determines a projected yield of less than 20 tons of cane per acre, ASSOCIATION will have the right to refuse to harvest the cane on the tract for which the crop projection is issued and will not be under obligation to harvest the sugar cane unless the ASSOCIATION and PRODUCER agree on a price per ton of cane for the cost of harvesting such cane.

8) PRODUCER will provide sugar cane loading sites suitable for normal loading of sugar cane which sites must be within 2 miles of the harvest operation for each tract harvested. If, in the sole opinion of ASSOCIATION, a loading site is not suitable for loading sugar cane such determination will be communicated to PRODUCER by ASSOCIATION. If PRODUCER fails to make necessary improvements to the site in a timely manner, ASSOCIATION will make the necessary improvements to make the loading site suitable and will charge PRODUCER the cost incurred in making the site suitable. Any loading site not within 2 miles of the harvesting operation must be communicated to the ASSOCIATION prior to the start of the harvest season.

9) PRODUCER shall keep all public and private roads in and out of all sugar cane loading sites, free and clear of all mud and other sugar cane debris. PRODUCER shall utilize its employees and farm equipment to maintain these roads in such clear condition. In the event that ASSOCIATION is required to clean roadways by law enforcement officials, the ASSOCIATION shall be entitled to charge PRODUCER a reasonable fee for the service and shall have the right to move to another location until roads are clear. If such

2

CONFIDENTIAL                    SCSCGA - 004237

a move is required, the PRODUCER will incur all cost whatsoever incurred for the move based on all actual costs for such move.

10) PRODUCER will be responsible for providing accurate tract identification for each truck load of sugar cane leaving a loading site. The raw sugar factory scale house will be responsible for producing peel-off labels with PRODUCER'S Tract IDs with barcodes. It is the PRODUCER's responsibility to coordinate with the sugar mill scale house to obtain these labels on a daily basis. One label will be provided for each truck load.

11) PRODUCER, at its own discretion, will determine if and when to burn sugar cane fields, whether the burning is of standing cane or residual material after harvest. ASSOCIATION will not participate in burning activities, and PRODUCER shall be solely responsible for and shall defend, indemnify, and hold ASSOCIATION harmless from any such burning activity, including any court costs and attorney fees in the event such burning activities result in litigation involving ASSOCIATION or Patout Equipment Company, LLC.

12) PRODUCER will annually execute any and all documents necessary so that ASSOCIATION will remain in full compliance with the H2A Immigration Program necessary to perform harvesting services.

13) ASSOCIATION will have the right to transport sugar cane to any of the M. A. Patout & Son Limited, L.L.C. raw sugar factories for processing, or to such other raw sugar factory deemed necessary by ASSOCIATION. ASSOCIATION will provide advance notification to PRODUCER as to the raw sugar factory to which the sugar cane is to be delivered.

14) PRODUCER, as may be requested by the ASSOCIATION from time to time, will be responsible for providing field equipment and labor to assist ASSOCIATION in extremely muddy field conditions such as furnishing push tractors and operators necessary to move the harvesting equipment in and out of the field being harvested.

15) PRODUCER shall be solely responsible for placing "Sugarcane Loading Site" signs on all roadway entrance and exit sites at times sugarcane is being transported from these sites. These signs will include flashing caution lights for evening transporting activities.

16) ASSOCIATION'S work performed pursuant to this Contract is part of PRODUCER'S trade, business, or occupation. As such, ASSOCIATION'S work constitutes an integral part of PRODUCER'S business necessary to generate PRODUCER'S goods, products, and services. The parties recognize ASSOCIATION as the statutory employer of PRODUCER'S employees; and ASSOCIATION'S legal status as a statutory employer in no way affects PRODUCER'S status as an independent ASSOCIATION, nor does it give ASSOCIATION the right to control the operations of PRODUCER or its employees and agents, except as to the results to be obtained under this Contract.

3

CONFIDENTIAL                    SCSCGA - 004238

17) PRODUCER'S work performed pursuant to this Contract is part of ASSOCIATION'S trade, business, or occupation. As such, PRODUCER'S work constitutes an integral of ASSOCIATION'S business necessary to generate ASSOCIATION'S goods, products, and services. The parties recognize PRODUCER as the statutory employer of ASSOCIATION'S employees; and PRODUCER'S legal status as a statutory employer in no way affects ASSOCIATION'S status as an independent ASSOCIATION, nor does it give PRODUCER the right to control the operations of ASSOCIATION or its employees and agents, except as to the results to be obtained under this Contract.

18) PRODUCER shall insure and maintain, at its expense, during the time of this Agreement, or any extension hereof, commercial general liability insurance issued by insurers authorized to do and doing business in Louisiana with limits of liability of no less than $1,000,000.00 per occurrence. PRODUCER shall furnish ASSOCIATION with a certificate of insurance and shall furnish ASSOCIATION with a copy of such policy. The policy must contain a waiver of subrogation and shall provide that the policy shall not be canceled without thirty days written notice to ASSOCIATION.

19) PRODUCER shall indemnify, defend, and hold harmless ASSOCIATION and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of PRODUCER.

20) ASSOCIATION shall indemnify, defend, and hold harmless PRODUCER and any or all of the agents, directors, officers, employees, and servants from any and all costs, fees and liabilities arising out of claims, demands, suits, or actions by whomsoever made, including, but not limited to, claims, demands, suits, or actions for bodily injury, illness, disease, death, loss of or damages to property, including loss of, or damage to property of others, or loss of services or wages which may be brought caused by the negligent or willful act of ASSOCIATION.

21) ASSOCIATION and PRODUCER shall not permit anyone, including landowners, producers, and employees of producer or ASSOCIATION to hunt in any areas within a one-mile radius of any tract to be harvested pursuant to this Agreement at any time while harvesting activities are in progress on any such tract.

22) This Agreement will commence on September 1, 2022, or on the first day of harvest for the 2022 sugar cane harvest season, whichever is earlier and will end at the completion of the 2022 harvest season or January 15, 2023, whichever is later. This Agreement will automatically extend for each succeeding harvest season unless ASSOCIATION and/or

4

CONFIDENTIAL                    SCSCGA - 004239

PRODUCER notifies the other in writing prior to February 1ˢᵗ of the succeeding year the intent not to renew this agreement.

In the event the Federal H2A Immigration program is eliminated, or for any reason whatsoever unavailable to ASSOCIATION, this agreement between ASSOCIATION and PRODUCER shall be terminated immediately upon the occurrence of such event.

23) In the event of a force majeure, such as storm, flood, freeze, strikes, mechanical breakdown, raw sugar factory breakdown, public health emergency or actions and/or orders issued by a civil authority due to which ASSOCIATION is not able to perform the responsibilities set forth in this agreement during or because of the force majeure event, or if pursuant to a freeze the sugar cane cannot be economically processed so as to produce marketable sugar, then ASSOCIATION shall not be required to harvest or haul the sugar cane subject to this agreement.

24) ASSOCIATION shall provide to PRODUCER the harvesting services described hereinabove, pursuant to the terms and conditions set forth herein:

25) Beginning with crop year 2022, the harvest rate charged by ASSOCIATION will be $180.00 per harvested acre or if the 3-year rolling average sugar cane yield per acre equals or exceeds 33.5 tons then the harvest rate will be a flat $5.30 per ton of cane.

Harvest rate calculations will be determined as follows:

a. Harvested acres - The reported quantity of cane acres per FSA Form 578 for each crop year. Those reported acres will identify seed cane acreage utilized. The sum of total sugar cane acres less seed cane acres will be the total harvested acres. Producer will provide complete and accurate copies of these reports and they will remain on file with ASSOCIATION beginning with the 2020 crop. Harvested acreage calculations will be carried out to one decimal position, (for example, 150.2). Utilization of reports and maps from sources other than from FSA can only be used if deemed acceptable by ASSOCIATION.

b. Average Sugar Cane Yield Per Acre - This average will consist of a PRODUCER'S rolling 3-year simple average of sugar cane tonnage yield per acre (crop year) based on harvested acres defined above. For all PRODUCERS we will begin with 2022 crop harvested acres. For the 2022 crop the average sugar cane tonnage yield per acre will be the simple average for the 2020 and 2021 crops. Beginning with the 2023 crop the harvest rate will be based on the rolling 3-year simple average of sugar cane tonnage yield per acre for the 2020, 2021, and 2022 crop years as determined by sugarcane acreage and tonnage harvested by ASSOCIATION. For each crop year, the average sugar cane tonnage yield per acre calculation will be carried out to one decimal position. For the rolling 3-year simple average calculation the result or average will be rounded up or down to the nearest whole number. A .5 result or

5

CONFIDENTIAL                    SCSCGA - 004240

higher will round up to nearest whole number and a result below .5 will round down to nearest whole number. As an example, assume the following:

| | |
|---|---|
| Crop year 2020 – average yield per acre | 33.7 |
| Crop year 2021 – average yield per acre | 33.4 |
| Crop year 2022 – average yield per acre | 33.3 |
| Rolling Three Year Simple Average | 33.5 |

In this example the 3-year average yield per acre will be 34 tons per acre and would result in harvest rate for the 2023 crop year of $5.30 per ton of cane. The 2022 harvest rate calculation will be the same, but we will only use a 2-year crop year average (2020 & 2021) for the calculation.

c.  H2A Labor Rate – The revised harvest rate for the 2022 crop is based on an hourly labor rate of $11.83 as established in January of 2020. For the 2023 harvest rate and for each year thereafter ASSOCIATION reserves the right to increase the harvest rate to subsidize the increase labor cost moving forward including the forth coming year. For example, a labor rate increased announced in January 2023 can result in an increase in harvest rate for 2023. If a rate increase is implemented, it must be announced no later than January 15th of the upcoming crop year. For example, an increase of $.50 cents in the hourly labor rate to $12.33 would result in an increase of $2.38 per acre. The revised harvest rate will be $182.38 ($180.00 + $2.38). The harvest rate per ton of cane charge would increase by $.07 cents to $5.37 ($5.30 + $.07).

d.  Off-Road Diesel Cost – the harvest rate for the 2022 crop will be set on a based price of $2.00 per gallon for off-road diesel. For the 2023 harvest rate and for each year thereafter ASSOCIATION will increase or decrease the harvest rate fuel component based on the rolling 4-year weighted average (2019-2022) cost of off-road diesel fuel by the amount over or under the base of $2.00 per gallon. This component rate adjustment and revised harvest rate will be announced no later than January 15th of the upcoming crop year. For example, if for the 2023 crop, the rolling 4-year weighted average cost of diesel fuel is $2.20 (2019-2022), then the increase in cost over $2.00 per gallon is $0.20 cents. In this case, the harvesting rate will increase by $2.77 per acre to $182.77 ($180.00 + $2.77). On a per ton of cane bases the harvesting rate will increase $0.08 cents per ton to $5.38 ($5.30 + $0.08).

6

CONFIDENTIAL

SCSCGA - 004241

e. Harvest Rates and Lender Waivers. Each PRODUCER'S harvest rate will be established based on the provisions set forth above. This rate will be calculated in advance of each crop year and submitted to the lender no later than February 1st each year. This per ton rate or the $5.30 whichever is applicable will be set up for each producer in the cane payment system. The weekly harvest cost will be deducted from payments to the PRODUCER accordingly as it has been done historically. That is on a per ton of cane basis, either at $5.30 per ton of cane or calculating a per ton of cane rate by dividing $180.00 per acre by the PRODUCER average yield per acre.

26) The PRODUCER shall have until February 1st of the year after notification to advise ASSOCIATION in writing of the PRODUCER'S intent not to renew the HARVESTING SERVICES AGREEMENT, otherwise this agreement shall be renewed under the same terms and conditions, but at the increased rate set. Thereafter, this agreement will be renewed annually, as provided herein, at the increased rate, unless the rate is further increased as provided herein.

27) If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable, or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

28)

a. The parties acknowledge that they have read this Agreement and understand this Agreement; that the parties have been represented by counsel in connection with the negotiation of this Agreement who has explained the terms of the Agreement; and that this Agreement contains the entire agreement and understanding of the Parties.

b. The Parties further acknowledge that this Agreement cannot be waived, modified, or altered except by written agreement signed by all Parties.

c. This is the complete and final agreement between the parties and supersedes all prior or contemporaneous agreements, negotiations, or discussions with respect to such subject matters.

d. Photocopies of executed originals of this Agreement shall have the same force and effect and shall be as legally binding and enforceable as the original.

e. This Agreement has been reviewed by all parties, and all Parties have approved it as to form and content. Accordingly, this Agreement shall be deemed to have been jointly drafted by the Parties, collectively and individually, for the purposes of applying any rule of construction to the effect that ambiguities are to be construed against the draftsperson.

7

CONFIDENTIAL                    SCSCGA - 004242

f. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Louisiana.

[LEFT INTENTIONALLY BLANK]

[Signatures on Next Page]

8

CONFIDENTIAL      SCSCGA - 004243

Thus, Done and Signed this 9 Day of May 2022, together with said Witnesses after due reading of the whole.

SOUTH CENTRAL SUGAR CANE
GROWERS' ASSOCIATION, INC.

WITNESS

BY: _____
CHRIS PATOUT
PRESIDENT

WITNESS

[PRODUCER]
BY: _____

9

CONFIDENTIAL                    SCSCGA - 004244