# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| FELIPE DE JESUS AVILA-SOTO, ET AL. | * | CIVIL ACTION NO.  6:24-CV-01392 |
| | * | |
| | * | JUDGE ROBERT R. SUMMERHAYS |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE CAROL B. |
| SOUTH CENTRAL SUGAR CANE | * | WHITEHURST |
| GROWERS' ASSOCIATION, INC., ET AL. | * | |
| | * | |
| | * | |

**PHELPS DUNBAR LLP**

Brandon E. Davis Bar Roll No. 29823
Molly McDiarmid Bar Roll No.  36426
Jennifer Clewis Thomas (*Admitted Pro Hac Vice*)
Andrew M. Albritton Bar Roll No. 39780
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com
andrew.albritton@phelps.com

**ATTORNEYS FOR DEFENDANTS, SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. AND STERLING SUGAR, LLC**

PD.61031762.1

## TABLE OF CONTENTS

I.      BACKGROUND. ................................................................................................1

II.     LEGAL STANDARD..........................................................................................6

III.    ARGUMENT.......................................................................................................7

  A.    Plaintiffs' FLSA claim fails because their employment was subject to the agricultural exemption. .........................................................................7

     1.    South Central is engaged in agriculture. .......................................7
     2.    The duties performed by Plaintiffs, as approved in the Job Orders authorized by the Department of Labor, qualify as agricultural labor. ....................................................................8
     3.    Plaintiffs' FLSA reimbursement claim fails. ...............................10

  B.    Sterling did not employ any Plaintiff or putative class member...........11

  C.    Plaintiffs' breach of contract claim fails because Defendants complied with the binding terms of the Job Orders.................................14

     1.    The undisputed material facts do not show a breach of Plaintiffs' employment contracts. ...........................................15
     2.    Plaintiffs' duplicative theories of breach must be dismissed for the same reasons as their underlying claims. ......................17

  D.    Plaintiffs' LWPA claim fails because Plaintiffs were paid all wages owed to them timely...............................................................................18

IV.     CONCLUSION..................................................................................................19

CERTIFICATE OF SERVICE ........................................................................................20

i

## TABLE OF AUTHORITIES

*1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4th Cir. 1986) ..................................................................................................................................15

*Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904, 904-05 (5th Cir. 1973) ................................................ 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ............................................................6

*Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002).....................15

*Barousse v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, 2001 WL 872844, at *3 (5th Cir. July 10, 2001). ................................................................................................................7

*Brown v. Amesbury Mgmt., LLC*, No. CV 22-675-JWD-EWD, 2025 WL 936654, at *13 (M.D. La. Mar. 27, 2025)................................................................................................................................13

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) ............6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ........................................................................6

*Dillon v. Toys R Us*, Case No. 2016-CA-0983, 2017 WL 2351490, at *5 (La. App. 4 Cir. May 31, 2017) ...............................................................................................................................................18

*Foulston Siefkin LLP v. Wells Fargo Bank of Texas N. A.,* 465 F.3d 211, 214 (5th Cir. 2006) .....6

*Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) ......................................................................12

*Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33 (1961) .........................................................12

*Hercules Machinery Corp. v. McElwee Bros., Inc.*,

    2002 WL 31015598 at *9 (E.D. La. Sept. 2, 2002) .................................................................15

*Kisor v. Wilkie*, 588 U.S. 558 (2019)..............................................................................................16

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ....................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).............................13

*McElrath Poultry Co. v. N.L.R.B.*, 494 F.2d 518, 518 n.1 (5th Cir. 1974)......................................9

*NLRB v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969)...............................................9

*Poindexter v. U.S. ex rel. Corps of Engineers*,

    2008 WL 2743891, at *3 (W.D. La. July 11, 2008) .................................................................6

ii

*Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ...............................................................7

*Rule v. S. Indus. Mech. Maint. Co.,* No. 5:16-CV-01408, 2019 WL 2881545, at *6 (W.D. La. July 3, 2019 ......................................................................................................................12

*Salas-Mateo v. Ochoa*, No. 03-14357-CIV, 2004 WL 1824124 (S.D. Fla. Mar. 26, 2004) .........17

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985) ........15

*Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) ............7

*Steak v. Hat World, Inc.*, 191 So. 3d 712, 715 (La. App. 4 Cir. 2016) .........................................18

*Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) ....................................................13

*Teche Vermilion Sugar Cane Growers Ass'n Inc. v. Su*, 749 F. Supp. 3d 697 (W.D. La. 2024), *opinion clarified*, No. 6:23-CV-831, 2024 WL 4729319 (W.D. La. Nov. 7, 2024), and *amended,* No. 6:23-CV-831, 2025 WL 1969937 (W.D. La. July 16, 2025) ..........................16

*Weeks v. Bottling Grp. LLC*, No. PE:21-CV-00066-DC-DF, 2022 WL 1523634, at *8 (W.D. Tex. May 13, 2022) .....................................................................................................................12

*Williams v. Nation Star Mortg., LLC,* No. CV 19-663-BAJ-SDJ, 2021 WL 7286010, at *4 (M.D. La. July 2, 2021) ...................................................................................................................12

*Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) .............................................................12

20 C.F.R. § 655.103 ................................................................................................... PASSIM

20 C.F.R. § 655.120 ....................................................................................................3,15,16

20 C.F.R. § 655.121 ..............................................................................................................17

20 C.F.R. § 655.181 ...........................................................................................................6,14

20 C.F.R. § 655.1292 ..............................................................................................................3

26 C.F.R. § 31.3121(G) ................................................................................................... 7,8,9

29 C.F.R. § 780.103 ...............................................................................................................8

29 C.F.R. § 780.130 .........................................................................................................2,7,8

29 U.S.C. § 213(A)(6) ...........................................................................................................7

29 U.S.C. § 203(f) .................................................................................................................8

29 U.S.C. § 780.105 ..............................................................................................................8

iii

Fed. R. Civ. P. 56(c) ...................................................................................................1,6,11

iv

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **FELIPE DE JESUS AVILA-SOTO, ET AL.** | * | **CIVIL ACTION NO.  6:24-CV-01392** |
| | * | |
| | * | **JUDGE ROBERT R. SUMMERHAYS** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE CAROL B.** |
| **SOUTH CENTRAL SUGAR CANE** | * | **WHITEHURST** |
| **GROWERS' ASSOCIATION, INC., ET** | * | |
| **AL.** | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION AND**
**STERLING SUGARS LLC'S MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, come Defendants, South Central Sugar Cane Growers' Association, Inc. ("South Central") and Sterling Sugars, LLC ("Sterling") (collectively "Defendants"), and pursuant to Federal Rules of Civil Procedure 56, submit this Memorandum in Support of Motion for Summary Judgment, and would show unto the Court the following:

## I.    BACKGROUND.

Plaintiffs, Felipe de Jesus Avila-Soto and Felipe de Jesus Saurez Palafox ("Plaintiffs") were employed by South Central as heavy tractor-trailer truck drivers pursuant to H-2A visas between 2022 and 2025.[1]  It is undisputed that South Central is an agricultural association incorporated under the laws of the state of Louisiana, consisting of member farms who grow sugarcane.[2] South Central works in the sugarcane industry and is an agricultural employer that complied with regulatory protocols when obtaining Temporary Employment Certification from

---

[1] R. Doc. 115 ¶¶ 12, 13.

[2] Defendants' Statement of Undisputed Material Facts, *attached hereto* as Ex. "A", at ¶¶ 1-3, 5.  Defendants are awaiting executed authorizations from Plaintiffs pursuant to R. Doc. 117, and reserve the right to supplement this Motion upon receipt of those authorizations and records.

the U.S. Department of Labor to employ Plaintiffs in H-2A status.[3] It is also undisputed that South

Central is an "association" for purposes of being classified as an "fixed site employer" when

submitting an Application for Temporary Employment Certification.[4] It is also undisputed that a

"farmer" is eligible to engage in farming operations based on federal regulations that apply in this

case.[5]

Avila-Soto and Suarez-Palafox worked as truck drivers hauling harvested sugarcane from

South Central member farms to the sugar mill operated by Sterling Sugars.[6] Avila-Soto worked

for South Central for only one season in 2022, and has not worked for South Central since

concluding the 2022 season.[7] Suarez-Palafox worked for South Central in the 2022, 2023, 2024

and 2025 seasons.[8]

In order to work for South Central, Plaintiffs were required to accept the terms and

conditions of employment explained in South Central's Job Orders and Temporary Employment

Certification(s).  In fact, Plaintiffs relied on those agency determinations when applying for H-2A

visas to work for South Central in the United States between 2022 and 2025.[9]  At the time periods

relevant to this case, Plaintiffs performed their contracts from season to season and delivered

services including:

> [O]perating and performing routine servicing of trucks and
> equipment to transport sugarcane from various worksites, in
> connection with the harvesting of a perishable crop, from the fields
> to the mill and from the factory parking and staging areas to the mill
> operating tractor-trailer combination; deliver[ing] sugarcane to

---

[3] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 4-5.
[4] 20 C.F.R. § 655.103(c). *See also* Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 5.
[5] 29 C.F.R. § 780.130.
[6] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 3.
[7] R Doc. 115, ¶ 12.
[8] R. Doc. 115, ¶ 13.
[9] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 20-23.

2

designated    locations    (without    leaving    tractor-trailer combination)[.][10]

Contrary to Plaintiffs' assertions, the undisputed material facts show Defendants never made classification decisions about Plaintiffs. As a matter of law, the U.S. Department of Labor ("DOL") determines the job classification that applies to Temporary Employment Certification. The government also determines the AEWR.[11] The DOL approved South Central's Application for Temporary Employment Certification from year to year, assigning the job title of Heavy and Tractor-Trailer Truck Drivers on the Job Orders for each of the years in question in this case. Critically, the Department of Labor has not revoked any of the ETA Form-790(s) that it has certified since 2022. Plaintiffs affirmed these certifications when they told the U.S. Department of State that they were eligible to receive H-2A visas. The ETA Form-790(s) that the DOL issued to South Central are legally binding employment contracts.[12] Despite agreeing to those terms, performing them for at least three seasons (with respect to Saurez-Palafox), and using those visas year-to-year to make lawful admissions to the United States in H-2A status, Plaintiffs now seek to void those contracts and be paid according to terms that did not apply when these contracts were made and performed.

Plaintiffs seek to represent a collective of individuals under the Fair Labor Standards Act ("FLSA") comprising H-2A temporary foreign workers who were employed by South Central as

---

[10] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 20.

[11] 20 C.F.R. § 655.1292. H-2A employers must pay H-2A workers the highest of the AEWR, any collectively bargained wage rate, the state or federal minimum wage, or the state prevailing wage for that crop or occupation. 20 C.F.R. § 655.120.

[12] *See* 20 C.F.R. § 655.103(b) (defining "Work contract" as "All the material terms and conditions of employment relating to wages, hour, working conditions, and other benefits, including those required by 8 U.S.C. 1188, 29 CFR part 501, or this subpart[…] In the absence of a separate written work contract incorporating the required terms and conditions of employment, agreed to by both the employer and the worker, the work contract at a minimum will be the terms and conditions of the job order and any obligations required under 8 U.S.C. 1188, 29 CFR part 501, or this subpart."); *see also* R. Doc. 115, ¶ 85.

3

PD.61031762.1

heavy tractor-trailer truck drivers between 2022 and 2025.[13] Plaintiffs say they were misclassified as exempt agricultural workers under the H-2A program, which "allows employers who meet specific regulatory requirements to bring foreign workers to the United States to fill temporary agricultural jobs."[14] They accuse South Central of making "false representations to the United States government" by Defendant South Central to improperly employ Plaintiffs as agricultural workers, when they should have been classified as non-agricultural H-2B workers who would receive overtime for driving "trucks over public roads to the sugar mill operated by Defendant Sterling Sugars, LLC."[15] Plaintiffs claim that this would have entitled to overtime wages for hours worked over 40 in a workweek.[16]

Notwithstanding Plaintiffs' repeated applications to work for South Central and acceptance of the terms of those contracts, Plaintiffs now challenge the terms of their employment contracts (the "Job Orders") and assert a claim for breach of contract under Louisiana law on behalf of a class of individuals under Rule 23.[17] Plaintiffs also purport to represent a Rule 23 class of individuals allege claims under the Louisiana Wage Payment Act ("LWPA"). Plaintiffs allege that Defendants breached the terms of the Job Orders by failing to pay the required rate and overtime wages.[18] Under the LWPA, Plaintiffs allege that Defendants failed to pay them the wages due under the terms of their employment contracts within 15 days of resignation or discharge.[19] None of the allegations are supported by fact or law.

Although Plaintiffs acknowledge that South Central is the only employer whose name appears on their H-2A visas, Plaintiffs also named Sterling, alleging that "it was a joint employer

---

[13] R. Doc. 115, ¶ 62.
[14] R. Doc. 115, ¶ 27.
[15] R. Doc. 115, ¶¶ 2, 49.
[16] R. Doc. 115, ¶ 79.
[17] R. Doc. 115, ¶ 90.
[18] R. Doc. 115, ¶ 87.
[19] R. Doc. 115, ¶ 91.

4

[] within the meaning of the FLSA and H-2A regulations" and that South Central was "acting as an agent of Defendant Sterling Sugars, LLC."[20]  Sterling is a corporation organized under the laws of the state of Louisiana and specializes in the processing of Louisiana raw sugar for sale to refineries in Louisiana for preparation for market.[21] Sterling operates a sugar mill in Franklin, Louisiana, to which some sugarcane farmers in the area deliver harvested sugarcane.[22] Sterling provides a limited set of management services for South Central pursuant to the explicit terms of a Management Services Contract, which was in place for the entire time period of the claims in this lawsuit (2022-2025).[23] Sterling was not the employer of any plaintiff, and it in fact, has not employed any workers through the H-2A program since 2021.[24]

When directly confronted with the "false representations" allegation from Paragraph 2 of their Complaint, Plaintiffs conceded they have no actual knowledge of any false statements Defendants made to the U.S. government.[25] That admission, juxtaposed with the clear, undisputed facts, indicate Defendants are entitled to summary judgment on Plaintiffs' claims as a matter of law.  Plaintiffs' FLSA claim fails because Plaintiffs were properly classified as exempt agricultural workers by the U.S. government. The fact that Plaintiffs used that determination to lawfully enter the United States in H-2A status is an independent reason that Plaintiffs' claims lack the type of rational basis required by the Federal Rules of Civil Procedure because Plaintiffs admit they maintained lawful status in the United States.

Defendants are similarly entitled to summary judgment on Plaintiffs' breach of contract claim because (1) the Department of Labor lawfully established the terms and conditions of

---

[20] R. Doc. 115, ¶¶ 25-26, ¶ 84.
[21] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 8.
[22] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 3, 8.
[23] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 10-11.
[24] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 9.
[25] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 26-27.

5

employment, (2) Plaintiffs repeatedly accepted and performed the terms expressed in the Job Orders, and (3) the Job Orders have never been revoked by the federal government.[26] Plaintiffs' LWPA claim fails because they were properly paid all wages due and owing to them. And claims against Sterling further fail because Plaintiffs admit their employment contracts were binding, and Sterling was never a party to those contracts. Sterling was not an "employer" of Plaintiffs at any time, and Plaintiffs have not made a sufficient showing to establish that there is any joint employment relationship between South Central and Sterling.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law."[27]  Under Rule 56, the question is whether the record evidence provides a viable basis for relief.[28]  This question is answered by determining whether there are genuine issues as to any material facts.[29]  To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial."[30]  To be a "genuine" issue, sufficient evidence must be presented by the non-moving party "such that a reasonable jury could return a verdict" in the non-moving party's favor.[31]  A factual issue is "material only if its resolution could affect the outcome of the action[,]"[32] and "conclusory

---

[26] *See* 20 C.F.R. § 655.181.

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Poindexter v. U.S. ex rel. Corps of Engineers*, 2008 WL 2743891, at *3 (W.D. La. July 11, 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is proper when the evidence before the Court "shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law.")).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[29] Fed. R. Civ. P. 56(c).

[30] *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N. A.,* 465 F.3d 211, 214 (5th Cir. 2006).

[31] *Poindexter*, 2008 WL 2743891, at *3 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[32] *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).

6

allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's

burden in a motion for summary judgment."[33]  The existence of an immaterial factual dispute is

also insufficient.[34]  If there is no genuine issue of material fact, as a matter of law, summary

judgment may be rendered in the prevailing party's favor.[35]

## III.     ARGUMENT

### A.     Plaintiffs' FLSA claim fails because their employment was subject to the agricultural exemption.

Nearly all of Plaintiffs' claims are based on the faulty premise that they were entitled to

the wage and hour protections of the FLSA, but as a matter of law and fact, Plaintiffs were exempt

from those provisions. The FLSA exempts "any employee employed in agriculture."[36] Plaintiffs

were engaged in and employed in agriculture, and South Central is a "farm" under applicable

regulations, and so the FLSAs overtime requirements are inapplicable here.

### 1.     South Central is engaged in agriculture.

The undisputed material facts show that South Central is a "farm" engaged in agriculture.

The definition of the term "farm" is found in 26 C.F.R. § 31.3121(g)-1(a)(1), which provides that:

> The term "farm" as used in the regulations in this subpart includes
> stock, dairy, poultry, fruit, fur-bearing animal, and truck farms,
> plantations, ranches, nurseries, ranges, orchards, and such
> greenhouses and other similar structures as are used primarily for
> the raising of agricultural or horticultural commodities.

"The term 'farmer' . . . is not confined to individual persons. Thus, *an association,* a partnership,

or a corporation which engages in actual farming operations may be a 'farmer.'"[37] Moreover, the

---

[33] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotations omitted).
[34] *Barousse v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, 2001 WL 872844, at *3 (5th Cir. July 10, 2001).
[35] *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).
[36] 29 U.S.C. § 213(a)(6).
[37] 29 C.F.R. § 780.130 (emphasis added).

7

operator of a farm means an owner, tenant, or other person, in possession of a farm and engaged in the operation of such farm.[38]

It is undisputed that South Central is an association of member farms which are the growers of agricultural commodities (namely sugarcane).[39] It is thus "an association . . . which [is] engage[d] in actual farming."[40] Its members qualify as fixed-site employers that own and/or operate the worksites in question. They are the actual growers of the agricultural commodities that are being hauled. Because South Central is thus a "farm" for purposes of the FLSA, and so it is engaged in agriculture, the FLSA's overtime requirements do not apply.

### 2. The duties performed by Plaintiffs, as approved in the Job Orders authorized by the Department of Labor, qualify as agricultural labor.

"Agriculture" under the FLSA includes:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, *delivery to storage or to market* or to carriers for transportation to market.[41]

This definition "has two distinct branches. One has relations to the primary meaning of agriculture; the other gives to the term a somewhat broader secondary meaning for purposes of the Act."[42] The secondary meaning includes "any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations."[43]

---

[38] 26 C.F.R. § 31.3121(g)-1(e)(2).
[39] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 1-5.
[40] *See* 29 C.F.R. § 780.130.
[41] 29 U.S.C. § 203(f); 29 C.F.R. § 780.103.
[42] 29 U.S.C. § 780.105(a).
[43] 29 U.S.C. § 780.105(c).

8

That broader, secondary meaning covers the work of driving trucks transporting unfinished agricultural product, as is the case with the plaintiffs here. The Fifth Circuit in 1973 held that employees who were comprised of (1) truck drivers delivering ingredients to a feed mill, (2) operators of the mill, and (3) drivers who transported the feed to the farm's poultry raiser were all included within the FLSA's definition of agriculture because all of those operations were part of the farming venture of raising poultry.[44]

Further instructive is the definition of "agricultural labor" under the Internal Revenue Code ("IRC").[45] The code authorizing H-2A workers for performing agricultural work instructs that such work includes both the FLSA definition of "agriculture" and the definition of "agricultural labor" under the IRC.[46] That definition encompasses numerous types of agricultural labor, work performed "in the employ of a group of operators of farms (other than a cooperative organization)," including "delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity," so long as "such operators produced all of the commodity with respect to which such service is performed."[47]

In this case, South Central is a non-profit agricultural association, not a cooperative organization. It is an association of member farms, each of which have operational control over their respective farms and grow all of the commodity sold from their farms.[48] The member farms of South Central grow and own all of the commodity sold from their farms.[49] The raw sugarcane products transported by Plaintiffs were transported from the farms to the mill in an unmanufactured

---

[44] *Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904, 904-05 (5th Cir. 1973). *See also McElrath Poultry Co. v. N.L.R.B.*, 494 F.2d 518, 518 n.1 (5th Cir. 1974); *but see NLRB v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969)).
[45] 26 CFR § 31.3121(g).
[46] 20 C.F.R. § 655.103(c).
[47] 26 U.S.C. § 3121(g)(4)(A)–(B).
[48] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 1-5.
[49] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 6.

9

state for further processing.[50] Plaintiffs did not transport sugar from Sterling Sugars.[51] As employees of South Central, Plaintiffs were thus employed by an agricultural employer and engaged in agricultural labor, and so they were subject to the agricultural exemption of the FLSA.

Because Plaintiffs were engaged in agriculture under the FLSA and agricultural labor under the IRC, they are not entitled to the wage and hour protections sought in this lawsuit, and so their FLSA claim must be dismissed.

### 3.    Plaintiffs' FLSA reimbursement claim fails.

In their complaint, Plaintiffs alleged that Defendants violated the FLSA's minimum wage provision by failing to reimburse Plaintiffs and others similarly situated for certain pre-employment expenses they incurred, effectively reducing wages below the minimum wage for the first workweek.[52] As an initial matter, Plaintiffs concede that any such claim is limited to the first workweek only.  Second, Plaintiffs did not move for collective action treatment of this claim, so Plaintiffs' FLSA collective action allegations relating to minimum wage allegations must be dismissed.[53] Third, Plaintiffs have come forward with no evidence to show entitlement to these expenses.  Many of Plaintiffs' sought after expenses are not required to be paid by the terms of Plaintiffs' Job Orders, discussed below.  Moreover, Plaintiffs have no evidence of these expenses. For example, Saurez-Palafox is attempting to claim reimbursement for out-of-pocket expenses associated with his license, physical, visa photographs and Mexican passport.[54]  Suarez-Palafox admitted that he had no receipts for obtaining or renewing his passport, or obtaining his license or

---

[50] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 8, 21.
[51] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 3, 8. For the same reasons, Sterling is also engaged in "agriculture" under the definitions of the FLSA. Sterling is engaged in the processing of unfinished raw sugar and preparing it for market. Thus, though Sterling was not the employer of any plaintiff, it, too engaged in "agriculture."
[52] R. Doc. 115, ¶ 77-78.
[53] R. Docs. 42, R. Doc. 45 n.14.
[54] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.

10

visa photographs.[55] Saurez-Palafox testified that he never asked South Central to reimburse him for these expenses.[56] Thus, the undisputed evidence shows that Saurez-Palafox made no request to South Central for such reimbursement and has no evidence of amounts due to him. With respect to Avila-Soto's pre-employment expenses for which he is seeking reimbursement, he testified that he is claiming reimbursement for a license which he has had for approximately 15 years, and for a cell phone for which he has no receipts.[57] Saurez-Palafox and Avila-Soto have failed to demonstrate entitlement to their sought-after pre-employment expenses, failed to establish what those pre-employment expenses are, and failed to come forward with evidence to show that those expenses reduced their pay below the minimum wage. For these reasons, Plaintiffs, FLSA minimum wage claim, to the extent based on failure to reimburse, must be dismissed.

**B.      Sterling did not employ any Plaintiff or putative class member.**

Reasonable inquiry based on the undisputed material facts before the Court show that Sterling Sugars is not listed as an employer on any of the Job Orders submitted between 2022 and 2025. Plaintiffs' supervisors at all times during their employment were employees of South Central.[58]  South Central is a distinct legal entity existing separate and apart from Sterling. Plaintiffs cannot make a showing sufficient to establish that Sterling jointly employed Plaintiffs under the FLSA, nor can they point to evidence sufficient to establish that South Central and Sterling were a "single" or "integrated" employer pursuant to governing H-2A regulations. Accordingly, Rule 56(c) mandates entry of summary judgment with respect to Plaintiffs' claims against Sterling.[59]

---

[55] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.
[56] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.
[57] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.
[58] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 32.
[59] Fed. R. Civ. P. 56(c).

11

Under the FLSA, the key inquiry in determining joint-employment is whether an employment relationship existed between Plaintiffs and Sterling, in addition to the undisputed employee-employer relationship between Plaintiffs and South Central.  The imposition of liability under the joint employer theory requires Plaintiffs to satisfy the economic realities test.[60] Plaintiffs cannot do so.

The economic realities test originates from the Supreme Court's holding that economic reality should govern the determination of employer status under the FLSA.[61] Under the test, courts must consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[62] Each individual alleged employer must satisfy the economic realities test.[63]

Application of the relevant facts to the economic realities test reflects that South Central was the sole employer of Plaintiffs. Notably, South Central determined the rate and method of Plaintiffs' pay, as Plaintiffs' pay checks were issued by South Central.  Moreover, the services that Plaintiffs performed were all on behalf of South Central.  Whether some individuals may have also performed some business services for Sterling does not change the nature of Plaintiffs' employment, all of whom performed no services for Sterling.[64] Indeed the undisputed facts point only to Plaintiffs' employment by South Central. For example:

---

[60] *See Williams v. Nation Star Mortg., LLC,* No. CV 19-663-BAJ-SDJ, 2021 WL 7286010, at *4 (M.D. La. July 2, 2021).

[61] *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (citing *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33 (1961)).

[62] *Gray*, 673 F.3d at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)).

[63] *Gray*, 673 F.3d 352 at 355.

[64] *See Weeks v. Bottling Grp. LLC*, No. PE:21-CV-00066-DC-DF, 2022 WL 1523634, at *8 (W.D. Tex. May 13, 2022), report and recommendation adopted, No. P:21-CV-00066-DC, 2022 WL 20539760 (W.D. Tex. May 31, 2022) (finding an amended complaint inadequate to sustain plaintiff's claim against an entity under the joint employer theory merely because the entity shared employees with plaintiff's undisputed employer); *see also, Rule v. S. Indus. Mech.*

12

- Plaintiffs all applied for and accepted work as H-2A agricultural workers pursuant to Temporary Labor Certifications issued by the Department of Labor pursuant to applications filed by South Central.

- Plaintiffs' H-2A visas identify South Central as Plaintiffs' employer with the federal government.

- Plaintiffs were required to provide accurate information in their H-2A visa documentation, and they testified that they provided accurate information in connection with those applications.

- The **only** petitioning employer was South Central.

- Sterling was not listed as a petitioning employer on Plaintiffs' job orders.

Similarly, Plaintiffs' own testimony negates Plaintiffs' allegation that Plaintiffs were jointly employed by Sterling.[65]

Plaintiffs also cannot show that Sterling was an employer under the factors set forth in 20 CFR § 655.103(e). These criteria have been refined so that the critical question to be answered is what entity made the final decisions regarding employment matters related to the person bringing the claims.[66] Plaintiffs cannot make this showing for several reasons. For example, it is undisputed that Sterling and South Central are separately owned legal entities with no common ownership. South Central is run by its President, Rickey Gonsulin. The relevant employment decisions forming the basis of Plaintiffs claims were made by South Central. There is no evidence to support that Sterling played any role in the classification of Plaintiffs as H-2A workers. Nor was Sterling a party to the job orders Plaintiffs claim were breached. Plaintiffs bear the burden of producing "specific facts showing that there is genuine issue for trial."[67] This burden cannot be satisfied by

---

*Maint. Co.,* No. 5:16-CV-01408, 2019 WL 2881545, at *6 (W.D. La. July 3, 2019 (noting that allegations of shared employees, resources, and even ownership were insufficient to support joint employer theory).

[65] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 40-41.

[66] *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

[67] *Brown v. Amesbury Mgmt., LLC*, No. CV 22-675-JWD-EWD, 2025 WL 936654, at *13 (M.D. La. Mar. 27, 2025) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

13

"conclusory allegations, by unsubstantiated allegations, or by only a scintilla of evidence."[68] Even when viewing the evidence in a light most favorable to Plaintiffs, a reasonable jury could not conclude that Sterling and South Central are single or joint employers vis a visa Plaintiffs.

### C.    Plaintiffs' breach of contract claim fails because Defendants complied with the binding terms of the Job Orders.

The parties entered legally binding contracts in 2022, 2023, 2024 and 2025.[69] The Job Orders include Forms ETA-790, ETA-790A, and ETA-9142A.[70] According to the contracts, Plaintiffs were to be paid a rate of $12.45 per hour in 2022, $23.16 per hour in 2023, $23.93 per hour in 2024, and $14.83 per hour in 2025.[71]  Plaintiffs do not dispute receiving those rates of pay.[72]  Additionally, the contracts explained Plaintiffs would work under the job title "Heavy and Tractor-Trailer Truck Drivers."[73] The DOL approved South Central's applications for temporary labor certification each year Plaintiffs worked for them, and the job clearance orders bearing the hauling duties have not been revoked by the United States Department of Labor.[74]  Plaintiffs do not dispute that the temporary employment certification applications and accompanying clearance orders constituted a valid employment contract containing all material terms of Plaintiffs' employment.[75] Moreover, the Job Orders make clear that Plaintiffs would engage in operating and servicing "trucks and equipment to transport sugarcane from various worksites, in connection with the harvesting of a perishable crop, from the fields to the mill and from the factory parking and staging areas to the mill operating tractor-trailer combination; deliver[ing] sugarcane to designated

---

[68]  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[69] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 14.
[70] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 16.
[71] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 16.
[72] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 18.
[73] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 17.
[74] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 19. *See* 20 C.F.R. § 655.181 (outlining procedure for revoking job clearance orders).
[75] *See* 20 C.F.R. § 655.103(b); R. Doc. 115, ¶ 85.

14

locations (without leaving tractor-trailer combination)[.][76]  As shown, the record evidence (which includes the admissions on file) shows both parties performed the obligations outlined in the Job Orders.  There is no legitimate dispute about whether the contracts at issue were performed according to their terms, and so Plaintiffs' claims for breach of contract must be dismissed.

> **1.     The undisputed material facts do not show a breach of Plaintiffs' employment contracts.**

Plaintiff cannot show breach under the facts and specific terms of the Job Orders.  To assert a breach of contract claim under Louisiana law, Plaintiffs must establish (1) the obligor's undertaking of an obligation to perform, (2) the failure of the obligor to perform the obligation (the breach), and (3) that the failure to perform resulted in damages to the obligee.[77]  When obtaining foreign labor certification, South Central was subject to regulations that established the minimum benefits, wages, and working conditions that must be offered to employees and form the contracts between employers and employees.[78]  As Plaintiffs admit, their clearance orders constitute valid, binding contracts.[79]  Defendants agreed to hire Plaintiffs as "Heavy and Tractor-Trailer Truck Drivers" and to pay Plaintiffs the AEWR that applied during each respective year of Plaintiffs' employment. According to the contracts, Plaintiffs were to be paid a rate of $12.45 per hour in 2022, $23.16 per hour in 2023, $23.93 per hour in 2024, and $14.83 per hour in 2025.[80]  Plaintiffs do not dispute receiving those rates of pay.[81]  Those rates of pay were based on the AEWR as

---

[76] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 20.

[77] *See 1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4th Cir. 1986); *see also Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D. La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages.").

[78] *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985) (adopting the H-2 workers' argument that "because [the H-2 regulations] have the force of law, these terms were part of their employment agreement"); *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) (explaining that "clearance orders ultimately become the work contract between the employers and the farmworkers").

[79] *See* 20 C.F.R. § 655.103(b); R. Doc. 115, ¶ 85.

[80] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 16-17.

[81] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 18

15

determined by the DOL at the time the contracts were executed.[82] In a case like this, where all parties including the government, operated in good faith, a reviewing Court should abstain from upsetting the agency's determination.[83]

The DOL's Final Rule changing the methodology for calculating the adverse effect wage rate took effect on March 30, 2023.[84]  Before that time, the DOL determined that the job duties described in the job clearance orders at issue here were classified under the "Agricultural Equipment Operator" classification. Accordingly, the AEWR for truck drivers in 2022 was lower than the AEWR for truck drivers in 2023-2024. On September 18, 2024, this Court entered an injunction enjoining the DOL from enforcing the Final Rule with respect to H-2A workers employed in sugar cane farming and processing operations in the state of Louisiana, which was later amended to a nationwide injunction.[85] At that point, the AEWR for truck drivers returned to the previous calculation metric used in the 2022 season, and the Job Orders for 2025 were approved and entered into based on that wage rate.

The Job Orders further agree to provide Plaintiffs with transportation between provided housing and the worksite at no cost and to provide reimbursement for daily meals by providing

---

[82] On February 28, 2023, the U.S. Dept. of Labor issued a Final Rule, 88 Fed. Reg. 12,760 (Feb. 28, 2023), codified at 20 C.F.R. § 655.120(b) (the "Final Rule") and increased the minimum wages that must be paid to seasonal migrant guestworkers who engaged in hauling duties.  "Under this final rule, if the job duties on the H-2A application (including the job order) constitute a combination of SOC codes that do not all fall within the field and livestock worker (combined) occupational grouping, the Department will determine the applicable AEWR based on the highest AEWR among the SOCs assigned to the job opportunity." According to the Final Rule, "where an employer's job opportunity involves a variety of duties, some of which are consistent with higher paid SOC codes in the State, territory, or equivalent area, the Department would not satisfy its statutory obligation if it were to establish the required wage floor for H-2A employers at a lower rate than the AEWR applicable to workers in the United States who perform work in the higher paid SOC code." Ultimately, "the AEWR methodology adopted in the Final Rule provides a minimum wage rate threshold that an employer must offer and pay a worker for performing the H-2A job opportunity, including those H-2A job opportunities that require a worker to perform a combination of tasks that cannot reasonably be classified within a single SOC code."

[83] *See generally Kisor v. Wilkie*, 588 U.S. 558 (2019).

[84] 20 C.F.R. § 655.120(b).

[85] *Teche Vermilion Sugar Cane Growers Ass'n Inc. v. Su*, 749 F. Supp. 3d 697 (W.D. La. 2024), *opinion clarified,* No. 6:23-CV-831, 2024 WL 4729319 (W.D. La. Nov. 7, 2024), and *amended,* No. 6:23-CV-831, 2025 WL 1969937 (W.D. La. July 16, 2025)

16

each worker with a specified amount per day.[86] Plaintiffs do not dispute that they were provided

with reimbursements for those costs. The contracts do not require reimbursement to Plaintiffs for

pre-employment expenses incurred.

Moreover, pursuant to the H-2A regulations, Defendants were not allowed to modify the

terms of the job orders that it entered when forming employment contracts with Plaintiffs.[87]

Instead, the H-2A regulations expressly specify when and how a job order can be modified:

> The employer may not amend the job order on or after the date of filing an
> Application for Temporary Employment Certification…The employer must
> provide all workers recruited in connection with the Application for Temporary
> Employment Certification with a copy of the modified job order or work contract
> which reflects the amended terms and conditions, on the first day of employment,
> in accordance with § 655.122(q), or as soon as practicable, whichever comes first.[88]

Plaintiffs cannot establish that Defendants failed to perform the obligations identified in the job

orders.

### 2.    Plaintiffs' duplicative theories of breach must be dismissed for the same reasons as their underlying claims.

Plaintiffs' breach of contract claim also fails because it is not additional to its claims for

violations of the FLSA and LWPA.  This is particularly true where the provisions of the contract

which Plaintiffs claim have been breached merely incorporate preexisting requirements imposed

upon employers by other applicable law.[89]  Plaintiffs argue the following breaches occurred: (1)

failure to pay Plaintiffs the required hourly wage rate based on a failure to properly reimburse the

Plaintiffs for the pre-employment expenses incurred (the same allegation as the FLSA claim); (2)

---

[86] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶¶ 34.

[87] *See* 20 C.F.R. § 655.121.

[88] *Id.*

[89] Other courts have addressed a similar issue. *See Salas-Mateo v. Ochoa*, No. 03-14357-CIV, 2004 WL 1824124 (S.D. Fla. Mar. 26, 2004) (Mexican nationals employed pursuant to H-2A visas brought a collective action under the FLSA and a separate claim that defendants had breached employment contracts by not paying plaintiffs minimum wage consistent with the FLSA and failing to fully reimburse transportation and other costs incurred by plaintiffs, where the court found that "plaintiffs were suing to realize the protections afforded by both the FLSA and the H-2A regulations" and that plaintiffs could not pursue that claim.)

17

PD.61031762.1

failure to pay Plaintiffs the wage rate applicable to heavy tractor-trailer truck drivers; (3) failure to pay Plaintiffs overtime wages "in violation of contract promises to comply with all federal laws related to employment" (a repackaging of the FLSA claim); and (4) failure to pay Plaintiffs wages due as required by the LWPA "in violation of contract promises to comply with all State laws related to employment" (a repackaging of the LWPA claim).[90]

As such, any alleged breach of these terms inherently falls within the scope of Plaintiffs' FLSA claims.  To the extent Plaintiffs' breach of contract claim falls within the scope of the FLSA, this Court has already held that Plaintiffs will not be permitted to recover under both the FLSA and for breach of contract.[91] Because the FLSA claim fails, Plaintiffs' claims for breach of contract, to the extent they rely exclusively on "contract promises to comply with all federal [or State] laws related to employment," must be dismissed for the same reasons as those claims.

### D.    Plaintiffs' LWPA claim fails because Plaintiffs were paid all wages owed to them timely.

Finally, Plaintiffs vaguely assert that Defendants failed to pay them timely for the amounts due to them under the terms of their employment contracts within 15 days following resignation or discharge. It is well-settled law that, because the LWPA is penal in nature, it must be strictly construed.[92]  Even absent that admonition, based on the statute's plain language, the LPWA applies only to amounts due and owing for time already worked by the employee prior to termination. Thus, to state a claim under the LWPA, a plaintiff must prove:  (1) the defendant was his employer; (2) "the employee/employer relationship ceased to exist," (3) "that *at the time that the*

---

[90] R. Doc. 115 at ¶ 87.

[91] R. Doc. 105, p. 7.

[92] *See, e.g.*, *Steak v. Hat World, Inc.*, 191 So. 3d 712, 715 (La. App. 4 Cir. 2016) ("The LWPA is penal in nature, and therefore must be strictly construed, and its provisions must yield to equitable defenses.").

18

*employee/employer relationship ended []he was owed wages*," and (4) that the employer failed to submit the owed wages within the statutorily mandated timeframe.[93]

As set forth in detail throughout, Plaintiffs have failed to prove that they were not paid the amount of wages statutorily or contractually owed to them under the Job Orders. And Plaintiffs only allege that they were not paid the amounts due "within 15 days of their resignation or discharge."[94] Yet they have failed to present any evidence, and so it is not disputed, that Plaintiffs were paid for all of their work performed. Plaintiff Felipe Suarez-Palafox testified that he does not dispute the hours he worked and does not seek damages beyond overtime pay and a disputed wage rate.[95] Plaintiff Felipe de Jesus Avila-Soto testified that all he is "claiming is that they pay me the overtime at the rate it should have been. That's all I'm fighting."[96] He does not allege he was not paid a final paycheck. All three named Plaintiffs stated in their interrogatory responses that they made no demands for unpaid wages.[97] And the payroll documents exchanged by the parties show that Plaintiffs were paid properly under the wage rates determined in a timely manner.[98]

Accordingly, Plaintiffs' claim for unpaid wages under the LWPA fails as a matter of law and fact. Summary judgment should be granted with respect to this claim.

## IV.    CONCLUSION

For each of the foregoing reasons, Defendants respectfully request the Court to enter summary judgment in their favor on all of Plaintiffs' claims.

This 22nd day of May, 2026.

Respectfully submitted,

---

[93] *Dillon v. Toys R Us*, Case No. 2016-CA-0983, 2017 WL 2351490, at *5 (La. App. 4 Cir. May 31, 2017) (emphasis added).
[94] R. Doc. 115, ¶ 91.
[95] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 28.
[96] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 29.
[97] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 30.
[98] Ex. "A", Defendants' Statement of Undisputed Material Facts, at ¶ 31.

19

**PHELPS DUNBAR LLP**

BY:    */s/ Brandon E. Davis*

Brandon E. Davis Bar Roll No. 29823
Molly McDiarmid Bar Roll No.  36426
Jennifer Clewis Thomas (*Admitted Pro Hac Vice*)
Andrew M. Albritton Bar Roll No. 39780
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com
andrew.albritton@phelps.com

**ATTORNEYS FOR DEFENDANTS, SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. AND STERLING SUGAR, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Brandon E. Davis*

BRANDON E. DAVIS

20

PD.61031762.1