UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| FELIPE DE JESUS AVILA-SOTO,  et al. | ) | Case No. 6:24-cv-01392 |
| Plaintiffs, | ) | |
| v. | ) | JUDGE ROBERT R. SUMMERHAYS |
| SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., et al. | ) | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, FOR BREACH OF EMPLOYMENT CONTRACTS, AND FOR VIOLATIONS OF THE LOUISIANA WAGE PAYMENT ACT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................ 2

    A.    APPLICABLE SUMMARY JUDGMENT STANDARD ..................................... 2

    B.    PLAINTIFFS AND OTHER TRUCK DRIVERS ARE OWED OVERTIME PAY UNDER THE FLSA. .. 3

        1.    *The Truck Drivers' work was not agricultural as defined by the FLSA.* ........................ 5

        2.    *Plaintiffs and other Truck Drivers are owed overtime based on the appropriate wage rate for the work performed.* ...................................................................... 10

    C.    DEFENDANTS' VIOLATIONS OF THE FLSA WERE WILLFUL SUCH THAT A THREE-YEAR STATUTE OF LIMITATIONS APPLIES ........................................................... 11

    D.    LIQUIDATED DAMAGES ARE OWED FOR THE OVERTIME VIOLATIONS. ............................ 13

    E.    DEFENDANTS BREACHED THE PLAINTIFFS' AND OTHER TRUCK DRIVERS' EMPLOYMENT CONTRACTS BY NOT PAYING THEM OVERTIME AND BY NOT PAYING THEM THE CORRECT WAGE RATE. ................................................................................ 15

        1.    *Defendants breached the employment contracts by failing to pay overtime wages to the Plaintiffs and other truck drivers.* ...................................................... 17

        2.    *Defendants breached the employment contracts by paying the Plaintiffs and other truck drivers improper agricultural wage rates  during the 2022 and 2025 seasons.* ......... 18

    F.    DEFENDANTS VIOLATED THE LOUISIANA WAGE PAYMENT ACT ..................................... 23

CONCLUSION ................................................................................................ 24

**TABLE OF AUTHORITIES**

**CASES**

*Adams v. All Coast, L.L.C.*, 15 F.4th 365 (5th Cir. 2021) ............................................................. 4

*Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242 (10th Cir. 2020) ............................... 16

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ........................................................................ 3

*Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228 (11th Cir. 2002) ................................... 16

*Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464 (5th Cir. 1979) ................................. 12, 14

*Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS 178401
(W.D. La. Sep. 11, 2025) ................................................................................... 4, 7, 14, 19

*Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259 (5th Cir. 1998) ........................................................ 13

*Bowie v. Gonzalez*, 117 F.2d 11 (1st Cir. 1941) ......................................................................... 7

*Brock v. Wilamowsky*, 833 F.2d 11 (2d Cir. 1987) ....................................................................... 14

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................ 13

*Calixtro-Calixtro v. Estate of Hodges*, No. 1:17-CV-394-LY, 2018 U.S. Dist. LEXIS 190453
(W.D. Tex. Nov. 6, 2018) ................................................................................................ 17

*Cerda v. Bravo*, 575 F.2d 560 (5th Cir. 1978) .............................................................................. 6

*Chapman v. Durkin*, 214 F.2d 360 (5th Cir. 1954) ...................................................................... 9

*Cruz v. Maverick Cty.*, 957 F.3d 563 (5th Cir. 2020) ................................................................. 12

*Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614 (8th Cir. 2015) ....................... 19, 22

*Dacar v. Saybolt, LP*, 914 F.3d 917 (5th Cir. 2018) .................................................................... 14

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991) .............................................. 12

*Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018) ............................................................. 5

*Faludi v. U.S. Shale Solutions, LLC*, 950 F.3d 269 (5th Cir. 2020) ............................................ 3

*Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755 (1949) .................................... 5, 8

*Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010) ........................................ 10

*Goldberg v. Crowley Ridge Fruit & Vegetable Growers Asso.*, 295 F.2d 7 (8th Cir. 1961) .......... 8

*Hanks v. La. Cos*., 205 So. 3d 1048 (La. Ct. App. 2016) ............................................................ 24

*Hines v. Key Energy Servs*., No. 5-15-CV-00911, 2017 U.S. Dist. LEXIS 81009 (W.D. Tex. May 26, 2017) ................................................................................................................................. 4

*Hodgson v. Idaho Trout Processors Co*., 497 F.2d 58 (9th Cir. 1974)......................................... 8

*Hultgren v. County of Lancaster*, 913 F.2d 498 (8th Cir. 1990).................................................. 13

*In the Matter of Fresh Harvest, Inc*., 2020-TLC-00052 (OALJ April 1, 2020) .......................... 21

*King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713 (5th Cir. 2011).............................................. 13

*Knecht v. Bd. of Trs. for State Colls. & Univs*., 591 So. 2d 690 (La. 1991).......................... 17, 18

*Louisiana Forestry Ass'n, Inc. v. Sec. of Labor*, 745 F.3d 653 (3d Cir. 2014)........................... 21

*Marshall v. Gulf & Western Industries, Inc*., 552 F.2d 124 (5th Cir. 1977)................................. 5

*Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp*., 475 U.S. 574 (1986)................... 3

*McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988).............................................................. 11

*Mencia v. Allred*, 808 F.3d 463 (10th Cir. 2015)........................................................................ 22

*Mireles v. Frio Foods, Inc*., 899 F.2d 1407 (5th Cir. 1990) .................................................. 13, 14

*Mitchell v. Kentucky Finance Co*., 359 U.S. 290 (1959)............................................................... 4

*Moodie v. Kiawah Island Inn Co*., 124 F. Supp. 3d 711 (D.S.C. 2015) ...................................... 10

*Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527 (5th Cir. 2015) .................................. 3

*Olaa Sugar Co.*, 114 N.L.R.B. 670 (Oct. 26, 1955) ..................................................................... 6

*Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 276 So. 3d 589 (La. Ct. App. 2019) ... 18

*Perez v. Owl, Inc*., 110 F.4th 1296 (11th Cir. 2024).................................................................... 22

*Powell v. United States Cartridge Co*., 339 U.S. 497 (1950)................................................. 10, 22

*Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356 (11th Cir. 2021)................. 6, 9

*Reich v. Bay, Inc*., 23 F.3d 110 (5th Cir. 1994) .......................................................................... 12

*Roy v Cty. of Lexington*, 141 F.3d 533 (4th Cir. 1998)............................................................... 14

*S. Jefferson Davis Parkway, LLC v. Williams*, 165 So.3d 1211 (La. App. 2015) ....................... 18

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985) ................ 16

iii

*Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2020 U.S. Dist. LEXIS 18476 (S.D. Tex. Jan. 30, 2020)..................................................................................................... 14

*Sanderson Farms, Inc. v. NLRB*, 335 F.3d 445 (5th Cir. 2003) ...................................................... 6

*Sariol v. Fla. Crystals Corp.*, 490 F.3d 1277 (11th Cir. 2007)....................................................... 7

*Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003) ................................................................... 14

*Solis v. Hooglands Nursery, L.L.C.,* 372 F. App'x 528 (5th Cir. 2010)........................................ 14

*Soto v. William's Truck Serv.*, No. 3:11-CV-3242-B, 2013 U.S. Dist. LEXIS 17223 (N.D. Tex. Feb. 8, 2013) ............................................................................................................................. 4

*Steele v. Leasing Enters., Ltd.*, 826 F.3d 237 (5th Cir. 2016)........................................................ 14

*Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903 (W.D. La. 2006) .............................................. 22

*Tullous v. Tex. Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811 (S.D. Tex. 2008) ............ 8

*Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022) .................................................... 22

*White v. United States Corr., L.L.C.*, 996 F.3d 302 (5th Cir. 2021) ............................................... 4

*Williams v. Tri-County Growers, Inc.*, 747 F.2d 121 (3d Cir. 1984)............................................ 14

*Wirtz v. Osceola Farms Co.*, 372 F.2d 584 (5th Cir. 1967)......................................................... 5, 9

*Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015)............................. 12

**STATUTES**

26 U.S.C. § 3121(g) ....................................................................................................................... 20

29 U.S.C. § 203(f)................................................................................................................. 5, 6, 20

29 U.S.C. § 207.............................................................................................................................. 3

29 U.S.C. § 213(b)(12) .................................................................................................................. 5

29 U.S.C. § 218(a) ....................................................................................................................... 22

29 U.S.C. § 255(a) ....................................................................................................................... 11

29 U.S.C. § 259............................................................................................................................ 14

29 U.S.C. § 260............................................................................................................................ 14

8 U.S.C. § 1101(a)(15)(H)(ii)(a)............................................................................................. 16, 20

8 U.S.C. §1101(a)(15)(H)(ii)(b)..................................................................................... 21

La. Rev. Stat. Ann. § 23:632 ....................................................................................... 24

**REGULATIONS**

20 C.F.R. § 655.10(b)(2)................................................................................... 11, 21, 23

20 C.F.R. § 655.100 ..................................................................................................... 16

20 C.F.R. § 655.122 ..................................................................................................... 16

20 C.F.R. § 655.122(q) ................................................................................................ 16

20 C.F.R. § 655.135(e).................................................................................................. 16

20 C.F.R. §655.10(a)..................................................................................................... 21

26 C.F.R. § 31.3121(g)-1 ............................................................................................. 21

29 C.F.R. § 578.3(c)(3) ................................................................................................ 11

29 C.F.R. § 778.315 ..................................................................................................... 10

29 C.F.R. § 778.5 ......................................................................................................... 10

29 C.F.R. § 780.129 ....................................................................................................... 6

29 C.F.R. § 780.133 ..................................................................................................... 11

29 C.F.R. § 780.138 .................................................................................................... 6, 8

29 C.F.R. § 780.2 ........................................................................................................... 4

## I.    INTRODUCTION

The Plaintiffs, FLSA opt-in Plaintiffs, and Rule 23 class members ("Plaintiffs" and/or "class members") are truck drivers from Mexico who were brought to Louisiana seasonally to drive sugarcane from farm loading sites to Sterling Sugars, LLC's ("Sterling Sugars) sugar mill in Franklin. For the years 2022 through 2025, Plaintiffs were brought to Louisiana pursuant to H-2A visas obtained by the South Central Sugar Cane Growers' Association, Inc. ("South Central")[1] The growers' association was created by the sugar cane growers and individuals employed by Sterling Sugars and its parent company, M.A. Patout, as a means to avoid paying overtime wages and to claim the work was agricultural for H-2A visa purposes.[2] Each season South Central submitted a clearance order requesting H-2A truck drivers. South Central did not disclose that it was funded and operated by Sterling Sugars and was subject to both a "Management Services Agreement" and a "Revenue Balancing Agreement" that provided that Sterling Sugars' employees would run and fund South Central.[3] Plaintiffs and the class members started their day by clocking in at Sterling Sugars' Franklin sugar mill using a time clock located in the mill's mechanics shop.[4] Plaintiffs and the class members were assigned work based on a schedule prepared by a Sterling Sugars' manager.[5] Then Plaintiffs and the class members drove trucks over public highways to various assigned loading sites where their trucks were loaded with sugarcane before Plaintiffs and the class members drove the trucks back to Defendant Sterling Sugars' Franklin, Louisiana sugar mill.[6]

---

[1] Pls.' SOF ¶¶ 33-34.
[2] Pls.' SOF ¶¶ 22-23, 30.
[3] Pls.' SOF ¶¶ 36-40, 144-149.
[4] Pls.' SOF ¶¶ 59, 63.
[5] Pls.' SOF ¶ 58.
[6] Pls.' SOF ¶¶ 66-67.

Sterling Sugars had a two-tiered system where foreign truck drivers were assigned to work pursuant to the South Central clearance order and paid lower wages without overtime.[7] Workers assigned to work at Sterling Sugars directly, including truck drivers, were paid overtime.[8] While Defendants might seek to claim that the work should be viewed as agricultural because the association, a non-profit corporation, was "owned" by farmers, that claim is of no legal merit as the association was separately incorporated and is not a farmer itself of any crops.[9] Nor did Sterling Sugars grow any sugarcane.[10] Moreover, "ownership" of the association is meaningless since the association had no real assets of any kind, used the Sterling Sugars' office as its mailing address, used Sterling Sugars' employees to pay its bills, prepare its payroll, and manage its bank accounts, and the association was completely dependent on Sterling Sugars for its continued viability as without funds from Sterling Sugars the association could not afford to meet payroll or pay its bills.[11] Accordingly, Plaintiffs contend that Defendants owe them and the class members overtime and owe them the proper wage rate for the non-agricultural truck driver work performed.

## II.   ARGUMENT

### A.   Applicable Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A factual dispute is material only if it "might affect the outcome of the suit under the governing law," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

---

[7] Pls.' SOF ¶ 65.
[8] Pls.' SOF ¶ 169.
[9] Pls.' SOF ¶ 158.
[10] Pls.' SOF ¶ 166.
[11] Pls.' SOF ¶¶ 31, 76-78, 70, 37, 42, 126-137.

(1986). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issues of material fact." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (citation omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (noting that, to defeat summary judgment, an opponent "must do more than simply show there is some metaphysical doubt as to the material facts" and must come forward with "specific facts showing there is a genuine issue for trial") (cleaned up). Because there are no genuine issues as to any material facts with respect to the status of Sterling Sugars as an employer within the meaning of the FLSA, the employment contracts, and the LWPA, summary judgment for the Plaintiffs, opt-in Plaintiffs, and class members is appropriate with respect to this issue.

### B.    Plaintiffs and other Truck Drivers Are Owed Overtime Pay under the FLSA.

The Plaintiffs and other truck drivers worked long hours hauling sugarcane without overtime pay.[12] Plaintiffs and the other truck drivers hauled cut sugarcane from field loading sites to the Sterling Sugars' factory in Franklin over public roads and highways.[13] The FLSA requires employers to pay overtime compensation to non-exempt employees who work more than forty hours in a week. 29 U.S.C. § 207; *Faludi v. U.S. Shale Solutions, LLC*, 950 F.3d 269, 272 (5th Cir. 2020).[14] Defendant Sterling Sugars, through a wholly owned subsidiary, had previously been sued, and found liable, for violating the FLSA's overtime provisions for sugar

---

[12] Pls.' SOF ¶¶ 161-162.

[13] Pls.' SOF ¶¶ 66-67.

[14] There is no dispute that both Defendants are covered entities under the FLSA since they have employees engaged in commerce or the production of goods for commerce and have gross annual volume of sales in excess of $500,000. 29 U.S.C. § 203(s)(1); Pls.' SOF ¶¶ 19, 21.

cane truck drivers.[15] *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS 178401, at *16 (W.D. La. Sep. 11, 2025) (finding overtime owed because "the transportation of harvested sugarcane in heavy trucks over public roads between the farms and the Sterling Mill was not work performed 'on a farm'"). Defendants in this case nonetheless persisted in denying the truck drivers overtime wages claiming the hauling was overtime-exempt "agricultural" work because an incorporated association of growers paid the truck drivers.[16]

It is Defendants' burden to show they are entitled to a FLSA exemption. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291 (1959); *White v. United States Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) ("The employer bears the burden to establish a claimed exemption applies to the claimant.") (cleaned up); *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 368 (5th Cir. 2021) ("the employer has the burden of establishing that the exemption applies"); 29 C.F.R. § 780.2. "Plaintiffs are entitled to summary judgment if they can point to an absence of evidence to support an essential element on a particular affirmative defense." *Hines v. Key Energy Servs.*, No. 5-15-CV-00911, 2017 U.S. Dist. LEXIS 81009, at *6 (W.D. Tex. May 26, 2017); *see also Soto v. William's Truck Serv.*, No. 3:11-CV-3242-B, 2013 U.S. Dist. LEXIS 17223, at *8 (N.D. Tex. Feb. 8, 2013). Where the employer does not meet its burden to show that the exemption applies, summary judgment is appropriate. *Hines*, 2017 U.S. Dist. LEXIS 81009 at *20 (granting partial summary judgment where employer failed to present "any evidence" that exemption applied); *Soto*, 2013 U.S. Dist. LEXIS 17223, at *9 (same). On these facts, Plaintiffs are entitled to summary judgment as they were not paid overtime and Defendants are unable to prove the agricultural exemption is applicable to their truck driving.

---

[15] Pls.' ¶ SOF 28.
[16] Pls.' ¶ SOF 163-164, 171.

### 1. The Truck Drivers' work was not agricultural as defined by the FLSA.

The FLSA's overtime provision expressly exempts workers "employed in agriculture." 29 U.S.C. § 213(b)(12). The definition of what constitutes "agriculture" within the meaning of the FLSA is found in section 3(f) of the Act, which states:

> 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The definition has often been described to refer to "primary agriculture" and "secondary agriculture." *Marshall v. Gulf & Western Industries, Inc*., 552 F.2d 124, 126 (5th Cir. 1977). "Primary agriculture" includes farming in all its branches, such as cultivation and tillage of the soil, dairying, production, cultivation, growing, and harvesting. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949). "Secondary agriculture" refers to that part of the definition related to any practices performed "by a farmer" or "on a farm" as incident to or in conjunction with "such" farming operations. *Id*. at 762-763. The Supreme Court has instructed that this statutory language must be given "a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

There is no dispute in this case that the Plaintiffs and other truck drivers were engaged solely in the hauling of sugarcane from farms over public roads to Sterling Sugars' mill.[17] Hauling sugarcane from farms to a sugar factory does not fall within the primary definition of agriculture. *Wirtz v. Osceola Farms Co*., 372 F.2d 584, 587–90 (5th Cir. 1967) (finding "drivers are not exempted . . . when hauling cane from the fields of the independent growers to the

---

[17] Pls.' SOF ¶¶ 66-67.

mill."); *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) ("The primary definition plainly does not include transportation . . . which is not 'farming.'"); *Sanderson Farms, Inc. v. NLRB*, 335 F.3d 445, 449 (5th Cir. 2003) ("hauling products to or from a farm is not primary farming").[18] Additionally, there can be little dispute that operating a truck is not tilling of the fields, harvesting, or any other primary agricultural activity. *Barron*, 2025 U.S. Dist. LEXIS 178401, at *15-16 ("The transportation of crops is not part of 'harvesting' as defined by the FLSA."). It has long been the case that hauling sugarcane to sugar mills is not considered agricultural work. *Olaa Sugar Co.*, 114 N.L.R.B. 670, 692 (Oct. 26, 1955) (finding "cane truckdriver was not an agricultural worker").

The Plaintiffs and other truck drivers were also not engaged in "secondary agriculture" because they did not work "for a farmer" or "on a farm." 29 U.S.C. § 203(f); *Cerda v. Bravo*, 575 F.2d 560, 563 (5th Cir. 1978) (holding meat processing work was not within the secondary meaning "since the slaughter of beef is not being done by a farmer or on a farm"); *Ramirez*, 997 F.3d at 1359 (holding "non-primary activities must be 'performed by a farmer or on a farm' to be considered 'agriculture'"). Where the work was not performed on a farm, nor was performed by a farmer, the work is not secondary agriculture. "No matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the scope of the 'secondary' meaning of 'agriculture.'" 29 C.F.R. § 780.129. Applicable FLSA regulations expressly explain that employees transporting sugarcane from independent growers are not engaged in agricultural work. 29 C.F.R. § 780.138 ("Employees of a grower-operator of a sugarcane mill who transport cane from fields to the mill are not within section 3(f), where such

---

[18] The National Labor Relations Act interprets "agricultural laborer" by applying "the definition of 'agriculture' supplied by § 3(f) of the Fair Labor Standards Act of 1938 (FLSA)." *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 397 (1996).

cane is grown by independent farmers on their land as well as by the mill operator."). Accordingly, "hauling of raw cane to a mill was incidental to milling, not farming, taking it outside the agriculture exemption." *Sariol v. Fla. Crystals Corp.*, 490 F.3d 1277, 1280 n.2 (11th Cir. 2007) (following and interpreting *Osceola Farms*); *Bowie v. Gonzalez*, 117 F.2d 11, 20 (1st Cir. 1941) (finding "complainants engaged in transporting sugar cane of independent growers for grinding at complainants' mills" were covered by the FLSA and not exempt). It is undisputed that neither Defendant engaged in any farming of sugarcane.[19] Defendant Sterling Sugars operates a sugar mill that processes sugarcane and does not do any farming.[20] Defendant South Central's primary business activity is hauling sugarcane from farms to Sterling Sugars' mill and it has also not engaged in any farming activities.[21] As such, neither Defendant is "a farmer" within the meaning of the secondary definition of agriculture. And as this Court has already decided, driving trucks over public roads is not work "on a farm." *Barron*, 2025 U.S. Dist. LEXIS 178401, at *16.

Nor does the fact that Defendant South Central is an association whose members are farmers transform South Central itself into "a farmer." South Central is a separately incorporated entity that has no ownership or other interest in any of the farms that are owned or operated by its members.[22] South Central simply provides hauling services to its members.[23] But South Central itself—as already stated—does not engage in any farming of sugarcane.[24] It has no crops, nor even any farm land or land of any type. When the employer is an association, even if it is an

---

[19] Pls.' SOF ¶¶ 158, 166.
[20] Pls.' SOF ¶¶ 18, 166.
[21] Pls.' SOF ¶¶ 20, 158 (business described as a "harvesting and hauling operation" and testifying "Q. Does South Central grow any crops. A. No.").
[22] Pls.' SOF ¶¶ 159.
[23] Pls.' SOF ¶¶ 20, 138, 147 (testifying about funds provided by Sterling Sugars to South Central to stabilize its finances "in order to be able to bring in workers to harvest and haul cane"), 158.
[24] Pls.' SOF ¶¶ 20, 158.

association of farmers, that does not make the association "a farmer." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 768 (1949) (rejecting application of FLSA agricultural exemption to farmer-owned mutual water company because the "working men are in no real sense employees of the shareholders . . . The controlling fact is that the company has been set up by the farmers as an independent entity[.]"); *Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58, 60 (9th Cir. 1974) (rejecting application of agricultural exemption to farmer-operated processor because "[t]he employees work for Trout Processors, not the farms"); *Tullous v. Tex. Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811, 819 (S.D. Tex. 2008) (finding grower-owned processor "appears to be a separate entity, independent from the catfish farmers who own it and would not come, therefore, within the secondary meaning of agriculture"); *Goldberg v. Crowley Ridge Fruit & Vegetable Growers Asso.*, 295 F.2d 7, 9 (8th Cir. 1961) ("[A]ny claimed agricultural exemption by this Association . . . should have been denied and rejected."). Again, the Department of Labor has an express regulation specifying that employees of a farmers' association are not employed in agriculture.

> Employees of a farmers' cooperative association, however, are employed not by the individual farmers who compose its membership or who are its stockholders, but by the cooperative association itself. Cooperative associations whether in the corporate form or not, are distinct, separate entities from the farmers who own or compose them. The work performed by a farmers' cooperative association is not work performed 'by a farmer' but for farmers. Therefore, employees of a farmers' cooperative association are not generally engaged in any practices performed 'by a farmer' within the meaning of section 3(f).

29 C.F.R. § 780.133; *see also* 29 C.F.R. § 780.138 ("[A]n incorporated association of farmers that does not itself engage in farming operations is not engaged in agriculture[.]") (citation omitted). Simply put, neither Sterling Sugars nor South Central meet the definition of "a farmer" with respect to the secondary definition of agriculture.

8

When the work is not primary agriculture, and when the employer is not a farmer, the work must have been performed "on a farm" to be exempt agricultural work. *Ramirez*, 997 F.3d at 1360 ("to be exempt from the overtime requirements, the driving trips must have been 'performed . . . on a farm'"). The work here, driving sugarcane over public highways to the Defendants' mill in Franklin, Louisiana,[25] was not performed "on a farm." *Osceola Farms*, 372 F.2d at 588; *Ramirez*, 997 F.3d at 1360 (holding that "transportation-related activities on public roads—falls outside the secondary [agriculture] definition 'when performed by someone other than a farmer'") (cleaned up); 29 C.F.R. § 780.134 ("Any practice which cannot be performed on a farm, such as 'delivery to market,' is necessarily excluded [from agriculture], therefore, when performed by someone other than a farmer"). Here, driving agricultural products away from a farm does not constitute work "on a farm." *See, e.g., Bayside*, 429 U.S. at 301 (drivers transporting products to or from a farm is not work "on a farm"); *Chapman v. Durkin*, 214 F.2d 360, 363 (5th Cir. 1954) (hauling fruit away from a farm "cannot be said to be work performed ... on a farm"); 29 C.F.R. § 780.134 ("employees of an alfalfa dehydrator engaged in hauling . . . alfalfa away from the farms . . . are not employed in a practice performed 'on a farm'"). Defendants cannot meet either the primary or secondary definition of agriculture, and the Plaintiffs and other truck drivers are therefore not exempt from overtime pay under the FLSA.[26]

---

[25] Pls.' SOF ¶¶ 66, 67, 68.

[26] Defendants may argue in opposition that "since the Plaintiffs were in the United States on H-2A visas, that means that all the work performed by them must constitute agriculture and therefore they are exempt from any overtime requirements. . . . [but] it is the type of work, rather than the type of visa, that determines the existence of an exemption." *Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 747 F. Supp. 3d 1211, 1228 (W.D. Mo. 2024) (rejecting claim that H-2A workers are by definition exempt from FLSA overtime requirements).

**2.      Plaintiffs and other Truck Drivers are owed overtime based on the appropriate wage rate for the work performed.**

Plaintiffs are owed overtime wages based on the legal wage rate for their work. The Supreme Court has long required that where a separate federal requirement sets a higher minimum wage rate that rate is owed in calculating the FLSA "regular rate of pay" for overtime purposes. *Powell v. United States Cartridge Co.*, 339 U.S. 497, 519 (1950) (requiring application of "prevailing minimum wages" from other federal statues in determining overtime wages owed under the FLSA). Similarly, the Department of Labor's interpreting regulations require "[w]here a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5; *Moodie v. Kiawah Island Inn Co.*, 124 F. Supp. 3d 711, 720 (D.S.C. 2015) (applying same). The Fifth Circuit has held that a "straight time wage" rate listed in an employment contract cannot be the "regular rate" where the contractual wage rate failed to match the prevailing wage rate for the type of work performed. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1039 n.2 (5th Cir. 2010) (comparing the contract wage rate to "the minimum hourly wage rate for aircraft painters at the relevant time and area" as listed by USDOL); *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1305 (10th Cir. 2011) (contract cannot designate an artificially low wage rate to evade the purposes of the FLSA overtime wages due) (citation omitted). The FLSA requirement that full regular wages be legally paid in an overtime workweek extends beyond the base wages paid and is not met until wages required "under any applicable statute ha[ve] been paid." 29 C.F.R. § 778.315. Here, as discussed below, Defendants claimed the work was agricultural, obtained labor certifications

10

based on that representation, and paid a lower agricultural wage rate in the 2022 and 2025 seasons.[27] Had they truthfully represented the work as non-agricultural employment the wage rates required by the H-2B visa program would have applied. 20 C.F.R. § 655.10(b)(2).[28] That higher non-agricultural wage rate is the regular rate of pay that applies for overtime purposes under the FLSA for Plaintiffs and the other truck drivers.

### C.    Defendants' Violations of the FLSA Were Willful Such That a Three-Year Statute of Limitations Applies.

While the statute of limitations applicable to FLSA claims is normally two (2) years, 29 U.S.C. § 255(a), the limitations period is extended to three (3) years where the plaintiff establishes that the defendant's violation was "willful." 29 U.S.C. § 255(a). A "willful" violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The regulations interpreting the FLSA state that a violation shall be deemed "in reckless disregard … if the employer should have inquired further into whether its conduct was in compliance with the Act" and failed to do so. 29 C.F.R. § 578.3(c)(3). Here, Defendants have failed to take any identifiable steps to ensure its compliance.[29] Even after its subsidiary was sued for violations of the overtime provisions of the FLSA, Defendant Sterling Sugars' only adjustment was to shift the work to an agricultural association and claim that was sufficient despite express regulations which preclude agricultural associations from claiming the agricultural exemption.[30] 29 C.F.R. § 780.133. But that association is really just an appendage of

---

[27] As discussed below, during the 2023 and 2024 seasons there was no difference in the wage rates paid to agricultural truck drivers versus non-agricultural truck drivers employed on H-2 visas. As such, the only time periods at issue with respect to the payment of unlawfully low wage rates are the 2022 and 2025 seasons.
[28] In 2022, the Heavy Tractor-Trailer Driver median wage rate in the OES wage survey for St. Mary's Parish was $18.95/hour and in 2025 it was 19.99/hour. The wage rates are available on the Department of Labor's Office of Foreign Labor Certification's website at www.flag.dol.gov/wage-data/wage-search.
[29] Pls.' SOF ¶¶ 163-165, 171.
[30] Pls.' SOF ¶¶ 23, 25-28, 30, 171.

11

Sterling Sugars with its membership list maintained by Sterling, SOF 153, its payroll prepared by Sterling Sugars, SOF 89-96, its bank accounts maintained and funded by Sterling Sugars, SOF 130-131, 134-137, its accounting and taxes prepared by Sterling Sugars, SOF 123-125, and its financing entirely funded by Sterling Sugars in unsecured, interest free, loans that were forgiven, SOF 144-149.

Where "there was a previous investigation in which [Defendant] had violated the FLSA" that supports a finding that Defendant "had knowledge of the FLSA's overtime wage requirement." *Cruz v. Maverick Cty.*, 957 F.3d 563, 573 (5th Cir. 2020) (affirming willfulness finding). "Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). Indeed, even after prior litigation found a subsidiary of Defendant Sterling Sugars liable, these Defendants did not change, nor even review, their practices.[31] This constitutes a willful violation of the statute. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) ("When as here a company president has actual knowledge of FLSA's requirements and fails to comply, the company has acted willfully."); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979) ("Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws."). "Continuing the payment practices without further investigation into the alleged violation could constitute 'reckless disregard' of the FLSA." *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994)

---

[31] This Court has previously found that "Sterling was not intentionally hiring a group of H-2A workers to perform duties that did not qualify as agricultural in nature[.]" *Barron*, 2025 U.S. Dist. LEXIS 178401, at *20. But here that appears to be exactly what was done. Sterling Sugars and Defendant South Central, which was operated by Sterling Sugars and whose overtime decisions were made by Sterling Sugars, knew that truck driving work was not agricultural and yet persisted in setting up an "association" that was simply operated by Sterling Sugars' managers to claim that the truck driving work was agricultural. Pls.' SOF ¶¶ 30, 42.

(affirming finding of willfulness). Defendants knew of their FLSA obligations, paid overtime wages to employees who were directly employed by Sterling Sugars, but simply directed that foreign truck drivers be denied overtime although they worked for, reported to, and were paid by the same supervisors with the same payroll office.[32]

### D.      Liquidated Damages are Owed for the Overtime Violations.

"Any employer who violates the [minimum wage or overtime provisions] of the FLSA shall be liable to the employee . . . [for] their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are not punitive but rather are "intended in part to compensate employees for delay in payment of wages owed under the FLSA." *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). An award of liquidated damages is mandatory under 29 U.S.C. § 216(b) absent an employer's showing of good faith and reasonable grounds for the belief that it was not in violation of the FLSA. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990) (holding district court "erred in not awarding liquidated damages equal to the full amount of unpaid wages due plaintiffs"); *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 725–26 (5th Cir. 2011) (liquidated damages are mandatory under 29 U.S.C. § 216(b) unless the employer can meet its burden of showing it acted in "good faith"); *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1990). "The duty of the court to award liquidated damages . . . [is] ministerial, not discretionary[.]" *Mireles*, 899 F.2d at 1414. "An employer found liable . . . has the 'substantial burden' of proving . . . that its acts giving rise to the suit are both in good faith and reasonable[.]" *Id.* at 1415; *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998); *accord Singer v. City of Waco*, 324 F.3d 813, 822–23 (5th Cir.

---

[32] Pls.' SOF ¶¶ 28, 63-65, 72-73, 167, 169-170.

2003). If the employer fails in its burden, the court must award liquidated damages. *Mireles*, 899 F.2d at 1415; *Williams v. Tri-County Growers, Inc*., 747 F.2d 121, 129 (3d Cir. 1984).

The employer also carries the burden of pleading and proving each element of "the good faith" defense under 29 U.S.C. § 259*; see also* 29 C.F.R. § 790.13. Good faith requires the employer to investigate potential liability under the FLSA. *Steele v. Leasing Enters., Ltd*., 826 F.3d 237, 246 (5th Cir. 2016). Ignorance cannot be the basis for reasonable belief. *Id.; accord Barcellona*, 597 F.2d at 468–69; *see also Roy v Cty. of Lexington*, 141 F.3d 533, 548–49 (4th Cir. 1998) (holding that "an employer may not take an 'ostrichlike' approach to the FLSA by "simply remain[ing] blissfully ignorant of FLSA requirements") (cleaned up).[33] This burden "is a difficult one to meet," *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987), and "[l]iquidated damages are awarded as a matter of course" for overtime violations. *Solis v. Hooglands Nursery, L.L.C.,* 372 F. App'x 528, 530 (5th Cir. 2010). When an employer produces no or insufficient evidence to meet its substantial burden of proving its good faith and reasonableness, an award of liquidated damages is proper. *See Mireles*, 899 F.2d at 1415–16. Even if an employer meets its burden and establishes that it acted in good faith and had reasonable grounds for believing its actions were not a violation of the FLSA, the court still retains its discretion to award liquidated damages. 29 U.S.C. § 260; *see also Dacar v. Saybolt*, *LP*, 914 F.3d 917, 931 (5th Cir. 2018).

Here, Defendant Sterling Sugars already operated an entity that was sued in 2021 and ultimately found liable for FLSA overtime wages but made no changes to their pay practices, did not investigate their wage obligations, and continued to deny the truck drivers overtime wages.[34] *Barron*, 2025 U.S. Dist. LEXIS 178401, at *3 ("The officers and employees of Sterling Sugars,

---

[33] Where a Defendants has previously "received a complaint that relevant employment practices violated the FLSA," as was the case here when the *Barron* suit was filed in 2021, that is evidence of willfulness. *Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2020 U.S. Dist. LEXIS 18476, at *14 (S.D. Tex. Jan. 30, 2020).
[34] Pls.' SOF ¶¶ 23, 25-28, 30, 171.

14

LLC manage and operate [Defendant] Sterling on a day-to-day basis.") Moreover, Defendant Sterling Sugars was well aware that its sugar mill operation did not qualify for any agricultural exemptions since it paid all of its other employees overtime, including its H-2B workers, CDL truck drivers who hauled processed sugar, and the drivers who transported the Plaintiffs and other truck drivers to and from work every day.[35] In addition, before the hauling work was done by South Central and the Sterling Sugars Sales Corporation, truck drivers from Puerto Rico and other local U.S. citizens were employed directly by Sterling Sugars to do the hauling and were paid overtime.[36]

Defendant South Central likewise took no efforts to determine whether the overtime provisions applied to its operations, stating that it simply believed it didn't have to pay overtime to the truck drivers because the "association is made up of agricultural farmers that perform agricultural activities and have agricultural exemptions" and "[b]ecause they've gotten together to associate to hire H-2A workers, they still have agricultural exemptions."[37] South Central did not rely on anything else, including the FLSA regulations that directly address the applicability of the agricultural exemption to associations.

Defendants are unable to prove that they acted in good faith and with reasonable grounds to believe that its practices were not in violation of the FLSA and Plaintiffs and the other truck drivers are therefore entitled to liquidated damages on their FLSA claims.

E.    **Defendants Breached the Plaintiffs' and Other Truck Drivers' Employment Contracts by not Paying them Overtime and by not Paying them the Correct Wage Rate.**

Defendants annually brought between 120 and 140 truck drivers from Mexico under the

---

[35] Pls' SOF ¶¶ 29, 61, 65, 167, 169
[36] Pls' SOF ¶¶ 29.
[37] Pls' SOF ¶¶ 163-165.

H-2A visa program,[38] denied them overtime pay,[39] and ultimately paid them lower wages then they were legally owed. The H-2A visa program allows employers to recruit and hire foreign workers for agricultural positions if the wages and working conditions offered will not adversely affect the wages or working conditions of U.S. workers similarly employed. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. § 655.100. Employers seeking H-2A visas must submit a proposed temporary labor certification application to the federal government, called an ETA-790 "clearance order." *See* 20 C.F.R. § 655.122 (specifying minimum terms which must be contained in the job offer). The ETA-790 clearance orders, as well as federal regulations, establish the minimum benefits, wages, and working conditions that apply to the employment of foreign workers, and form the employment contracts at issue in this case. 20 C.F.R. § 655.122(q) ("The work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 29 CFR part 501, or this subpart."); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified Application for Temporary Employment Certification' became their work contracts.") (quoting 20 C.F.R. § 655.122(q)); *Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) ("[T]he clearance orders ultimately become the contract between the employers and [the H-2A workers]."); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341-42 (5th Cir. 1985). This includes a promise to "comply with all applicable Federal, State and local laws and regulations[.]" 20 C.F.R. § 655.135(e). In this case, the employment contracts at issue are the clearance orders filed by Defendants with the federal government each season between 2022 and 2025.[40]

---

[38] Pls' SOF ¶¶ 33.

[39] Pls' SOF ¶ 162.

[40] Pls.' SOF ¶ 33; Ex. 35 (2022 clearance order); Ex. 36 (2023 clearance order); Ex. 37 (2024 clearance order); Ex. 27 (2025 clearance order).

**1.      Defendants breached the employment contracts by failing to pay overtime wages to the Plaintiffs and other truck drivers.**

As noted, the employment contracts promised that the Defendants would comply with federal employment statutes which, of course, includes compliance with the FLSA overtime pay requirements. 20 C.F.R. § 655.135(e); *see, e.g., Calixtro-Calixtro v. Estate of Hodges*, No. 1:17-CV-394-LY, 2018 U.S. Dist. LEXIS 190453, at *6 (W.D. Tex. Nov. 6, 2018) (noting this promise includes FLSA wage requirements); *see also* 29 C.F.R. § 501(c)(3) (requiring promise to comply with federal employment law). Additionally, Defendant South Central signed an assurance to comply with federal wage requirements under penalty of perjury as part of the certification process to employ H-2A workers.[41] Under Louisiana law, "the elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 276 So. 3d 589, 595 (La. Ct. App. 2019) (cleaned up).

The promise to comply with a wage rate or to pay in compliance with a statutory provision is contractually enforceable. *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1348 (11th Cir. 1994) (ruling overtime contractually enforceable where "the Handbook expressly incorporates the FLSA rules on hours worked and determination of overtime"). In addition to federal law mandating contractual enforcement of wage promises, Louisiana law is also clear that where an employer allows overtime work it forms "a legally enforceable contract with the employees subject to it." *Knecht v. Bd. of Trs. for State Colls. & Univs.*, 591 So. 2d 690, 695 (La. 1991) (enforcing contractual overtime for paid leave practice).

---

[41] Pls.' SOF ¶ 173; Ex. 109 (ETA-9142A Appendix A for 2022 season); Ex. 110 (ETA-9142A Appendix A for 2023 season); Ex. 111 (ETA-9142A Appendix A for 2024 season); Ex. 35 (2022 clearance order ¶ 17(C)); Ex. 36 (2023 clearance order ¶ 17(C)); Ex. 37 (2024 clearance order ¶ 17(C)); Ex. 27 (2025 clearance order ¶ 17(C)).

Defendants breached the employment contracts when they denied Plaintiffs and the other truck drivers overtime pay. "Under basic contract principles, once the services are rendered, the right to receive the promised remuneration vests." *Knecht v. Bd. of Trs. for State Colls. & Univs.*, 591 So. 2d 690, 695 (La. 1991). Under Louisiana law, "the 'elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages.'" *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 276 So. 3d 589, 595 (La. App. 2019) (*quoting S. Jefferson Davis Parkway, LLC v. Williams*, 165 So.3d 1211, 1216 (La. App. 2015)). Plaintiffs and the class, pursuant to contract, are owed at the legally required wage rates for each season at issue in this litigation plus interest on the unpaid wages at the Louisiana statutory interest rate. Plaintiffs and the other truck drivers are entitled to summary judgment that their contractual right to be paid overtime wages was breached when Defendants failed to pay those wages.

**2.      Defendants breached the employment contracts by paying the Plaintiffs and other truck drivers improper agricultural wage rates during the 2022 and 2025 seasons.**

In addition to breaching the contractual promise to pay overtime wages, in two seasons, 2022 and 2025, Defendants paid an unlawfully low agricultural wage rate,[42] rather than the wage rate applicable for the truck driving work Plaintiffs' performed, further breaching the employment contract. Defendants told the Department of Labor that the work of Plaintiffs would be agricultural because Plaintiffs were working in sugarcane farming when, in fact, Plaintiffs were employed in truck driving for a sugar mill, an activity Defendants knew was non-

---

[42] The wage rate paid, the Adverse Effect Wage Rate or AEWR, is a statewide rate published annually by the Office of Foreign Labor Certification in the Federal Register, that is based on the average hourly wages paid to "field and livestock workers (combined)" in each state or contiguous region. 20 C.F.R. §§ 655.103(b), 655.120(b). It is not a wage rate applicable to the activity Plaintiffs and the class performed, which was *non-agricultural* over-the-road truck driving. To the extent Defendants believe it only offered to pay the AEWR, that is an illegal wage term. *See Mencia v. Allred*, 808 F.3d 463, 472 (10th Cir. 2015); 29 C.F.R. § 501.20(d)(vii) (employing H-2A workers in activities not listed in the job order is considered a violation of the H-2A program).

18

agricultural and for which higher wages were owed.[43] On South Central's clearance order applications that it filed to seek certification to employ truck drivers on H-2A visas it described its business using the North American Industrial Classification System (NAICS) Code of 111930 that applies to "Sugarcane farming, field production."[44] But South Central itself does not engage in the farming of any sugarcane and has not done so at any time between 2022 and 2025.[45] South Central does not have any ownership interest in any of the farms that are owned or operated by its members and did not advise the U.S. government that South Central itself was not engaged in any sugarcane farming when it applied to employ truck drivers on H-2A visas.[46]  South Central also did not advise the U.S. government of any of the numerous management activities that Sterling Sugars employees' performed for it or that South Central was propped up through massive funding by Sterling Sugars[47] such that the truck drivers were really working for Sterling Sugars, a sugar mill that uses the NAICS code for "sugarcane manufacturing" when it applies for H-2 visas,[48] resulting in the work being designated non-agricultural and subject to the wage rates for the H-2B non-agricultural program. All of this hid from the Department of Labor the fact that the work was not agricultural within the meaning of the H-2A program, furthering the main goal

---

[43] This Court has previously ruled that an improper wage rate in an employment contract must be administratively challenged. *Barron*, 2025 U.S. Dist. LEXIS 178401, at \*32 (W.D. La. Sep. 11, 2025). However, Plaintiffs, the foreign-visa recipients, are not parties to the administrative certification process and have no standing to seek revocation because the administrative procedure is limited to audits by the Department of Labor's Employment and Training Administration's Certifying Officer. 20 C.F.R. § 655.180(b) (specifying that the "CO has the sole discretion to choose the certified applications selected for audit.") It is axiomatic though that a Court should not enforce an unlawful wage term in an employment contract. *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 619 (8th Cir. 2015) (reversing district court because "most courts facing this question in other jurisdictions have held that H-2, H-2A, and H-2B workers can enforce a federally mandated wage rate under state contract law.") "[I]f there are legal or strong public policy considerations justifying the refusal to honor the contract as written, then the contractual stipulations are disregarded." *Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 908 (W.D. La. 2006) (nullifying choice of law term in contract as against Louisiana law and also discussing Louisiana public policy against noncompetition agreements).
[44] Pls.' Facts ¶ 157.
[45] Pls.' Facts ¶ 158. ("Q. Does South Central grow any crops. A. No.").
[46] Pls.' Facts ¶¶ 159-160.
[47] Pls.' Facts ¶¶ 145-149, 156.
[48] Pls.' Facts ¶¶ 167-168.

of setting up South Central in the first place—to ensure that the truck drivers would continue to be classified as H-2A workers at lower wage rates.[49]

The Plaintiffs and other class members drove trucks over public highways to various assigned loading sites where their trucks were loaded with sugarcane before Plaintiffs and the class members drove the trucks back to Defendant Sterling Sugars' Franklin, Louisiana sugar mill.[50] This work did not constitute agricultural field work, nor is it harvesting work, and instead is heavy-tractor trailer driving for which a prevailing wage is owed. For the work to have constituted agricultural labor under the H-2A program it must either fit the definition of agriculture under the FLSA, 29 U.S.C. § 203(f), which it did not as explained in Section II.B, *supra*, or fit the definition of agricultural labor in the Internal Revenue Code of 1986, 26 U.S.C. § 3121(g). 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 29 C.F.R. § 501.3(b). Because it fits neither definition the proper wage rate was the one for non-agricultural truck driving found through selecting the prevailing wage for non-agricultural H-2B work. 20 C.F.R. § 655.10.

Similar to the FLSA definition, the IRC definition requires that the services must be performed "on a farm," 26 U.S.C. § 3121(g)(1) or "in the employ of the operator of a farm," 26 U.S.C. § 3121(g)(4). As described earlier, Plaintiffs' work did not take place on a farm. And, as also described earlier, Plaintiffs' truck driving work was also not for a farmer because neither the association nor the sugar mill were the grower of the crops transported. The Internal Revenue Code defines working for a farmer as "in the employ of the operator of a farm." 26 U.S.C. § 3121(g). Additionally, the IRS regulations further clarify this definition as "owner, tenant, or other person, in possession of a farm and engaged in the operation of such farm." 26 C.F.R. § 31.3121(g)-1(e)(2). The IRS regulations are express that employment for an association is not

---

[49] Pls.' SOF ¶¶ 23-27.
[50] Pls.' SOF ¶¶ 66-67.

20

employment by a farmer. 26 C.F.R. § 31.3121(g)-1(e)(3) ("services described in this paragraph do not constitute agricultural labor if performed in the employ of a cooperative organization. The term 'organization' includes corporations, joint-stock companies, and associations which are treated as corporations").[51] The Department of Labor's Office of the Administrative Law Judges has previously determined where the employer did not operate a farm, "the transportation services performed by its workers cannot constitute 'agricultural labor' under the IRC." *In the Matter of Fresh Harvest, Inc.*, 2020-TLC-00052 at 5 (OALJ April 1, 2020). Plaintiffs and the other truck drivers were employed by a separately incorporated agricultural association and a sugar mill, neither of which were the operators of a farm and, accordingly, the work was not agricultural under the Internal Revenue Code's definition.[52]

Where the work is not "agriculture" an employer can hire foreign truck drivers to perform over-the-road hauling duties pursuant to the terms of the H-2B nonimmigrant worker visa program, which allows employers to hire foreign workers for non-agricultural duties at prevailing wage rates. *See* 8 U.S.C. §1101(a)(15)(H)(ii)(b); 20 C.F.R. §655.10(a).[53] The H-2B regulations define prevailing wage as "the arithmetic mean of the wages of workers similarly employed in the area of intended employment using the wage component of the BLS Occupational Employment Statistics Survey (OES)." 20 C.F.R. § 655.10(b)(2); *Louisiana Forestry Ass'n, Inc. v. Sec. of Labor*, 745 F.3d 653, 661-62 (3d Cir. 2014). And, as with the AEWR for agricultural workers, "[t]he purpose of the prevailing wage requirement is to prevent

---

[51] Department of Labor's regulations further clarify transportation is only covered as agriculture if it is performed "[i]n the employ of the operator of a farm in … transportation to market[.]" 29 C.F.R. § 501.3(b)(1)(i)(d).

[52] Pls.' SOF ¶¶ 158, 166.

[53] It would be unlawful and against public policy to find that the H-2A workers "accepted" the unlawfully low agricultural wages as the H-2A regulations prohibit employers from even asking workers to waive their rights under the Immigration and Nationalities Act that creates the rights to prevailing wages. 29 C.F.R. § 501.5 ("A person may not seek to have an H-2A worker . . . waive any rights conferred under 8 U.S.C. 1188, 20 CFR part 655, subpart B, or this part. Any agreement by a worker purporting to waive or modify any rights given to said person under 8 U.S.C. 1188, 20 CFR part 655, subpart B, or this part shall be void as contrary to public policy.").

foreign workers from adversely affecting American workers seeking to perform the same work." *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 617 (8th Cir. 2015).

Where an employer paid an unlawful wage rate, the Court's duty under federal employment statutes is to enforce the legally-mandated wage rate owed. *Powell v. United States Cartridge Co.*, 339 U.S. 497, 519 (1950) (requiring application of "prevailing minimum wages" from other federal statutes in determining overtime wages owed); *Perez v. Owl, Inc.*, 110 F.4th 1296, 1307 (11th Cir. 2024) ("the FLSA should be read in conjunction with other federal laws that set minimum wage requirements"); *see also* 29 U.S.C. § 218(a). "[I]f there are legal or strong public policy considerations justifying the refusal to honor the contract as written, then the contractual stipulations are disregarded." *Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 908 (W.D. La. 2006). Where a wage rate less than that required for the work actually performed, federal courts have ordered the higher wages to be paid. *Mencia v. Allred*, 808 F.3d 463 (10th Cir. 2015); *see also Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 646 (7th Cir. 2022) (affirming claims for worker "misclassified as an agricultural worker"); *Cuellar-Aguilar*, 812 F.3d at 620 (holding failure to pay "the prevailing wage" was contractually enforceable). In *Mencia* the appeals court concluded that a worker was not primarily employed as a sheepherder, and instead performing duties properly categorized as those of a ranch hand, which rendered the contractual wage term for sheepherding work "illegal and the wage term of the contract . . . invalid." *Mencia*, 808 F.3d at 472. The employer was obligated to compensate at the rate for the job actually performed (ranch hand), rather than the job described in the clearance order (sheepherder). *Id*. at 473. In this case, as in *Mencia*, Plaintiffs were required to be paid at the prevailing wage for the non-agricultural truck driving they actually performed, rather than the

22

AEWR wage applicable to agricultural jobs that was paid to the truck drivers in the 2022 and 2025 seasons.

The prevailing wage for non-agricultural work is defined as the "the arithmetic mean of the wages of workers similarly employed in the area of intended employment using the wage component of the BLS Occupational Employment Statistics Survey (OES)." 20 C.F.R. §655.10(b). In the 2022 and 2025 seasons, the OES prevailing wage applicable to Plaintiffs' work was higher than the AEWR wages actually paid to Plaintiffs and the class of truck drivers. The OES prevailing wage applicable to the non-agricultural truck driving Plaintiffs and the class performed in 2022 was $18.95 and $19.99 for 2025,[54] whereas the Plaintiffs and other truck drivers were paid the lower AEWR wage rates of $12.45 per hour in 2022 and $14.83 per hour in 2025. (ECF No. 115 – Am. Compl. ¶ 36.) Because Defendants' agreed in their clearance orders to comply with federal employment-related regulations, including those setting the minimum legal wage for non-agricultural work, Plaintiffs are entitled to summary judgment that they were contractually entitled to be paid these prevailing wages. *Mencia*, 808 F.3d at 472 (worker could enforce the employer's promise in its H-2A work contract that it would comply with federal H-2A regulations to obtain the higher wage required by those rather than the rate set forth in his H-2A work contract).

### F.    Defendants Violated the Louisiana Wage Payment Act

The Louisiana Wage Payment Act (LWPA) requires employers to pay their employees any unpaid wages due by the employee's next regular payday and not later than 15 days after employment ends. La. Rev. Stat. § 23:631. It is undisputed that more than 15 days have passed since each Plaintiffs' and class members' fixed term of employment pursuant to their H-2A

---

[54] The wage rates are available on the Department of Labor's Office of Foreign Labor Certification's website at www.flag.dol.gov/wage-data/wage-search.

contracts for each season has ended.[55] "An employer who fails to pay a former employee as directed in La. R. S. 23:631 'shall be liable' for penalty wages[.]" *Hanks v. La. Cos.*, 205 So. 3d 1048, 1057 (La. App. 2016). To the extent the Court determines that Plaintiffs are owed unpaid wages pursuant to the terms of their employment, as briefed above, Defendants are also liable to Plaintiffs under the LWPA for failing to pay these wages when due and Plaintiffs and the class are entitled to recover "ninety days wages at the employee's daily rate of pay[.]" La. Rev. Stat. Ann. § 23:632. Summary judgment as to Defendants' liability is therefore appropriate under the LWPA.

## CONCLUSION

For the foregoing reasons Plaintiffs' motion for partial summary judgment should be granted.

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone: (828) 379-3169
Email: jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
Email: dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC

---

[55] Exs. 25, 35-37 (clearance order showing dates of employment).

24

4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email: dan@estesdavislaw.com