# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **FELIPE DE JESUS AVILA-SOTO, ET AL.** | * | **CIVIL ACTION NO. 6:24-CV-01392** |
| | * | |
| | * | **JUDGE ROBERT R. SUMMERHAYS** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |
| **SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., ET AL.** | * | |
| | * | |
| | * | |
| | * | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION AND STATEMENT OF FACTS ........................................................... 1

II.     LEGAL STANDARD ................................................................................................ 7

III.    ARGUMENT ........................................................................................................... 7

    A.  Plaintiffs performed "agricultural" work. ........................................................... 7

    B.  South Central is not a cooperative association. ............................................... 10

    C.  Plaintiffs are not owed any wage rate higher than that approved by the Department of

    Labor. ....................................................................................................................... 12

    D.  Plaintiffs have not demonstrated any "willfulness" by Defendants.................................. 13

    E.  Plaintiffs are not entitled to liquidated damages. ............................................... 15

    F.  Plaintiffs have not shown any breach of contract for the same reasons as their underlying

    claims. ....................................................................................................................... 18

    G.  Plaintiffs have not shown any violation of the Louisiana Wage Payment Act................. 19

IV.    CONCLUSION ........................................................................................................ 20

PD.62171575.1

# TABLE OF AUTHORITIES

**Cases**

*Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904 (5th Cir. 1973) ........................................................ 9

*Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ...................... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ...................................................... 7

*Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)). ..................................... 13

*Barron v. Sterling Sugars Sales Corp*, No. 6:21-CV-03741, 2025 WL 2628123 at *8 (W.D. La. Sept. 11, 2025) ................................................................................................................... 15, 17

*Bennett v. SLT/TAG, Inc.*, 2003 WL 23531402, at *9 (D. Or. May 8, 2003) ......................... 16, 17

*Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 267 (5th Cir. 1998). ................................................ 16

*Bowie v. Gonzalez* ......................................................................................................................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 7

*Dacar v. Saybolt, L.P.*, 914 F.3d 917 (5th Cir. 2018) ................................................................... 13

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ...................................................... 7

*Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989) ............................................................. 7

*Houk v. SEI Technical Servs., Co.*, 657 F.Supp. 1014, 1016-17 (W.D.N.C. 1987) ...................... 16

*Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009) ............................... 13

*Lee v. Coahoma County*, 937 F.2d 220, 227 (5th Cir. 1991) ........................................................ 16

*McElrath Poultry Co. v. N.L.R.B.*, 494 F.2d 518, 518 n.1 (5th Cir. 1974) .................................. 10

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988 ........................................................ 13

*Meija v. Bros. Petroleum, LLC*, 2014 WL 3853580, at *1 (E.D. La. Aug. 4, 2014) .................... 13

*Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) ............................................... 13

*NLRB v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969) ........................................... 10

*Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1136-37 (10th Cir. 2000) ..................... 16

*Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375-76 (4th Cir. 2011) ....................................... 16

*Ramirez v. Statewide Harvesting & Hauling, LLC,* 997 F.3d 1356, 1359 (11th Cir. 2021) ........... 9

*Salas-Mateo v. Ochoa* ................................................................................................................... 19

*Sanderson Farms, Inc. v. NLRB,* 335 F.3d 445, 449 (5th Cir. 2003) ............................................ 9

*Sariol v. Fla. Crystals Corp* .......................................................................................................... 9

*Singer v. City of Waco*, 324 F.3d 813, 822-23 (5th Cir. 2003). .................................................... 16

*Steak v. Hat World, Inc.*, 191 So. 3d 712, 715 (La. App. 4 Cir. 2016) ........................................ 20

PD.62171575.1

*Winget v. Corp. Green, LLC*, 2011 WL 2173840, at *2-3  (M.D. La. May 31, 2011) ................. 16

*Wirtz v. Osceola Farms Co.* ................................................................................................. 9

**Statutes**

20 C.F.R. § 655.120 ............................................................................................................ 18

20 C.F.R. § 655.122(q) ....................................................................................................... 18

20 C.F.R. § 655.131 ............................................................................................................. 8

20 C.F.R. § 780.104 ............................................................................................................. 8

20 C.F.R. 655.103(b) ................................................................................................. 2, 10, 11

20 C.F.R. 655.181 ................................................................................................................ 2

20 CFR 655.131 .................................................................................................................. 6

26 U.S.C. § 3121 ............................................................................................................... 11

29 C.F.R. § 708.133 ........................................................................................................... 10

29 C.F.R. § 780.103 ............................................................................................................. 8

29 C.F.R. § 780.130 ........................................................................................................... 10

29 U.S.C. § 203(f) ............................................................................................................... 8

29 U.S.C. § 216 ................................................................................................................. 16

29 U.S.C. § 260 ................................................................................................................. 16

29 U.S.C. § 780.105 ......................................................................................................... 8, 9

8 U.S.C. 1188 ...................................................................................................................... 1

Fed. R. Civ. P. 56 ................................................................................................................ 7

La. Rev. Stat. § 23:631 ....................................................................................................... 20

La. Rev. Stat. § 23:632 ....................................................................................................... 20

PD.62171575.1

Defendants, South Central Sugar Cane Growers' Association, Inc. ("South Central") and Sterling Sugars, LLC ("Sterling") (collectively "Defendants"), respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment Regarding Violations of the Fair Labor Standards Act, for Breach of Employment Contracts, and for Violations of the Louisiana Wage Payment Act ("MPSJ").[1] In further support, Defendants submit their Statement of Disputed Material Fact in opposition to Plaintiffs' Statement of Material Facts as Exhibit A hereto.[2]

## I.    INTRODUCTION AND STATEMENT OF FACTS

The Plaintiffs in this lawsuit were employed by South Central as heavy tractor-trailer truck drivers pursuant to H-2A visas between 2022 and 2025.  Despite lawfully entering the country pursuant to those H-2A visas that identify South Central as the employer petitioner, Plaintiffs claim they actually worked for Sterling in non-agricultural jobs. The undisputed material facts show South Central is an agricultural association incorporated under Louisiana law, consisting of member farms who grow sugarcane.

The Court should deny Plaintiffs' Motion for Partial Summary Judgment because (1) the evidence proves they are not owed overtime pay under the FLSA; (2) the evidence proves Defendants reasonably relied on the U.S. Department of Labor's determination that the employment contract at issue should be performed in accordance with "the procedures established by the Secretary of the United States Department of Labor (the "Secretary") under the authority given in 8 U.S.C. 1188 to acquire information sufficient to make factual determinations of whether there are sufficient U.S. workers available to perform the agricultural employment and whether H-2A workers will adversely affect the wages and working conditions of workers in the U.S. similarly

---

[1] R. Doc. 119.
[2] *See* Ex. A, Statement of Disputed Material Facts.

employed; (3) Defendants (and particularly South Central) have shown good faith and reasonable grounds for the belief that Plaintiffs were lawfully admitted in H-2A status; and (4) the parties performed all terms of the contract(s) at issue to completion.

The question in this case is whether an "association" is an "employer" for purposes of 20 C.F.R. 655.103(b). The evidence shows South Central has a place of business in the United States, has an employer relationship with respect to an H-2A workers, and possesses, for purposes of filing an *Application for Temporary Employment Certification*, a valid Federal Employer Identification Number (FEIN)."[3]    The evidence shows South Central engaged in agriculture through its member operators that worked on farms or at the processing establishment. Beyond this, the applicable regulation explains "An *Application for Temporary Employment Certification* filed by an association of agricultural producers as a joint employer with its employer members must cover the same occupations or comparable agricultural employment; the same start date of need for all employer-members listed on the *Application for Temporary Employment Certification*; and may cover multiple areas of intended employment within a single State but not more than two contiguous States."[4]    The evidence shows South Central's certification to employ was obtained through the Labor Certification Process for Temporary Agricultural Employment in the United States (H-2A Workers) explained in Subpart B of Part 655.100 of the Code of Federal Regulations. Plaintiffs have not shown South Central's *Application for Temporary Employment Certification* was revoked in accordance with 20 C.F.R. 655.181.

Although Named Plaintiff, Avila-Soto, testified, "I worked for Sterling[5]," and does not concede working for the Association, his admissions are both clarifying *and contradictory*:

---

[3] *See generally* 20 CFR 655.103(b).
[4] 20 CFR 655.103(b) (*Master application*).
[5] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 74:10-12.

2

PD.62171575.1

Plaintiff explained, "So I'm saying that **I never knew** that there was an association. Whenever we went, we always met with Rivers with Jaime, with the same Lady and Tim. I don't know anything about an association."[6] Plaintiff, Avila-Soto was directly asked, "so your testimony is you did not work for the association?"[7] And he candidly explained, "It's just that I don't know at what time it became an association."[8] When asked, "did you ever work for South Central while you were in the United States?",[9] Plaintiff, Avila-Soto candidly responded, "well, I don't remember it. Like I said, I always knew it as Sterling. Now Sterling."[10] Plaintiff admits he sued South Central because, "…I don't know which is one and the other. It seems like they're together."[11] Plaintiff, Avila-Soto, admits of no recollection of ever signing an employment contract that identified Sterling as his employer.[12] Although Avila-Soto provided sworn testimony claiming to have entered the United States using a Sterling visa,[13] when asked to produce that record, Avila-Soto recanted and said, "**these are the only ones that I have**."[14] Plaintiff, Avila-Soto, clearly testified that he and the class members that he purports to represent complied with the terms of the visas that they used to enter the United States.[15] Plaintiff, Avila-Soto, was directly asked, "you did not work for any other employer than the one endorsed on your visa?"[16] After an objection suggestion Mr. Avila, "…already testified that he worked for Sterling Sugars repeatedly," the Named Plaintiff clearly answered "No."[17] He verified <u>that</u> response twice as shown at page 109, lns. 18 and 20 of his

---

[6] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 74:8-25 – 75:17-24.

[7] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 74:13-14.

[8] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 74:21-22.

[9] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 78:5-8.

[10] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 78:5-8.

[11] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 79:7-18.

[12] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 98:11-16; *see also* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 98:22-25.

[13] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 106:24-25.

[14] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 107:2-4 (Plaintiff, Avila-Soto, identifying only employment-based visas endorsed to South Central).

[15] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 108:22-25 (Plaintiff, Avila-Soto, answered: "It's correct.").

[16] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 109:1-2.

[17] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 109:10.

PD.62171575.1

sworn testimony. Plaintiff 110 of Plaintiff, Avila-Soto's, testimony is also telling; he admitted, "well, **as far as I know**, we all worked for Sterling…" None of the evidence supports Plaintiff, Avila-Soto's, mistaken belief.

And this is why Plaintiff, Avila-Soto, candidly admitted that Defendants had not made false representations like he alleged at Paragraph 2 of the Complaint.[18] Plaintiff, Avila-Soto, agrees Rivers Patout "never told you to say that you are an agricultural worker based on the fact that you said it was only Jose and Sergio who gave you that instruction in the dining hall?"[19] When asked, "How were you deceived?"[20], Plaintiff, Avila-Soto, answered, "That we were agricultural workers when we were truck drivers."[21] When asked to identify any false statement he alleges South Central made in the employment contracts at issue, Plaintiff, Avila-Soto was clear in explaining, "So I don't know why you keep asking me to identify whether they made a false accusation. They give me the document. They told me to sign here. I signed. That's all."[22] This candid testimony likely relates to the fact that Plaintiff, Avila-Soto, admits he never had read the Complaint he filed, let alone the allegations set forth at paragraph 2.[23] Plaintiffs never violated their immigration status inasmuch as Plaintiffs admit, "I never worked illegally, and I never went to any other place except for here."[24] Because Plaintiff, Avila-Soto, definitively stated that he and his class members performed no other work than what he had described, *i.e.*, "we were just driving trucks,"[25] it was

---

[18] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 111:11-12.

[19] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 112:13-24 (Avila-Soto concedes Rivers Patout never told him to pose as an "agricultural worker.").

[20] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 113:13.

[21] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 113:14-15; *see also* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 114: 2-4 (According to Avila-Soto, "the only thing I know is that we came as truck drivers, not as agricultural workers".) *But see* the various visas that Plaintiff, Avila-Soto both endorsed and presented for admission showing South Central as his employer after the U.S. Department of Labor certified H-2A need relative to the driving work at issue in this case.

[22] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 120:4-9.

[23] *See generally*, Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 124:13-20; *see also* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 62:2-17.

[24] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 177:1-5.

[25] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 73:12-15.

4

reasonable to ask Plaintiff to identify the breach at issue.  Plaintiff, Avila-Soto's response was clear: "If a contract says you're going to make 'this' amount but as a farm worker, not as a truck driver, that's where the deceit is at."[26]  But Plaintiff's (apparent) perception of wrongdoing (which he explained at pages 130-145) is unsupportable: Plaintiff testified he believed his contract was unlawful because the document did not disclose his job title, 'truck driver'.  But he was shown page 929 where, "…**this contract says, 'truck driver**."[27] Although Plaintiff, Avila-Soto, pivoted to parole evidence to support the notion that his job title somehow had been falsified,[28] no Plaintiff has legitimately disputed that the job orders at issue plainly identified the scope of the work they actually performed.  And when consideration is given to the fact that Plaintiff, Avila-Soto, admits he would go and get sugar cane from agricultural fields[29]; that the allegations at Paragraph 2 of the Complaint are unsupportable, and that he simply cannot produce any of the Sterling pay records he claims are now in his possession,[30] it is clear Plaintiff has failed to meet his burden on production to show he and his class members are entitled to summary judgment.

Defendants do not address the nature of the relationship between South Central and Sterling, which Plaintiffs allege to be a joint employment relationship, in this memorandum. Respecting the Court's time and familiarity with the regulatory concerns at play in this case, Defendants instead respectfully reference the Opposition to Plaintiffs' Motion for Summary

---

[26] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 130:4-6.

[27] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 144-145.

[28] Indeed, Avila-Soto, reverted to statements allegedly made by persons other than Rivers Patout to support the notion that his employment scenario had not been truthfully disclosed.  *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 145:5-8.  Notably, the contract documents *that Plaintiff seeks to enforce* clearly indicate that this truck driving function was disclosed on the **agricultural clearance order** that the United States government certified. *See* R. Doc. 118-12, 118-13, 118-14, 118-15.

[29] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 140:5-10

[30] *See generally,* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 191-196 (Avila-Soto declines to produce alleged Sterling pay records allegedly distributed to him and which he maintains proves his employment relationship with Sterling).

5

Judgment on Employer Status of Defendant Sterling Sugars, LLC *en extenso*.[31] For the reasons set forth therein, the Court simply should not be misled by Plaintiffs' confusion between South Central and Sterling. Plaintiff Avila-Soto admits, he did not know that he had sued South Central,[32] that he never read over his lawsuit before it was filed,[33] and that he did not know his employer was an Association.[34] Plaintiffs neither address nor dispute 20 CFR 655.131, which explains Association filing requirements for either individual or master applications, specifically:

> If an association files an Application for Temporary Employment Certification, in addition to complying with all the assurances, guarantees, and other requirements contained in this subpart and in part 653, subpart F, of this chapter, the following requirements also apply.
>
> (a) *Individual applications*. Associations of agricultural employers may file an Application for Temporary Employment Certification for H-2A workers as a sole employer, a joint employer, or agent. The association must identify in the Application for Temporary Employment Certification in what capacity it is filing. The association must retain documentation substantiating the employer or agency status of the association and be prepared to submit such documentation in response to a Notice of Deficiency from the CO prior to issuing a Final Determination, or in the event of an audit.
>
> (b) *Master applications*.  An association may file a master application on behalf of its employer-members. The master application is available only when the association is filing as a joint employer.  An association may submit a master application covering the same occupation or comparable work available with a number of its employer members in multiple areas of intended employment, just as though all of the covered employers were in fact a single employer, as long as a single date of need is provided for all workers required by the Application for Temporary Employment Certification and all employer-members are located in no more than two contiguous States.  The association must identify on the Application for Temporary Employment Certification by name, address, total number of workers needed, and the crops and agricultural work to be performed, each employer that will employ H-2A workers. The association, as appropriate, will receive a certified Application for Temporary Employment Certification that can be copied and sent to the United States Citizenship and Immigration Services (USCIS) with each employer-member's petition.

---

[31] R. Doc. 133, filed in opposition to R. Doc. 120.
[32] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 48.
[33] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 55:21-25.
[34] *See* Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 74:8-25.

6

The evidence in this case proves Plaintiffs delivered sugar cane grown by farmers who were all members of the South Central Association. When every inference is drawn in Plaintiffs' favor, the evidence shows all parties operated in good faith when relying on the various government determinations that issued among the parties based on their applications. Plaintiffs' dispute about this fact is not genuine because it (admittedly) is based on a mis-appreciation about employer who sought and obtained certification through lawful means.

## II.    LEGAL STANDARD

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law."[35]  To obtain dispositive relief now, Plaintiffs must "establish beyond peradventure all the essential elements of the claim[s]…to warrant judgment in [the plaintiff's] favor.[36]  "In other words, when a plaintiff moves for summary judgment on claims for relief, it must establish that no reasonable trier of fact could find other than for the plaintiff."[37]  Upon review of a summary judgment motion, all inferences are drawn in favor of the non-moving party.[38]  "[T]he non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."[39]  In this case, the evidence proves that summary judgment is not proper.

## III.    ARGUMENT

### A.    Plaintiffs performed "agricultural" work.

---

[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Fed. R. Civ. P. 56.
[36] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).
[37] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).
[38] *See id.* (citing *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989)).
[39] *Anderson*, 477 U.S. at 322.

Consistent with Plaintiffs' admission that they never worked illegally, Plaintiffs have not produced evidence to prove their work was non-agricultural. The material facts show that Plaintiffs *were* engaged in agriculture as a matter of law inasmuch as they admit they only worked driving sugar cane according to the terms of their visas. Pursuant to 29 C.F.R. § 780.103, which is the Department of Labor's "official interpretive bulletin . . . with respect to the meaning and application of sections 3(f), 13(a)(6), and 13(b)(12) [of the FLSA]," the term "Agriculture" includes:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., and any practices . . . performed by a farmer or on a farm *as an incident to or in conjunction with* such farming operations, including preparation for market, *delivery to storage or to market* or to carriers for transportation to market.[40]

20 C.F.R. § 655.131 allows "joint employers" to hire employees that deliver their commodity to market. Indeed, 20 C.F.R. § 780.103 and 20 C.F.R. 780.104 explain that farmers – like the member growers here – engage in "agriculture" when delivering commodity to market. There is no dispute that the employer in this case was certified pursuant to 20 C.F.R. § 655.131, without revocation. The Plaintiffs admit they only drove sugar cane and did not violate their status. This means the agricultural exemption applies per 20 C.F.R. § 780.104, regardless of any modern specialization affects.

The definition of agriculture includes both "primary" and "secondary" agriculture.[41]  This broader, secondary meaning "includes any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction

---

[40] 29 U.S.C. § 203(f); 29 C.F.R. § 780.103 (emphasis added).
[41] 29 U.S.C. § 780.105(a).

8

PD.62171575.1

with 'such' farming operations."[42]   With little support for their position, Plaintiffs cite to cases where the Eleventh and Fifth Circuit held that transportation is not part of the *primary* meaning of agriculture.[43] That is not the issue here.

The *secondary* meaning of agriculture includes operations broader than just the traditional definition, including "any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with" farming operations.[44] This secondary meaning includes the work of driving trucks transporting unfinished agricultural product from a farm.[45] Plaintiffs' primary reliance is on a distinguishable string of cases originating with *Wirtz v. Osceola Farms Co.*[46] That case, from 1967, found that employees of a *mill* who delivered unprocessed sugar cane from the fields of independent growers to the mill were not agricultural employees.[47] As set forth at length (and as demonstrated by Plaintiffs' failure to produce documents from Sterling or pay stubs that they claim are in their possession),[48] Plaintiffs are not employees of Sterling Sugars; they were always employees of South Central, an agricultural association of farms which hired Plaintiffs to perform this agricultural work.[49] They admit as much because they never violated their immigration status.[50]

In *Bowie v. Gonzalez*, the First Circuit similarly addressed a scenario involving employees of a mill, not the farmers.[51] And in *Sariol v. Fla. Crystals Corp.*, the Eleventh Circuit similarly

---

[42] *Id.*

[43] *See Ramirez v. Statewide Harvesting & Hauling, LLC,* 997 F.3d 1356, 1359 (11th Cir. 2021) (declining to extend the *primary* definition to transportation); *Sanderson Farms, Inc. v. NLRB,* 335 F.3d 445, 449 (5th Cir. 2003) ("hauling products to or from a farm is not *primary* farming").

[44] 29 C.F.R. § 780.105(c).

[45] *See Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904, 904-05 (5th Cir. 1973) (finding that both "in-haul" and "out-haul" truck drivers were "agricultural employees" under FLSA because the work was "in conjunction with" the farming activity of preparing the unfinished commodity to market.)

[46] 372 F.2d 584 (5th Cir. 1967).

[47] *Id.* at 588-90.

[48] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 191-196.

[49] *See* R. Doc. 133, filed in opposition to R. Doc. 120.

[50] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 177:1-5.

[51] 117 F.2d 11, 20 (1st Cir. 1941).

9

interprets *Osceola*, but applies the facts to unrelated employees (maintenance workers supplying fuel), making it entirely unpersuasive.[52] Plaintiffs ignore the number of other cases interpreting the same definition and applying them in South Central's favor. In *Abbot Farms v. NLRB*, the Fifth Circuit held that employees who were comprised of (1) truck drivers delivering ingredients to a feed mill, (2) operators of the mill, and (3) drivers who transported the feed to the farm's poultry raiser were all included within the FLSA's definition of agriculture because all of those operations were part of the farming venture of raising poultry.[53]  Thus, Plaintiffs' work delivering sugarcane is clearly agricultural.

### B.    South Central is not a cooperative association.

As to the assertion that South Central is not a "farmer," Plaintiffs' argument is based on an inaccurate recitation of the controlling facts and law. "The term 'farmer' . . . is not confined to individual persons. Thus, *an association,* a partnership, or a corporation which engages in actual farming operations may be a 'farmer.'"[54] Plaintiffs cite to what they claim to be an "express regulation" by the Department of Labor, but that regulation applies to *cooperative* associations under 29 C.F.R. § 708.133, which South Central is not.  South Central is an agricultural association pursuant to 20 C.F.R. § 655.103. That regulation authorizes labor certification for "fixed-site employer(s)" including agricultural associations.[55]

An "agricultural association" is "any nonprofit *or* cooperative association of farmers, growers, or ranchers . . .  incorporated or qualified under applicable State law, that recruits, solicits, hires, employs, furnishes, houses or transports any worker" subject to the Immigration Nationality

---

[52] 490 F.3d 1277, 1280 n.2 (11th Cir. 2007).
[53] *Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904, 904-05 (5th Cir. 1973). *See also McElrath Poultry Co. v. N.L.R.B.*, 494 F.2d 518, 518 n.1 (5th Cir. 1974); *but see NLRB v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969)).
[54] 29 C.F.R. § 780.130 (emphasis added).
[55] 20 C.F.R. § 655.103(b).

PD.62171575.1

Act.[56] (emphasis added). The disjunctive "or" indicates that there is a distinction between a cooperative and a non-profit agricultural association. By contrast, under the Internal Revenue Code, "a group of operators of farms (other than a cooperative organization)" may be engaged in agricultural labor, "but only if such operators produced all of the commodity with respect to which such service is performed." "[A]ny *unincorporated* group of operators shall be deemed a cooperative organization if the number of operators comprising such group is more than 20 at any time during the calendar year in which such service is performed."[57]

The undisputed material facts prove that South Central is an incorporated nonprofit agricultural association.[58] It engaged in agriculture through its member operators that worked on farms.[59] It is an association of member farms, each of which have operational control over their respective farms and grow all of the commodity sold from their farms.[60] As set forth by the Job Orders, each individual farm that is a member of South Central is listed as a Joint Employer of the Plaintiffs.[61] Plaintiffs are The member farms of South Central grow and own all of the commodity sold from their farms.[62] The raw sugarcane products transported by Plaintiffs were transported from the farms to the mill in an unmanufactured state for further processing.[63] Plaintiffs did not transport sugar from Sterling Sugars.[64] As employees of South Central, Plaintiffs were thus

---

[56] 20 C.F.R. 655.103(c).

[57] 26 U.S.C. § 3121(g)(4)(B).

[58] R. Doc. 118-1 (Defendants' Supplemental Responses to Plaintiffs' First Interrogatories), 118-2 (South Central and Sterling Formation Documents).

[59] *See also* 20 CFR 655.103 (b) (defining, "Fixed-site employer).

[60] *See* R. Doc. 118-23 (Defendants' Statement of Undisputed Material Facts), at ¶¶ 1-5.

[61] R. Doc. 118-12 (2022 ETA Form-790/790A, at SCSCGA-001123); 118-13 (2023 ETA Form-790/790A, at SCSCGA-001344); 118-14 (2024 ETA Form-790/790A, at SCSCGA-001512); 118-5 (2025 ETA Form-790/790A, at SCSCGA-003093).

[62] R. Doc. 118-9 (Deposition of Ashlee Gary on behalf of South Central), at 341:2-5

[63] R. Doc. 118-10 (Deposition of Rivers Patout), at 33:1-8, 40:21-41:19

[64] R. Doc. 118-3 (Deposition of Ricky Gonsulin on behalf of South Central, at 59:8-17; 61:12-18); R. Doc. 118-10 (Deposition of Rivers Patout), at 33:1-8, 40:21-41:19. For the same reasons, Sterling is also engaged in "agriculture" under the definitions of the FLSA. Sterling is engaged in the processing of unfinished raw sugar and preparing it for market. Thus, though Sterling was not the employer of any plaintiff, it, too engaged in "agriculture."

11

employed by an agricultural employer and engaged in agricultural labor, and so they were subject to the agricultural exemption of the FLSA. That Motion should be denied as a matter of *inter alia* regulatory law.

### C.    Plaintiffs are not owed any wage rate higher than that approved by the Department of Labor.

Plaintiffs contend, based on their legal fallacies about joint employment and misclassification, that Defendants were obligated to pay Plaintiffs a higher wage rate than those set forth in their Job Orders. This claim is unsupportable. The parties entered legally binding contracts in 2022, 2023, 2024 and 2025.[65]  According to the contracts, Plaintiffs were to be paid a rate of $12.45 per hour in 2022, $23.16 per hour in 2023, $23.93 per hour in 2024, and $14.83 per hour in 2025.[66]  Plaintiffs do not dispute receiving those rates of pay.[67]  During each of the years in question, the Department of Labor classified Plaintiffs' work as "Heavy and Tractor-Trailer Truck Drivers" based on the job duties in their Job Orders, which include "operating and performing routine servicing of trucks and equipment to transport sugarcane from various worksites, in connection with the harvesting of a perishable crop, from the fields to the mill and from the factory parking and staging areas to the mill operating tractor-trailer combination; [and] deliver[ing] sugarcane to designated locations[.]"[68]

South Central reasonably relied on agency determinations from the Department of Labor, which certified that Americans were not available for this job opportunity. South Central was

---

[65] R. Doc. 115 at ¶ 85.
[66] R. Doc. 118-12 (2022 ETA Form-790/790A, at SCSCGA-001123); 118-13 (2023 ETA Form-790/790A, at SCSCGA-001344); 118-14 (2024 ETA Form-790/790A, at SCSCGA-001512); 118-5 (2025 ETA Form-790/790A, at SCSCGA-003093).
[67] R. Doc. 118-19 (Deposition of Felipe de Jesus Suarez-Palafox), at 58:1-6, 61:23-62:14; R. Doc. 118-20 (Deposition of Felipe de Jesus Avila-Soto), at 153:8-157:4, 159:7. *See also* R. Doc. 118-21 (Wage Information for Named Plaintiffs).
[68] R. Doc. 118-12 (2022 ETA Form-790/790A, at SCSCGA-001123); 118-13 (2023 ETA Form-790/790A, at SCSCGA-001344); 118-14 (2024 ETA Form-790/790A, at SCSCGA-001512); 118-5 (2025 ETA Form-790/790A, at SCSCGA-003093).

PD.62171575.1

legally eligible to employ Plaintiffs in the job classification authorized by the Department of Labor and to pay them the applicable wage rate contained in the Job Order. Yet Plaintiffs urge "interpreting regulations" by the Department of Labor require a higher wage rate than that approved by the Department. South Central could not and did not employ beyond the express terms contained in Plaintiffs' work contracts, which indisputably establish the terms and conditions of their employment.

### D.    Plaintiffs have not demonstrated any "willfulness" by Defendants.

Plaintiffs assert that the statute of limitations under the FLSA should be extended from two to three years based on the purported "willful[ness]" of the alleged violations by Defendants, yet they point to no evidence (and cannot) showing such willfulness. "[T]he Fifth Circuit takes a strict view of the FLSA's provision that statute of limitations run from the opt-in date, and courts cannot change the terms of the statute unless warranted by extraordinary circumstances."[69] When asserting a claim for willful FLSA violations, "Plaintiffs bear the burden of establishing a defendant's willfulness."[70] "A willful violation occurs when the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'"[71] "The Supreme Court explicitly rejected a standard that would require merely 'an awareness of the possible application of the FLSA."[72] "A negligent violation of the statute is not itself a willful violation[,]"[73] and "[e]ven unreasonableness is not sufficient to establish a willful violation."[74]

Plaintiffs' sole support for the claim that Defendants acted "willfully" with respect to any alleged FLSA violation is that a lawsuit involving an entity that is not named in this suit, Sterling

---

[69] *Meija v. Bros. Petroleum, LLC*, 2014 WL 3853580, at *1 (E.D. La. Aug. 4, 2014) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)).
[70] *Dacar v. Saybolt, L.P.*, 914 F.3d 917 (5th Cir. 2018).
[71] *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).
[72] *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009) (citing *McLaughlin*, 486 U.S. at 135).
[73] *Id.* (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990).
[74] *Id.* (citing *McLaughlin*, 486 at 135).

13

Sugars Sales Corporation, meant that South Central and/or Sterling Sugars had knowledge of the FLSA's requirements and failed to comply. This fails on every front. First, for all the reasons set forth in this memorandum opposition and in Defendants' Motion for Summary Judgment, South Central has a good faith legal basis for structuring its employment of H-2A workers in the manner it does. South Central testified as much:

> Q.    Who made the decision to not pay the truck drivers overtime pay?
>
> A.    I don't believe there was a decision that was made. I believe that it was an understanding. Our association is made up of agricultural farmers that perform agricultural activities and have agricultural exemptions. Because they've gotten together to associate to hire H-2A workers, they still have agricultural exemptions. So it was my understanding that overtime would not be paid based on those ideas.
>
> Q.    And so did somebody at South Central determine that because the farmers were the members of the association, that overtime pay wasn't -- didn't need to be paid?
>
> A.    I don't think that it was one or -- or a group of people that determined. I think it was just an understanding that because there was agriculture exemption, that we would not pay overtime.[75]
>
> . . .
>
> Q.    Did South Central believe that because the growers grew sugarcane and may have had an exemption related to that, that that exemption carried over to South Central and applied to South Central as an entity itself?
>
> A.    Yes.
>
> Q.    What was that belief based on?
>
> A.    The definition of agricultural activities includes the growing, cultivation, the harvesting, and getting their product to market.[76]

The only connection between these defendants and Sterling Sugars Sales Corporation is a subsidiary relationship with Sterling Sugars, which did not employ Plaintiffs. Plaintiffs cannot show that Sterling Sugars Sales Corporation, which was not structured as an agricultural

---

[75] Ex. C, Deposition of Ashlee Gary/South Central, at 458:5-22.
[76] Ex. C, Deposition of Ashlee Gary/South Central, at 459:3-11.

14

PD.62171575.1

association, imputed its knowledge to South Central or Sterling. And finally, the difference in structure between South Central and Sterling Sugars Sales Corporation shows that there is no "reckless disregard" for applicable law. South Central is not a wholly owned subsidiary of Sterling Sugars, it is not a for-profit entity, and it is explicitly structured as an agricultural association made up of grower-members.

And at all times, South Central made its decisions on the reliance of the determination by the Department of Labor with respect to the job orders. Plaintiffs now ask the Court to upend an agency determination and to revise an accepted and performed contract to align with outcomes they believe should have been made. But this Court should stop short of affording Plaintiffs that particular remedy. As this Court held in *Barron v. Sterling Sugars Sales Corp.*, "[th]e Fifth Circuit has held that an employer's reasonable reliance on a federal agency's determination that the employer's pay practices comply with the FLSA is sufficient for an employer to avail itself of the good-faith defense. Particularly relevant here, when an employer relies on a Department of Labor determination that an employee is legitimately classified, then the employee's belief that its pay practices comply with the FLSA is a good-faith belief."[77] Likewise, here, South Central relied upon a good faith belief that the DOL had properly classified these Plaintiffs (which Defendants maintain is true) in determining how to classify them.

Thus, Plaintiffs have not met their burden of showing "willfulness" by Defendants in order to extend the FLSA statute of limitations. This precludes summary judgment on Plaintiffs' claims for willful FLSA violations and the limitations period must be limited to two years.

### E.    Plaintiffs are not entitled to liquidated damages.

---

[77] *Barron v. Sterling Sugars Sales Corp*, No. 6:21-CV-03741, 2025 WL 2628123 at *8 (W.D. La. Sept. 11, 2025) (internal quotes and cites omitted).

Similarly, Plaintiffs are not entitled to liquidated damages here because South Central acted in good faith and maintains that it has reasonable grounds for believing it was not in violation of the FLSA with respect to these Plaintiffs. An employer who violates the overtime and/or minimum wage provisions of the FLSA may be liable for the amount of unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.[78] A court has broad discretion to eliminate or reduce a liquidated damages award where the employer shows that its "act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."[79] The purpose of this discretion is to mitigate the harshness of the FLSA double-damage assessment.[80]

Like the determination of willfulness in the FLSA statute of limitations context, the good faith and reasonableness inquiry for liquidated damages requires a case-specific consideration of the relevant facts. Generally, courts consider the same or similar facts for purposes of resolving both the statute of limitations and liquidated damages. For example, courts have found good faith and reasonableness on the part of an employer when the employer seeks advice from counsel as to compensation of its employees.[81] At the same time, "[g]ood faith does not require an employer to seek a new legal opinion each time an employee challenges a pay policy…."[82] In addition, when an employer bases its compensation practices on the practices of the industry, courts have found reasonableness and good faith for purposes of liquidated damages.[83] Finally, if the law in effect

---

[78] 29 U.S.C. § 216(b); *Singer v. City of Waco*, 324 F.3d 813, 822-23 (5th Cir. 2003).

[79] 29 U.S.C. § 260; *Singer,* 324 F.3d at 822-23.

[80] *See Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 267 (5th Cir. 1998).

[81] *See Lee v. Coahoma County*, 937 F.2d 220, 227 (5th Cir. 1991); *see also Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375-76 (4th Cir. 2011); *Winget v. Corp. Green, LLC*, 2011 WL 2173840, at *2-3 (M.D. La. May 31, 2011); *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1136-37 (10th Cir. 2000).

[82] *Winget,* 2011 WL 2173840, at *3.

[83] *See e.g. Houk v. SEI Technical Servs., Co.*, 657 F.Supp. 1014, 1016-17 (W.D.N.C. 1987); *Bennett v. SLT/TAG, Inc.*, 2003 WL 23531402, at *9 (D. Or. May 8, 2003).

16

at the time of the alleged FLSA violation is unclear as to the legality of the compensation practice, good faith and reasonableness may be established.[84]

For the same reasons discussed above with regard to the statute of limitations, South Central compensated Plaintiffs in good faith and with reasonableness; and thus, the Court should exercise its discretion to deny an award of liquidated damages for any FLSA liability on the part of South Central (which Defendants deny). South Central relied upon a good faith belief that its structure as an agricultural association and the status of its member-growers as farmers made Plaintiffs subject to the agricultural exemption.[85] Although Defendants strongly dispute that any liquidated damages may be owed, as Plaintiffs point out, a 2021 lawsuit put the status of the agricultural exemption for truck drivers in flux, and so good faith can be shown on the part of South Central on the basis of the unclear manner of the law.[86] South Central's representative testified that, during the period of formation of South Central, "there were a lot of changes going on with how things were paid, as far as rates are concerned, within the federal government. There were -- it seems like every year there was a new rule or change that was coming out."[87] South Central also had counsel and relied on labor consultants for seeking out foreign labor.[88] Finally, Defendants relied on the approval of the Job Orders by the Department of Labor to determine the pay rate for Plaintiffs, and this determination was made in good faith.

Again, Plaintiffs' position requires this Court to assume that Sterling Sugars employed Plaintiffs and that it maintained a puppet-master control over South Central, which has its own corporate structure, officers, and member-growers who outsourced management decisions to

---

[84] *See Bennett*, 2003 WL 23531402, at *9-10.
[85] Ex. C, Deposition of Ashlee Gary/South Central, at 458-462. ("We believed that because we were an association that was coming together to hire H-2A agricultural workers, that we did not have to pay overtime.")
[86] *See Barron*, 2025 WL 2628123.
[87] Ex. C, Deposition of Ashlee Gary/South Central, at 468:10-13
[88] Ex. D, Deposition of Ricky Gonsoulin/South Central, at 163:11-14.

17

Sterling. Because Defendants acted in good faith and with reasonableness when structuring Plaintiffs' pay and determining whether they were entitled to the agricultural exemption, there is no basis for this Court to find liquidated damages under the FLSA proper.

> **F.      Plaintiffs have not shown any breach of contract for the same reasons as their underlying claims.**

Plaintiffs' theory of breach of contract makes much of the calculation of the adverse wage rate, but that wage rate is not at issue for a breach of contract claim because it is both extra-contractual and duplicative of the FLSA claim. As Plaintiffs concede, the ETA-790 clearance orders and federal regulations establish the benefits, wages, and working conditions that apply to Plaintiffs' employment and are the "contracts" at issue in this case.[89] Defendants agreed to hire Plaintiffs as "Heavy and Tractor-Trailer Truck Drivers" and to pay Plaintiffs the AEWR that applied during each respective year of Plaintiffs' employment. According to the contracts, Plaintiffs were to be paid a rate of $12.45 per hour in 2022, $23.16 per hour in 2023, $23.93 per hour in 2024, and $14.83 per hour in 2025.[90] Those rates of pay were based on the AEWR as determined by the DOL at the time the contracts were executed.[91] Plaintiffs' argument that they

---

[89] 20 C.F.R. § 655.122(q) ("The work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 29 CFR part 501, or this subpart."); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified Application for Temporary Employment Certification' became their work contracts.").

[90] R. Doc. 118-12 (2022 ETA Form-790/790A, at SCSCGA-001123); 118-13 (2023 ETA Form-790/790A, at SCSCGA-001344); 118-14 (2024 ETA Form-790/790A, at SCSCGA-001512); 118-5 (2025 ETA Form-790/790A, at SCSCGA-003093).

[91] On February 28, 2023, the U.S. Dept. of Labor issued a Final Rule, 88 Fed. Reg. 12,760 (Feb. 28, 2023), codified at 20 C.F.R. § 655.120(b) (the "Final Rule") and increased the minimum wages that must be paid to seasonal migrant guestworkers who engaged in hauling duties. "Under this final rule, if the job duties on the H-2A application (including the job order) constitute a combination of SOC codes that do not all fall within the field and livestock worker (combined) occupational grouping, the Department will determine the applicable AEWR based on the highest AEWR among the SOCs assigned to the job opportunity." According to the Final Rule, "where an employer's job opportunity involves a variety of duties, some of which are consistent with higher paid SOC codes in the State, territory, or equivalent area, the Department would not satisfy its statutory obligation if it were to establish the required wage floor for H-2A employers at a lower rate than the AEWR applicable to workers in the United States who perform work in the higher paid SOC code." Ultimately, "the AEWR methodology adopted in the Final Rule provides a minimum wage rate threshold that an employer must offer and pay a worker for performing the H-2A job opportunity, including those H-2A job opportunities that require a worker to perform a combination of tasks that cannot reasonably be classified within a single SOC code."

18

were improperly paid agricultural wages is extra-contractual. There is no dispute that Plaintiffs were paid the wage rate agreed to in the Job Orders.[92]

Plaintiffs' breach of contract claim also fails because it is not additional to its claims for violations of the FLSA and LWPA.  This is particularly true where the provisions of the contract which Plaintiffs claim have been breached merely incorporate preexisting requirements imposed upon employers by other applicable law. Other courts have addressed a similar issue. In *Salas-Mateo v. Ochoa*, a Florida district court held that Mexican nationals employed pursuant to H-2A visas could not pursue a breach of contract claim for minimum wage and reimbursement of transportation and other costs concurrently with a collective action under the FLSA.[93] The court found that "plaintiffs were suing to realize the protections afforded by both the FLSA and the H-2A regulations" and that plaintiffs could not pursue that claim[.]"[94] Any alleged breach of these terms inherently falls squarely within the scope of Plaintiffs' FLSA claims.  To the extent Plaintiffs' breach of contract claim falls within the scope of the FLSA, this Court has already held that Plaintiffs will not be permitted to recover under both the FLSA and for breach of contract.[95] Because the FLSA claim fails, Plaintiffs' claims for breach of contract, to the extent they rely exclusively on "contract promises to comply with all federal [or State] laws related to employment," must be dismissed for the same reasons as those claims.

### G.    Plaintiffs have not shown any violation of the Louisiana Wage Payment Act.

Finally, Plaintiffs make a bare-bones assertion that they are entitled to summary judgment on the Louisiana Wage Payment Act ("LWPA"), with little support for the same. Due to the penal

---

[92] R. Doc. 118-19 (Deposition of Felipe de Jesus Suarez-Palafox), at 58:1-6, 61:23-62:14; R. Doc. 118-20 (Deposition of Felipe de Jesus Avila-Soto), at 153:8-157:4, 159:7. *See also* R. Doc. 118-21 (Wage Information for Named Plaintiffs).
[93] No. 03-14357-CIV, 2004 WL 1824124 (S.D. Fla. Mar. 26, 2004).
[94] *Id.*
[95] R. Doc. 105, p. 7.

19

nature of the LWPA, courts strictly construe that its provisions apply only to amounts due and owing for time already worked by the employee prior to termination.[96] Good faith is also an equitable defense to a claim for penalty damages under the LWPA, which protects employers from owing penalty wages "[w]hen the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute."[97]

At the end of Plaintiffs' employment, the alleged unpaid wages were not in dispute. They were paid all amounts due under the terms of their Job Orders. Plaintiffs themselves have even testified as much. Plaintiff Felipe Suarez-Palafox testified that he does not dispute the hours he worked and does not seek damages beyond overtime pay and a disputed wage rate.[98] Plaintiff Felipe de Jesus Avila-Soto testified that all he is "claiming is that they pay me the overtime at the rate it should have been. That's all I'm fighting."[99] For the reasons set forth above, all wage determinations were made in good faith and in accordance with the terms of the Job Orders. Summary judgment thus must be denied with respect to Plaintiffs' LWPA claim, and it should be dismissed as a matter of law.

## IV.    CONCLUSION

For each of the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

<strong>PHELPS DUNBAR LLP</strong>

---

[96] La. Rev. Stat. § 23:631. *See, e.g.*, *Steak v. Hat World, Inc.*, 191 So. 3d 712, 715 (La. App. 4 Cir. 2016) ("The LWPA is penal in nature, and therefore must be strictly construed, and its provisions must yield to equitable defenses.").
[97] La. Rev. Stat. § 23:632(B).
[98] R. Doc. 118-19 (Deposition of Felipe de Jesus Suarez-Palafox), at 89:24-90:7.
[99] Ex. B, Deposition of Felipe de Jesus Avila-Soto, at 94:24-95:6.

20

PD.62171575.1

BY:    */s/ Andrew M. Albritton*
Brandon E. Davis Bar Roll No. 29823
Molly McDiarmid Bar Roll No.  36426
Jennifer Clewis Thomas (*Admitted Pro Hac Vice)*
Andrew M. Albritton Bar Roll No. 39780
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com
andrew.albritton@phelps.com

**ATTORNEYS FOR DEFENDANTS, SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. AND STERLING SUGAR, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Andrew M. Albritton*
ANDREW M. ALBRITTON

21