Case 6:24-cv-01392-RRS-CBW   Document 133-2   Filed 06/12/26   Page 1 of 25 PageID #: 3916

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 61

                    schedule a little bit of time so I

                    can meet with him.

BY MR. DAVIS:

        Q.    Where'd y'all meet?

                    INTERPRETER:

                          I'm sorry.  What was the

                    question?

BY MR. DAVIS:

        Q.    Where did you meet?

        A.    At a hotel here in Torreon.

        Q.    What's the name of the hotel?

        A.    I can't remember.  I mean, it's over

    there.

                    What's the name of the hotel?

        Q.    No.  You already -- you already -- that's

    no problem.

                    Now when you met with Mr. Morton then, I

    understand that you're telling me he showed you a

    copy of the English version of the lawsuit.  Is

    that correct?

                    MR. MORTON:

                          Objection.

                    THE WITNESS:

                          He showed me in English and

                    Spanish.

Page 72

That sentence says, "This action -- this is an action by foreign truck drivers brought to Louisiana to drive tractor-trailers for defendants."

Now that's where I'm reading.  Do you see that?

A.   Yes.

Q.   Okay.  Now did you all perform the same type of work?

A.   As far as driving trucks, yes.

Q.   Okay.  Can you just describe what your job duties were?  All of you?

A.   My duty was to present myself on time and get my truck.  And so I would grab my truck, and then I would go to the field where I was supposed to work.  I would load up, and then I would go back to the mill.

Q.   Okay.

MR. MORTON:

If I can just state an objection to translation.

MR. DAVIS:

All right.

MR. MORTON:

Go to the -- the witness said

Case 6:24-cv-01392-RRS-CBW   Document 133-2   Filed 06/12/26   Page 3 of 25 PageID #: 3918

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 73

"go to the field where my truck was
supposed to be loaded."

MR. DAVIS:

Okay.  MarLane, did you get
that?

COURT REPORTER:

Yes.

BY MR. DAVIS:

Q.   Okay.  Now was that the same -- that work
was the same work for all of you?

A.   The ones that were driving trucks, yes.

Q.   Okay.  All right.

So did you all as truck drivers, did y'all
do any other work than what you described?

A.   No.  We were just driving trucks.

Q.   Okay.  Now you -- in your lawsuit you said
that you brought this lawsuit against defendants,
and there are two defendants on your lawsuit that I
see.

INTERPRETER:

The interpreter did not hear
the answer.

MR. MORTON:

Can I just -- I'd just like to
-- objection.

Professional Shorthand Reporters, Inc.
reporters@psrdocs.com
1-504-529-5255
www.psrdocs.com

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 4 of 25 PageID #: 3919

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 74

Translation note:  The witness said "it is Sterling and the association."

THE WITNESS:

Yeah.  I was suing Sterling and the association.

BY MR. DAVIS:

Q.  Okay.  All right.

Now did you work for the association?

A.  I worked for Sterling.  When it became an association, I don't know why it was an association.

Q.  So your testimony is you did not work for the association?

MR. MORTON:

Objection.

THE WITNESS:

It's just that I don't know at what time it became an association.

BY MR. MORTON:

Q.  I'm just asking you did you ever work for the association.

A.  Well, the thing that I'm answering is that I don't know when it became an association.  I worked for Sterling, and then I don't know when it

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 5 of 25 PageID #: 3920

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 77

your knowledge about the association.

A.    Okay.  All I want to say is that I don't know anything about an association.  I only saw the same people.  The check came from Sterling, and that is all I know.

INTERPRETER:

And this is the interpreter speaking.

I believe there is a language issue that is becoming confusion -- confusing.

So "partnership" in Spanish is "asociación."

MR. DAVIS:

Oh, I see.

INTERPRETER:

And so I believe that when we're saying "asociación" --

MR. DAVIS:

South Central.

INTERPRETER:

-- he's thinking it's a partnership because of the way the language, it translates into Spanish.

Page 78

BY MR. DAVIS:

Q.   Mr. Avila, I'm sorry.  The interpreter just explained something to me about our language. Let me ask you this question.  It may be better.

Did you ever work for South Central while you were in the United States?

A.   Well, I don't remember it.  Like I said, I always knew it as Sterling.  Now Sterling.

Q.   So you have no recollection of having been employed by South Central.  Is that accurate?

A.   Yeah.  So it always said there -- it just said "Sterling."  And then after that it said "Sterling" and something else, but I don't know what that was.

Q.   Okay.  What was that?  What was that answer?

MR. DAVIS:

Cathy, can you repeat may answer?

I'm sorry.  MarLane, will you please repeat that answer?

MR. MORTON:

I'm just going to let the witness know he can have water if he wants.

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 7 of 25 PageID #: 3922

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 97

Counsel, I don't know if we had it up -- if you want us to blow it up, we can.

THE WITNESS:

I don't know that name.  I don't recognize it.

MR. DAVIS:

Okay.  I just want to make sure that I'm directing him to what I'm looking at.  And I am now moving to the screens on demonstrative (approaching witness' screen and moving away from microphone.  Interpreter is translating over questioning.)

BY MR. DAVIS:

Q.   And Mr. Avila, I'm just making sure, under this it says, "Gonsoulin," and then it says "South Central Sugar Cane Growers' Association."  Is that right?

A.   But that Gonsoulin, I never met him.

Q.   You never met Ricky Gonsoulin at all?

A.   No.

Q.   Okay.

A.   I never saw him at Sterling, and I never

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 8 of 25 PageID #: 3923

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 105

Q.   Okay.  So now when did you present a Sterling visa to go to work?

A.   Well, when the recruiter took it.

Q.   That's fine.

I'm showing you a copy of what was marked as Exhibit C.

(Exhibit C was marked.)

And I want you to review those documents that I provided to your lawyer.

INTERPRETER:

The waiter wants to know where to put the food.

BY MR. DAVIS:

MR. DAVIS:

Wherever you have it.

INTERPRETER:

Huh?

MR. DAVIS:

Where would you like to have your lunch?

(Discussion about lunch.)

Is there a question on the -- is there a question right now?

MarLane, is there a question right now?

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 9 of 25 PageID #: 3924

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 106

(The question was read as follows:

"Q.   That's fine.

I'm showing you a copy of what was marked as Exhibit C.  And I want you to review those documents that I provided to your lawyer."

BY MR. DAVIS:

Q.   Very good.  Mr. Avila, have you had a chance to review those documents?

A.   That if I saw them?

Q.   No.  Did -- did your lawyer just give you those papers, and did you read over them?

A.   These ones?

Q.   The ones that you're holding in your hand right now.  Yes, those.

A.   This is the visa, and this is the cancellation.

Q.   Okay.  Now when you're looking at the visa, I think it's -- the number is 161 -- this visa identifies South Central Sugar Cane Growers' Association.  Do you see that?

Now --

A.   I see --

Q.   -- you just testified that you entered the United States using a Sterling visa.  Where is that

Page 107

visa?

A.    These are the only ones that I have.

Q.    That's why I'm asking you to -- that's why I'm asking you.  I'm asking you where are they.

MR. MORTON:

        Please -- please --

MR. DAVIS:

        If you don't --

MR. MORTON:

        Please stop.  You are arguing with the witness.  It is unprofessional.

MR. DAVIS:

        You're not going to --

MR. MORTON:

        Stop.  Stop.

MR. DAVIS:

        -- and not expect me to push you back --

MR. MORTON:

        We're taking a break.

MR. DAVIS:

        We should.

MR. MORTON:

        Yeah.  Because you're out of

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 11 of 25 PageID #: 3926

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 108

line.

                    (Break.)

BY MR. DAVIS:

    Q.    Mr. Soto, I had just asked you whether you had reviewed the visas at Exhibit C.  Had you reviewed those?

            MR. MORTON:

                    And I just want to remind that there's three pages in them.

            THE WITNESS:

                    Yes.  They're here.

BY MR. DAVIS:

    Q.    Okay.  And moments ago, we were not on the record when I asked you the question, so I'm just asking you again so that your testimony can be recorded.

            MR. MORTON:

                    There's a buzzing noise.  I don't know if you guys can hear it.

                    (Off the record.)

BY MR. DAVIS:

    Q.    Your testimony is that you and the class members that you represent complied with the terms of the visas that you used into the United States.

    A.    It's correct.

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 12 of 25 PageID #: 3927

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 110

THE WITNESS:

Well, as far as I know, we all worked for Sterling.

They also told us that after we were finished, that we could stay for 15 more days so that we could, you know, go shopping or something.  But I never stayed.  I always went straight home afterwards.

BY MR. DAVIS:

Q.   So you believe that the class members that you represent worked for an employer different than printed on their visa?

MR. MORTON:

Objection.  Form.

THE WITNESS:

No.  I don't think they worked for anyone else other than Sterling or this group.

BY MR. DAVIS:

Q.   Okay.  I want to look at your allegations in Paragraph 2 of your complaint.  You claim that South Central Sugar Cane Growers' Association made false representations to the United States

Page 111

government.  Do you see that?

A.    In Paragraph 2?

Q.    Yes, sir.

A.    Okay.  Now what was the question you asked?

MR. DAVIS:

Catherine -- I'm sorry.

MarLane, will you please read back the last question.

(Question read.)

A.    Yes.  I'm not saying that they made false representations.

What it does say -- so what we were told is that if anybody asked us, we were supposed to say that we were agricultural workers, not truck drivers.  So why were they telling us that?

Q.    Who told you that?

A.    Well, when they had the meetings.  They had the meetings in the dining room.

Q.    Did Jose Santos tell you that?

A.    He did in part, and the other part they did it when we were there all meeting together.

Q.    Did you -- are you able to identify any other person who told you that at the meeting in the dining room hall?

Page 112

A.    Well, when we had the meetings there in the dining room hall, it was Jose Santos or his representative.

Q.    What's the name of his representative?

A.    He was always sending someone by the name of Sergio de Santiago.

Q.    Okay.  So that's Jose and Sergio.  Who else told you to say that you were an agricultural worker?

A.    That's all.

Q.    No one else?

A.    That's all.

Q.    Rivers Patout never told you to say that you were an agricultural worker.  Correct?

A.    I didn't understand your question.

Q.    Does that mean that Rivers Patout never told you to say that you are an agricultural worker based on the fact that you said it was only Jose and Sergio who gave you that instruction in the dining hall?

MR. MORTON:

Objection.  Form.

THE WITNESS:

No.  Those are the ones that told us if we were ever asked, we

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 15 of 25 PageID #: 3930

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 113

were supposed to say that we were agricultural workers.

BY MR. DAVIS:

Q.   Okay.  I understood.

Now my question was about the false statement that you say was made at Paragraph 2.

MR. MORTON:

Objection.  Form.

THE WITNESS:

Well, the false statements, it means that we were deceived.

BY MR. DAVIS:

Q.   How were you deceived?

A.   That we were agricultural workers when we were truck drivers.

Q.   Is it your testimony that South -- that the claim that you made at Paragraph 2 of your complaint is inaccurate because South Central Sugarcane Growers' Association did not make false representations to the United States government?

MR. MORTON:

Objection.  Form.

Objection.  Mischaracterizes.

THE WITNESS:

I don't know if it's false or

Page 129

falseness was in that.

BY MR. DAVIS:

Q.   Okay.  So my understanding --

A.   So if you're hiring me to be an agricultural worker, then why do you request the driver's license?  Why do you want me to have the medical certificate that says that I'm eligible?  I mean, why are you asking for all of that?

Their -- the people -- there were people that came that asked us to show them our international driver's license to make sure it was in effect.  So if I'm going to drive a tractor or I'm going to use a shovel, I don't need those documents.

And that's where the deceit -- that's where the falseness is.  I don't know what else you want me to tell you.  I mean, that is what is false.

Q.   That -- that's what I wanted you to tell me, and thank you for giving me a clear answer.

So then, Mr. Avila, I understand you to mean the false statement is not in the contracts that I'm asking you about.

MR. MORTON:

Objection.  Form.

Case 6:24-cv-01392-RRS-CBW   Document 133-2   Filed 06/12/26   Page 17 of 25 PageID #: 3932

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 139

Q.   We're on the same page.  Thank you for pointing that out, because I did not realize that I was -- that I had made that mistake.

Now, look, so then -- my only point is in terms of the time that y'all would earn money, it was during the harvest season in the fall.  Is that correct?

A.   Yeah.  It was the harvest, and it started, like, in September all the way to January.

Q.   Okay.  All right.  All right.  Thank you.

So -- and that's true.  So for everybody, we're really looking at fall time when harvesting takes place to determine where we go to review if additional wages are due.

MR. MORTON:

Objection.  Form.

THE WITNESS:

Correct.

BY MR. DAVIS:

Q.   Now you've described your work as a truck driver.

A.   That's correct.

Q.   Do you believe that the documents or any statements that South Central made about your job should have explained that you were a truck driver?

Page 143

contract for you?

MR. MORTON:

Objection.  Form.  Asked and answered.

THE WITNESS:

So I think it should just say what it is.  Like, if they're taking me to sweep floors, they should say that I'm there to sweep floors.  If they're taking me there to drive a truck, it should say they're taking me as a truck driver.

BY MR. DAVIS:

Q.  Okay.  Did you go to drive a truck?

MR. MORTON:

Objection.  Asked and answered.

THE WITNESS:

That's correct.

BY MR. DAVIS:

Q.  Did you drive the truck?

A.  That's correct.

Q.  And your conclusion is and your contract should have said that?

Page 144

MR. MORTON:

Objection.  Form.

THE WITNESS:

As it should be.

BY MR. DAVIS:

Q.   Mr. Avila, would you please answer a "yes" or a "no"; and then if you want to add "as it should be," that's fine.  But I'm not clear on your answer.

MR. MORTON:

Object.  Same objection.

THE WITNESS:

Like, if I'm going as a truck driver, it should say I'm going as a truck driver.

MR. DAVIS:

That's fine.

THE WITNESS:

That's the only thing that needs to be explained.  That's the only thing that needs to be explained, and that's all.

BY MR. DAVIS:

Q.   So look at Page 929.  This contract says "truck driver," so why do you believe that this

Case 6:24-cv-01392-RRS-CBW Document 133-2 Filed 06/12/26 Page 20 of 25 PageID #: 3935

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 190

fill any of this out.

Q. But you don't dispute that you signed this?

A. I signed it, but I didn't fill it out. I signed it in blank.

Q. You signed a blank form. You signed a blank form. You do not deny that this is your signature, and you signed this form blank?

A. Yes. In blank.

Q. Turn to Page 49.

A. This?

Q. Are you at Page 49?

A. Yes. 49.

Q. Is that your signature?

A. It's my signature.

Q. Turn to Page 50.

A. Yeah. And I didn't fill any of this out. And yes, it does have my signature. And I didn't fill it out either.

Q. You signed it blank. You don't dispute signing it blank?

A. No, I don't dispute it. I did sign it, and it was not filled out.

Q. So you signed a blank document. You knew when you did that. And at the time did you

Page 191

complain about doing so?

A.   Yes.

Q.   And you complained to who?

A.   With the person that was giving it to us, but I don't know who -- what her name was.

Q.   Okay.  Was her name Kimberly Broussard?

A.   I think so, but yeah.

Q.   Are you still looking at Page 50?

A.   Page 50?  Yes.

Q.   Okay.  I noticed that you signed this document on September 27 of 2022.  Do you see that?

A.   Yes.  The date that I wrote down here.

Q.   And do you see that Kimberly Broussard signed on the same date?

A.   Yes.

Q.   Turn to Page 53.

A.   It's my signature.

Q.   Okay.

A.   And it's also signed by Kimberly.

Q.   Take a look at Page 54 and 55.

A.   54 and 55.

Q.   Is that your signature at Page 55?

A.   It's my signature.

Q.   Turn to Page 58.

MR. MORTON:

Page 192

We don't have a 58.  So that we're clear, the document is marked 45 through 56.

BY MR. DAVIS:

Q.  Turn to Page 58.

A.  58.

Q.  Yes, sir.

A.  It's my signature.

Q.  Thank you.

Did you ever sign documents like this that had "Sterling" written at the top?

A.  Yes.  Before.

Q.  Where are those documents?

A.  I don't know.  It was in 2019.

Q.  Now you had mentioned that you are currently focused on work and your family.  Do you have time between now and April 29 to locate the Sterling documents that you signed?

MR. MORTON:

Objection.  Mischaracterizes.

THE WITNESS:

Well, they could be.  I don't know.  I don't have them.

BY MR. DAVIS:

Q.  You currently do not have any Sterling

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 23 of 25 PageID #: 3938

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 193

documents that you signed?

A.    I need to check.

Q.    And where would you go to check?

A.    At home.

Q.    Okay.  Are you able to check between now and April 29?

A.    Between now and April 29?  Yes -- no. April 29 I'm not going to be here.

MR. MORTON:

I'd just -- I'd just like to state an objection.

We're asking for the paper records of Sterling from a Mexican seasonal laborer.  You should ask for those records from Sterling.

BY MR. DAVIS:

Q.    You can answer, sir.

A.    The thing is I have to leave right now, so I don't know if I can bring anything back.

Q.    No.  I asked a different question.  I just asked between now and April 29 are you able to find the Sterling documents that are in your house and give them to us?

A.    What I'm saying is if I'm home right now and I have time to do it, I can.  But after now, I

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 24 of 25 PageID #: 3939

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 194

don't know when I will be or how long it will be before I come back.

Q. So I'm understanding, should I understand that today is the only day that you can look for the Sterling documents that are in your house?

MR. MORTON:

Objection. Mischaracterizes.

THE WITNESS:

Well, I mean, right now, I'm here. And when I leave, I have to go to work. And after that, I go to my home.

BY MR. DAVIS:

Q. It sounds like you can't look for these documents in your house until you get home tonight.

What time do you get home?

A. I'm not commenting. It's just that right now I'm leaving on a -- on a trip. My truck is all loaded and ready to go right now.

Q. So when are you leaving?

A. So when I get out of here, I have to go back to work, I have to check everything and get ready to go.

Q. What time you leave?

A. Well, it depends on what time you let me

Case 6:24-cv-01392-RRS-CBW    Document 133-2    Filed 06/12/26    Page 25 of 25 PageID #: 3940

Felipe De Jesus Avila-Soto (Volume II)
Felipe De Jesus Avila-Soto, et al v. South Central Sugarcane Growers' Association, et al

Page 195

go from here.

Q.   Your employer will allow to you leave on this trip whenever you're released from testimony?

A.   Yes.  Because we have a GPS on the load, and the owner of the load is checking it all the time to make sure that we don't stay in one place and keep going.

Q.   It's currently almost 4 o'clock local time, and we must finish I think at 4:10 or 4:15, whatever the time limit is.

Do you plan to read on this work trip after 4:30 or 5 o'clock today?

A.   So I have to go and get my truck, and then I have to go to cooperative.  I don't know how long it's going to take me to be there, because I have to put in my diesel.  And I don't know how many trucks there are there or how long it's going to take me to get -- put diesel in the truck.

Q.   When do you think you might be back in your house in Torreon after tonight?

A.   That's what our plans say, but I don't have a time or a date.  I can't tell you I'll be there tomorrow or Wednesday.

Q.   Understood.  Well, it -- understood.

Well, if at any time that you're home and