**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **FELIPE DE JESUS AVILA-SOTO, ET AL.** | **CIVIL ACTION NO.  6:24-CV-01392** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EMPLOYER STATUS OF DEFENDANT STERLING SUGARS, LLC**

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  */s/ Andrew M. Albritton*
Brandon E. Davis Bar Roll No. 29823
Molly McDiarmid Bar Roll No.  36426
Jennifer Clewis Thomas (*Admitted Pro Hac Vice)*
Andrew M. Albritton Bar Roll No. 39780
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com
andrew.albritton@phelps.com

**ATTORNEYS FOR DEFENDANTS, SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. AND STERLING SUGAR, LLC**

i

**TABLE OF CONTENTS**

I.      BACKGROUND. ...........................................................................................................1

II.     LEGAL STANDARD.....................................................................................................4

III.    LAW AND ARGUMENT. ..............................................................................................5

      A.    Plaintiffs improperly rely on economic dependence considerations,
          which are not probative of *joint* employment considerations. ................................7

          i.    The financial and operational business relationship between
               South Central and Sterling is not relevant for purposes of
               determining whether Sterling employed Plaintiffs. ....................................8

          ii.   Economic dependence considerations are not probative of
               joint employer status under the FLSA. ........................................................9

      B.    Plaintiffs fail to establish that they are entitled to judgement as a
          matter of law with respect to joint employer status of Sterling
          under the FLSA....................................................................................................12

          i.    Management services performed by Sterling were limited
               to those expressly delegated to Sterling pursuant to the
               Management Services Agreement. .............................................................12

          ii.   When applied to the undisputed facts, the economic
               realities factors do not establish that Sterling was Plaintiffs'
               employer. ...................................................................................................14

          iii.  Sterling did not employ Plaintiffs. ...........................................................20

      C.    Plaintiffs fail to establish that Sterling was Plaintiffs' employer
          under Plaintiffs' employment contracts. ..............................................................23

      D.    Plaintiffs fail to establish that Sterling was Plaintiffs' employer
          under the LWPA. ..................................................................................................24

IV.     CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Aguirre v. SBC Commc'ns, Inc.*,
  Civil Action No. H-05-3198, 2007 WL 2065187 (S.D. Tex. July 17, 2007) ........................ 21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................................... 7

*Brown v. Amesbury Mgmt., LLC*,
  No. CV 22-675-JWD-EWD, 2025 WL 936654 (M.D. La. Mar. 27, 2025) ........................... 26

*Clifton v. Famous Bourbon Mgmt. Grp., Inc.*,
  762 F. Supp. 3d 480 (E.D. La. 2025) ...................................................................... 10

*Falk v. Brennan*,
  414 U.S. 190, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973) .................................................... 22, 23

*Fontenot v. Upjohn Co.*,
  780 F.2d 1190 (5th Cir. 1986) ................................................................. 7, 10, 26, 27

*Garcia-Celestino v. Ruiz Harvesting, inc.*,
  43 F.3d 1276 (11th Cir. 2016) . .................................................................... 25

*Godlewska v. HDA*,
  916 F. Supp. 2d 246 (E.D.N.Y. 2013) ....................................................... 18, 21, 17

*Goldberg v. Whitaker House Coop., Inc.*,
  366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) ............................................... 12

*Gray v. Powers*,
  673 F.3d 352 (5th Cir. 2012) ....................................................................... 15, 10

*Herman v. Express Sixty-Minutes Delivery Serv.*,
  161 F.3d 299 (5th Cir. 1998) ......................................................................... 13, 14

*Hodges v. Admin. Sys.*,
  No. 4:25-cv-92, No. 4:25-CV-92-JDM-JMV, 2026 WL 1485716 (N.D. Miss. May 27, 2026)
  ........................................................................................................ 21, 22

*Hopkins v. Texas Mast Climbers, L.L.C., Civ. A. No. H-04-1884*,
  2005 WL 3435033 (S.D. Tex. 2005) ..................................................................... 21

*In re Domino's Pizza Inc.*,
  No. 16CV2492AJNKNF, 2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) ............................ 17

*In re Jimmy John's Overtime Litigation*,
  2018 WL 3231273 (N.D.Ill. June 14, 2018) ........................................................... 17

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013) ................................................................................ 21

*Jacobson v. Comcast Corp.*,
    740 F. Supp. 2d 683 (D. Md. 2010) .............................................................. 16, 18

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
    838 F. Supp. 2d 111 (S.D.N.Y. 2011) ........................................................... 17, 19

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ............................................................................ 27

*Mao v. Sands Bethworks Gaming L.L.C.*,
    No. 15-CV-6252, 2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016) ........................... 19

*Mejia v. Travis Buquet Const.*,
    No. 17-3494, 2017 WL 2812937 (E.D. La. June 29, 2017) .................................. 10

*Mendoza v. Essential Quality Const., Inc.*,
    691 F. Supp. 2d 680 (E.D. La. 2010) ................................................................ 27

*Mitchell v. Bowman*,
    131 F. Supp. 520 (M.D. Ala. 1954) ................................................................... 11

*Moldenhauer v. Tazewell Pekin Consol. Commc'ns Ctr.*,
    536 F.3d 640 (7th Cir. 2008) ............................................................................ 21

*Moreau v. Air Fr.*,
    356 F.3d 942 (9th Cir. 2004) ............................................................................ 16

*Neman v. Greater Hous. All-Pro Auto Interiors, L.L.C.*,
    Civil Action No. 4:11-cv-03082, 2012 WL 896438 (S.D. Tex. Mar. 14, 2012) .................... 13

*Reyes v. Remington Hybrid Seed Co.*,
    495 F.3d 403 (7th Cir. 2007) ............................................................................ 14

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947) .......................................... 12

*Salinas v. Commercial Interiors, Inc.*,
    848 F.3d 125 (4th Cir. 2017) ........................................................................ 12, 14

*Tillman v. Louisiana Children's Med. Ctr.*,
    No. CV 16-14291, 2017 WL 1399619 (E.D. La. Apr. 19, 2017) ........................... 27

*Trevino v. Celanese Corp.*,
    701 F.2d 397 (5th Cir. 1983) ............................................................................ 26

*Tullous v. Tex. Aquaculture Processing Co.*,
    579 F. Supp. 2d 811 (S.D. Tex. 2008) .............................................................. 10

iv

*Weisel v. Sing. Joint Venture, Inc.*,
 602 F.2d 1185 (5th Cir. 1979) ...................................................................................... 12, 13

*Williams v. Nation Star Mortgage, LLC*,
 No. CV 19-663-BAJ-SDJ, 2021 WL 7286010 (M.D.La. July 02, 2021) .............................. 10

*Wirtz v. Hebert*,
 368 F.2d 139 (5th Cir. 1966) ............................................................................................ 11

*Zheng v. Liberty Apparel Co.*
 Inc., 355 F.3d 61 (2d Cir. 2003) .......................................................... 15, 16, 17, 18

## Statutes

20 C.F.R. § 655.103 ...................................................................................................... 8, 26

20 CFR 655.131 ............................................................................................................. 24

29 CFR 792.2 ................................................................................................................. 25

Fed. R. Civ. P. 56 ....................................................................................................... 6, 8

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **FELIPE DE JESUS AVILA-SOTO, ET AL.** | **CIVIL ACTION NO.  6:24-CV-01392** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON EMPLOYER STATUS OF DEFENDANT STERLING SUGARS, LLC

Defendants, South Central Sugar Cane Growers' Association, Inc. ("South Central") and Sterling Sugars, LLC ("Sterling") (collectively "Defendants"), respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Employer Status of Defendant Sterling Sugars, LLC ("Motion for Summary Judgment").[1] In further support, Defendants submit their Statement of Disputed Material Fact in opposition to Plaintiffs' Statement of Material Facts as Exhibit A hereto.[2]

## I.    BACKGROUND.

Plaintiffs, Felipe de Jesus Avila-Soto and Felipe de Jesus Saurez Palafox ("Plaintiffs") were employed by South Central as heavy tractor-trailer truck drivers pursuant to H-2A visas between 2022 and 2025.[3] Avila-Soto and Suarez-Palafox worked as truck drivers hauling harvested sugarcane from South Central member farms to the sugar mill operated by Sterling

---

[1] For purposes of this opposition to Plaintiffs' Motion for Summary Judgment only, Defendants accept Plaintiffs' version of the facts as true in the event of a conflict of testimony.

[2] *See* Ex. A, Statement of Disputed Material Facts.

[3] R. Doc. 115 ¶¶ 12, 13.

Sugars.[4] Avila-Soto worked for South Central for only one season in 2022, and has not worked for South Central since concluding the 2022 season.[5] Suarez-Palafox worked for South Central in the 2022, 2023, 2024 and 2025 seasons.[6] Although Plaintiffs acknowledge that South Central is the only employer whose name appears on their H-2A visas, Plaintiffs also named Sterling, alleging that "it was a joint employer [] within the meaning of the FLSA and H-2A regulations" and that South Central was "acting as an agent of Defendant Sterling Sugars, LLC."[7]

South Central is a non-profit agricultural association of member farms, each of which has operational control over their respective farms.[8] South Central's member farms grow and own all the commodities sold from their farms.[9] Prior to the formation of South Central, sugarcane growers in Louisiana began expressing concerns related to the additional cost of elevated wage rates for labor.[10] Growers and sugar mills in the industry feared that the additional costs associated with labor would effectively be passed on to the growers, as sugar mills would be unable to absorb the cost.[11] Accordingly, South Central was formed by its member farms, in part, because growers believed it was an avenue to prevent the imposition of future financial burdens on growers, which the growers could not sustain long-term.[12] Plaintiffs, as employees of South Central, hauled sugar cane on behalf of growers employers who were members of South Central.[13] Plaintiffs hauled the commodity to Sterling's mill. As this Court knows, Sterling does not make commodities. Accordingly, Plaintiffs simply could not have transported sugar cane on behalf of Sterling.

---

[4] R. Doc. 118-23, ¶ 3.
[5] R Doc. 115, ¶ 12.
[6] R. Doc. 115, ¶ 13.
[7] R. Doc. 115, ¶¶ 25-26, ¶ 84.
[8] R. Doc. 118-23, ¶ 1; *see also*, R. Doc. 118-2.
[9] R. Doc. 118-23, ¶ 6; *see also*, R. Doc. 118-2.
[10] R. Doc. 119-56, p. 64.
[11] R. Doc. 119-56, p. 64.
[12] Deposition of Randall Romero on behalf of Sterling Sugars, LLC, at p. 83 line 3-9 (attached hereto as Exhibit "B").
[13] R. Doc. 118-23, ¶ 21; *see also*, R. Doc. 118-10, pp. 6-8.

Sterling is a limited liability company organized under the laws of the state of Louisiana and specializes in the processing of Louisiana raw sugar for sale to refineries in Louisiana for preparation for market.[14] It is a legal entity separate from South Central. Sterling operates a sugar mill in Franklin, Louisiana, to which farmers deliver sugar cane.[15] Sterling leases agricultural equipment to South Central.[16] In connection with South Central's agricultural equipment lease and need for Sterling's milling services, Sterling and South Central entered a Management Services Agreement. The Management Services Agreement establishes bi-lateral service terms with respect to planning, operations and logistics of harvesting, and loading and transporting sugarcane.[17] South Central expressly reserved all authority not specifically delegated by the terms of the Management Services Contract and further retained the ultimate authority to decline services from Sterling.[18] Further, South Central retained the power to establish and coordinate the performance criteria for the services Sterling provided. At all times, South Central was entitled to strike Sterling's management, require modification of its practices, or replace the general manager, at South Central's sole discretion.[19] The Management Services Contract was in place during the period relevant to this lawsuit (2022-2025), and South Central compensated Sterling for its services pursuant to the Management Services Contract.[20] Plaintiffs believe the Management Services Contract means the mill was their employer. The undisputed material facts show the Management Services Contract governed the logistics South Central's members required to control the harvest/hauling logistics to deliver their commodity to market (at proper rate and tonnage) within the short harvest season that applies in Louisiana.

---

[14] R. Doc. 118-23, ¶ 8.
[15] R. Doc. 118-23, ¶¶ 3, 8.
[16] R. Doc. 119-43.
[17] R. Doc. 118-11, ¶ 1.1.
[18] R. Doc. 118-11, ¶ 12.1.
[19] R. Doc. 118-11, ¶ 6.1.
[20] R. Doc. 118-11, ¶ 5.1; R. Doc. 118-23, ¶¶ 10-11.

## II.    LEGAL STANDARD.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[21] "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[22] This standard mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."[23] However, "[i]f reasonable minds could differ as to the import of the evidence" then "a verdict should not be directed."[24] In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[25] The court must therefore ask, "not whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented."[26]

"[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or [] a defendant… asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[27] In other words, "when the movant is a plaintiff he must ordinarily do more than defeat the opposing party's affirmative defenses in order to obtain a final [rather than partial] judgment."[28] Indeed, summary

---

[21] Fed. R. Civ. P. 56(a).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)
[23] *Id.*
[24] *Id.*
[25] *Id.* at 251-52.
[26] *Id.*
[27]  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).
[28] *Id.* at 1195.

4

judgment in favor of Plaintiffs requires more than "simply [] disproving the existence of an essential element of the opposing party's claim or affirmative defense"[29] Plaintiffs must "establish all of the essential elements of [their] claim,"[30] such "that no reasonable trier of fact could find other than for the plaintiff."[31] Additionally, Defendants' evidence as the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."[32]

## III.    LAW AND ARGUMENT.

Plaintiffs are not entitled to summary judgment declaring Sterling as their employer because their evidentiary proffer fails to meet the "beyond peradventure" burden required of a party seeking summary judgment on his own claims.[33] Rather than establishing each essential element of the employment relationship with undisputed evidence, Plaintiffs invite the Court to simply infer an employment relationship with Sterling in a way precluded by Rule 56. The question is not whether Plaintiffs have identified *some* evidence that arguably supports the notion that they were employed by Sterling, but whether their record evidence compels the conclusion that Sterling was Plaintiffs' employer under the FLSA, 20 C.F.R. § 655.103 *et seq.*, their employment contracts, and the LWPA. Plaintiffs have not met the burden that would permit such a conclusion.

Although Named Plaintiff, Avila-Soto, testified, "I worked for Sterling,"[34] and is cautious in conceding working for the Association (without qualification), his clarifying admissions contradict his (admittedly mistaken) belief that he was employed by Sterling: Plaintiff explained, "So I'm saying that **I never knew** that there was an association. Whenever we went, we always met with Rivers with Jaime, with the same Lady and Tim. I don't know anything about an

---

[29] *Id.*
[30] *Id*.
[31] *Id.* at 1194.
[32] *Id.*
[33] *Id*.
[34] Deposition of Plaintiff Felipe de Jesus Avila-Soto at p. 74, lines 10-12 (attached hereto as Exhibit "C").

association."[35] Plaintiff, Avila-Soto was directly asked, "so your testimony is you did not work for the association?"[36] And he candidly explained, "It's just that I don't know at what time it became an association."[37] When asked, "did you ever work for South Central while you were in the United States?",[38] Plaintiff, Avila-Soto candidly responded, "well, I don't remember it. Like I said, I always knew it as Sterling. Now Sterling."[39] Plaintiff admits he sued South Central because, "…I don't know which is one and the other. It seems like they're together."[40] Plaintiff, Avila-Soto, admits of no recollection of ever signing an employment contract that identified Sterling as his employer.[41] Although Avila-Soto provided sworn testimony claiming to have entered the United States using a Sterling visa,[42] when asked to produce that record, Avila-Soto recanted and said, "**these are the only ones that I have**."[43] Plaintiff, Avila-Soto, clearly testified that he and the class members that he represents complied with the terms of the visas that they used to enter the United States.[44] Plaintiff, Avila-Soto, was directly asked, "you did not work for any other employer than the one endorsed on your visa?"[45] After an objection that announced Mr. Avila, "…already testified that he worked for Sterling Sugars repeatedly," the Named Plaintiff still clearly answered "No."[46] He verified that negative response twice after as shown at page 109, lines 18 and 20 of his sworn testimony. Page 110 of Plaintiff, Avila-Soto's, testimony is also telling; he explained, "well, **as far as I know**, we all worked for Sterling…" But none of the record evidence supports

---

[35] Exhibit C, p. 74, lines 8-25; p. 75 lines 17-24.
[36] Exhibit C, p. 74, lines 13-14.
[37] Exhibit C, p. 74, lines 21-22.
[38] Exhibit C, p. 78, lines 5-8.
[39] Exhibit C, p. 78, lines 5-8.
[40] Exhibit C, p. 79, lines 7-18.
[41] Exhibit C, p. 98, lines 11-16, 22-25.
[42] Exhibit C, p. 106, lines 24-25.
[43] *See* Exhibit C, p. 107, lines 2-4 (Plaintiff, Avila-Soto, identifying only employment-based visas endorsed to South Central).
[44] Exhibit C, p. 108, lines 22-25 (Plaintiff, Avila-Soto, answered: "It's correct.").
[45] Exhibit C, p. 109, lines 1-2.
[46] Exhibit C, p. 109, line 10.

the conclusion that these Plaintiffs worked for Sterling.  Plaintiff, Avila-Soto's, testimony shows how he acknowledged his previously mistaken belief.

In a case like this where Plaintiff, Avila-Soto, testified he sued South Central because, "…I don't know which is one and the other. It seems like they're together"[47] and then clearly explains he never worked unlawfully in the United States, summary judgment declaring Sterling as the employer is inappropriate.  Because Plaintiffs have failed to establish all elements of each theory advanced in their Motion for Summary Judgment, Plaintiffs are not entitled to judgment as a matter of law, and their Motion for Summary Judgment should be denied for each of the reasons addressed herein.

### A. Plaintiffs improperly rely on economic dependence considerations, which are not probative of *joint* employment considerations.

The central question is whether an employment relationship existed between Plaintiffs and Sterling.[48] The imposition of liability under the joint employer theory requires Plaintiffs to satisfy the economic realities test.[49] Plaintiffs have the ultimate burden of proving an employment relationship between Plaintiffs and Sterling,[50] and therefore, must establish that the economic realities factor unequivocally point to such a relationship to obtain summary judgment.[51] Plaintiffs have not identified evidence that shows they were economically dependent on Sterling. Accordingly, their joint employer theory cannot be established through dispositive motion.

---

[47] Exhibit C, p. 79, lines 7-18.

[48] *See Tullous v. Tex. Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 820 (S.D. Tex. 2008) ("To determine joint employer status, the court should examine the 'economic realities' of the relationship between the alleged employer and employee"); *see also Gray v. Powers*, 673 F.3d 352, 356 (5th Cir. 2012) (noting that in cases where there may be multiple employers, the court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test).

[49] *See Williams v. Nation Star Mortgage, LLC,* No. CV 19-663-BAJ-SDJ, 2021 WL 7286010 (M.D.La. July 02, 2021).

[50] *Mejia v. Travis Buquet Const.*, No. 17-3494, 2017 WL 2812937, at *2 (E.D. La. June 29, 2017) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)); *see also Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, 762 F. Supp. 3d 480, 498 (E.D. La. 2025).

[51] *See Fontenot*, 780 F.2d at 1194-95.

> ### i. The financial and operational business relationship between South Central and Sterling is not relevant for purposes of determining whether Sterling employed Plaintiffs.

Plaintiffs' alleged "economic dependence" on Sterling is different than the financial or operational relationship between Sterling and South Central. Although Plaintiffs conflate these concepts, the economic realities test simply is not an entity-to-entity analysis. Courts instead focus on the relationship between each alleged employer and the workers themselves. Courts applying this test ask whether the workers are economically dependent on the putative employer, not whether one business depends on or coordinates with another. Plaintiffs' evidentiary proffer of evidence of routine business transactions between South Central and Sterling does not speak to the relevant parties. Instead, it diverts attention away from whether Sterling controlled South Central's H-2A employees in a way that should give rise to employer status under the FLSA.

The FLSA does not permit Plaintiffs to expand their claims by dragging non-employers into their FLSA collective action, based solely on the non-employer's business relationship with Plaintiffs' direct employer. Plaintiffs' failure to connect the evidence and undisputed facts to the proper legal inquiry at issue underscores Plaintiffs' inability to carry their burden of proof for the purposes of obtaining summary judgment as to joint employer status. And when directly asked, Plaintiffs denied working for Sterling and explained they never had knowledge to distinguish between Sterling and South Central. Again, Plaintiff, Avila-Soto, clarified: "So I'm saying that **I never knew** that there was an association. Whenever we went, we always met with Rivers with Jaime, with the same Lady and Tim. I don't know anything about an association."[52] When asked to produce the "Sterling visas" Plaintiffs alleged to have used to enter the United States, Plaintiff,

---

[52] Exhibit C, p. 74, lines 8-25; p. 75, lines 17-24.

8

Avila-Soto recanted and said, "**these are the only ones that I have**."[53] And when consideration is given to the fact that Plaintiff, Avila-Soto, admits he would go and get sugar cane from agricultural fields[54]; that the allegations at Paragraph 2 of the Complaint are unsupportable, and that he simply cannot produce any of the Sterling pay records he claims are now in his possession,[55] it is clear Plaintiff has failed to meet his burden on production to show he and his class members are entitled to summary judgment as to joint employer status.

### ii. *Economic dependence considerations are not probative of joint employer status under the FLSA.*

In addition to their focus on the financial and operational relationship between South Central and Sterling, Plaintiffs speculate that they must have been economically dependent on Sterling due to the relationship South Central maintained with Sterling. But, as a matter of law, economic dependence is not relevant to the joint employer analysis.[56]

The only authority cited by Plaintiffs, *Weisel v. Singapore Joint Venture, Inc.*, is distinguishable.[57] *Weisel* addressed only whether a worker should be classified as an employee or an independent contractor and does not direct this Court to consider third party business transactions for purposes of determining Plaintiffs' alleged joint employer status.[58] The law is clear—economic dependence is relevant only to the threshold question of whether a worker is an

---

[53] *See* Exhibit C, p. 107, lines 2-4 (Plaintiff, Avila-Soto, identifying only employment-based visas endorsed to South Central).

[54] Exhibit C, p. 140, lines 5-10.

[55] *See generally,* Exhibit C, pp. 191-196 (Avila-Soto declines to produce alleged Sterling pay records allegedly distributed to him and which he maintains proves his employment relationship with Sterling).

[56] Economic dependence originates from the Supreme Court's decisions in *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947) and *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961). However, *Rutherford Food* and *Goldberg* do not support "the use of economic dependence to guide the entire joint employment analysis." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 138 (4th Cir. 2017). In those cases, the Supreme Court considered whether workers were properly classified as either employees or as independent contractors, not the role economic dependence in the joint employment context. *See Rutherford Food Corp.*, 331 U.S. at 729; *see also Goldberg*, 366 U.S. at 32.

[57] *Weisel v. Sing. Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

[58] *See id.*

employee or an independent contractor under the FLSA. The Fifth Circuit makes this distinction clear, explaining that the focus of the economic dependence inquiry is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer **or is instead in business for himself**."[59] To guide that inquiry, the Fifth Circuit applies the economic realities factors, which mirror those used in the context of the joint employer inquiry, "as a tool used to gauge the economic dependence of the alleged employee on the alleged employer."[60] Although the joint employer inquiry and the employee-independent contractor inquiry both utilize the economic realities test, the two inquiries address fundamentally different questions and serve distinct legal purposes. On the one hand, the employee-independent contractor analysis asks whether a worker is an employee of any employer at all (i.e., whether the worker is economically dependent on a putative employer or instead in business for himself). On the other hand, the joint employer analysis presupposes that the worker is already an employee and asks a different question entirely: which entity or entities employed that worker. Thus, the focus shifts from the worker's status to the alleged employer's status. While the doctrines are related in that they draw from the same analytical framework, their underlying considerations are not interchangeable. Each requires a tailored application of the economic realities factors to answer a distinct legal question.

Plaintiffs ignore this critical distinction. As the Fifth Circuit recognizes, the purpose of the economic dependence inquiry is whether a worker is sufficiently independent to be classified as an independent contractor.[61] While "[e]conomic dependence on the employer for work is the ultimate inquiry when determining whether a particular worker is an employee or an independent contractor," such dependence "has less relevance in determining whether multiple businesses

---

[59] *Herman v. Express Sixty-Minutes Delivery Serv.*, 161 F.3d 299, 303 (5th Cir. 1998) (emphasis added).

[60] *Neman v. Greater Hous. All-Pro Auto Interiors, L.L.C.*, Civil Action No. 4:11-cv-03082, 2012 WL 896438, at *3 (S.D. Tex. Mar. 14, 2012)

[61] *See Herman*, 161 F.3d at 303.

jointly employ the same economically dependent workers."[62] Indeed, economic dependence is "scarcely… helpful" in assessing joint employer disputes, as some degree of economic dependency on the business partners of an employer is "true of all labor."[63] Notably, courts have expressly criticized reliance on economic dependence in the joint employer context, noting that such an approach, which Plaintiffs attempt to take, "reflects a failure to distinguish between the joint employment inquiry from the separate, employee-independent contractor inquiry."[64] Plaintiffs cannot collapse these separate inquiries into one or invoke economic dependence indiscriminately when inapplicable.

Because it is undisputed that Plaintiffs are "employees," the only relevant question before this Court on this Motion for Summary Judgment is whether, despite Plaintiffs' employment with South Central, Sterling also functioned as Plaintiffs' employer. For each of the reasons above, economic dependence on Sterling is simply not probative of this question. Thus, the only purpose served by Plaintiffs' exhaustive list of facts in support of economic dependence is diverting the Court from the relevant inquiry—whether Sterling "function[s] as employer[] of the plaintiffs rather than mere business partner[s] of plaintiffs' direct employer," South Central.[65]

Therefore, to the extent Plaintiffs' Motion for Summary Judgment relies on evidence purporting to support economic dependence between South Central and Sterling or between Sterling and Plaintiffs, Plaintiffs' have not established that Sterling qualifies as Plaintiffs' joint

---

[62] Joint Employer Status Under the Fair Labor Standards Act, Family and Medical Leave Act, and Migrant and Seasonal Agricultural Worker Protection Act (Apr. 23, 2026), 91 FR 21878 (citing *Salinas*, 848 F.3d at 137-39 (criticizing courts which "incorrectly frame the joint employment inquiry as a question of an employee's 'economic dependence' on a putative joint employer")).

[63] *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 407 (7th Cir. 2007).

[64] *See Salinas*, 848 F.3d at 138 (criticizing courts that rely on an economic realities/economic dependence approach to determine joint employment because that approach "reflects a failure to distinguish the joint employment inquiry from the separate, employee-independent contractor inquiry," and adding that Rutherford Food does not support "the use of economic dependence to guide the entire joint employment analysis").

[65] *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2d Cir. 2003).

11

employer under the FLSA. Further, because such evidence is not relevant to the joint employer determination, it should be disregarded.

**B. Plaintiffs fail to establish that they are entitled to judgement as a matter of law with respect to joint employer status of Sterling under the FLSA.**

The economic realities test originates from the Supreme Court's holding that economic reality should govern the determination of employer status under the FLSA.[66] Under the test, courts must consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[67] Each individual alleged to be an employer must satisfy the economic realities test.[68] When saying the economic realities test warrants the conclusion that an employment relationship with Sterling existed, Plaintiffs ignore the governing Management Services Agreement and the employment authority South Central retained under it. Rather than addressing the undisputed facts in light of the limitations imposed by the Management Services Agreements, Plaintiffs selectively portray those services to suggest that Sterling maintained unfettered authority over South Central's operations, workforce, and employment decisions, when the ultimate authority remained with South Central. The evidence refutes that liberal conclusion.

*i.* *Management services performed by Sterling were limited to those expressly delegated to Sterling by South Central pursuant to the Management Services Agreement.*

South Central contracted Sterling's services to carry out "general administration and management of the operators of the harvesting equipment and trucking,"[69] much of which was

---

[66] *Gray*, 673 F.3d at 355 (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).
[67] *Id.* (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)).
[68] *Id.*
[69] R. Doc. 118-11, ¶ 3.1.

owned and insured by Sterling.[70] The purpose of entering into the Management Services Agreement, in part, related to the fact that Sterling owned and maintained the sugar cane harvesting and trucking equipment it had leased to South Central.[71] Thus, Sterling had an interest in the proper and safe use of its equipment as well as in the logistics associated with sugar cane delivered from such a large group of member farmers. Courts have acknowledged that management services agreements related to quality control will not, on their own, indicate an employment relationship because such agreements ultimately stem from the nature of the business, and the control exerted, even when it appears to be to a substantial degree, is qualitatively different from the control that is exercised by employers over employees.[72] Similarly, supervision and management for the purpose of ensuring compliance with various safety considerations or regulations is not dispositive of an employment relationship.[73] "[S]uch typical contractual business arrangements between companies do not themselves create joint employment liability under the FLSA."[74] The economic realities framework exists to prevent precisely this overreach, to avoid "bring[ing] normal strategically-oriented contracting schemes within the ambit of the FLSA."[75] Courts therefore limit liability to situations where defendants function as employers, not merely business partners, ensuring the FLSA is "not interpreted to subsume typical outsourcing relationships."[76] Here, the undisputed facts reflect that Sterling participated in the logistics of sugarcane transportation to its mill in the "agricultural association" context. That relationship, and the effects it may have on Plaintiffs alone, is simply not sufficient to establish that Sterling employed Plaintiffs.

---

[70] *See* R. Doc. 119-43; *see also*, R. Doc. 119-53, p.73 lines 17-24.

[71] R. Doc. 118-11, ¶ 3.1.

[72] *See generally Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010); *see also, e.g.*, *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2004)

[73] *See generally Moreau v. Air Fr.*, 356 F.3d 942 (9th Cir. 2004).

[74] 91 FR 21878; *Zheng*, 355 F.3d at 76 (explaining that the FLSA's employment definitions were "manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the [statute]").

[75] *Zheng*, 355 F.3d at 76.

[76] *Id.*

  **ii.**  ***When applied to the undisputed facts, the economic realities factors do not establish that Sterling was Plaintiffs' employer.***

Plaintiffs have not established that Sterling had the authority to hire and fire Plaintiffs as contemplated by the first economic reality factor. Plaintiffs rely in part on the fact that Sterling influenced the hiring decisions made by South Central. For example, Plaintiffs allege that Sterling maintains a "do not return" list of truck who should not be rehired, which is used for South Central's hiring purposes. While maintenance of such a list may result in Sterling influencing or limiting the number of eligible candidates for truck driving positions at South Central, the decision as to which qualified applicants are hired remains squarely within South Central's authority. Evidence of guidance alone in the hiring process is insufficient to demonstrate that Sterling possessed the power to hire employees.[77] Further, any role Sterling played in the hiring, firing, or disciplining of drivers is properly understood as a function of quality control and safety.[78] As the owner of the harvesting equipment and trucking equipment, Sterling bore responsibility for insuring the trucks and thereby ensuring their safe operation, which necessarily requires oversight of who was permitted to operate them. Such oversight is qualitatively different from the control indicative of an employer relationship.[79] Here, any involvement in personnel decisions was tethered to the authority provided to it under the Management Services Agreement and legitimate

---

[77] *See In re Domino's Pizza Inc.*, No. 16CV2492AJNKNF, 2018 WL 4757944, at *5 (S.D.N.Y. Sept. 30, 2018); *see also Godlewska v. HDA*, 916 F. Supp. 2d 246, 254 (E.D.N.Y. 2013) (holding that the power to hire rests with the entity that chooses who to hire, even if another entity "dictates the minimum criteria for persons who fill these positions and reviews applicants' resumes to ensure the applicants are qualified"); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 123 (S.D.N.Y. 2011) (finding no power to hire despite putative third party employer's requiring direct employer to perform background checks); *see In re Jimmy John's Overtime Litigation*, 2018 WL 3231273, at *15 (N.D.Ill. June 14, 2018) (finding no power to hire when franchisor did not directly hire employees but provided interview forms, instructed franchisees to hire additional staff, and implemented restrictions on who could be hired).

[78] *See In re Domino's Pizza Inc.*, 2018 WL 4757944, at *5.

[79] *See Jacobson*, 740 F. Supp. 2d at 689.

14

safety and quality control concerns, not to the broader terms or conditions of Plaintiffs' employment.

Second, Plaintiffs do not present evidence sufficient to establish that Sterling supervised and controlled employee work schedules or conditions of employment. In support of their argument, Plaintiffs rely on the fact that Sterling employees, pursuant to the limited Management Services Agreement, set Plaintiffs' schedules, determined when they would arrive for the start of the season and when they would depart, and that Plaintiffs would clock in and out, as well as park trucks and trailers overnight at Sterling's property. Again, much of the evidence Plaintiffs rely upon is directly related to quality control and therefore is qualitatively different from the sort of control that is exerted in the employer-employee context.[80] Even detailed instructions and extensive supervision when related to quality control simply does not amount to the effective control over the terms and conditions of employment to satisfy the joint employer inquiry.[81] Further, courts have found similar arguments regarding the controlling of schedules unpersuasive, noting that "[s]imply determining when a certain job will be performed is not tantamount to determine which employee will perform that job at a particular time."[82] Indeed, at least one court found that control over bus driver schedules "is not the sort of control over employee work schedules or conditions of employment that suffices to establish an employer-employee relationship."[83] While Plaintiffs may very well have been affected by Sterling employees'

---

[80] *See id.*

[81] *See, e.g., Zheng*, 355 F.3d at 74–75 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473 (1947)) (concluding that extensive supervision indicates joint employment only if it amounts to effective control of the terms and conditions of the plaintiff's employment)

[82] *Godlewska*, 916 F. Supp. 2d at 259 ("Simply determining when a certain job will be performed is not tantamount to determining which employee will perform that job at a particular time.")

[83] *Mao v. Sands Bethworks Gaming L.L.C.*, No. 15-CV-6252, 2016 WL 1717220, at *3 (S.D.N.Y. Apr. 28, 2016) (finding that control over bus schedules "is not the sort of control over employee work schedules or conditions of employment that suffices to establish an employer-employee relationship.").

decisions made pursuant to the Management Services Agreement, reliance on this alone "ignores the difference between affecting and supervising or controlling."[84]

Third, Plaintiffs have not set forth any evidence to establish that Sterling determined Plaintiffs' rate of pay. Rather, it is undisputed that Plaintiffs' rate of pay was set by the federal government after South Central's *Application for Temporary Employment Certification* was approved.[85] And this is why Plaintiff, Avila-Soto, candidly admitted that Defendants had not made false representations like he alleged at Paragraph 2 of the Complaint.[86] Plaintiff, Avila-Soto, agrees Rivers Patout "never told you to say that you are an agricultural worker based on the fact that you said it was only Jose and Sergio who gave you that instruction in the dining hall?"[87] When asked, "How were you deceived?"[88], Plaintiff, Avila-Soto, answered, "That we were agricultural workers when we were truck drivers."[89]  When asked to identify any false statement he alleges South Central made in the employment contracts at issue, Plaintiff, Avila-Soto was clear in explaining, "So I don't know why you keep asking me to identify whether they made a false accusation.  They give me the document. They told me to sign here. I signed. That's all."[90] This candid testimony likely relates to the fact that Plaintiff, Avila-Soto, admits he never had read the Complaint he filed, let alone the allegations set forth at paragraph 2.[91] Plaintiffs never violated their immigration status inasmuch as Plaintiffs admit, "I never worked illegally, and I never went to any other place except

---

[84] *See e.g., Jean-Louis*, 838 F. Supp. 2d at 125-26 (Plaintiff's argument that putative joint employer controlled scheduling when it set time windows in which employees had to perform services "ignores the difference between affecting and supervising or controlling.")

[85] R. Doc. 120, p. 11.

[86] *See* Exhibit C, p. 111, lines 11-12.

[87] *See* Exhibit C, p. 112, lines 13-24 (Avila-Soto concedes Rivers Patout never told him to pose as an "agricultural worker.").

[88] Exhibit C, p. 113, line 13.

[89] Exhibit C, p. 113, line 14-15; *see also* Exhibit C, p. 114, lines 2-4 (According to Avila-Soto, "the only thing I know is that we came as truck drivers, not as agricultural workers".)  *But see* the various visas that Plaintiff, Avila-Soto both endorsed and presented for admission showing South Central as his employer <u>after</u> the U.S. Department of Labor certified H-2A need relative to the driving work at issue in this case.

[90] Exhibit C, p. 120, lines 4-9.

[91] *See generally*, Exhibit C, p. 124, lines 13-20; *see also* Exhibit C, p. 62, lines 2-17.

for here."[92] Because Plaintiff, Avila-Soto, definitively stated that he and his class members performed no other work than what he had described, *i.e.*, "we were just driving trucks,"[93] it was reasonable to ask Plaintiff to identify the breach at issue. Plaintiff, Avila-Soto's response was clear: "If a contract says you're going to make 'this' amount but as a farm worker, not as a truck driver, that's where the deceit is at."[94] But Plaintiff's (apparent) perception of wrongdoing (which he explained at pages 130-145) is unsupportable: Plaintiff testified he believed his contract was unlawful because the document did not disclose his job title, 'truck driver'. But he was shown page 929 where, "…**this contract says, 'truck driver**."[95] Although Plaintiff, Avila-Soto, pivoted to parole evidence to support the notion that his job title somehow had been falsified,[96] no Plaintiff has legitimately disputed that the job orders at issue plainly identified the scope of the work they actually performed.

This is (one reason) Plaintiffs' reliance on Sterling's work delivering payroll for South Central is insufficient to show that that Sterling played any role in setting Plaintiffs' rate of pay or making final decisions regarding the method of payment. Indeed, companies often outsource payroll management to separate entities, such as payroll services providers, who are tasked with calculating paychecks and maintaining payroll records. Simply "providing human resources services like payroll and insurance does not make [Sterling] a joint employer or prove it exercised control over [Plaintiffs'] employment."[97] Even in cases where "payroll services and staffing

---

[92] Exhibit C, p. 177, lines 1-5.

[93] Exhibit C, p. 73, lines 12-15.

[94] Exhibit C, p. 130, lines 4-6.

[95] Exhibit C, pp 144-145.

[96] Indeed, Avila-Soto, reverted to statements allegedly made by persons other than Rivers Patout to support the notion that his employment scenario had not been truthfully disclosed. *See* Exhibit B, p. 145, lines 5-8. Notably, the contract documents *that Plaintiff seeks to enforce* clearly indicate that this truck driving function was disclosed on the **agricultural clearance order** that the United States government certified.

[97] *Hodges v. Admin. Sys.*, No. 4:25-cv-92, No. 4:25-CV-92-JDM-JMV, 2026 WL 1485716 (N.D. Miss. May 27, 2026); *see also, e.g.,* M*oldenhauer v. Tazewell Pekin Consol. Commc'ns Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008); *Aguirre*

17

providers wrote the employee's checks" courts have noted that this "did not transform it into an employer."[98]

Fourth, Plaintiffs cannot establish that Sterling acted as their employer simply because Sterling employees, pursuant to the Management Services Agreement, retained and had access to employment records.[99] Access to such records does not meet the fourth factor, particularly where the ability to review and access such records is "only an extension" of quality control procedures.[100]

Finally, and perhaps most importantly, under the Management Services Agreement, South Central expressly reserved all authority not specifically delegated by the terms of the Management Services Agreement and further retained the ultimate authority to strike Sterling's management.[101] In fact, the Management Services Agreement expressly stated that the agreement was "in no way… a blanket abrogation of authority by [South Central]."[102] Further, South Central retained the power to establish and coordinate the performance criteria for the services Sterling providing, and South Central was entitled to strike Sterling's management, require modification of its practices, or replace the general manager, at South Central's sole discretion.[103] South Central's retention of ultimate authority, including its express right to override, modify, or terminate Sterling's management, confirms that Sterling lacked the control necessary to be deemed an employer. At most, Sterling's contracted management services may have affected Plaintiffs' day-to-day work, but being impacted by a business arrangement is not the same as being employed by that entity,

---

[98] *v. SBC Commc'ns, Inc.*, Civil Action No. H-05-3198, 2007 WL 2065187, at *3 (S.D. Tex. July 17, 2007); *Hopkins v. Texas Mast Climbers, L.L.C.*, Civ. A. No. H-04-1884, 2005 WL 3435033, at *4 (S.D. Tex. 2005).

[98] *Hopkins*, 2005 WL 3435033, at *1.

[99] *See Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) (finding that access to employment records does not meet the fourth factor).

[100] *Godlewska*, 916 F. Supp. 2d at 262.

[101] R. Doc. 118-11, ¶ 6.1.

[102] R. Doc. 118-11, ¶ 12.1.

[103] R. Doc. 118-11, ¶ 6.1.

18

and it does not confer employee status under the FLSA. In fact, "[t]hat's the whole reason the economic realities test exists."[104] "Limiting FLSA liability to cases in which defendants, based on the totality of the circumstances, function as employers of the plaintiffs rather than mere business partners of plaintiffs' direct employer,' ensures that the FLSA 'is not interpreted to subsume typical outsourcing relationships."[105]

To the extent that Plaintiffs seek to rely on the Supreme Court's decision in *Falk v. Brennan*,[106] such reliance is misplaced. The Management Services Agreement, its contents, and the authority retained by South Central pursuant to the agreement renders *Falk* factually distinguishable from Plaintiffs' case. In *Falk*, petitioners rendered management services for the owners of a number of apartment complexes in the state of Virginia.[107] Under petitioners' contracts with the apartment owners, they agreed to perform, on behalf of each owner and "under his nominal supervision, virtually all management functions that are ordinarily required for the proper functioning of an apartment complex."[108] In order to carry out the day-to-day operations of each project, petitioners hired, fired, and supervised maintenance employees to carry out the terms of the management agreement entered into. While it was undisputed that the maintenance employees were employees of the owners by the express terms of their employment contracts, the Court had to consider whether the maintenance workers were jointly employed by petitioners. In determining that the maintenance workers were jointly employed, the Court noted that the owners of the apartment complexes, did not "exercise any supervisory power over these maintenance workers," and petitioners had ultimate control over the maintenance employees.

---

[104] *Hodges v. Admin. Sys.*, No. 4:25-cv-92, No. 4:25-CV-92-JDM-JMV, 2026 WL 1485716 (N.D. Miss. May 27, 2026) (citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F. 3d 61, 76 (2d Cir. 2003)).

[105] *Id.*

[106] *Falk v. Brennan*, 414 U.S. 190, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973).

[107] *Id.*

[108] *Id.*

Unlike in *Falk*, Sterling did not assume "virtually all management functions."[109] Nor did South Central relinquish supervisory authority. On the contrary, South Central retained ultimate control over operations, personnel, and management decisions, including the right to override or remove Sterling's management, including with respect to oversight. Indeed, South Central's Management Services Agreement obligated Sterling to provide detailed reports to South Central, which were required by South Central to be comprehensive in nature, including "the reporting of repairs, staffing, budgeting and financial matters, personnel matters, cane harvesting and logistics matters, and information regarding equipment purchases and leasing as it related to the activities of [South Central]."[110]

For all of these reasons, Plaintiffs cannot satisfy their burden to establish that Sterling functioned as their joint employer under any of the economic realities factors. The undisputed evidence shows that Sterling neither exercised the requisite control over Plaintiffs' employment, nor operated as anything more than a contracted service provider within a conventional business relationship. Because the record does not support a finding that Sterling acted as Plaintiffs' employer, Plaintiffs are not entitled to summary judgment on their joint employment claim under the FLSA.

### iii.    *The undisputed evidence shows that Sterling was not Plaintiffs' employer under the FLSA.*

South Central was the sole employer of Plaintiffs. Plaintiffs do not address nor dispute 20 CFR 655.131, which explains Association filing requirements for either individual or master applications and expressly permits the employment relationship at issue here:

> If an association files and Application for Temporary Employment Certification,
> in addition to complying with all the assurances, guarantees, and other

---

[109] *Id.*

[110] R. Doc. 118-11, ¶ 6.3.

requirements contained in this subpart and in part 653, subpart F, of this chapter, the following requirements also apply.

(a) *Individual applications*. Associations of agricultural employers may file an Application for Temporary Employment Certification for H-2A workers as a sole employer, a joint employer, or agent. The association must identify in the Application for Temporary Employment Certification in what capacity it is filing. The association must retain documentation substantiating the employer or agency status of the association and be prepared to submit such documentation in response to a Notice of Deficiency from the CO prior to issuing a Final Determination, or in the event of an audit.

(b) *Master applications*. An association may file a master application on behalf of its employer-members. The master application is available only when the association is filing as a joint employer. An association may submit a master application covering the same occupation or comparable work available with a number of its employer members in multiple areas of intended employment, just as though all of the covered employers were in fact a single employer, as long as a single date of need is provided for all workers required by the Application for Temporary Employment Certification and all employer-members are located in no more than two contiguous States. The association must identify on the Application for Temporary Employment Certification by name, address, total number of workers needed, and the crops and agricultural work to be performed, each employer that will employ H-2A workers. The association, as appropriate, will receive a certified Application for Temporary Employment Certification that can be copied and sent to the United States Citizenship and Immigration Services (USCIS) with each employer-member's petition.

The evidence in this case proves Plaintiffs delivered sugar cane grown by farmers who were all members of the South Central association. Plaintiffs' arguments rely on erroneous assumptions of law and an (alleged) misunderstanding about the identity of the employer at issue. For example, Plaintiffs' arguments are more akin to a waitress that works in two restaurants operated by the same entity or a farmworker who picks produce at two separate orchards and the orchards had an arrangement to share farmworkers.[111] But these scenarios are not at issue in this case.[112]

---

[111] *See* 29 CFR 792.2(a).

[112] The Administrator of Wage and Hour has addressed in detail the criteria for both vertical and horizontal joint employment *See* Weil, Administrator, WHD, DOL, Administrator's Interpretation No. 2016-1, *Joint Employment Under the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act,* (Jan. 20,

Notably, South Central determined the method of Plaintiffs' pay, as Plaintiffs' pay checks were issued by South Central.  The services that Plaintiffs performed were all on behalf of South Central (which is an agricultural association).  The fact that some logistics of sugarcane hauling were managed by a third party does not change the nature of Plaintiffs' employment contract with South Central, which did not include terms of service Plaintiffs owed to Sterling, nor obligations that Sterling owed to Plaintiffs. Indeed the undisputed facts point only to Plaintiffs' employment by South Central. For example:

- Plaintiffs all applied for and accepted work as H-2A agricultural workers pursuant to Temporary Labor Certifications issued by the Department of Labor pursuant to applications filed by South Central.

- Plaintiffs' H-2A visas identify South Central as Plaintiffs' employer with the federal government.

- Plaintiffs were required to provide accurate information in their H-2A visa documentation, and they testified that they provided accurate information in connection with those applications.

- The **only** petitioning employer was South Central.

- Sterling was not listed as a petitioning employer on Plaintiffs' job orders.

Similarly, Plaintiffs' own testimony negates Plaintiffs' allegation that Plaintiffs were jointly employed by Sterling.[113] Accordingly, Plaintiffs simply cannot "establish all of the essential

---

2026); *see also Garcia-Celestino v. Ruiz Harvesting, inc.*, 843 F.3d 1276 (11th Cir. 2016) (joint employment in H-2A cases include separate definitions for joint employment for breach of contract of clearance orders [governed by common law] and for breach of FLSA [governed by the broader rule of 'suffer or permit to work.']). Based on the undisputed facts and Plaintiffs' claims in this case, the theory of horizontal joint employment is not applicable to the issue before this Court. Horizontal joint employment requires that it be a given the plaintiff has more than one employer, and the relevant issue is whether the two or more employers are sufficiently related so that the hours the employee works for each employer in a given week must be aggregated for overtime purposes. Plaintiffs make zero allegations of horizontal joint employment, and thus, the relationship between South Central and Sterling is irrelevant to the vertical joint employer claims raised by Plaintiffs. *E.g.*, *Wirtz v. Hebert*, 368 F.2d 139, 141 (5th Cir. 1966) (discussing *Mitchell v. Bowman*, 131 F. Supp. 520 (M.D. Ala. 1954)).

[113] R. Doc. 118-23, ¶ 40-41.

elements of [their] claim,"[114] such "that no reasonable trier of fact could find other than for the plaintiff."[115]

### C. Plaintiffs fail to establish that Sterling was Plaintiffs' employer under Plaintiffs' employment contracts.

Plaintiffs further fail to establish the necessary elements of their claim that Sterling was Plaintiffs' joint employer under their employment contracts. Apart from referencing their prior arguments in support of employer status under the FLSA, Plaintiffs fail to address the extent to which Sterling was an employer under the factors set forth in 20 CFR § 655.103(e). These criteria have been refined so that the critical question to be answered is what entity made the final decisions regarding employment matters related to the person bringing the claims.[116] Plaintiffs cannot make this showing for several reasons. For example, it is undisputed that Sterling and South Central are separately owned legal entities with no common ownership. South Central is run by its President, Rickey Gonsulin. The relevant employment decisions forming the basis of Plaintiffs claims were made by South Central. There is no evidence to support that Sterling played any role in the classification of Plaintiffs as H-2A workers. Nor was Sterling a party to the job orders Plaintiffs claim were breached. Plaintiffs bear the burden of producing "specific facts showing that there is genuine issue for trial."[117] This burden cannot be satisfied by "conclusory allegations, by unsubstantiated allegations, or by only a scintilla of evidence."[118] Again, Plaintiffs have failed to meet their burden on summary judgment to "establish all of the essential elements of [their]

---

[114] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).
[115] *Id.*
[116] *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).
[117] *Brown v. Amesbury Mgmt., LLC*, No. CV 22-675-JWD-EWD, 2025 WL 936654, at *13 (M.D. La. Mar. 27, 2025) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[118]  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

23

claim,"[119] such "that no reasonable trier of fact could find other than for the plaintiff."[120] Accordingly, Plaintiffs' Motion for Summary Judgment must be denied.

### D. Plaintiffs fail to establish that Sterling was Plaintiffs' employer under the LWPA.

Plaintiffs also fail to establish that Sterling employed Plaintiffs for purposes of their LWPA claim. In support of their claim, Plaintiffs state only that Sterling "exercised near complete control of the Plaintiffs," referencing their analysis of the economic realities factors under the FLSA. "However, the analysis used to determine whether a party is an employer under the LWPS differs from the FLSA analysis discussed above."[121] In contrast to the FLSA analysis, "it is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists.'"[122]

The Management Services Agreement confirms that, even though Sterling employees, pursuant to the limited authority outsourced by the agreement, exercised some degree of supervision, the right of control remained firmly with South Central.[123] The Management Services Agreement expressly reserved ultimate authority to South Central, including the power to dictate performance standards, modify Sterling's practices, and remove its management altogether.[124] Here, that right to control Plaintiffs indisputably belonged to South Central. Thus, any day-to-day supervision undertaken by Sterling occurred only within the bounds of authority delegated by South Central, underscoring that Sterling lacked the independent control necessary to be deemed an employer under the LWPA. Plaintiffs' failure to establish the elements necessary to show that

---

[119] *Fontenot*, 780 F.2d at 1195.
[120] *Id.*
[121] *Tillman v. Louisiana Children's Med. Ctr.*, No. CV 16-14291, 2017 WL 1399619, at *3 (E.D. La. Apr. 19, 2017)
[122] *Mendoza v. Essential Quality Const., Inc.*, 691 F. Supp. 2d 680, 686 (E.D. La. 2010).
[123] *See* R. Doc. 118-11, ¶ 6.1.
[124] *See* R. Doc. 118-11, ¶ 6.1.

Sterling was Plaintiffs' employment under the LWPA warrants denial of Plaintiffs' Motion for Summary Judgment, particularly under the heightened burden placed on Plaintiffs as the movant.

## IV. CONCLUSION.

The evidence in this case proves Plaintiffs delivered sugar cane grown by farmers who were all members of the South Central association. For all these reasons, Plaintiffs have not carried the burden required to obtain summary judgment on their own claims. The record does not establish, beyond peradventure, that Sterling was Plaintiffs' employer under the FLSA, the governing employment contracts, or the LWPA. Because Plaintiffs have failed to establish each essential element of their theories as a matter of law, their Motion for Summary Judgment as to the employer status and liability of Sterling must be denied in its entirety.

This 12th day of June, 2026.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Andrew M. Albritton*