UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FELIPE DE JESUS AVILA-SOTO,  et al.  ) | |
| ) | Case No. 6:24-cv-01392 |
| Plaintiffs,                    ) | |
| ) | JUDGE ROBERT R. SUMMERHAYS |
| v.                              ) | |
| ) | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| ) | |
| SOUTH CENTRAL SUGAR CANE      ) | |
| GROWERS' ASSOCIATION, INC., et al.   ) | |
| ) | |
| Defendants.                  ) | |
| ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................... 1

II.  Defendant South Central's Motion for Summary Judgment Regarding the Agricultural
     Exemption Should be Denied Because it is not "A Farm," is not "A Farmer," and the
     Truck Driving Work was not Done "On a Farm." ....................................................... 1

III. Disputed Issues of Fact Regarding Plaintiffs' FLSA Reimbursement Claim Preclude
     Summary Judgment for Defendants on this Issue ........................................................ 5

IV.  Defendant Sterling Sugars Fails to Show that it Should not be Considered a Joint Employer
     Under the FLSA and the Employment Contracts. ........................................................ 9

V.   Defendants are not Entitled to Summary Judgment on Plaintiffs' Breach of Employment
     Contract Claims. ........................................................................................................ 15

V.   Defendants are not Entitled to Summary Judgment on Plaintiffs' LWPA Claims ............... 22

VI.  CONCLUSION ........................................................................................................... 23

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Albee v. Vill. of Bartlett*, 861 F. Supp. 680 (N.D. Ill. 1994) ........................................................ 21

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (2001). ........................................................ 18

*Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) .................................. 6

*Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No. 7:08-CV-32(HL), 2008 U.S. Dist. LEXIS 98064 (M.D. Ga. Dec. 4, 2008) ................................................................................................ 14

*Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994) ........................................................ 20

*Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS 178401 (W.D. La. Sept. 11, 2025) .................................................................................................. 2, 18

*Bayside Enters. v. NLRB*, 429 U.S. 298 (1977) ............................................................................ 5

*Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985) ................................ 12

*Chapman v. Durkin*, 214 F.2d 360 (5th Cir. 1954) ...................................................................... 2

*De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295 (N.D. Ga. 2008) ....... 17, 19

*Demoss v. Perry's Rests. Ltd.*, No. 1:21-cv-01054-RP, 2023 U.S. Dist. LEXIS 88717 (W.D. Tex. May 22, 2023) ................................................................................................................... 9

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982) ........................................ 8

*Falk v. Brennan*, 414 U.S. 190 (1973) ................................................................................. 10, 11

*Frank's Nursery, LLC v. Walsh*, No. H-21-3485, 2022 U.S. Dist. LEXIS 124608 (S.D. Tex. July 14, 2022) ............................................................................................................................. 22

*Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508 (5th Cir. 1969) ...................................................... 9

*Hanks v. La. Cos.*, 205 So. 3d 1048 (La. App. 2016) ................................................................. 23

*Hannon v. F. Miller Props., LLC*, No. 17-304-JWD-EWD, 2018 U.S. Dist. LEXIS 129832 (M.D. La. July 12, 2018) .................................................................................................................. 10

*Hasken v. City of Louisville*, 173 F. Supp. 2d 654 (W.D. Ky. 2001) ........................................... 20

*Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58, 60 (9th Cir. 1974) .................................... 3

*Holly Farms Corp. v. NLRB*, 517 U.S. 392 (1996) ....................................................................... 5

*Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) ....................................................... 10

*Jeffery v. Lone Star PJS, LLC*, No. 3:18-cv-2901-M, 2019 U.S. Dist. LEXIS 243044 (N.D. Tex.

July 10, 2019) ................................................................................................................ 6

*Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091, 2021 U.S. Dist. LEXIS 132407 (N.D. Tex. July 15, 2021) ................................................................................................................ 7

*Marshall v. Abbott Farms, Inc*., 559 F.2d 1006 (5th Cir. 1977) ....................................................... 5

*Mencia v. Allred*, 808 F.3d 463 (10th Cir. 2015) .................................................................... 16, 17

*Mitchell v. Kentucky Finance Co*., 359 U.S. 290 (1959) ................................................................ 5

*Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 U.S. Dist. LEXIS 55003 (W.D. Ark. May 20, 2011) ...................................................................................................... 14

*Rafferty v. Denny's, Inc*., 13 F.4th 1166 (11th Cir. 2021) ............................................................ 8

*Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356 (11th Cir. 2021) ..................... 4

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ........................................................... 10

*Salas-Mateo v. Ochoa,* No. 03-14357-CIV-LYNCH, 2004 U.S. Dist. LEXIS 16454 (S.D. Fla. Mar. 26, 2004) ................................................................................................................ 20

*Salazar-Calderon v. Presidio Valley Farmers' Assn.*, 765 F.2d 1334 (5th Cir. 1985) ................. 14

*Spillers v. La. P H S, L.L.C*., No. 3:21-00762, 2022 U.S. Dist. LEXIS 83798 (W.D. La. Mar. 4, 2022) ............................................................................................................................. 10

*State ex rel. Cisneros v. Alco Harvest, Inc*., 97 Cal. App. 5th 456 (2023) ................................... 18

*Swales v. KLLM Transp. Servs., L.L.C*., 985 F.3d 430 (5th Cir. 2021) ......................................... 8

*Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903 (W.D. La. 2006) ............................................. 16

*Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC, 2022 U.S. Dist. LEXIS 99284 (W.D. Tex. June 3, 2022) .......................................................................................................... 20

*Tipton v. Associated Milk Producers, Inc*., 398 F. Supp. 743 (N.D. Tex. 1975) ............................ 3

*Tonningsen v. Commissioner*, 61 F.2d 199 (9th Cir. 1932) .......................................................... 18

*Trevino v. Celanese Corp*., 701 F.2d 397 (5th Cir. 1983) ............................................................ 14

*Tullous v. Tex. Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811, 819 (S.D. Tex. 2008) ... 3, 11, 13

*United States v. Bussey*, No. 5:21-cr-9, 2025 U.S. Dist. Lexis 94293 (S.D. Ga. Feb. 10, 2025) . 19

*Usery v. Pilgrim Equip. Co*., 527 F.2d 1308 (5th Cir. 1976) ................................................. 10, 12

*Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022) .................................................. 16

*Wage and Hour Division v. Global Horizons, Inc.*, 2010-TAE-00002 (DOL OALJ Dec. 13, 2011) ............................................................................................................................. 18

iii

*Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990) ........................................................... 11

*White v. United States Corr., L.L.C.*, 996 F.3d 302 (5th Cir. 2021) ................................. 5

*Wirtz v. Osceola Farms Co.*, 372 F.2d 584 (5th Cir. 1967).............................................. 2

Statutes

29 U.S.C. § 203(f)............................................................................................................. 4

La. Rev. Stat. Ann. § 23:632.......................................................................................... 23

Regulations

20 C.F.R. § 655.103 ........................................................................................................ 14

20 C.F.R. § 655.122(p)(2)............................................................................................... 21

20 C.F.R. § 655.140(a).................................................................................................... 18

20 C.F.R. § 655.141(a).................................................................................................... 18

20 C.F.R. § 655.181(b) ................................................................................................... 18

29 C.F.R. § 531.36 (b) ...................................................................................................... 6

29 C.F.R. § 780.133 .......................................................................................................... 3

29 C.F.R. § 780.134 .......................................................................................................... 2

29 C.F.R. § 780.156 .......................................................................................................... 2

## I.      Introduction

Defendants move for a determination that South Central Sugar Cane Growers' Association, Inc. ("South Central") was engaged in agriculture, that Sterling Sugars, LLC ("Sterling Sugars") was not an employer, and that reimbursements and higher wages were not owed. Defendants' motion should be denied as it fails to cite controlling case law, relies on cases which have been reversed, fails to even cite prior decisions of this Court, and is premised on misstatements of the applicable law and inaccurate and incomplete recitations of the facts. As detailed below, applying the applicable law, Defendant South Central is unmistakably not entitled to an agricultural exemption, Defendant Sterling Sugars is liable as an employer and Defendants' claims regarding reimbursements and wage rates should be rejected and Defendants' motion denied in its entirety.

## II.     Defendant South Central's Motion for Summary Judgment Regarding the Agricultural Exemption Should be Denied Because it is not "A Farm," is not "A Farmer," and the Truck Driving Work was not Done "On a Farm."

Defendant South Central erroneously claims it is entitled to a FLSA exemption from overtime pay that applies to "agricultural" work.[1] As Plaintiffs explained in their motion for partial summary judgment on this same issue, the definition of "agriculture" under the FLSA has often been described to refer to "primary agriculture" and "secondary agriculture." (ECF No. 119-1 at 5) (Pls.' Mem. in Supp. of Mot. for Partial Summ. J.). Defendant South Central claims entitlement to the exemption based on "secondary agriculture," which requires the work to be

---

[1] Defendants' summary judgment motion does not seek a determination of whether *Defendant Sterling Sugars* is entitled to any exemption from the payment of overtime to the truck drivers. As Plaintiffs argued in their Motion for Partial Summary Judgment, Sterling Sugars is also "not a farmer" and the work of the truck drivers was not "on a farm" and Sterling Sugars is therefore not entitled to any exemption from the payment of overtime. (ECF No. 119-1 at 3-9) (Pls.' Mem. in Supp. of Mot. for Partial Summ. J.)

1

performed "for a farmer" or "on a farm." (ECF No. 119-1 at 5.) Defendant South Central asserts

that Plaintiffs' work, truck driving, constituted agriculture because, in Defendants' view, South

Central "is a 'farm.'" (ECF No. 118-24 at 7). But South Central representatives admitted during

depositions that it is not a farm as it has no property, raises no crops, and has never engaged in

any farming.[2] Even if South Central was "a farm" (it clearly is not), the exemption requires the

work to be performed "*on* a farm" which could not have been accomplished here because "[t]he

transportation work here is not work done on a farm, except to the extent the original movements

in picking up loads are on farm property. The rest of each movement is off the farm (some on

public highways) and at the mill site." *Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 588 (5th Cir.

1967) (affirming district court finding that driving sugar cane trucks is not work "on a farm").

This has long been the law in the Fifth Circuit as "hauling [fruit] from the farm . . . cannot be

said to be work performed . . . on a farm[.]" *Chapman v. Durkin*, 214 F.2d 360, 363 (5th Cir.

1954); *see also* 29 C.F.R. § 780.156 ("If not performed by the farmer, transportation beyond the

limits of the farm is not within section 3(f), . . . The scope of section 3(f) . . . does not extend to

the employees transporting the commodities off the farm"); 29 C.F.R. § 780.134 ("employees of

an alfalfa dehydrator engaged in hauling chopped or unchopped alfalfa away from the farms to

the dehydrating plant are not employed in a practice performed 'on a farm'"). Indeed, this Court

previously addressed this same issue with a subsidiary of Defendant Sterling Sugars just last

year. *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-03741, 2025 U.S. Dist. LEXIS

178401, at *16 (W.D. La. Sept. 11, 2025) ("the transportation of harvested sugarcane in heavy

trucks over public roads between the farms and the Sterling Mill was not work performed 'on a

---

[2] ECF No. 119-2 (Pls.' SOF) ¶¶ 158-159 (Gary/South Central Dep. at 316:21-317:18) ("Q. Does South Central grow any crops. A. No."); ECF No. 119-2 (Pls.' SOF) ¶ 20 (South Central's primary business activity is hauling sugarcane from farms to Sterling Sugars).

2

farm'"). It is undisputed that Plaintiffs' and other class members' work hauling sugarcane from the farms to Sterling Sugars' mill occurred "off the farm" on public roads so the secondary agricultural exemption for work performed "on a farm" cannot apply.[3]

South Central next claims it is "an association … which is engaged in actual farming." (ECF No. 118-24 at 8.) While South Central's *members* may be engaged in farming, South Central representatives testified that South Central *itself* does not engage in any farming.[4] Status as a farmer is not a transitive property and it has long been the law that status as a "farmer" is not transferable to a membership organization. *See, e.g., Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 768 (1949) (rejecting application of FLSA agricultural exemption to farmer-owned water company because the "working men are in no real sense employees of the shareholders . . . The controlling fact is that the company has been set up by the farmers as an independent entity[.]"); *Hodgson v. Idaho Trout Processors Co*., 497 F.2d 58, 60 (9th Cir. 1974) (rejecting application of agricultural exemption to farmer-operated processor because "[t]he employees work for Trout Processors, not the farms"); *Tullous v. Tex. Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811, 819 (S.D. Tex. 2008) (finding grower-owned processor "appears to be a separate entity, independent from the catfish farmers who own it and would not come, therefore, within the secondary meaning of agriculture"); *Tipton v. Associated Milk Producers, Inc*., 398 F. Supp. 743, 746 (N.D. Tex. 1975) ("[F]armers' cooperative associations are distinct from the farmers who own or compose them and the work performed by an association is not work performed by a farmer[.]"); 29 C.F.R. § 780.133; 29 C.F.R. § 780.138 ("[A]n incorporated association of farmers that does not itself engage in farming operations is not engaged in agriculture[.]") (citation omitted). Additionally, "[w]hen farming-related work pertains to

---

[3] ECF No. 119-2 (Pls.' SOF) ¶¶ 66-67.
[4] ECF No. 119-2 (Pls.' SOF) ¶¶ 20, 158-159.

multiple farms' operations, it falls [outside of the secondary definition of agriculture.]" *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1362 (11th Cir. 2021). Accordingly, it is undisputed that Defendant South Central is not engaged in farming and the agricultural exemption cannot apply to the truck driving work at issue.

The fact that South Central is not "a farmer" is conclusive with respect to the exemption because "[n]o matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the scope of the 'secondary' meaning of 'agriculture.'" 29 C.F.R. § 780.129.[5] "Ordinarily, … transportation-related activities on public roads—falls outside the secondary definition [of agriculture] when performed by someone other than a farmer." *Ramirez*, 997 F.3d at 1360 (cleaned up). "[D]rivers are not exempted by § 13(a)(6) when hauling cane from the fields of the independent growers to the mill." *Osceola Farms Co.*, 372 F.2d at 587. Accordingly, "even work that begins on a farm but is mostly performed away from a farm ordinarily falls outside the exemption." *Ramirez*, 997 F.3d at 1360. Despite the weight of this controlling case law, which Defendants fail to cite, Defendants' brief erroneously claims that the "Plaintiffs were engaged in agriculture under the FLSA[.]" ECF No. 118-24 at 10.[6] Defendants' brief either misunderstands the controlling case law or simply ignores the case law in the hopes that this Court will ignore it too. This Court should reject the invitation.

Finally, Defendants brief also fails to cite controlling precedent from the U.S. Supreme Court and the Fifth Circuit Court of Appeals and instead cites a string of old Fifth Circuit decisions that are not good law. (ECF 118-24 at 9 & n.44.) The decisions cited by Defendants

---

[5] South Central also claims that it was "an agricultural employer" but, of course, being *involved* in agriculture does not meet the requirements of the FLSA agricultural exemption which requires that the work for the employer was "performed by a farmer or on a farm as incident to or in conjunction with such farming operations[.]" 29 U.S.C. § 203(f). Being "agricultural" does not in itself provide any exemption from the FLSA.

[6] Defendants' brief also repeatedly argues that Plaintiffs' claims should be "dismissed," calling into question what standard should apply to their motion. Defendants already filed a motion to dismiss in this action that was denied by the Court and dismissal is not the appropriate outcome on a motion for summary judgment.

4

from 1973 and 1974 are not good law because Defendants fail to cite the controlling 1977 U.S. Supreme Court decision that accepted the NLRB position regarding truck drivers for poultry processors not being engaged in agricultural work because the chickens were raised by others and rejected the analysis used by the Fifth Circuit. *Compare* ECF No. 118-24 at 9 n.44 with *Bayside Enters. v. NLRB*, 429 U.S. 298, 303 (1977). In *Bayside*, a case Defendants fail to cite, the Supreme Court held that "the work of the contract farmer cannot make the drivers agricultural laborers." *Bayside Enters.*, 429 U.S. at 303. As the Fifth Circuit later noted, a party could no longer rely on the decisions cited by Defendants for interpreting the FLSA's agricultural exemption because "*Bayside* dismantled the chief precedential prop of [those cases.]" *Marshall v. Abbott Farms, Inc.*, 559 F.2d 1006, 1007 (5th Cir. 1977).[7] As the Supreme Court later wrote, in another controlling decision not cited in Defendants' brief, "[t]his conclusion, we note, entirely disposes of the contention that the truck drivers are employed in secondary agriculture, …. [because] these crew members do not work 'on a farm.'" *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 401 (1996).

Defendant South Central has simply not met its burden to show it is entitled to the FLSA agricultural exemption and its motion for summary judgment in this regard must be denied. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291 (1959); *White v. United States Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) ("The employer bears the burden to establish a claimed exemption applies to the claimant.") (cleaned up).

### III. Disputed Issues of Fact Regarding Plaintiffs' FLSA Reimbursement Claim Preclude Summary Judgment for Defendants on this Issue.

Defendants claim that Plaintiffs "reimbursement claim fails" but fail to cite any case law,

---

[7] *See also United States v. Nat'l Broiler Mktg. Asso.*, 550 F.2d 1380, 1390 (5th Cir. 1977) (declining to follow prior 5th Circuit decision rejecting NLRB interpretation on agricultural exemption because the "Supreme Court held that the National Labor Relations Board's position on the issue must be sustained").

describe the legal requirements incorrectly, and misstate the applicable facts. Plaintiffs obtained licenses, required medical exams, and visa photos at their own expense.[8] Defendants requested and received copies of these documents, which they maintained in their personnel files.[9] Additionally, Plaintiffs were required to purchase mobile phones and pay for cellular telephone service so that Defendants' dispatchers could communicate directions to the drivers.[10] Defendant South Central's designees did not know the policy or whether South Central had reimbursed cell phones.[11] And South Central's Chief Financial Officer testified that she believed the drivers' licenses fees had been reimbursed but had been unable to confirm that.[12] Further, South Central's Chief Financial Officer testified that it was South Central's policy that the drivers' licenses fees and the medical exam fees should have been reimbursed to the drivers.[13]

An employer is required to reimburse expenses incurred for the benefit of the employer where those expenses cut into the wages required by the FLSA. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002); *Jeffery v. Lone Star PJS, LLC*, No. 3:18-cv-2901-M, 2019 U.S. Dist. LEXIS 243044, at *5 (N.D. Tex. July 10, 2019) ("Federal labor regulations require that wages must be paid 'free and clear,' and that job-related expenses that are primarily for the benefit of the employer cannot be charged to the employee if the expenses would drive the employee's pay below the minimum wage."); 29 C.F.R. § 531.36 (b) ("Deductions for articles such as tools …. [which] reduce the wages of the employee in any such workweek below

---

[8] Suarez-Palafox Dep. at 76:11-23.

[9] Suarez-Palafox Dep. at 100:2-4 (license submitted with application); Avila-Soto Dep. at 170:4-13.

[10] Suarez-Palafox Dep. at 103:2-4 ("we all purchased a phone") & 101:20-102:8.

[11] Gonsoulin/South Central Dep. at 225:5-12 (didn't know if South Central reimbursed for cell phones); Gary/South Central Dep. at 338:24-339:8; 340:1-9 (didn't know South Central policy for cell phones).

[12] Gary/South Central Dep. at 329:5-19.

[13] South Central 30(b)(6) Dep. (Ashlee Gary) at 333:25-334:4 ("Q. And is it South Central's policy that workers -- that truck drivers should be reimbursed for those – any expenses associated with obtaining their driver's licenses to haul sugarcane? A.   Yes."); South Central 30(b)(6) Dep. (Ashlee Gary) at 334:12-16 ("Q. (BY MR. KNOEPP) What about -- what is South Central's policy with respect to expenses that truck drivers may incur related to medical examinations associated with obtaining their commercial driver's licenses? A. That they should be reimbursed.")

the minimum required by the Act, they are illegal.") "It does not matter that Defendant did not deduct the cost[s] [] directly from Plaintiffs' paychecks; by forcing Plaintiffs to purchase the [] [items] themselves, Defendant forced Plaintiffs to kick-back a portion of their wages." *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091, 2021 U.S. Dist. LEXIS 132407, at *15-16 (N.D. Tex. July 15, 2021).

Defendants never reimbursed these expenses and the expenses greatly reduced Plaintiffs' first week's wages. For example, Plaintiff Felipe Suarez-Palafox received $345.49 in pay in his first workweek of 2022 for 27.75 hours of work.[14] Plaintiff Suarez-Palafox testified that his license and medical certificate expense in 2022 required before returning to Defendants' operations was 5000 pesos or approximately $300 U.S. dollars.[15] Defendants are in possession of that license, produced it during discovery, and had highlighted its issue and expiration dates.[16] They are also in possession of the medication certificate.[17] Plaintiff Suarez's expenses when deducted from his pay as required by law result in a net pay of $45.49 for the workweek—which is $1.64 per hour, well below the required minimum wage for 27.75 hours of work.[18]

Defendants' argument is that without an express discussion of the claim in the motion for collective action notice "Plaintiffs' FLSA collective action allegations relating to minimum wage … must be dismissed." (ECF No. 118-24 at 10.)[19] However, FLSA collective action certification

---

[14] SCSCGA - 000390 (attached as Ex. 112).

[15] Suarez-Palafox Dep. at 77:2-9.

[16] SCSCGA - 000113 (attached as Ex. 113).

[17] SCSCGA - 000115 (attached as Ex. 113) (period of validity listed under "Vigente").

[18] Plaintiff Avila-Soto also plainly has a FLSA claim based solely on phone expenses purchased for dispatching purposes. Plaintiff Avila-Soto's first week pay in 2022 was $342.38 for 27.5 hours at $12.45 per hour. SCSCGA - 000387 (attached as Ex. 114). This was for work September 21 to September 27, the first week of a two-week pay period. His second week of that pay period included 42.5 hours worked October 1 through October 4. SCSCGA - 000364 (attached as Ex. 114). Plaintiff Avila-Soto testified that he spent $230 for his cellular telephone and $80 for the monthly service. Avila-Soto 2nd Dep. at 171:13-24; 172:22-24. These expenses, totaling $310, greatly reduce his first week's wages well below the federal minimum as he earned just $32.38 after expenses for 27.5 hours of work—or just barely above $1 per hour.

[19] Defendants cite no case law for this claimed legal requirement.

is not required to maintain collective FLSA claims. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 440 (5th Cir. 2021) ("nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process"). Defendants cite no cases to the contrary, nor any case law whatsoever for their unsupported, erroneous, claim.

Defendants next argue that reimbursement was not owed because the Plaintiffs "made no request[.]" ECF No. 118-24 at 11. Defendants' brief misunderstands their obligation to pay legal wages. It is an employer's duty to comply with the FLSA, not an employee's duty to request the compliance. *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 471 (11th Cir. 1982) ("employees should not be penalized by an employer's failure to comply with its statutory duty"); *Rafferty v. Denny's, Inc*., 13 F.4th 1166, 1190 (11th Cir. 2021) ("it is the duty of the employer—not the employee—to keep track of the employee's wages, hours, and other conditions of employment") (cleaned up).

Finally, Defendants contend that Plaintiffs licenses were purchased so long ago they cannot be due for reimbursement. ECF No. 118-24 at 11. This is due to Defendants choosing to question Plaintiffs about past, not current, licenses.[20] Plaintiffs clearly testified that licenses and medical certificates expire and must be renewed.[21] And Defendants, in their own personnel files, have the licenses and medical certificates Plaintiffs renewed.[22] Similarly, Defendants' knew about the phone numbers as they kept a record of the local phone numbers of the drivers.[23]

Expenses of telephones, specialized licenses, and medical certificates are expenses that

---

[20] Avila-Soto Dep. at 161:4-6 ("We were asking him about when he was first licensed").

[21] Suarez-Palafox Dep. at 78:11-18 (license renewal); 78:22-24 (renewal every two years); Avila-Soto Dep. at 81:24-82:1 ("we had to have a current driver's license and a current medical certificate").

[22] SCSCGA - 000073 (Suarez-Palafox renewal) (attached as Ex. 113); SCSCGA - 000115 (Suarez-Palafox renewal) (attached as Ex. 113); SCSCGA – 000023 (Avila-Soto renewal) (attached as Ex. 115).

[23] Ex. 75 (email from Sterling Sugars' administrative assistant to Ricky Gonsoulin, President of South Central, entitled "Truck Driver Phone List").

can be for the benefit of the employer and require reimbursement. *Demoss v. Perry's Rests. Ltd.*, No. 1:21-cv-01054-RP, 2023 U.S. Dist. LEXIS 88717, at \*10 (W.D. Tex. May 22, 2023) (denying summary judgment on FLSA reimbursement claim where defendant required "servers to have particular clothing items, equipment, and certifications to perform their jobs"). Summary judgment for the Defendants as to this issue is appropriately denied.

IV.    **Defendant Sterling Sugars Fails to Show that it Should not be Considered a Joint Employer Under the FLSA and the Employment Contracts.**

The Defendants contend that Sterling Sugars is not an employer pursuant to the FLSA or the H-2A employment contracts.[24] (ECF No. 118-24 at 15-16.) Defendants claim that "Plaintiffs cannot make a showing sufficient to establish that Sterling jointly employed Plaintiffs under the FLSA" because, Defendants claim, Plaintiffs cannot "satisfy the economic realities test." (ECF No. 118-24 at 11-12.) But Plaintiffs have done just that in their own Motion for Summary Judgment on Employer Status of Defendant Sterling Sugars, LLC, demonstrating how the overwhelming documentary and testimonial evidence shows that Sterling Sugars is an employer under the FLSA, the employment contracts, and the LWPA. (ECF No. 120-1) (Pls.' Mem. in Supp. of Mot. for Summ. J. on Employer Status of Sterling Sugars, LLC). Defendants argue as a basis for denying Sterling Sugars' employment status under the FLSA that "[t]he only petitioning employer was South Central," that "Sterling was not listed as a petitioning employer" on the job orders, and that the workers' visas identified South Central as the employer. (ECF No. 118-24 at 13.) (emphasis in original). However, "[a] [FLSA] relationship may exist between two parties whether or not either or both of them give it express recognition." *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969); *see also Hannon v. F. Miller Props., LLC*, No. 17-

---

[24] Defendant Sterling Sugars did not move for summary judgment with respect to its status as an employer under the Louisiana Wage Payment Act.

304-JWD-EWD, 2018 U.S. Dist. LEXIS 129832, at *8 (M.D. La. July 12, 2018) ("The FLSA's definition of 'employer' contemplates the possibility of multiple employers.") As has long been noted by courts, the FLSA contains a broad definition of employ. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S. Ct. 1473, 1476 (1947) ("The definition of 'employ' is broad."); 29 C.F.R. 791.2(a) ("[I]f the facts establish that the employee is employed jointly by two or more employers . . . all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions[.]"). "Neither contractual recitations nor subjective intent can mandate the outcome in these [FLSA] cases." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976). Given the breadth of the FLSA's definition, there may be several simultaneous employers of any individual worker. *Falk v. Brennan*, 414 U.S. 190, 195 (1973) (deciding employer status under the FLSA's economic reality test despite "contracts between the owners and [Defendant]" specifying that workers were "employees of the project owners"). Defendants are effectively seeking to argue that because South Central was created to be the labelled "employer" the Court should accept that structure. But the economic realities test looks not at who was listed as an employer, but instead at whether as a matter of economic reality the workers were dependent on the other entity. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) ("To determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer."); *Spillers v. La. P H S, L.L.C.*, No. 3:21-00762, 2022 U.S. Dist. LEXIS 83798, at *10 (W.D. La. Mar. 4, 2022) ("[T]here can be more than one 'employer' or a 'joint employer,' under the FLSA."). Where an agreement between two corporations gives the one corporation control over the other corporation's employees, that structure is significant for determining FLSA liability. *Falk*, 414 U.S. at 192 &

10

n.4, 195 (ruling that it was "unquestionably correct" that management firm hired to provide "management services" was also liable as an employer based on the extent of their "managerial responsibilities"); *Tullous*, 579 F. Supp. at 820 (denying summary judgment for defendant ProSource in part because "[t]he Agreement between ProSource and Texas Aquaculture specifically permitted ProSource's involvement in the hiring, firing, and disciplining of the leased employees."). Sterling Sugars' failure to admit—on government forms or otherwise—that it was an employer of the Plaintiffs and other truck drivers within the meaning of the FLSA is not dispositive, nor even a factor in assessing its status as a joint employer. If whether an entity was named as an employer were dispositive there would be no joint employer case law, nor court decisions deciding whether an entity or individual met the definition of employer under the statute and was equally liable for the violations.

Defendants' brief also misapplies the FLSA factors used by the Fifth Circuit, fails to address that the touchstone of employer status is whether workers are "economically dependent" on the alleged joint employer, and fails to note at all that Sterling Sugars managed and controlled almost all aspects of South Central's operations, including the hiring, firing, supervision, payment, and recordkeeping of the Plaintiffs and other truck drivers. *See, e.g.*, ECF No. 120-1 at 4-16 (Pls.' Memo. in Supp. of Summ. J. on Employer Status of Sterling Sugars) (detailing Sterling Sugars' operation and overwhelming control of South Central). While Defendants mention economic reality, they contend that the "the key inquiry in determining joint-employment is whether an employment relationship existed between Plaintiffs and Sterling [Sugars.]" (ECF No. 118-24 at 12.) This is error as the core-inquiry is economic dependence. *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) ("For purposes of the FLSA, determination of employee status focuses on economic reality and economic dependence.");

11

*Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976) ("No one of these considerations can become the final determinant, nor can the[y] . . . submerge[] consideration of the dominant factor -- economic dependence."); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985) ("Employees are those who as a matter of economic reality are dependent upon the business to which they render service."). Defendants' brief lists factors considered within the Fifth Circuit to analyze economic dependence but then discusses only one factor, and fails to state the actual facts of the employment relationship when discussing that factor. South Central has no office, nor any payroll staff, and relies on Sterling Sugars' office, staff, computers, and funds to make and prepare payroll.[25] Despite these undisputed facts, Defendants' claim "Plaintiffs' pay checks were issued by South Central." (ECF No. 118-24 at 12.) Plaintiffs pay checks did list "South Central" as the payor—but the checks were prepared and issued by Defendant Sterling Sugars' staff at the Sterling Sugars' office using Sterling Sugars' computers and software, and paid from funds provided by Sterling Sugars that were deposited into a South Central bank account that was entirely managed and controlled by Sterling Sugars' employees.[26] The president of South Central, Ricky Gonsoulin, did not even know what bank South Central uses or how to access the accounts.[27] When the method of payment changed from checks to a debit payroll card system, that decision was made and implemented by Sterling Sugars' staff.[28] Additionally, it was Sterling Sugars employees who had the authority to set wage rates or decide whether overtime wages would be paid, and Sterling Sugars' CEO who decided what wage rates should be paid following an injunction related to

---

[25] ECF No. 119-2 (Pls.' SOF) ¶¶ 42, 59, 63-65, 77-78, 89, 130-135, 144-149.
[26] ECF No. 119-2 (Pls.' SOF) ¶¶ 42, 59, 63-65, 77-78, 89, 130-135, 144-149.
[27] ECF No. 119-2 (Pls.' SOF) ¶ 126.
[28] ECF No. 119-2 (Pls.' SOF) ¶¶ 91, 93.

wage rates for agricultural truck drivers.[29] As Plaintiffs set forth in their own motion regarding Sterling Sugars' status as an employer under the FLSA, the Plaintiffs and other truck drivers were entirely economically dependent on Sterling Sugars. (ECF No. 120-1 at 4-6) (Pls.' Memo. in Supp. of Summ. J. on Employer Status of Sterling Sugars).

Even if issuance of the paycheck were in Defendant Sterling Sugars' favor, "[n]o one factor is dispositive." *Tullous*, 579 F. Supp. 2d at 820. Yet, Defendants fail to mention the other joint employment factors which all show Sterling Sugars' had the power to hire and fire the South Central truck drivers, supervised and controlled their work schedules,[30] and maintained their employment records. Each of these factors support the finding that Sterling Sugars is an employer and none of these factors support a conclusion that Sterling Sugars was not an employer. ECF No. 120-1 at 7-14 (Pls.' Memo. in Supp. of Summ. J. on Employer Status of Sterling Sugars) (providing undisputed facts with respect to each of the four factors analyzed by the Fifth Circuit); *Tullous*, 579 F. Supp. at 820 (declining motion for summary judgment that entity was not an employer in part because "it is undisputed that ProSource maintained the employment records").

Defendants next argue that Sterling Sugars cannot be an employer on the breach of contract claims, repeating their contention that this is so because it "is not listed as an employer" on the job order submitted to obtain H-2A workers and because the alleged joint employer, South Central, is "a distinct legal entity[.]" (ECF No. 118-24 at 11.) The H-2A program use a

---

[29] ECF No. 119-2 (Pls.' SOF) ¶ 72-75 ("Q. Would – and whose decision was that to not change the wage rates? A. It was mine.").

[30] Citing to their own interrogatory responses, Defendants claim that Plaintiffs' supervisors were employees of South Central. (ECF No. 118-24 at 11 & n.58.) This statement of fact was controverted by multiple witnesses who described the extent to which Sterling Sugars' employees set the work schedules and locations of work for the truck drivers, set work rules, monitored compliance with work rules, reviewed camera footage with respect to the truck drivers' operation of their trucks, reprimanded truck drivers, and terminated truck drivers' employment. (ECF No. 119-2 (Pls.' SOF) ¶ 55-58, 97-102, 104-106.)

regulatory definition of employer that is not limited to the employer listed on the H-2A application as Defendants contend.[31] Instead, the H-2A program defines employer to include a "person … or other organization with legal rights and duties [] that … [h]as an employment relationship (such as the ability to hire, pay, fire, supervise or otherwise control the work of an employee) with respect to an H-2A worker … or … [i]s a person on whose behalf an Application for Temporary Employment Certification is filed[.]" 20 C.F.R. § 655.103 (defining "Employer").[32] As with the FLSA, the H-2A program contemplates multiple employers may meet the H-2A "employer" definition and be jointly liable. *See, e.g., Salazar-Calderon v. Presidio Valley Farmers' Assn.*, 765 F.2d 1334, 1346 (5th Cir. 1985) (labor contractor that petitioned in its name for H-2 guestworkers and individual growers who actually used H-2 workers' services were joint employers and therefore both responsible for violations of H-2 regulations); *Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 U.S. Dist. LEXIS 55003, at *15-16, 23-33 (W.D. Ark. May 20, 2011) (finding an entity and multiple individuals not listed on the H-2A clearance order to be "employers" who were liable for "breaches of the H-2A employment contracts as embodied in the relevant work clearance orders"); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No. 7:08-CV-32(HL), 2008 U.S. Dist. LEXIS 98064, at *15-*16 (M.D. Ga. Dec. 4, 2008) (H-2A contract adopts the definition of employer found in the regulations and a breach of contract suit may be maintained against an individual not listed on

---

[31] Oddly, Defendants claim "the critical question … is what entity made the final decisions regarding employment matters," ECF No. 118-24 at 13, but that is not a factor and the H-2A program contemplates joint employment such that two entities could be liable. 20 C.F.R. § 655.103 (defining "joint employment" as "[w]here two or more employers each has sufficient definitional indicia of being a joint employer"). In support, Defendants cite a case concerning discrimination towards a class of "Mexican Americans" at a chemical plant. *Trevino v. Celanese Corp.*, 701 F.2d 397, 400-01 (5th Cir. 1983) (describing claims of a "class of all Mexican-American workers similarly situated, [and] a continuing pattern and practice of discrimination by Celanese and ABI."); ECF No. 118-24 at 13 n.66 (citing *Trevino*). The case has no application here, as it does not concern contract claims, the H-2A program, or the H-2A program's definition of employer.

[32] Defendants' brief does not cite the applicable regulatory definition and instead argues that "South Central is the only employer whose name appears on their H-2A visas" when the applicable regulation makes clear this is not determinative. *Compare* ECF No. 118-24 at 4 *with* 20 C.F.R. § 655.103 (defining Employer).

the clearance order who fits the definition). As detailed in Plaintiffs' Motion for Summary Judgment on Employer Status, the undisputed facts show that Sterling Sugars meets the definition of an "employer" for purposes of the H-2A regulations and the employment contracts since it had the ability (and exercised that ability) to "hire, pay , fire, supervise, or otherwise control the work" of the Plaintiffs and other truck drivers. ECF No. 120-1 at 16-18 (Pls.' Memo. in Supp. of Summ. J. on Employer Status of Sterling Sugars). Defendants' claim that the entity printed on the H-2A forms is the sole entity liable as an employer should be rejected.

### V.    Defendants are not Entitled to Summary Judgment on Plaintiffs' Breach of Employment Contract Claims.

Defendants claim that "the contracts at issue were performed according to their terms," ECF No. 118-24 at 15, and so as long as Defendants provided the wage rate listed in the employment contracts—even if that wage rate was based on false claims that the work was "agricultural" when it wasn't—then Defendants have "complied" with the contract and summary judgment should issue. (ECF No. 118-24 at 14-16.)[33] Plaintiffs dispute that paying an unlawful wage is "legally binding," as Defendants claim. (ECF No. 118-24 at 14.) Illegal contract terms require substitution with the legally-required terms, not enforcement as written, as Defendants contend. When an employer pays an unlawful wage rate, the Court's duty under federal employment statutes is to enforce the legally-mandated wage rate owed. *Powell v. United States Cartridge Co.*, 339 U.S. 497, 519 (1950) (requiring application of "prevailing minimum wages" from other federal statutes in determining overtime wages owed). "[I]f there are legal or strong public policy considerations justifying the refusal to honor the contract as written, then the

---

[33] It appears that Defendants either seek the claims dismissal or contend there are no facts upon which Plaintiffs can recover on these claims as Defendants repeatedly request that the "claims … be dismissed" rather than that summary judgment issue in Defendants' favor. (ECF No. 118-24 at 15) ("claims for breach of contract must be dismissed"); (ECF No. 118-24 at 18) ("claims for breach of contract … must be dismissed").

contractual stipulations are disregarded." *Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 908 (W.D. La. 2006). Where an employer pays a wage rate less than that required for the work actually performed federal courts have ordered the higher wages to be paid. *Mencia v. Allred*, 808 F.3d 463 (10th Cir. 2015); *see also Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 646 (7th Cir. 2022) (affirming claims for worker "misclassified as an agricultural worker"); *see also* 29 C.F.R. § 501.20(d)(vii) (employing H-2A workers in activities not listed in the job order is considered a violation of the H-2A program). In *Mencia* the Tenth Circuit concluded that an H-2A worker was not primarily employed as a sheepherder, and instead performing duties properly categorized as those of a ranch hand, which rendered the contractual wage term for sheepherding work "illegal and the wage term of the contract . . . invalid." *Mencia*, 808 F.3d at 472. The employer was obligated to compensate the employee at the rate for the job actually performed rather than the rate listed in the clearance order. *Id.* at 473.

Here, Defendants told the government that the truck driving was "agricultural" and that South Central was engaged in "sugarcane farming, field production" when neither was true and the work was really hauling sugarcane for a sugar mill.[34,35] Defendants did not advise the government about any of the numerous management activities that Sterling Sugars employees performed for it, did not advise the government that South Central was funded by Sterling Sugars, and did not advise the government that South Central did not engage in any farming activities.[36] Had the Defendants described the work accurately the required hourly wage would

---

[34] ECF No. 119-2 (Pls.' SOF) ¶¶ 157-160.

[35] Defendants claim in their brief that "the U.S. Department of Labor determines the job classification that applies to Temporary Employment Certification," ECF No. 118-24 at 8, but this representation contradicts Defendants' own testimony that they decided whether to apply for H-2A workers or H-2B workers, and that it was their decision to characterize the work as sugarcane farming instead of sugarcane manufacturing. (ECF No. 119-2 (Pls.' SOF) ¶¶ 25-27, 157, 160, 167-168.)

[36] ECF No. 119-2 (Pls.' SOF) ¶¶ 156, 160.

16

have been higher in the 2022 and 2025 seasons.[37] Defendants describe this claim as "seek[ing] to void those contracts," ECF No. 118-24 at 3, but Plaintiffs merely seek to reform the contracts so that the Court does not enforce an illegal contract term. *Mencia*, 808 F.3d at 471-72 (reversing district court and requiring higher pay for work performed because "The [Defendants], not [the Plaintiff], were in the business of importing guest labor under the H-2A program"). Any argument by the Defendants that the Plaintiffs and other truck drivers accepted contracts with an illegal wage rate term and are therefore bound by that should also be rejected. *See De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1318-19 (N.D. Ga. 2008) ("[T]he Court rejects Defendants' suggestion that they should essentially be able to enter into a contract that would allow them to violate the law, so long as the other contracting parties agree.").

Defendants also contend that this Court cannot review the wage rates because "a reviewing Court should abstain from upsetting the agency's determination." (ECF 118-24 at 16.) This argument, which attempts to claim some type of collateral estoppel effect of an administrative agency's determination to certify Defendants' clearance orders, fails both because there was no prior adjudication, nor agency determination other than an acceptance of the application, and even if there was a determination it should receive no deference where the agency was mislead. There was no prior opportunity to be heard by Plaintiffs or judicial determination by the Department of Labor. There was only a certification based on accepting and processing the forms completed by Defendants which contained the false representations made by the Defendants.[38] There was no agency decision issued, nor is there any final agency action

---

[37] As Plaintiffs set forth in their Motion for Partial Summary Judgment, the wage rates that should have been paid in 2022 and 2025 for the type of *non-agricultural* truck driving the Plaintiffs and other truck drivers performed was $18.95 per hour and $19.99 per hour, respectively. (ECF No. 119-1 at 23) (Pls.' Mem. in Supp. of Mot. for Part. Summ J.).

[38] This Court has previously ruled that challenges to wage rates must be pursued pursuant to "20 C.F.R. § 655.181" because this Court found that regulation "exclusively governs the procedure for revoking a job clearance order when an employer is accused of obtaining temporary agricultural certification by means of 'fraud or misrepresentation in

on a disputed claim—the agency was never informed that South Central was not a farmer, that Sterling Sugars operated South Central, or that there were no crops within South Central's control—the agency simply accepted South Central's sworn statements that it was engaged in sugarcane farming. Accordingly. Defendants' application for foreign workers was processed based on the representations Defendants made in the application subject to a review process that occurred on an expedited basis.[39] 20 C.F.R. § 655.141(a) (review completed "within 7 calendar days of … receipt"). The application review is simply a review for completeness and does not evaluate the employer's representations. 20 C.F.R. § 655.140(a) (review "for compliance with all applicable program requirements"); 20 C.F.R. § 655.141(a) (notice provided if the application "is complete, contains errors or inaccuracies"); *see also State ex rel. Cisneros v. Alco Harvest, Inc*., 97 Cal. App. 5th 456, 460 (2023) (noting "DOL reviews the Application together with the Job Order and notifies the applicant of any deficiencies"). This is akin to the IRS processing a tax return and issuing a refund. That acceptance alone is also not a quasi-judicial finding that everything on the tax return was accurate and does not bind the IRS or third parties nor preclude recourse for false statements or entries. *See, e.g., Tonningsen v. Commissioner*, 61 F.2d 199, 200 (9th Cir. 1932) ("the Commissioner is not precluded by a previous determination from a re-

---

the application process[,]' as Plaintiffs allege in this lawsuit. The plain language of this regulation reflects that such authority is reserved to the Office of Foreign Labor Certification Administrator." *Barron*, 2025 U.S. Dist. LEXIS 178401, at *32. That regulation has no application here because the regulatory de-certification process is limited to actions by the Department of Labor and cannot be brought by workers. 20 C.F.R. § 655.181(b) (describing procedure that "the O[ffice of] F[oreign] L[abor] C[ertification] Administrator" may "make[] a determination to revoke" but providing no means by which an individual laborer could do so). Moreover, even the U.S. Department of Labor's enforcement arm, the Wage and Hour Division, does not revoke certification under 655.181, but rather requires employers to pay the wages owed for the work performed. *See, e.g.*, *Wage and Hour Division v. Global Horizons, Inc.*, 2010-TAE-00002 at 13 (DOL OALJ Dec. 13, 2011) (ordering non-agricultural wages be paid to H-2A workers because "[a]gricultural work doesn't require the skills necessary for the work of cooks, mechanics, or drivers; that's why those jobs pay more").

[39] There was no agency decision-making in processing the H-2A petition of the Defendants. "[G]overnment agencies which issue orders subject to appeal under the APA typically include some explanation--however short--that will provide a record on appeal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (2001). Nothing of the sort exists here because there is no agency decision to which deference is owed.

examination and redetermination of tax liability"). Moreover, the H-2A regulations specifically contemplate that findings of fraud or misrepresentation may occur outside of the DOL administrative process through the Department's Wage and Hour Division (investigatory arm of Department of Labor), through a Department of Homeland Security investigation, or through "a court decision[.]" 20 C.F.R. § 655.184(b) (noting all of these also create "cause to revoke the certification"); *see also De Leon-Granados*, 581 F. Supp. 2d at 1318 ("[T]he fact that the Department of Labor did not reject Defendants' applications for labor certification cannot be understood to mean that Defendants were in compliance with labor laws.").

Here, Plaintiffs contend that Defendants were not actually eligible to be H-2A employers with respect to the sugarcane hauling work because they claimed, falsely, to be engaged in "sugarcane farming, field production" even though they performed no farming activities, had no crops, and the truck driving work was therefore not agricultural within the meaning of the H-2A program.[40] Both the employer and their agent "certify" to the Department of Labor that the information contained within the application is correct and truthful. That certification is "meaningful," and it is Defendants' deception about their work which Plaintiffs contend led to certification of improper wage rates. *United States v. Bussey*, No. 5:21-cr-9, 2025 U.S. Dist. Lexis 94293, at *32 (S.D. Ga. Feb. 10, 2025) ("The threat of perjury penalties highlights the importance of the certification for the employer . . . The agent affirmatively certifies that the information contained in the application, without limitation, is true and correct to the best of his knowledge. That certification is meaningful."). Where the application is approved, no notice of decision ever issues from the Department of Labor and there are no hearings or further review of

---

[40] ECF No. 119-2 (Pls.' SOF) ¶¶ 158-159 (South Central does not engage in farming and does not have any ownership interest in any farms owned by its members); ECF No. 119-2 (Pls.' SOF) ¶ 166 (Sterling Sugars does not engage in farming).

the employer's representations made in the job order. *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC, 2022 U.S. Dist. LEXIS 99284, at \*13 (W.D. Tex. June 3, 2022) (H-2A application was approved so there "was no cause for Plaintiff to seek review of the applications by an ALJ prior to commencing his employment."). Defendants' argument that the Court should enforce an unlawful wage rate because the Department of Labor approved their H-2A applications should be rejected. Summary judgment in favor of Defendants is not appropriate with respect to the wage rate issue.

Defendants next contend that their contractual promise to comply with federal employment laws cannot be enforced because "any alleged breach of these terms inherently falls within the scope of Plaintiffs' FLSA claims." (ECF No. 118-24 at 18.) However, promises to comply with FLSA terms or contractual promises to comply with state law are contractually enforceable. *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) (reversing grant of summary judgment on contractual wage claim because "[i]f a violation of the FLSA has occurred, then a violation of the contract, which incorporates the FLSA, will have occurred as well. . . . Of course, the plaintiffs may not recover twice for the same violation; the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done them.")[41] These contractual provisions allow for recovery on the contractual claims which have different statutes of limitation and different procedural requirements. *Hasken v. City of Louisville*, 173 F. Supp. 2d 654, 664 (W.D. Ky. 2001) (declining to dismiss FLSA contractual claim because "[b]y entering into a written contract, the parties supplemented the requirements of the F.L.S.A. Therefore, the plaintiffs may properly bring suit . . . for the alleged breach of that

---

[41] Defendants cite an unpublished magistrate judge decision from the Eleventh Circuit but that decision is error as it failed to follow the Eleventh Circuit's instructions that contractual promises to pay federal wages are enforceable. Compare *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) *with Salas-Mateo v. Ochoa,* No. 03-14357-CIV-LYNCH, 2004 U.S. Dist. LEXIS 16454, at \*11 (S.D. Fla. Mar. 26, 2004).

contract."); *Albee v. Vill. of Bartlett*, 861 F. Supp. 680, 691 n.23 (N.D. Ill. 1994) (finding the contractually promised FLSA wage's "greater protection can just as well take the form of a promise to pay for a longer time period (that is, the limitations period for a written contract rather than FLSA's shorter limitations period)"). Defendants agreed in the employment contracts to comply with all federal, state, and local laws related to employment, which includes a requirement to pay overtime wages to non-exempt workers. For the reasons stated above, the truck drivers were not exempt agricultural workers and are owed overtime wages. As such, the Defendants also breached the employment contracts of the Plaintiffs and other truck drivers in this regard. Summary judgment for the Defendants on this issue should therefore be denied.

Finally, Defendants' claim that "[t]he contracts do not require reimbursement to Plaintiffs for pre-employment expenses incurred," ECF No. 118-24 at 17, and incorrectly claim that Defendants were only required to provide "transportation between provided housing and the worksite" and "reimbursement for daily meals." (ECF No. 118-24 at 16-17.) Defendants' brief simply misstates the contractual requirements they were legally-required to provide. Regulations governing the H-2A program, which Defendants contractually promised to follow, state that "[t]he wage requirements … will not be met … where the employee fails to receive such amounts free and clear because the employee kicks back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee[.]" 20 C.F.R. § 655.122(p)(2).[42] This regulatory section for which compliance was contractually promised is express regarding expenses.[43] *Frank's Nursery, LLC v. Walsh*, No. H-

---

[42] Defendants are aware of these regulations and their application, as they cite the subsequent regulation, ECF No. 118-24 at 17, but do not accurately list their reimbursement obligations.

[43] Defendants' brief claims that this is "the same allegation as the FLSA claim," ECF No. 118-24 at 17, which is mistaken as Defendants separately were required to reimburse expenses due to these contractually included regulatory terms. Moreover, the FLSA only requires reimbursement up to the level of the minimum wage of $7.25 per hour, whereas the H-2A regulations require reimbursement that does not lower employees' wages below the legally required wage rate for the work performed which, in this case, Plaintiffs argue was a non-agricultural truck

21-3485, 2022 U.S. Dist. LEXIS 124608, at *21 (S.D. Tex. July 14, 2022) ("The H-2A implementing regulations prohibit employers from making undisclosed or unauthorized deductions that reduce H-2A employees' pay below the minimum amounts required"). As already discussed, Defendants required the Plaintiffs and other truck drivers to pay for licensing, medical certificates, and telephone expenses which reduced their wages. Defendant South Central's corporate representative testified that it was South Central's policy that licenses and related expenses *should have* been reimbursed.[44] Similarly, Defendant South Central's corporate representative testified that it was South Central's policy that medical examination expenses for drivers should have been reimbursed.[45] Neither Sterling Sugars, nor South Central, reimbursed these amounts and neither has any records to claim it paid any such reimbursements.[46] Finally, Defendant South Central's corporate representative also testified that while it did reimburse some employees' telephone expenses, she did not know of any policy regarding reimbursing truck drivers for their cell phone expenses.[47] The failure to reimburse these expenses was discussed above and summary judgment should not enter in Defendants' favor as the expenses plainly occurred and Plaintiffs were asked and testified to the amounts.

### V.    Defendants are not Entitled to Summary Judgment on Plaintiffs' LWPA Claims

Plaintiffs' and the other truck drivers' LWPA claim is based on Defendants' failure to pay the correct wage rate for their non-agricultural truck driving work and Defendants' failure to

---

driving wage rate.

[44] Gary/South Central Dep. at 333:25-334:4 ("Q. And is it South Central's policy that workers --that truck drivers should be reimbursed for those – any expenses associated with obtaining their driver's licenses to haul sugarcane? A. Yes.").

[45] Gary/South Central Dep. at 334:12-16 ("Q. (BY MR. KNOEPP) What about -- what is South Central's policy with respect to expenses that truck drivers may incur related to medical examinations associated with obtaining their commercial driver's licenses?  A. That they should be reimbursed.").

[46] Gary/South Central Dep. at 337:4-8.

[47] Gary/South Central Dep. at 340:1-9.

reimburse them for all of their required expenses, as described above and in Plaintiffs' own Motion for Summary Judgment on these issues. (ECF No. 119-01.) Because these wage payments were not made correctly and were still owed 15 days after the seasonal conclusion of Plaintiffs' and the other class members' employment, Plaintiffs and other class members are entitled to the damages provided for under LWPA. *Hanks v. La. Cos.*, 205 So. 3d 1048, 1057 (La. App. 2016); La. Rev. Stat. Ann. § 23:632.

## VI.    CONCLUSION

Defendants' motion does not show undisputed material factual issues that allow for summary decisions in Defendants' favor and, accordingly, Defendants' motion for summary judgment should be denied. Defendant South Central cannot show that it's an agricultural employer entitled to an overtime exemption because it is not a farmer and the truck driving work at issue occurred on public roads, not a farm. Defendant Sterling Sugars cannot show that the Plaintiffs and other truck were not economically dependent on Sterling Sugars such that Sterling Sugars can avoid liability under the FLSA as an employer. Similarly, Defendant Sterling Sugars cannot show that it is not an employer under the terms of the H-2A contract as it fails to even cite the applicable regulatory language and erroneously claims that employer is determined by who is listed on the H-2A form. Finally, Plaintiffs' FLSA reimbursement and contractual claims are valid and Defendants' claim that judgment must be entered for them is based on a failure to discuss the existing testimony and failure to cite applicable law. Similarly, because wages were owed and unpaid after Plaintiffs' employment terminated, summary judgment for Defendants would be improper on Plaintiffs' Louisiana Wage Payment Act claims. Defendants' motion for summary judgment should be denied in its entirety.

Respectfully submitted,

**/s/ James M. Knoepp**

23

James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email: jim@dawsonmorton.com

**/s/ Dawson Morton**

Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
Email: dawson@dawsonmorton.com

**/s/ Daniel Davis**

Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email: dan@estesdavislaw.com

24