EXCERPTS FROM DEPOSITION 30(B)(6) DEPOSITION OF SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. BY AND THROUGH ASHLEE GARY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

_____
                                  )
FELIPE DE JESUS AVILA-SOTO,       )
et al.,                           )   CASE NO. 6:24-cv-01392
                                  )
          Plaintiffs,             )   JUDGE ROBERT R. SUMMERHAYS
                                  )
v.                                )   MAGISTRATE JUDGE CAROL B.
                                  )   WHITEHURST
SOUTH CENTRAL SUGAR CANE          )
GROWERS' ASSOCIATION, INC.,       )
et al.                            )
                                  )
          Defendants.             )
_____)


CONTINUED DEPOSITION OF DEFENDANT SOUTH CENTRAL
SUGAR CANE GROWERS' ASSOCIATION, INC. (ASHLEE GARY)
APPEARING REMOTELY FROM ST. MARY PARISH, LOUISIANA

(Vol. III - Page 232 to 479)

Taken on Behalf of the Plaintiffs


DEPONENT:  Ashlee Gary

DATE TAKEN:  April 13, 2026

TIME:  9:11 a.m. CDT to 5:22 p.m. CDT


Stenographically Reported by:
Jennifer Lynn Harris, RPR
Registered Professional Reporter
(Appearing Remotely from Volusia County, Florida)

Page 329

A.   I believe that Great Labor, who is the recruiter -- that all of those reimbursements are handled through his office.  He would then submit an invoice to South Central for our reimbursement to him.

Q.   Do you know whether Great Labor reimbursed truck drivers for the expenses they incurred to obtain driver's licenses to drive the hauling trucks?

A.   I do not have personal knowledge of that, no.

Q.   Did you attempt to find out that information at one point?

A.   We engaged Great Labor and we received an invoice for those -- those services.  So we believed that those fees -- fees had been reimbursed.

Q.   The fees related to driver's licenses?

A.   Yes.

Q.   And you believe that they were.  What did you learn?  Did you learn that they were or they weren't?

MR. DAVIS:  Objection; foundation.

A.   I -- I don't know that I have learned.

Q.   (BY MR. KNOEPP) You don't know whether Great Labor reimbursed truck drivers for any costs associated with their driver's licenses?

A.   I have not asked those --

MR. DAVIS:  Objection.

A.   -- questions.

Page 330

MR. DAVIS:  Asked and answered.

Q.   (BY MR. KNOEPP) I'm sorry.  I didn't -- I didn't hear your answer.  There was, like, talk -- you were talking, I think, while Mr. Davis was stating his objection.

A.   I said, "No, I have not asked those questions."

Q.   I'm showing you go what's being marked as Exhibit 61.  It starts with Bates No. 90270.  Do you see that on your screen?

(Exhibit No. 61 subsequently marked.)

A.   Sure.  Okay.

Q.   (BY MR. KNOEPP) Do you -- this is an email that you sent on April of 2025; is that right?

A.   Yes.

Q.   And you sent this to several -- couple of people at Sterling Sugars and a couple of people at -- or in -- and your boss at M.A. Patout, right?

A.   Okay.  Yes, I see that.

Q.   And you were asking them for 2022 to 2024, if you -- if any reimbursements were paid by Great Labor to the H-2A workers for their licenses, right?

A.   Yes.

Q.   And so you -- you did make some inquiries about whether this happened, right?

A.   Oh, yes.  I'm sorry.  I made inquiries to my people.  I guess I thought you meant did I ask Great Labor.

Page 331

I'm sorry.  Yes.

Q.   But you also looked through the Great Labor invoices, right, like you said in your email?

A.   The ones that I had received, yes.

Q.   And you didn't see anything in those invoices related to the reimbursement of licenses, right?

A.   No.

MR. DAVIS:  Objection; mischaracterization of the document which speaks for itself.

Q.   (BY MR. KNOEPP) I'm sorry.  You can go ahead and answer.

A.   The email says that I didn't see those specific items.  It may have been labeled but as something else.  I didn't -- I didn't know the wording that I was looking for in those -- in there.  I -- I was looking for specific language.

I believe this email came from a request for documents in this case.  And in that list, I think, specifically, whoever presented that list to me were asked for those specific words.  And so, when I reviewed the invoices, I was looking for those specific words.

So that's why I said I did not see those specific items.  It may have been in the invoices but not labeled specifically "licenses" or "border crossing fees."  It may have been labeled something else.

Page 332

Q.   And so you asked people at Sterling Sugars to look into this for you, right?

A.   Yes.  I believe that's what the email is instructing.

Q.   And did anybody get back to you with an answer to your question?

A.   I'm sure they did but I don't remember.  There was a lot of information back and forth.

Q.   And --

A.   I see the -- I see the response right here says, "We'll get Michelle working on this."

Q.   That's referring to Michelle Prados?

A.   Yes, the accounts payable clerk.

Q.   Right.  At Sterling Sugars?

A.   Yes.

Q.   And so, in preparing for today's deposition, did you -- have you made any inquiries about whether there's any evidence that South Central or its agents reimbursed truck drivers for expenses associated with their driver's licenses?

A.   I don't think I understand what you're asking me.

Q.   Okay.  Thanks for letting me know.

Have you in -- have you found any evidence that South Central reimbursed truck drivers for expenses associated with their licenses to drive -- to haul

ASHLEE GARY - VOL. III
APRIL 13, 2026

JOB NO. 2592817

Page 333

sugarcane?

A.   I don't remember.

Q.   Well --

A.   I mean, I did hear but I don't remember -- I mean, this was -- the date of this email says April of 2025.  I -- I don't remember.  I'm sure I followed up on it, but I don't -- I don't remember exactly.

Q.   Did you review any information, prior to the deposition, about South Central reimbursing truck drivers for expenses associated with their licenses?

A.   I would have reviewed any invoices that Great Labor would have provided to us for payment.

Q.   Anything else other than that?

A.   Not -- no, I don't think so.

Q.   Was it South Central's policy to rely on Great Labor to reimburse workers for any expenses that they may have paid prior to coming to work at South Central?

A.   Yes.

MR. DAVIS:  Object to the form.

Q.   (BY MR. KNOEPP) If workers were not reimbursed by Great Labor for the costs of their driver's licenses, is that something that South Central would do after the workers arrived to Louisiana?

A.   Yes.

Q.   And is it South Central's policy that workers --

Page 334

that truck drivers should be reimbursed for those -- any expenses associated with obtaining their driver's licenses to haul sugarcane?

A.   Yes.

Q.   And --

MR. DAVIS:  Object to form.

Q.   (BY MR. KNOEPP) -- if that didn't -- and if that didn't happen, is it South Central's position that workers should be reimbursed for those expenses?

MR. DAVIS:  Object to form.

A.   Yes.  Yes.

Q.   (BY MR. KNOEPP) What about -- what is South Central's policy with respect to expenses that truck drivers may incur related to medical examinations associated with obtaining their commercial driver's licenses?

A.   That they should be reimbursed.

Q.   And if the truck drivers were not reimbursed for expenses associated with medical examinations to obtain their commercial driver's licenses, is it South Central's position that they should be reimbursed?

A.   Yes.

MR. DAVIS:  Object to form.

Q.   (BY MR. KNOEPP) I'm sorry.  Was that a yes?

A.   Yes.

Q.   Do you know whether the truck drivers who worked

Page 335

at South Central were reimbursed for expenses associated with medical examinations to obtain their commercial driver's licenses?

MR. DAVIS:  Object to form.

A.   I'm sorry.  Can you ask that again?

MR. KNOEPP:  Sure.  Ms. Harris, would you mind reading that one back, please?  I'm not sure I can remember it.

THE REPORTER:  "QUESTION: Do you know whether the truck drivers who worked at South Central were reimbursed for expenses associated with medical examinations to obtain their commercial driver's licenses?"

A.   We would have been invoiced from Great Labor for those expenses that we would have paid with the understanding that Great Labor would be reimbursing the workers for those expenses.

Q.   Was it South Central's expectation that Great Labor would reimburse the truck drivers who came on H-2A visas for the cost of medical exams to obtain their commercial driver's licenses?

A.   Yes.

MR. DAVIS:  Objection to form.

Q.   (BY MR. KNOEPP) I'm sorry, Ms. Gary.  I think your answer came across at the same time as Mr. Davis' objection.

Page 336

A.   I'm sorry.  Yes.

Q.   And did South Central do anything to check with Great Labor to see whether or not expenses related to the medical exams were reimbursed to the H-2A truck drivers?

MR. DAVIS:  Object to form.

A.   To my knowledge, no.  I mean, we're required -- we were -- we asked Great Labor to take care of that as our -- as our agent.

Q.   (BY MR. KNOEPP) Did you ask -- when you say you asked Great Labor to take care of that as an -- what do you mean by "we asked"?  Who specifically did that?

A.   I believe Jaime Robison, who is the general manager, communicates with Great Labor.

Q.   And you're understanding that Mr. Robison would have communicated with Great Labor that expenses related to medical examinations and driver's licenses should be reimbursed?

MR. DAVIS:  Objection to the characterization; misstates the testimony.

A.   I'm sorry.  What do I do with that?  Do I answer that?

MR. DAVIS:  Oh, yes, ma'am.

Q.   (BY MR. KNOEPP) Yes.

A.   Oh, I'm sorry.  Yes.

Q.   And Mr. Robison, you mentioned he's the general

ASHLEE GARY - VOL. III
APRIL 13, 2026

JOB NO. 2592817

Page 337

manager.  He -- he's an employee of Sterling Sugars; is that right?

A.    Yes, he is.

Q.    Did South Central or any of the individuals at Sterling Sugars keep a record of any reim -- of any reimbursements that were paid to the H-2A truck drivers for their medical exams or for their driver's licenses?

A.    Not to my knowledge.

Q.    Did South Central reimburse the H-2A truck drivers for any other expenses that they may have incurred as part of their work at South Central?

A.    Yes.

MR. DAVIS:  Objection.

Q.    (BY MR. KNOEPP) What expenses were reimbursed to the workers by South Central?

A.    If -- during -- during their entire employment or prior to their employment?

Q.    I'm referring to any reimbursements.

A.    If, while they're here, for instance, they may need to see a doctor -- a local doctor for an injury, an earache, anything like that, they would be taken to the clinic to see the doctor, and then we would, you know, take care of that -- that bill.

Q.    Any other expenses that workers would be reimbursed for by South Central?

Page 338

MR. DAVIS:  Object to form.

A.    I believe -- I believe they may be reimbursed for -- for telephones.

Q.    (BY MR. KNOEPP) What kind of telephones?

A.    Some -- some of the workers.  The -- the agricultural workers that we call field operators or supervisors of a group, they would be reimbursed for their phone usage to communicate.

Q.    To communicate with -- with whom?

A.    With dispatch.

Q.    So that -- you're referring to there are some people who are part of the harvesting work that South Central does who have phones that -- cell phones that get reimbursed?

A.    It is possible, yes.  I -- not -- it is possible, yes.

Q.    You're not sure?

A.    I'm not sure.  But that would be the only other expense that I could think of.

Q.    And that's so that they could communicate with dispatch, you said?

A.    Yes, because they're out in the field and they don't come back to the mill on a daily basis.

Q.    What about any cell phone that truck drivers purchase in order to have a working mobile phone number in

Page 339

Louisiana?  Does South Central have a policy with respect to reimbursement of those expenses?

MR. DAVIS:  Objection; assumes facts not in.

A.    We have a lot of policies.  I don't know that I'm specific on that policy.  I know that there are radios in the trucks for them to communicate with dispatch.  I -- I don't know that I could testify or confirm a cell phone policy on reimbursement.

Q.    (BY MR. KNOEPP) Have you ever -- in your role as somebody who oversees some of the accounting operations of South Central, have you ever seen any documents showing reimbursements being made to truck drivers for cell phone purchases?

A.    Not specifically.  I have seen checks writ -- I have seen records in the general ledger for reimbursement, but I have not pulled those specific records to see what they were for.

Q.    They might have been for the cell phones that you were mentioning about -- of the field supervisors to communicate with dispatch?

A.    Yeah, they may have.

MR. DAVIS:  Object -- objection; vague.

Q.    (BY MR. KNOEPP) And --

MR. DAVIS:  Speculative should have been the appropriate basis.

Page 340

Q.    (BY MR. KNOEPP) Just to confirm:  You don't know what South Central's policy is with respect to cell phone reimbursement for truck drivers; is that right?

A.    No, I do not.

MR. DAVIS:  Object to form.

Q.    (BY MR. KNOEPP) What about -- do you know if South Central has a policy with respect to reimbursing truck drivers for any monthly cell phone service charges?

A.    I do not know about that.

Q.    Have you ever seen any invoices in the accounting system or any entries in the accounting system related to payment of cell phone service monthly charges for truck drivers?

A.    No, I don't remember.  I -- I'm sure I've --

MR. DAVIS:  Counsel --

A.    -- seen records for reimbursement.

MR. DAVIS:  Counsel --

MR. KNOEPP:  Yeah, let's go -- let's go off the record.  Take a break.

THE REPORTER:  We're off the record.

(Recess taken from 12:18 p.m. to 12:51 p.m.)

THE REPORTER:  We're back on the record.

Q.    (BY MR. KNOEPP) All right, Ms. Gary.  We're back on the record after a lunch break.  Do you understand you're still under oath?