UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| FELIPE DE JESUS AVILA-SOTO, ET AL. | CIVIL ACTION NO.  6:24-CV-01392 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., ET AL. | MAGISTRATE JUDGE CAROL B. WHITEHURST |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, South Central Sugar Cane Growers' Association, Inc. ("South Central") and Sterling Sugars, LLC ("Sterling") (collectively, "Defendants"), respectfully submit this reply memorandum in support of their motion for summary judgment.

**I.    Plaintiffs' position about the "agricultural exemption" is wrong.**

Whether South Central meets regulatory provisions to qualify as an employer engaged in "agriculture" is controlled by 20 C.F.R. § 655.131; 29 C.F.R. § 780.103; 29 C.F.R. § 780.104; 20 C.F.R. § 655.103(b); and 29 C.F.R. § 31.3121(g)-1(e)(3). Distilled to the essence, Plaintiffs' argument is that a 20 C.F.R. § 103(b) "agricultural association" cannot qualify for an agricultural exemption because of its organizational status.[1] This premise fails as a matter of regulatory law.

29 C.F.R. § 780.130 is clear: the term "farmer" may include "*an association*, a partnership, or a corporation which engages in actual farming operations[.]"[2] As a matter of law, such "an association" is the "operator of a farm," or "an owner, tenant, or other person, in possession of a farm and engaged in the operation of such farm."[3] Inasmuch as Plaintiffs do not legitimately

---

[1] South Central's status as an "agricultural association" is not legitimately disputed.
[2] 29 C.F.R. § 780.130 (emphasis added).
[3] *See* 29 C.F.R. § 780.130, 29 CFR § 31.3121(g)-1(e)(3).

dispute South Central's regulatory status as an "agricultural employer" pursuant to 20 C.F.R. § 655.103, it follows that South Central has met its burden of proving its duly authorized status as a means of definitively establishing the affirmative defense.

The authorities Plaintiffs cite largely relate to *cooperative* associations under 29 C.F.R. § 780.133. The record shows that South Central is not a cooperative. The record undisputedly shows that South Central is an agricultural association pursuant to 20 C.F.R. § 655.103.[4] The law (i.e. the INA, the FLSA, and the IRC) thus concludes that South Central is an agricultural employer. As a matter of regulatory and statutory law, Plaintiffs were thus employed by an "agricultural employer" and engaged in "agricultural labor" or "services." The agricultural exemption of the FLSA applies to South Central for these reasons.

The 1973 and 1974 decisions cited by Defendants were not overruled by *Bayside Enters. v. NLRB*, 429 U.S. 298, 303 (1977), as Plaintiffs claim in their opposition. According to *Bayside Enters.*, "hauling may, however, be secondary farming if it is work performed by a farmer or on a farm as an incident to or in conjunction with such farming operations."[5] Defendants' reliance on those precedent cases, in this context, was appropriate for purposes of showing that hauling may be "secondary farming."[6]

Plaintiffs have failed to assert any genuine dispute of material fact to preclude judgment in South Central's favor. The material facts show that Plaintiffs were engaged in agriculture as a matter of law inasmuch as they admit they only worked driving sugar cane according to the terms

---

[4] An "agricultural association" is "any nonprofit *or* cooperative association of farmers, growers, or ranchers . . . incorporated or qualified under applicable State law, that recruits, solicits, hires, employs, furnishes, houses or transports any worker" subject to the INA. 20 C.F.R. § 655.103(c). Plaintiffs do not dispute South Central's non-profit status.

[5] 429 U.S. at 301.

[6] *See Abbott Farms, Inc. v. N.L.R.B.*, 487 F.2d 904, 904-05 (5th Cir. 1973); *McElrath Poultry Co. v. N.L.R.B.*, 494 F.2d 518, 518 n.1 (5th Cir. 1974)

of their visas.[7] Pursuant to 29 C.F.R. § 780.103, which is the Department of Labor's "official interpretive bulletin . . . with respect to the meaning and application of sections 3(f), 13(a)(6), and 13(b)(12) [of the FLSA]," the term "Agriculture" includes the:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., and any practices . . . performed by a farmer or on a farm *as an incident to or in conjunction with* such farming operations, including preparation for market, *delivery to storage or to market* or to carriers for transportation to market.[8]

20 C.F.R. § 655.131 allows "joint employers" to hire employees that deliver their commodity to market. Indeed, 29 C.F.R. § 780.103 and 29 C.F.R. § 780.104 explain that farmers–like the member growers here–engage in "agriculture" when delivering commodity to market. Plaintiffs concede engaging only in driving work.[9] Albeit outdated in terminology, 29 C.F.R. § 780.118 provides that "[e]mployees engaged on a plantation in gathering sugarcane as soon as it has been cut, loading it, and transporting the cane to a concentration point" are engaged in a "harvesting" activity, which includes off-the-farm transportation when "performed by the farmer as an incident to his farming operations." None of these facts are legitimately disputed by Plaintiffs.

The issue is thus proper for this Court to determine whether the agricultural exemption applies in this case. Defendants submit, for the reasons set forth, that summary judgment is proper as to this issue and claim.

## II.     Plaintiffs failed to produce evidence to establish an FLSA reimbursement claim.

As for the named plaintiffs, there is no issue of disputed fact as to whether Plaintiffs were provided reimbursement because Plaintiffs have not produced evidence of those expenses. Plaintiff

---

[7] *See* R. Doc. 133-4, Deposition of Felipe de Jesus Avila-Soto, at 111:11-12 (testifying Plaintiffs' alleged falsification claim is not supported by appropriate evidence).
[8] 29 U.S.C. § 203(f); 29 C.F.R. § 780.103 (emphasis added).
[9] R. Doc. 133-4, Deposition of Felipe de Jesus Avila-Soto, at 73:12-15.

PD.62387797.1

Suarez-Palafox admitted that he had no receipts for obtaining or renewing his passport, or obtaining his license or visa photographs.[10] Plaintiff Avila-Soto has no receipts for the cell phone he alleges entitles him to reimbursement.[11] They have not and cannot show that they are entitled to any specific amount owed to them, nor have they provided any evidence on opposition to dispute that no such receipts exist with respect to those plaintiffs. Thus, Plaintiffs have not made a showing of any out-of-pocket expenditure. It follows that summary judgment is appropriate for adjudicating this claim, which Plaintiffs should have quantified or substantiated by this juncture.[12]

**III.     South Central never "jointly employed" with Sterling Sugars, Sterling did not employ Plaintiffs, and it is not a "joint employer."[13]**

At the outset, South Central relies on 20 C.F.R. § 655.131 affirmatively. The regulation allows all of South Central's member growers to employ Plaintiffs. Plaintiffs' suggestion that joint employment is unlawful is misplaced. The real issue is narrow: whether Plaintiffs also worked for Sterling. Plaintiffs might not have known their employer's regulatory eligibility, but their lacking foundation is consistent with the evidence that shows their employer was identified on the admissibility documents they presented to enter the United States and which Plaintiffs agree are accurate.[14] South Central directs this Court to the Plaintiffs' own denials of (1) ever having worked for other employers; (2) knowledge of Sterling's organizational status relative to South Central's;

---

[10] R. Doc. 118-23, Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.

[11] R. Doc. 118-23, Defendants' Statement of Undisputed Material Facts, at ¶¶ 35-39.

[12] Defendants also maintain that Plaintiffs' failure to move for collective action treatment of this claim precludes application of the claim to individuals other than the named plaintiffs. In support of their position, Plaintiffs cite to an inapplicable quote regarding "certification" of an FLSA claim unrelated to reimbursement of expenses. *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 440 (5th Cir. 2021) (addressing the stage at which the district court should consider whether potential members of the collective meet the "similarly situated" requirement). In fact, that promoted an *early* determination of whether individuals are similarly situated for purposes of answering merits questions collectively. Plaintiffs' failure to request collective treatment of this claim means that the Court has not even had the opportunity to consider the threshold question of whether collective treatment of this claim is proper.

[13] Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Employer Status of Defendant Sterling Sugars, LLC is adopted by reference as if included herein. (R. Doc. 134)

[14] *See* R. Doc. 133-4, Deposition of Felipe de Jesus Avila-Soto, at 108:22-25 (Plaintiff, Avila-Soto, answered: "It's correct.").

PD.62387797.1

(3) ever violating their immigration status; or (4) making any false representations concerning their employment status to the U.S. government when applying for their H-2A visas.[15]

In asserting that economic dependence is the "touchstone of employer status," to support the proposition that the FLSA and H-2A regulations contemplate the possibility of an employee having more than one employer or otherwise being jointly employed, Plaintiffs ignore the critical distinction between the joint employer inquiry and the employee-independent contractor inquiry.[16] That principle, however, is not in dispute and is insufficient to defeat summary judgment.

As the Fifth Circuit recognizes, the purpose of the economic dependence inquiry is whether a worker is sufficiently independent to be classified as an independent contractor.[17] While "[e]conomic dependence on the employer for work is the ultimate inquiry when determining whether a particular worker is an employee or an independent contractor," such dependence "has less relevance in determining whether multiple businesses jointly employ the same economically dependent workers."[18] Indeed, economic dependence is "scarcely… helpful" in assessing joint employer disputes, as some degree of economic dependency on the business partners of an employer is "true of all labor."[19] Notably, courts have expressly criticized reliance on economic dependence in the joint employer context, noting that such an approach, which Plaintiffs attempt to take, "reflects a failure to distinguish between the joint employment inquiry from the separate, employee-independent contractor inquiry."[20] Consequently, economic dependence on Sterling is

---

[15] *See generally* R. Doc. 135, Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment.

[16] R. Doc. 135, p. 11.

[17] *Herman v. Express Sixty-Minutes Delivery Serv.*, 161 F.3d 299, 303 (5th Cir. 1998).

[18] Joint Employer Status Under the Fair Labor Standards Act, Family and Medical Leave Act, and Migrant and Seasonal Agricultural Worker Protection Act (Apr. 23, 2026), 91 FR 21878 (citing *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 137-39 (4th Cir. 2017) (criticizing courts which "incorrectly frame the joint employment inquiry as a question of an employee's 'economic dependence' on a putative joint employer")).

[19] *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 407 (7th Cir. 2007).

[20] *See Salinas*, 848 F.3d at 138 (criticizing courts that rely on an economic realities/economic dependence approach to determine joint employment because that approach "reflects a failure to distinguish the joint employment inquiry

PD.62387797.1

simply not probative of the joint employer inquiry.[21] The only purpose served by Plaintiffs' exhaustive list of facts in support of economic dependence is diverting the Court from the relevant inquiry—whether Sterling "function[s] as employer[] of the plaintiffs rather than mere business partner[s] of plaintiffs' direct employer," South Central.[22]

Even so, when considered in light of the Management Services Agreement,[23] the economic realities factors, when juxtaposed against Plaintiffs' evidentiary showing, also fail to raise a genuine issue of whether Plaintiffs worked for Sterling in any meaningful sense most favorable to their claim as alleged.[24] First, it is undisputed that pursuant to the Management Services Agreement, the decision as to which qualified applicants were hired as employees of South Central remained squarely within South Central's authority. Evidence that Sterling provided guidance alone in the hiring process is insufficient to demonstrate that Sterling possessed the power to hire employees,[25] and any role Sterling played in the hiring, firing, or disciplining of drivers is properly

---

from the separate, employee-independent contractor inquiry," and adding that Rutherford Food does not support "the use of economic dependence to guide the entire joint employment analysis").

[21] Plaintiffs' Opposition improperly cites several authorities addressing employee status in the context of the employee-independent contractor inquiry. *See e.g.*, *Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990) (considering whether inmates were "employees" within the meaning of the FLSA); *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308 (5th Cir. 1976) (before the court on the Secretary of Labor's challenge to the independent contractor status assigned to women operators of laundry pick-up stations); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985) (determining that a farm labor contractor was an employee and not an independent contractor of the farm for which it recruited laborers, and that as a result, the laborers recruited were also employees of the farm).

[22] *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2d Cir. 2003).

[23] The purpose of entering into the Management Services Agreement, in part, related to the fact that Sterling owned and maintained the sugar cane harvesting and trucking equipment it had leased to South Central. *See* R. Doc. 118-11, ¶ 3.1. Thus, Sterling had an interest in the proper and safe use of its equipment as well as in the logistics associated with sugar cane delivered from such a large group of member farmers. "[S]uch typical contractual business arrangements between companies do not themselves create joint employment liability under the FLSA." 91 FR 21878; *Zheng*, 355 F.3d at 76 (explaining that the FLSA's employment definitions were "manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the [statute]").

[24] Plaintiffs thus have not proven that the record evidence provides a "viable basis for relief" as is required at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[25] *See In re Domino's Pizza Inc.*, No. 16CV2492AJNKNF, 2018 WL 4757944, at *5 (S.D.N.Y. Sept. 30, 2018); Plaintiffs similarly are not employees of Sterling under the LWPA because South Central ultimately retained the right to control the conditions of their employment pursuant to the Management Services Agreement. *Carnero v. Patterson Structural Moving & Shoring LLC*, No. CIV.A. 14-2064, 2015 WL 225362, at *3 (E.D. La. Jan. 15, 2015) (noting that "control" is significant in determining employer liability under the LWPA); *Hughes v. Goodreau,* 01–2107, p. 7 (La. App. 1 Cir. 12/31/02); 836 So.2d 649, 656, *writ denied,* 03–0232 (La.4/21/03), 841 So.2d 793 ("It is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of

understood as a function of quality control and safety, and was tethered to the limited authority provided under the Management Services Agreement.[26] Further, Plaintiffs' reliance on *Tullous v. Texas Aquaculture Processing Co. LLC* is misplaced.[27] In *Tullous*, the plaintiffs were expressly identified as employees of both entities at issue, ProSource and Texas Aquaculture.[28] The court held that genuine issues of material fact precluded a summary judgment determination that ProSource was not a joint employer of the plaintiffs because the plaintiffs "submitted applications for employment with ProSource and signed employment agreements which gave ProSource the power to terminate the [plaintiffs]."[29] Even if Texas Aquaculture terminated the plaintiffs, they remained employed by ProSource.[30] Here, unlike in *Tullous*, Plaintiffs did not apply for employment with Sterling and did not enter into an employment agreement with Sterling.

Second, Plaintiffs have not presented evidence to create a factual dispute about who controlled their work schedules or conditions of employment, as the evidence Plaintiffs rely upon is probative of only Sterling's quality control and does not amount to admissible evidence of some sort of "effective" control (by Sterling) over the terms and conditions of the employment. At most, Plaintiffs fail to acknowledge the difference between a Management Services Agreement (that

---

the relationship, the right to do so exists."). *See also Godlewska v. HDA*, 916 F. Supp. 2d 246, 254 (E.D.N.Y. 2013) (holding that the power to hire rests with the entity that chooses who to hire, even if another entity "dictates the minimum criteria for persons who fill these positions and reviews applicants' resumes to ensure the applicants are qualified"); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 123 (S.D.N.Y. 2011) (finding no power to hire despite putative third party employer's requiring direct employer to perform background checks); *see In re Jimmy John's Overtime Litigation*, 2018 WL 3231273, at *15 (N.D. Ill. June 14, 2018) (finding no power to hire when franchisor did not directly hire employees but provided interview forms, instructed franchisees to hire additional staff, and implemented restrictions on who could be hired).

[26] *See In re Domino's Pizza Inc.*, 2018 WL 4757944, at *5.  Plaintiffs similarly are not employees of Sterling under the LWPA because South Central ultimately retained the right to control the conditions of their employment pursuant to the Management Services Agreement. *Carnero v. Patterson Structural Moving & Shoring LLC*, No. CIV.A. 14-2064, 2015 WL 225362, at *3 (E.D. La. Jan. 15, 2015) (noting that "control" is significant in determining employer liability under the LWPA); *Hughes v. Goodreau,* 01–2107, p. 7 (La. App. 1 Cir. 12/31/02); 836 So.2d 649, 656, *writ denied,* 03–0232 (La.4/21/03), 841 So.2d 793 ("It is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists.").

[27] *Tullous v. Texas Aquaculture Processing Co. LLC*, 579 F. Supp. 2d 811, 820 (S.D. Tex. 2008).

[28] *Id.*

[29] *Id*.

[30] *Id*.

PD.62387797.1

governs business to business administrative and operational work)[31] and their employment contracts (which were executed between only Plaintiffs and South Central). This mistake necessarily "ignores the difference between affecting and supervising or controlling."[32]

Third, Plaintiffs have not set forth any evidence to establish that Sterling determined Plaintiffs' rate of pay. Plaintiffs' rate of pay was set by the federal government after South Central's *Application for Temporary Employment Certification* was approved.[33] Plaintiffs' evidence, viewed most favorably, shows that Desiree Lange (a Sterling bookkeeper) processed payroll for one of Sterling's large grower customers. Simply "providing human resources services like payroll and insurance does not make [Sterling] a joint employer or prove it exercised control over [Plaintiffs'] employment."[34] Where "payroll services and staffing providers wrote the employee's checks" courts have noted that this "did not transform it into an employer."[35]

Fourth, Plaintiffs cannot establish that Sterling acted as their employer simply because Sterling employees, pursuant to the Management Services Agreement, retained and had access to employment records.[36] Access to such records does not meet the fourth factor, particularly where the ability to review and access such records is "only an extension" of quality control procedures.[37]

Finally, and perhaps most importantly, under the Management Services Agreement, South Central expressly reserved all authority not specifically delegated by the terms of the Management

---

[31] Indeed, the Management Services Agreement describes the scope of services provided business-to-business.
[32] *See e.g., Jean-Louis*, 838 F. Supp. 2d at 125-26.
[33] R. Doc. 120, p. 11.
[34] *Hodges v. Admin. Sys.*, No. 4:25-cv-92, No. 4:25-CV-92-JDM-JMV, 2026 WL 1485716 (N.D. Miss. May 27, 2026); *see also, e.g., Moldenhauer v. Tazewell Pekin Consol. Commc'ns Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008); *Aguirre v. SBC Commc'ns, Inc.*, Civil Action No. H-05-3198, 2007 WL 2065187, at *3 (S.D. Tex. July 17, 2007); *Hopkins v. Texas Mast Climbers, L.L.C.*, Civ. A. No. H-04-1884, 2005 WL 3435033, at *4 (S.D. Tex. 2005).
[35] *Hopkins*, 2005 WL 3435033, at *1.
[36] *See Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) (finding that access to employment records does not meet the fourth factor).
[37] *Godlewska*, 916 F. Supp. 2d at 262.

Services Agreement and further retained the ultimate authority to strike Sterling's management.[38] South Central's retention of ultimate authority, including its express right to override, modify, or terminate Sterling's management, confirms that Sterling lacked the control necessary to be deemed an employer.

**IV.     Plaintiffs' claim for breach of contract remains unsupported by law or fact.**

Plaintiffs do not dispute any material facts related to the breach of contract claim and have conceded that the Job Orders, attached to Defendants' Motion,[39] are the operative agreements at issue. Contrary to Plaintiffs' assertions, Defendants do not request that this Court enforce "illegal" contract terms. Rather, Defendants ask that this Court properly determine that the wage rates agreed to in the Job Orders were proper, based on the Adverse Effect Wage Rate as determined by the Department of Labor at the time, and that Plaintiffs were properly paid those rates. Plaintiffs' argument that they were improperly paid agricultural wages is extra-contractual. There is no dispute that Plaintiffs were paid the wage rate agreed to in the Job Orders, and thus summary judgment is appropriate.[40]

**V.     Plaintiffs' LWPA claim fails as a matter of law.**

Plaintiffs argue that under the Louisiana Wage Payment Act, La. Rev. Stat. § 23:631-632, every other wage claim means that Plaintiffs are "entitled to the damages provided for under LWPA."[41] Plaintiffs do not point to any dispute of fact and point to their own Motion for Summary Judgment for support. This further highlights that this claim is merely an effort to improperly obtain penalty wages, as provided for by the LWPA, on a sum of funds that were never disputed

---

[38] R. Doc. 118-11, ¶ 6.1.

[39] R. Doc. 118-15, 118-16, 118-17, 118-18.

[40] R. Doc. 118-19 (Deposition of Felipe de Jesus Suarez-Palafox), at 58:1-6, 61:23-62:14; R. Doc. 118-20 (Deposition of Felipe de Jesus Avila-Soto), at 153:8-157:4, 159:7. *See also* R. Doc. 118-21 (Wage Information for Named Plaintiffs).

[41] R. Doc. 135 at 23.

PD.62387797.1

until this lawsuit was filed. Plaintiffs were paid the wages owed *at the time* that their employment ended. As Louisiana courts have held, "there is a distinction between an employer timely paying earned wages for all hours worked, and an employer refusing to pay the extra wages an employee claims are due on the hours he worked in excess of the statutory maximum."[42] There was not, and has never been, a determination that Plaintiffs were owed any more than what was paid to them. Plaintiffs' claim for improper payment of wages is distinct from any alleged failure of Defendants to pay Plaintiffs what they were indisputably owed at the end of their employment. Summary judgment is proper on this claim and should be granted in Defendants' favor.

## VI.    Conclusion.

For the reasons set forth, Defendants' Motion for Summary Judgment should be granted. On the undisputed material facts and applicable law, Plaintiffs cannot succeed on any claim, and Defendants are entitled to judgment as a matter of law.

This 26th day of June, 2026.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Brandon E. Davis*
Brandon E. Davis Bar Roll No. 29823
Molly McDiarmid Bar Roll No.  36426
Jennifer Clewis Thomas (*Admitted Pro Hac Vice)*
Andrew M. Albritton Bar Roll No. 39780
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com

---

[42] *Odom v. Respiratory Care, Inc.*, 98–263, p. 4 (La.App. 1 Cir. 2/19/99), 754 So.2d 252, 256. *See also Kidder v. Statewide Transp., Inc.*, 2013-594 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875.

PD.62387797.1

andrew.albritton@phelps.com

**ATTORNEYS FOR DEFENDANTS, SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC. AND STERLING SUGARS, LLC**

PD.62387797.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June, 2026, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send a notice of electronic

filing to all counsel of record/parties in this proceeding.


/s/ Andrew M. Albritton
ANDREW M. ALBRITTON

PD.62387797.1