UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FELIPE DE JESUS AVILA-SOTO, et al. | ) ) ) | Case No. 6:24-cv-01392 |
| Plaintiffs, | ) ) | JUDGE ROBERT R. SUMMERHAYS |
| v. | ) ) ) | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| SOUTH CENTRAL SUGAR CANE GROWERS' ASSOCIATION, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT MOTION FOR SUMMARY JUDGMENT ON EMPLOYER STATUS OF DEFENDANT STERLING SUGARS, LLC**

Plaintiffs' motion for summary judgment on the employer status of Sterling Sugars provided overwhelming evidence that the truck drivers are economically dependent on Sterling Sugars and that they met *every* factor that the Fifth Circuit uses to determine employer status, more than is required under Fifth Circuit law. *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). Defendants claim that Plaintiffs are "invit[ing[ the Court to simply infer an employment relationship" and that Plaintiffs have only "identified *some* evidence that arguably supports the notion that they are employed by Sterling."[1] But decision in Plaintiffs' favor requires no inference. Sterling Sugars hired and fired the truck drivers, set the schedule, directed the work, ran the payroll, paid the wages, funded the bank account, kept the employment records, and ultimately employed the Plaintiffs and other truck drivers, which is not inferential and far more than *some* evidence. Sterling Sugars, as a matter of law, was the employer of the truck drivers under the FLSA, the employment contracts, and the LWPA.

## I.    Sterling Sugars was the Truck Drivers' Employer Pursuant to the FLSA

The parties do not dispute that the Fifth Circuit employs an "economic reality" test to determine whether an entity is liable as a FLSA joint employer.[2] *Gray*, 673 F.3d at 354. Plaintiffs set out in detail the role performed by Sterling Sugars, which scheduled, supervised, recorded, paid, and controlled the truck drivers' employment, all tasks which fit within the Fifth Circuit's test.[3] First, with respect to the power to hire and fire employees, Sterling Sugars set the number of truck drivers to be employed, selected the drivers who were hired, determined which drivers were allowed to be re-hired, maintained a "do not return" list of drivers who could not be re-hired, allocated extensions of the H-2A visas to drivers allowing them to work for longer, set

---

[1] ECF No. 134 at 5 (emphasis in original).
[2] ECF No. 134 at 12 (citing *Gray v. Powers* and setting out same four-factor test).
[3] ECF No. 120-1 at 7-15 & nn. 34-90.

1

work rules and codes of conduct, purchased, installed, and controlled driver-monitoring cameras in the trucks, monitored  drivers' compliance with their work rules, and disciplined and fired drivers.[4] In response, Defendants claim that Sterling Sugars was only "influencing" South Central's hiring decisions and that hiring remained "squarely within South Central's authority."[5] Defendants cite no evidence, which thus fails to raise a triable issue of fact. Indeed, Defendants can cite no support because South Central's president, Ricky Gonsoulin, testified that *Sterling Sugars* "provided the names to hire as truck drivers" and that *Sterling Sugars* "has the right to determine which employees that we issue visas to on a yearly basis."[6] Likewise, Sterling Sugars' CEO Randy Romero testified that he "felt it was important that we continue to bring the same drivers that would have been brought in previously" while Sterling Sugars' employee Jaime Robison stated in an email that "everyone that was here at [South Central] last year is welcome back this year with the exception of ones that are on the do not return list."[7]

Defendants provide no response to Plaintiffs' evidence that Sterling Sugars fired truck drivers, which is the second part of the "power to hire and fire" prong. Accordingly, that Sterling Sugars' employees monitored the work of the drivers, disciplined them, and terminated their employment, including the employment of Plaintiff Avila-Soto, is undisputed.[8] Sterling Sugars

---

[4] ECF No. 120-1 at 7-10 & nn. 34-51.

[5] ECF No. 134 at 14.

[6] ECF No. 120-2 (Pls.' Facts) ¶ 47.

[7] ECF No. 120-2 (Pls.' Facts) ¶¶ 47, 50; Ex. 44. Even the Management Services Agreement states that the general manager supplied by Sterling Sugars "shall oversee and direct staffing." ECF No. 119-06 (Ex. 11) at ¶ 3.1; ECF No. 119-09 (Ex. 25) at ¶ 3.1.

[8] Defendants claim—without any factual support—that any role Sterling Sugars played in such actions is "properly understood as a function of quality control and safety." ECF No. 134 at 14. Firing workers shows the power to hire and fire, a factor in Fifth Circuit joint employment analysis. Defendants cite to no evidence that any of these myriad functions were performed by Sterling Sugars for quality control or safety purposes—accordingly they do not create a triable issue. While an employer might fire workers for quality control reasons, those firings also illustrate employer status. Defendants cite no Fifth Circuit cases in which a court has qualified the first prong of the economic reality test—the *power* to hire and fire—as weighing against a finding of employer status merely because the employer has some safety reason for exercising such power.

2

controlled whether the truck drivers were employed in the first instance and Sterling Sugars also controlled whether they were fired from their truck driving jobs at South Central.

Second, Plaintiffs detailed how Sterling Sugars alone supervised the schedules for the truck drivers and controlled their conditions of employment. Sterling Sugars' manager Jaime Robison set the truck drivers' daily work schedules, including their daily start times and when they were to leave the Sterling Sugars' truck yard each day, as well as the locations where they were to drive each day. Sterling Sugars transported the truck drivers to work, provided and controlled the time clocks used to record their work, and determined when the season would start and end each year.[9] Defendants ask the Court to ignore this factor and assume these actions were taken for "quality control."[10] Defendants cite to no evidence that setting the schedules or other conditions of the truck drivers' employment were in any way "quality control." Additionally, there is no such exception in the Fifth Circuit's test. *See, e.g.*, *Hodgson v. Griffin and Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973) (affirming joint employer finding of farm owner that decided daily starting times without discussing schedule setting reasons). Additionally, just as with the hiring and firing factor, nobody at South Central performed any of these functions. Accordingly, there is no triable issue of fact for this factor.

Third, Plaintiffs set forth evidence that Sterling Sugars determined the truck drivers' wage rate and method of payment. As Plaintiffs explained, Sterling Sugars played a significant role in the creation of South Central to evade truck driver wage requirements and overtime wages and played a significant role in which visa program South Central used, which impacted the wage rates offered to the truck drivers.[11] Plaintiffs also set forth evidence that Sterling

---

[9] ECF No. 120-1 at 10-11 & nn. 52-59.
[10] ECF No. 134 at 15.
[11] ECF No. 120-1 at 11-12 & nn. 60-66.

Sugars' CEO Randall Romero decided not to reduce the hourly wage rates after an injunction related to wage rates paid to H-2A truck drivers.[12] Defendants do not address Mr. Romero's decision with respect to the wage rates and exclusively argue that the "rate of pay was set by the federal government" based on Defendants' filing of H-2A job orders.[13] However, Defendants completed the wage rate items in the job order. Those wage rates were set based on decisions made by Sterling Sugars' management on how to structure South Central in a way to avoid paying higher "non-agricultural" H-2B wage rates by claiming the work was "agricultural" when it was not.[14] Those decisions directly impacted the truck drivers' wage rates. With respect to the method of payment, Plaintiffs presented evidence that Sterling Sugars determined the payroll period and pay dates, processed the payroll, provided the time clocks and software used to create the payroll, and made the decision to change from paychecks to the current payroll card system.[15] Defendants do not dispute this evidence, and offer no evidence to create a triable issue of fact, but argue that Sterling Sugars was simply acting in a similar role as a payroll service provider "tasked with calculating paychecks and maintaining payroll records" and that in such situations courts have found that the payroll processing entity was not an employer.[16] The cases relied upon by Defendants are inapposite. For example, in *Hodges v. Admin. Sys.*, No. 4:25-cv-92-JDM-JMV, 2026 U.S. Dist. LEXIS 116602, at *23-24 (N.D. Miss. May 27, 2026) the employee never "communicated or interacted with anyone" at the company that provided the payroll processing and in *Hopkins v. Tex. Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, at *3 (S.D. Tex. Dec. 14, 2005) the employee had never talked with anyone at the

---

[12] ECF No. 120-1 at 12-13 & nn. 69-71.
[13] ECF No. 134 at 16.
[14] ECF No. 120-2 (Pls.' Facts) ¶¶ 22-27.
[15] ECF No. 120-1 at 13-14 & nn. 72-81.
[16] ECF No. 134 at 17-18.

4

payroll service provider and did not know where the company was located. That is not the case here.[17] Sterling Sugars was not simply a "payroll service provider."[18]

Fourth, as explained in Plaintiffs' opening brief, Sterling Sugars maintained all the employment records for the truck drivers. South Central has no office, no office staff, no computers, and no file systems. Sterling Sugars' staff were solely responsible for the processing of all new hire paperwork, application forms, and tax documents, in addition the maintenance of the truck drivers' personnel files. Those files were stored at Sterling Sugars' offices at the mill.[19] Again, Defendants do not dispute any of these facts, nor create any triable issue. Yet Defendants ask the Court to ignore this factor because "the ability to review and access such records is . . . quality control[.]"[20] Defendants cite to no evidence that maintaining these records by Sterling Sugars was for quality control, which makes sense since such records are not normally kept for quality control. It is undisputed that Sterling Sugars was exclusively responsible for creating, maintaining, and storing all of the employment records. Ignoring this factor is inappropriate.

Finally, Defendants claim some "reserved authority" to "strike Sterling's management" contained in the Management Services Agreement means that when Sterling Sugars performed all the roles of an employer it still "lacked the control necessary to be deemed an employer."[21] Employer status is not based on what labels the parties apply or what level of control they

---

[17] ECF No. 120-2 (Pls.' Facts) ¶¶ 55-59, 63, 118.

[18] Far from a normal "payroll service provider," Sterling Sugars' employees who processed payroll had access to and monitored South Central's bank accounts and made million-dollar transfers from Sterling Sugars' accounts to South Central in order to make payroll and pay other bills for South Central. ECF No. 120-2 (Pls.' Facts) ¶¶ 133-137.

[19] ECF No. 120-1 at 14-15 & nn. 82-90.

[20] ECF No. 134 at 18. Defendants cite to *Irizarry v. Catsimatidis*, 722 F.3 99 (2d Cir. 2013), claiming the court found that "access to employment records does not meet the fourth factor." Defendants misstate the court's review of the factor in that case. There was no "finding" since the Plaintiffs admitted the defendant did not meet the factor because all he did was work in the office where the records were kept. *Id.* at 116. Sterling Sugars did not just "have access" to the employment records and its employees did not just work in the same office where the records were kept—it was exclusively responsible for creating and maintaining all of the truck drivers' employment records. Defendants' citation to *Godlewska v. HDA*, 916 F. Supp. 2d 246, 262 (E.D.N.Y. 2013), is also inapposite as, unlike here, that case involved records that were not created nor maintained by the putative employer but merely reviewed by it.

[21] ECF No. 134 at 18.

5

contractually claim, but on the economic realities. *Watson v. Graves*, 909 F.2d 1459, 1554 (5th Cir. 1990) ("We must look to the substantive realities of the relationship, not to mere forms or labels ascribed to the laborer by those who would avoid coverage."). Plaintiffs demonstrated that regardless of any "reserved authority" maintained by South Central, the economic reality was that Sterling Sugars handled all aspects of the management of the truck drivers' employment.[22]

In addition to the evidence as to each factor in the four-factor economic realities test, as a matter of pure economic dependence, the truck drivers would have no jobs, no trucks to drive, and would not have been paid without Sterling Sugars. South Central simply did not have sufficient funds to make payroll without Sterling Sugars gifting it $5 million per year.[23] Yet Defendants claim that "Plaintiffs have not identified evidence that shows they were economically dependent on Sterling" or that the evidence "proffer[ed]" is just "routine business transactions between South Central and Sterling."[24] South Central had annual gross income from its harvesting[25] and hauling operations of $8-$10 million per year but needed more than half that amount in additional funding—$5 million per year—from Sterling Sugars just to operate.[26] It is

---

[22] Defendants claim that *Falk v. Brennan*, 414 U.S. 190 (1973), is distinguishable because here "Sterling did not assume 'virtually all management functions.'" ECF No. 134 at 20. Defendants point only to language in the Management Services Agreement. But, as Plaintiffs have shown, Sterling Sugars *did* assume "virtually all management functions" and South Central has provided no evidence that it performed *any* management functions. South Central President Ricky Gonsoulin testified at length about a long list of management functions that Sterling Sugars, exclusively, performed for South Central. ECF No. 119-52 (Gonsoulin/South Central Dep. at 197:2-213:14). Even if the parties *had* shared in the management duties it would not change the analysis as they would still be *joint* employers of the truck drivers since the workers were economically dependent on Sterling Sugars and the "economic realities" test has been met. *See, e.g.*, *Antenor*, 88 F.3d at 932 ("[T]he question in 'joint employment' cases is not whether the worker is more economically dependent on [one putative employer or the other], with the winner avoiding responsibility as an employer.").

[23] ECF No. 120-2 (Pls.' Facts) ¶¶ 144-149.

[24] ECF No. 134 at 7-8.

[25] Far from a "routine business transaction" between two allegedly separate entities, *Sterling Sugars'* CEO Randall Romero set the per acre price that South Central charged its *own members* for the harvesting services that *South Central* provided to them, rather than anyone from South Central itself setting those prices. (ECF No. 120-2 (Pls.' Facts) ¶ 140).

[26] ECF No. 120-2 (Pls.' Facts) ¶¶ 139, 141, 149.

not routine for one company to gift another company millions of dollars each year.[27] Defendants' own testimony and documentary evidence show that South Central could not make payroll or otherwise pay its bills without large infusions of cash gifts from Sterling Sugars.[28] That is the very definition of the truck drivers being "economically dependent" on Sterling Sugars—they would not even have been paid their wages but for Sterling Sugars providing the funds.[29] The parties' Revenue Balancing Agreement expressly stated that Sterling Sugars would "provide adequate revenue necessary to cover the general operating expenses" of South Central and one of South Central's designees testified that the revenue provided allowed it "to be able to have a financially stable environment in order to be able to bring in workers to harvest and haul cane."[30] Unmistakably, the truck drivers were economically dependent on Sterling Sugars.

Perhaps realizing the overwhelming evidence of economic dependence of the truck drivers on Sterling Sugars, Defendants argue that "economic dependence is not relevant to the joint employer analysis" and that "economic dependence" is only considered in cases involving workers misclassified as independent contractors.[31] For support Defendants cite to a notice of

---

[27] These "routine business transactions" involved promissory notes prepared by Sterling Sugars that had no interest rates and for which South Central provided no collateral. (ECF No. 120-2 (Pls.' Facts) ¶ 132); (Ex. 20) (2025 promissory notes). The "routine business transactions" also included Sterling Sugars' employees monitoring the South Central bank accounts to transfer funds from Sterling Sugars to South Central in order to make payroll or pay bills, including transferring millions of dollars in funds from Sterling Sugars to South Central so that South Central could write a check to "pay" Sterling Sugars' invoices for its employees' management services using Sterling Sugars' own money. (ECF No. 120-2 (Pls.' Facts) ¶¶ 133-137.) And the "routine business transactions" also included Sterling Sugars eliminating through intercompany transactions any "loans" that may have been made, treating South Central as a "disregarded entity," and South Central's expenses being brought onto the books of Sterling Sugars. (ECF No. 120-2 (Pls.' Facts) ¶ 148.)

[28] ECF No. 120-2 (Pls.' Facts) ¶¶ 131-137.

[29] Defendants claim that Plaintiffs "speculate that they must have been economically dependent on Sterling due to the relationship South Central maintained with Sterling." ECF No. 134 at 9. Plaintiffs have presented evidence, including Defendants' own testimony, that shows South Central simply did not have enough money to pay its employees without a "Revenue Balancing Agreement" that, in the words of Sterling Sugars' President and General Manager Rivers Patout, "subsidized" South Central—to the tune of $5 million per year in nonrecourse funds. ECF No. 120-2 (Pls.' Facts) ¶¶ 144-149.

[30] ECF No. 120-2 (Pls.' Facts) ¶ 147) (testimony of CFO Ashlee Gary); Ex. 24 (Revenue Balancing Agreement).

[31] ECF No. 134 at 9-11.

proposed rulemaking that has not been adopted.[32] Defendants quote the proposed regulations out of context and fail to note that the Department of Labor's prior attempt to eliminate "economic dependence" from the joint employer inquiry was vacated. *New York v. Scalia*, 490 F. Supp. 3d 748, 790-91 (S.D.N.Y. 2020). The court in *Scalia* vacated a 2020 rule because it unlawfully limited the factors to be considered in a joint employer inquiry, including by excluding any analysis of economic dependence. *Id.* at 790. The court stated "the FLSA does not distinguish between employers and joint employers . . . That is why courts have focused on economic dependence as the crux of the joint employment inquiry." *Id.*[33] While courts in the Fifth Circuit review different "economic reality" factors when assessing a situation involving joint employment as opposed to independent contractor status, both factual scenarios involve consideration of the economic dependence of the worker on the putative employer in assessing FLSA employer status.[34] Plaintiffs' motion established the truck drivers were economically dependent on Sterling Sugars, in addition to satisfying all of the other Fifth Circuit "economic reality" factors, such that Sterling Sugars should be found liable as a FLSA employer.

## II. Sterling Sugars was an Employer Pursuant to the Employment Contracts.

Plaintiffs' opening brief outlined how Sterling Sugars met the definition of "employer" within the meaning of the H-2A program and the employment contracts.[35] An "employer" under

---

[32] ECF No. 134 at 11 n.62.

[33] The Department of Labor acknowledges this, stating that "having considered the issue further, [the Department] recognizes that some courts consider economic dependence on an employer for work when determining joint employment under the FLSA, the Department notes that the district court in *Scalia* ruled that the 2020 Rule's provision excluding consideration of economic dependence, in its view, 'contradict[ed] caselaw and the Department's [prior] views.'"*Joint Employer Status under the FLSA, FMLA, and MSPA*, 91 Fed. Reg. 21878, 21895 (proposed Apr. 23, 2026).

[34] *See, e.g., Watson*, 909 F.2d at 1553 ("determination of employee status focuses on economic reality and economic dependence"); *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194-95 (finding joint employment relationship where a "corporation's very survival depended on [the putative employer's] largess"); *Griffin & Brand, Inc.*, 471 F.2d at 237 (whether farmer was joint employer "depends not on the form of the relationship but on the 'economic reality'").

[35] ECF No. 120-1 at 16-18.

8

the H-2A program is defined as an entity that "[h]as an employment relationship (such as the ability to hire, pay, fire, supervise, or otherwise control the work of employee) with respect to an H-2A worker." 20 C.F.R. § 655.103(b). As discussed above, the undisputed evidence shows that Sterling Sugars not only had the "*ability* to hire, pay, fire, supervise, or otherwise control the work" of the truck drivers, but was the entity that exclusively *did* all of those things. In arguing that Sterling Sugars was not an employer under the employment contracts, Defendants do not address any of these "employer" criteria.[36] Instead, Defendants cite to and argue about a separate regulation, 20 C.F.R. § 655.103(e), that is to assess whether separate entities might be considered a "single employer" for purposes of determining if their *combined* need for workers is not temporary or seasonal.[37] Plaintiffs have not argued the Defendants are a "single employer." Defendants' arguments are irrelevant with respect to whether Sterling Sugars meets the definition of "employer" under the contracts. Defendants have failed to present any argument or evidence disputing Sterling Sugars' status as an "employer" pursuant to the employment contracts and summary judgment is appropriate for the Plaintiffs.

### III.    Sterling Sugars was the Truck Drivers' Employer Pursuant to the LWPA.

Defendants argue that Sterling Sugars is not the truck drivers' "employer" pursuant to the LWPA, claiming that such a determination turns not on whether Sterling Sugars provided supervision or control but on whether "'the right to do so exists.'"[38] This is a gross misstatement of the law with respect to determining employer/employee status. The quote Defendants rely upon is addressed to situations in which a putative employer *does not* exercise actual supervision

---

[36] Defendants do state that "South Central is run by its President, Rickey [sic] Gonsulin [sic]" and "[t]he relevant employment decisions forming the basis of Plaintiffs [sic] claims were made by South Central." ECF No. 134 at 23. Defendants cite no evidence and the undisputed evidence presented by Plaintiffs and already discussed is to the contrary. Mr. Gonsoulin is not even aware of what *bank* South Central uses, is not aware of the bank account balances, and does not have a way to check the balances. ECF No. 120-2 (Pls.' Facts) ¶ 126.

[37] ECF No. 134 at 23.

[38] ECF No. 134 at 24 & n.2 (quoting same case as Plaintiffs with respect to the employer analysis).

9

or control but is still found to be an employer because it had *the right* to do so. *See Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 117-19 (La. 1972) (finding employee/employer status based on the right to control and not the actual exercise of control). Defendants claim that the inverse should be true: where actual control occurs without an (alleged) right to control, no liability should be found. That is mistaken. Sterling Sugars not only had the right to exercise supervision and control but exercised that right with respect to the truck drivers, as Plaintiffs have already discussed. Defendants then argue that even though South Central "outsourced" its authority to Sterling Sugars to handle supervision, Sterling Sugars did not really have "the right" to provide supervision and control because South Central allegedly "reserved ultimate authority."[39] In addition to being factually inaccurate and legally mistaken, more than one entity can be an "employer" under the LWPA. *See, e.g.*, *Mendoza v. Essential Quality Const., Inc.*, 691 F. Supp. 2d 680, 686 (E.D. La. 2010) ("The fact that one defendant exercises more control over an individual than another defendant does not preclude an employment relationship between the individual and the second defendant."); *Singleton v. Gulf Coast Truck Serv.*, 409 So. 2d 377, 378 (La. Ct. App. 1982) (finding truck driver employed by both defendants). Defendants have not presented any argument or evidence to create a triable issue of fact on this issue and Plaintiffs' motion should be granted with respect to Sterling Sugars' status as an employer under the LWPA.

## CONCLUSION

For the foregoing reasons, as well as the arguments and evidence presented in their opening brief and Statement of Facts, Plaintiffs' motion for summary judgment on the employer status of Sterling Sugars should be granted.

---

[39] ECF No. 134 at 24.

10

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email:  jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA  94710
Phone: (404) 590-1295
Email:  dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email:  dan@estesdavislaw.com

11